# U.S. Bankruptcy Court
## Eastern District of Wisconsin (Milwaukee)
## Bankruptcy Petition #: 09−35931−pp

*Date filed:* 11/03/2009
*Date converted:* 02/16/2010

*Assigned to:* Pamela Pepper
Chapter 13
Previous chapter 7
Voluntary
Asset

| | |
|---|---|
| ***Debtor*** | represented by **Rollie R. Hanson** |
| **Edward Blaine Kohler** | 6737 W. Washington Street |
| 5310 S. Skyline Drive | Suite 1420 |
| New Berlin, WI 53151 | West Allis, WI 53214−5649 |
| SSN / ITIN: xxx−xx−1463 | 414−321−9733 |
| | Fax : 414−321−9601 |
| | Email: rollie@hansonlaw.net |

| | |
|---|---|
| ***Joint Debtor*** | represented by **Rollie R. Hanson** |
| **Patricia Lynn Kohler** | (See above for address) |
| 5310 S. Skyline Drive | |
| New Berlin, WI 53151 | |
| SSN / ITIN: xxx−xx−2596 | |

***Trustee***
**Mary B. Grossman**
Chapter 13 Trustee
P.O. Box 510920
Milwaukee, WI 53203
414−271−3943

***Trustee***
**Michael F. Dubis**
208 East Main Street
Waterford, WI 53185
262−534−6950
*TERMINATED: 02/17/2010*

***U.S. Trustee***
**Office of the U. S. Trustee**
517 East Wisconsin Ave.
Room 430
Milwaukee, WI 53202
414−297−4499

| Filing Date | # | Docket Text |
|---|---|---|
| 11/03/2009 | 1 pgs: 71 | Chapter 7 Voluntary Petition Filed by Edward Blaine Kohler, Patricia Lynn Kohler Fee Amount: . (Hanson, Rollie) (Entered: 11/03/2009) |

| | | |
|---|---|---|
| 11/03/2009 | <u>2</u><br>pgs: 2 | Certificate of Credit Counseling Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (Hanson, Rollie) (Entered: 11/03/2009) |
| 11/03/2009 | | Receipt of Voluntary Petition (Chapter 7)(09–35931) [misc,volp7a] ( 299.00) Filing Fee. Receipt number 4365892. Fee amount 299.00. (U.S. Treasury) (Entered: 11/03/2009) |
| 11/03/2009 | <u>3</u><br>pgs: 2 | Meeting of Creditors to be held on 12/11/2009 at 09:30 AM in Waukesha, Brookfield Safety Building. Last day to oppose discharge or dischargeability is 02/09/2010. (Hanson, Rollie) (Entered: 11/03/2009) |
| 11/06/2009 | <u>4</u><br>pgs: 5 | BNC Certificate of Mailing – Meeting of Creditors. (RE: <u>3</u> Meeting of Creditors (Chapter 7)) Service Date 11/06/2009. (Admin.) (Entered: 11/07/2009) |
| 12/09/2009 | <u>5</u><br>pgs:<br>10, 31 | Motion for Relief from Stay as to 5310 S. Skyline Dr.; New Berlin, Wisconsin., in addition to Motion to Abandon with Notice of Motion and Certificate of Service filed by Melissa M. Pingel of Bass &Moglowsky, S.C. on behalf of Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. Objections due by 12/23/2009. (Attachments: # Exhibit) Fee Amount . (Pingel, Melissa) (Entered: 12/09/2009) |
| 12/09/2009 | | Receipt of Motion to Abandon(09–35931–pp) [motion,mabn] ( 150.00) Filing Fee. Receipt number 4471583. Fee amount 150.00. (U.S. Treasury) (Entered: 12/09/2009) |
| 12/14/2009 | <u>6</u><br>pgs: 10 | Reaffirmation Agreement with North Shore Bank with Declaration of the Attorney for the Debtor. Disclosures, Instructions and Notice to Debtor have been filed with this Reaffirmation. Filed by North Shore Bank . (hk, Deputy Clerk) (Entered: 12/14/2009) |
| 12/15/2009 | | Chapter 7 Trustee's Report of No Distribution: I, Michael F. Dubis, having been appointed trustee of the estate of the above–named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above–named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned: $ 241344.00, Assets Exempt: $ 47042.54, Claims Scheduled: $ 487918.10, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment: $ 487918.10. (Dubis, Michael) (Entered: 12/15/2009) |
| 12/21/2009 | | Remark: Per Judge Pepper, no hearing is required for this reaffirmation agreement; there is no presumption of undue hardship. (RE: <u>6</u> Reaffirmation filed by Creditor North Shore Bank) (pwm, Judicial Assistant) (Entered: 12/21/2009) |
| 12/23/2009 | <u>7</u><br>pgs: 3 | Objection Filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (Re: <u>5</u> Motion for Relief from Stay as to 5310 S. Skyline Dr.; New Berlin, Wisconsin. filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4, Motion to Abandon ) (Hanson, Rollie) (Entered: 12/23/2009) |

| | | |
|---|---|---|
| 12/29/2009 | <u>8</u><br>pgs: 1 | Notice of Hearing re <u>5</u> Motion for Relief from Stay and Abandonment by US Bank NA. Hearing to be held on 1/11/2010 at 02:00 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (pwm, Judicial Assistant) (Entered: 12/29/2009) |
| 12/31/2009 | <u>9</u><br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: <u>8</u> Notice of Hearing) Service Date 12/31/2009. (Admin.) (Entered: 01/01/2010) |
| 01/05/2010 | | Hearing Set (RE: <u>5</u> Motion for Relief From Automatic Stay filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4) Hearing to be held on 1/25/2010 at 10:45 AM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (kgw, Courtroom Deputy) (Entered: 01/05/2010) |
| 01/10/2010 | <u>10</u><br>pgs: 2 | Notice to debtor(s) regarding the Requirement to File a Certification of Completion of Course Concerning Personal Financial Management. (adkt) (Entered: 01/10/2010) |
| 01/13/2010 | <u>11</u><br>pgs: 3 | BNC Certificate of Mailing. (RE: <u>10</u> Notice to debtor(s) regarding the requirement to file form 23.) Service Date 01/13/2010. (Admin.) (Entered: 01/14/2010) |
| 01/15/2010 | <u>12</u><br>pgs: 1 | Motion to Convert Case to Chapter 13 from a Chapter 7 filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. (Hanson, Rollie) (Entered: 01/15/2010) |
| 01/22/2010 | | Hearing Canceled On 1/25/10, the parties advised that the matter was settled and a stipulation and order would be submitted. (RE: <u>5</u> Motion for Relief From Automatic Stay filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4, Motion to Abandon) Document to be reviewed by 2/22/2010. (pwm, Judicial Assistant) (Entered: 01/22/2010) |
| 01/22/2010 | <u>13</u><br>pgs: 2 | Notice of Motion Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (RE: <u>12</u> Motion to Convert Case to Chapter 13 from a Chapter 7 ). Objections due by 2/8/2010. (Hanson, Rollie) (Entered: 01/22/2010) |
| 01/22/2010 | <u>14</u><br>pgs: 4 | Certificate of Service Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (RE: <u>12</u> Motion to Convert Case to Chapter 13 from a Chapter 7 , <u>13</u> Notice of Motion). (Hanson, Rollie) (Entered: 01/22/2010) |
| 02/01/2010 | <u>15</u><br>pgs: 4 | Stipulation Regarding Substitution of Attorney for the Debtor(s) *Creditor(s)*. (Teske, Eric) (Entered: 02/01/2010) |
| 02/02/2010 | <u>16</u><br>pgs: 3 | Order For Substitution of Counsel (RE: <u>15</u> Stipulation Regarding Substitution of Attorney for the Debtor(s)Creditor(s)). (jth, Deputy Clerk) (Entered: 02/02/2010) |
| 02/04/2010 | <u>17</u><br>pgs: 4 | BNC Certificate of Mailing – PDF Document. (RE: <u>16</u> Order on Stipulation) Service Date 02/04/2010. (Admin.) (Entered: 02/05/2010) |
| 02/09/2010 | <u>18</u><br>pgs: 1 | Affidavit of No Objection/Response/Answer Filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (Re: <u>12</u> Motion to Convert Case to Chapter 13 from a Chapter 7 ) (Hanson, Rollie) (Entered: 02/09/2010) |

| | | |
|---|---|---|
| 02/11/2010 | <u>19</u><br>pgs: 2 | Financial Management Course Certificate Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (Hanson, Rollie) (Entered: 02/11/2010) |
| 02/16/2010 | <u>20</u><br>pgs: 1 | Order Granting Motion to Convert Case to Chapter 13. (Related Doc # <u>12</u> ) (jth, Deputy Clerk) (Entered: 02/16/2010) |
| 02/17/2010 | <u>21</u><br>pgs: 2 | Meeting of Creditors to be held on 4/1/2010 at 10:00 AM in Milwaukee, U.S. Courthouse, Room 428. Proofs of Claims due by 6/30/2010 Last day to oppose discharge or dischargeability is 6/1/2010. (jth, Deputy Clerk) (Entered: 02/17/2010) |
| 02/18/2010 | <u>22</u><br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: <u>20</u> Order on Motion to Convert Case To Chapter 13) Service Date 02/18/2010. (Admin.) (Entered: 02/19/2010) |
| 02/19/2010 | <u>23</u><br>pgs: 7 | BNC Certificate of Mailing – Meeting of Creditors. (RE: <u>21</u> Meeting of Creditors Chapter 13) Service Date 02/19/2010. (Admin.) (Entered: 02/20/2010) |
| 02/26/2010 | <u>24</u><br>pgs: 11 | Chapter 13 Plan. Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (Hanson, Rollie) (Entered: 02/26/2010) |
| 02/26/2010 | <u>25</u><br>pgs: 3 | Amended Schedule I, Schedule J, Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (Hanson, Rollie) (Entered: 02/26/2010) |
| 02/26/2010 | <u>26</u><br>pgs: 7 | Statement of Current Monthly Income – Form 22 *C*. Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (Hanson, Rollie) (Entered: 02/26/2010) |
| 02/28/2010 | <u>27</u><br>pgs: 14 | BNC Certificate of Mailing – PDF Document. (RE: <u>24</u> Chapter 13 Plan filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler) Service Date 02/28/2010. (Admin.) (Entered: 03/01/2010) |
| 03/01/2010 | <u>28</u><br>pgs: 2 | Stipulation By U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4 and *debtors* Filed by Penny G. Gentges on behalf of U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. (RE: <u>5</u> Motion for Relief from Stay as to 5310 S. Skyline Dr.; New Berlin, Wisconsin., Motion to Abandon ). (Gentges, Penny) (Entered: 03/01/2010) |
| 03/02/2010 | <u>29</u><br>pgs: 2 | Order for Payroll Deduction from debtor's income. (jth, Deputy Clerk) (Entered: 03/02/2010) |
| 03/02/2010 | <u>30</u><br>pgs: 2 | Order Modifying Stay (RE: <u>28</u> Stipulation). (jth, Deputy Clerk) (Entered: 03/02/2010) |
| 03/02/2010 | | Court Certificate of Mailing – employee information and order mailed to employer. (Related document: # <u>29</u> )(Admin.) (Entered: 03/02/2010) |
| 03/04/2010 | <u>31</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: <u>29</u> Order to Pay Wages) Service Date 03/04/2010. (Admin.) (Entered: 03/05/2010) |
| 03/04/2010 | <u>32</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: <u>29</u> Order to Pay Wages) Service Date 03/04/2010. (Admin.) (Entered: 03/05/2010) |

| | | |
|---|---|---|
| 03/04/2010 | <u>33</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: <u>30</u> Order on Stipulation) Service Date 03/04/2010. (Admin.) (Entered: 03/05/2010) |
| 03/08/2010 | <u>34</u><br>pgs: 2 | Order for Payroll Deduction from debtor's income. (jth, Deputy Clerk) (Entered: 03/08/2010) |
| 03/10/2010 | <u>35</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: <u>34</u> Order to Pay Wages) Service Date 03/10/2010. (Admin.) (Entered: 03/11/2010) |
| 03/11/2010 | <u>36</u><br>pgs: 2 | Order for Payroll Deduction from debtor's income. (jth, Deputy Clerk) (Entered: 03/11/2010) |
| 03/12/2010 | <u>37</u><br>pgs: 6,<br>17 | Motion for Relief from Stay as to (2d mortgage). with Notice of Motion and Certificate of Service filed by Penny G. Gentges on behalf of Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. Objections due by 3/26/2010. (Attachments: # Exhibit) (Gentges, Penny) (Entered: 03/12/2010) |
| 03/12/2010 | | Receipt of Motion for Relief From Automatic Stay(09–35931–pp) [motion,mrlfsty] ( 150.00) Filing Fee. Receipt number 4750729. Fee amount 150.00. (U.S. Treasury) (Entered: 03/12/2010) |
| 03/13/2010 | <u>38</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: <u>36</u> Order to Pay Wages) Service Date 03/13/2010. (Admin.) (Entered: 03/14/2010) |
| 03/22/2010 | <u>39</u><br>pgs: 6 | Renewed Motion/Letter Renewal <u>5</u> Motion for Relief from Stay as to 5310 S. Skyline Dr.; New Berlin, Wisconsin. filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4, Motion to Abandon and Certificate of Service filed by Eric Teske of Bass &Moglowsky, S.C. on behalf of Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. Objections due by 4/12/2010. (Teske, Eric) (Entered: 03/22/2010) |
| 03/26/2010 | <u>40</u><br>pgs: 4 | Objection Filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler *with Affidavit of Service* (Re: <u>37</u> Motion for Relief from Stay as to (2d mortgage). filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4) and Certificate of Service (Hanson, Rollie) (Entered: 03/26/2010) |
| 03/29/2010 | <u>41</u><br>pgs: 1 | Notice of Hearing re <u>37</u> Motion for Relief from Stay by U.S. Bank National Association. Hearing to be held on 4/20/2010 at 03:00 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (pwm, Judicial Assistant) (Entered: 03/29/2010) |
| 03/29/2010 | <u>42</u><br>pgs: 5,<br>12 | Objection to Confirmation of Plan with Notice and Certificate of Service. Filed by Eric Teske on behalf of U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4 (RE: <u>24</u> Chapter 13 Plan. Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler.). (Attachments: # Exhibit)(Teske, Eric) (Entered: 03/29/2010) |
| 03/31/2010 | <u>43</u><br>pgs: 1 | Notice of Hearing re <u>42</u> Objection to Confirmation of Plan by US Bank National Association. Hearing to be held on 4/20/2010 at 02:45 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (pwm, Judicial Assistant) (Entered: 03/31/2010) |

| | | |
|---|---|---|
| 03/31/2010 | <u>44</u><br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: <u>41</u> Notice of Hearing) Service Date 03/31/2010. (Admin.) (Entered: 04/01/2010) |
| 04/02/2010 | <u>45</u><br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: <u>43</u> Notice of Hearing) Service Date 04/02/2010. (Admin.) (Entered: 04/03/2010) |
| 04/05/2010 | | An initial 341 examination was scheduled for 4/1/2010. The trustee reports the hearing is adjourned to Milwaukee, U.S. Courthouse, Room 428 4/29/2010 11:30 AM. Reason(s) for adjournment: Amended Plan, Amended / Missing Schedules, Copies of req. tax returns/proof of filing. Appearances: Trustee, Debtor, Joint Debtor, Atty for Debtor. (Chapter 13 Milwaukee Office) (Entered: 04/05/2010) |
| 04/14/2010 | <u>46</u><br>pgs: 1 | Affidavit of No Objection/Response/Answer Filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4 (Re: <u>39</u> Renewed Motion/Letter Renewal <u>5</u> Motion for Relief from Stay as to 5310 S. Skyline Dr.; New Berlin, Wisconsin. filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates) (Teske, Eric) (Entered: 04/14/2010) |
| 04/15/2010 | <u>47</u><br>pgs: 1 | Objection Filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (Re: <u>39</u> Renewed Motion/Letter Renewal <u>5</u> Motion for Relief from Stay as to 5310 S. Skyline Dr.; New Berlin, Wisconsin. filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4) (Hanson, Rollie) (Entered: 04/15/2010) |
| 04/16/2010 | <u>48</u><br>pgs: 237 | Adversary case 10–02206. Complaint by Rollie R. Hanson, Edward Blaine Kohler, Patricia Lynn Kohler, U.S. Bank National Association, Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4, Chase Home Finance LLC, Mortgage Electronic Registrations Systems, Inc., Aurora Bank, FSB on behalf of Edward Blaine Kohler, Patricia Lynn Kohler, Mary B. Grossman, Against U.S. Bank National Association, Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4, Chase Home Finance LLC, Mortgage Electronic Registrations Systems, Inc., Aurora Bank, FSB. Fee Amount $250 (21 (Validity, priority or extent of lien or other interest in property))(Hanson, Rollie) (Entered: 04/16/2010) |
| 04/16/2010 | <u>49</u><br>pgs: 4 | Motion to Consolidate with with Notice of Motion and Certificate of Service filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. Objections due by 4/30/2010. (Hanson, Rollie) (Entered: 04/16/2010) |
| 04/16/2010 | <u>50</u><br>pgs: 1 | Notice of Hearing re <u>39</u> Renewed Motion for Relief from Stay by U.S. Bank National Association. Hearing to be held on 4/27/2010 at 03:00 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (pwm, Judicial Assistant) (Entered: 04/16/2010) |
| 04/18/2010 | <u>51</u><br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: <u>50</u> Notice of Hearing) Service Date 04/18/2010. (Admin.) (Entered: 04/19/2010) |
| 04/21/2010 | <u>52</u><br>pgs: 1 | Court Minutes for the hearing held on April 20, 2010 re <u>39</u> Renewed Motion for Relief from Stay by US Bank, NA and <u>42</u> Objection to Confirmation of Plan by US Bank, NA. (pwm, Judicial Assistant) (Entered: 04/21/2010) |

| | | |
|---|---|---|
| 04/21/2010 | <u>53</u><br>pgs: 2, 1 | Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company Under Section 366(b) *to Modify Security Deposit to Provide Adequate Assurance of Payment* filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. (Attachments: # Exhibit WE Energies Letter dated 3/18 re: deposit) (Hanson, Rollie) (Entered: 04/21/2010) |
| 04/21/2010 | | Hearing Continued re <u>39</u> Renewed Motion for Relief from Automatic Stay by US Bank, NA and <u>42</u> Objection to Confirmation of the Chapter 13 Plan by US Bank, NA. Hearing to be held on 6/21/2010 at 11:00 AM Telephone Conference. (pwm, Judicial Assistant) (Entered: 04/21/2010) |
| 04/22/2010 | <u>54</u><br>pgs: 2 | Notice of Motion Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (RE: <u>53</u> Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company Under Section 366(b) *to Modify Security Deposit to Provide Adequate Assurance of Payment*). Objections due by 5/10/2010. (Hanson, Rollie) (Entered: 04/22/2010) |
| 04/22/2010 | <u>55</u><br>pgs: 1 | Certificate of Service Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (RE: <u>53</u> Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company Under Section 366(b) *to Modify Security Deposit to Provide Adequate Assurance of Payment*). (Hanson, Rollie) (Entered: 04/22/2010) |
| 04/30/2010 | | An adjourned 341 examination was scheduled for 4/29/2010. The trustee reports the hearing is adjourned to Milwaukee, U.S. Courthouse, Room 428 6/24/2010 11:30 AM. Reason(s) for adjournment: Amended Plan, Amended / Missing Schedules, Copies of req. tax returns/proof of filing. Appearances: Staff Atty For Trustee. (Chapter 13 Milwaukee Office) (Entered: 04/30/2010) |
| 04/30/2010 | <u>56</u><br>pgs: 3 | Objection Filed by Creditor Attorney WE ENergies (Re: <u>53</u> Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company Under Section 366(b) *to Modify Security Deposit to Provide Adequate Assurance of Payment* filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler) (Nelson, Todd) (Entered: 04/30/2010) |
| 04/30/2010 | <u>57</u><br>pgs: 1 | Certificate of Service Filed by Todd T. Nelson on behalf of WE ENergies. (RE: <u>56</u> Objection). (Nelson, Todd) (Entered: 04/30/2010) |
| 05/03/2010 | <u>58</u><br>pgs: 1 | Notice of Hearing re <u>53</u> Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company Under Section 366(b). Hearing to be held on 5/18/2010 at 02:45 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (pwm, Judicial Assistant) (Entered: 05/03/2010) |
| 05/05/2010 | <u>59</u><br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: <u>58</u> Notice of Hearing) Service Date 05/05/2010. (Admin.) (Entered: 05/06/2010) |
| 05/10/2010 | <u>60</u><br>pgs: 2 | Correspondence Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (RE: <u>53</u> Motion for Continuation of Utility Service and Approval of Adequate Assurance of Payment to Utility Company Under Section 366(b) *to Modify Security Deposit to Provide Adequate Assurance of Payment*). (Hanson, Rollie) (Entered: 05/10/2010) |
| 05/21/2010 | <u>61</u><br>pgs: 2 | Court Minutes and Order Sustaining Creditor's Objection to Motion and Denying Debtor's Motion to Reduce the Amount of Deposit (Related Doc # <u>53</u> ). (jth, Deputy Clerk) (Entered: 05/21/2010) |

| | | |
|---|---|---|
| 05/23/2010 | <u>62</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: <u>61</u> Order on Motion for Continuation of Utility Service) Service Date 05/23/2010. (Admin.) (Entered: 05/24/2010) |
| 06/04/2010 | <u>63</u><br>pgs: 5 | Motion to Modify Plan *Prior to Confirmation* with Notice of Motion and Certificate of Service filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. Objections due by 6/25/2010. (Hanson, Rollie) (Entered: 06/04/2010) |
| 06/04/2010 | <u>64</u><br>pgs: 2 | Motion to Limit Notice (RE: <u>63</u> Motion to Modify Plan) and Certificate of Service filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. (Hanson, Rollie) (Entered: 06/04/2010) |
| 06/14/2010 | <u>65</u><br>pgs: 1 | Order Regarding (RE: <u>64</u> Motion to Limit Notice (RE: <u>63</u> Motion to Modify Plan) ). (Pepper, Pamela) (Entered: 06/14/2010) |
| 06/17/2010 | <u>66</u><br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: <u>65</u> Order Regarding Matter (Bankruptcy)) Service Date 06/17/2010. (Admin.) (Entered: 06/18/2010) |
| 06/23/2010 | | An adjourned 341 examination was scheduled for 6/24/2010. The trustee reports the hearing is adjourned to Milwaukee, U.S. Courthouse, Room 428 8/26/2010 11:30 AM. Reason(s) for adjournment: Amended Plan, Amended / Missing Schedules, Resolution to obj. to conf., Copies of req. tax returns/proof of filing. Appearances: Staff Atty For Trustee. (Chapter 13 Milwaukee Office) (Entered: 06/23/2010) |
| 06/29/2010 | <u>67</u><br>pgs: 1 | Affidavit *of No Objection to Motion to Modify Plan Prior to Confirmation* Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (RE: <u>63</u> Motion to Modify Plan *Prior to Confirmation*). (Hanson, Rollie) (Entered: 06/29/2010) |
| 07/07/2010 | | Status Hearing (RE: <u>42</u> Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4) Hearing to be held on 8/30/2010 at 10:45 AM Telephone Hearing. (kgw, Courtroom Deputy) (Entered: 07/07/2010) |
| 08/06/2010 | | Hearing Continued (RE: <u>42</u> Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4) Hearing to be held on 9/20/2010 at 10:30 AM Telephone Hearing. (kgw, Courtroom Deputy) (Entered: 08/06/2010) |
| 08/25/2010 | | An adjourned 341 examination was scheduled for 8/26/2010. The trustee reports the hearing is adjourned to Milwaukee, U.S. Courthouse, Room 428 10/7/2010 11:30 AM. Reason(s) for adjournment: Amended Plan, Amended / Missing Schedules, Resolution to obj. to conf.. (Chapter 13 Milwaukee Office) (Entered: 08/25/2010) |
| 09/16/2010 | <u>68</u><br>pgs: 2 | Stipulation By U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4 and *debtors* Filed by Penny G. Gentges on behalf of U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. (RE: <u>37</u> Motion for Relief from Stay as to (2d mortgage)., <u>39</u> Renewed Motion/Letter Renewal <u>5</u> Motion for Relief from Stay as to 5310 S. Skyline Dr.; New Berlin, Wisconsin. filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates). With no objection from the case trustee. (Gentges, Penny) (Entered: 09/16/2010) |

| | | |
|---|---|---|
| 09/17/2010 | <u>69</u><br>pgs: 1 | Order Approving Stipulation and Modifying Stay(RE:<u>68</u> Stipulation). (jth, Deputy Clerk) (Entered: 09/17/2010) |
| 09/19/2010 | <u>70</u><br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE:<u>69</u> Order on Stipulation) Service Date 09/19/2010. (Admin.) (Entered: 09/20/2010) |
| 09/21/2010 | | Hearing Continued (RE:<u>63</u> Motion to Modify Plan filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler) Hearing to be held on 11/22/2010 at 11:30 AM Telephone Hearing. (kgw, Courtroom Deputy) (Entered: 09/21/2010) |
| 09/21/2010 | <u>71</u><br>pgs: 2 | Order for Payroll Deduction from debtor's income. (Pepper, Pamela) (Entered: 09/21/2010) |
| 09/21/2010 | <u>72</u><br>pgs: 1 | Correspondence *regarding amended claim no. 12* Filed by Penny G. Gentges on behalf of U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. (Gentges, Penny) (Entered: 09/21/2010) |
| 09/21/2010 | <u>73</u><br>pgs: 1 | Correspondence *regarding amended claim (no. 13)* Filed by Penny G. Gentges on behalf of U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. (Gentges, Penny) (Entered: 09/21/2010) |
| 09/23/2010 | <u>74</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE:<u>71</u> Order to Pay Wages) Service Date 09/23/2010. (Admin.) (Entered: 09/24/2010) |
| 10/06/2010 | | An adjourned 341 examination was scheduled for 10/7/2010. The trustee reports the hearing is adjourned to Milwaukee, U.S. Courthouse, Room 428 12/2/2010 11:30 AM. Reason(s) for adjournment: Amended Plan, Resolution to obj. to conf.. (Chapter 13 Milwaukee Office) (Entered: 10/06/2010) |
| 10/07/2010 | <u>75</u><br>pgs: 2 | Order for Payroll Deduction from debtor's income. (Pepper, Pamela) (Entered: 10/07/2010) |
| 10/09/2010 | <u>76</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE:<u>75</u> Order to Pay Wages) Service Date 10/09/2010. (Admin.) (Entered: 10/10/2010) |
| 11/22/2010 | | Status Hearing (RE:<u>5</u> Motion for Relief From Automatic Stay filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4). Hearing to be held on 12/13/2010 at 10:45 AM Telephone Conference. (ccb, Law Clerk) (Entered: 11/22/2010) |
| 11/22/2010 | | Status Hearing (RE:<u>42</u> Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4). Status hearing to be held on 12/13/2010 at 10:45 AM at Telephone Conference. (ccb, Law Clerk) (Entered: 11/22/2010) |
| 11/23/2010 | <u>77</u><br>pgs: 3 | Court Minutes and Order regarding Objection to Confirmation of Plan and Status hearing on Monday December 13, 2010 (RE:<u>42</u> Objection to Confirmation of the Plan). (jth, Deputy Clerk) (Entered: 11/23/2010) |
| 11/25/2010 | <u>78</u><br>pgs: 4 | BNC Certificate of Mailing – PDF Document. (RE:<u>77</u> Objection to Confirmation of Plan) Service Date 11/25/2010. (Admin.) (Entered: 11/26/2010) |

| | | |
|---|---|---|
| 12/01/2010 | | An adjourned 341 examination was scheduled for 12/2/2010. The trustee reports the hearing is adjourned to Milwaukee, U.S. Courthouse, Room 428 1/6/2011 11:30 AM. Reason(s) for adjournment: Amended Plan, Amended / Missing Schedules. (Chapter 13 Milwaukee Office) (Entered: 12/01/2010) |
| 12/14/2010 | 79 pgs: 1 | Court Minutes from the hearing held December 13, 2010 (RE: 5 Motion for Relief From Automatic Stay filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass−Through Certificates, Series 2006−4 and 42 Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass−Through Certificates, Series 2006−4) (kgw, Courtroom Deputy) (Entered: 12/14/2010) |
| 12/14/2010 | | Hearing Continued (RE: 5 Motion for Relief From Automatic Stay filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass−Through Certificates, Series 2006−4) Hearing to be held on 1/31/2011 at 11:15 AM Telephone Hearing. (kgw, Courtroom Deputy) (Entered: 12/14/2010) |
| 12/14/2010 | | Hearing Continued (RE: 42 Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass−Through Certificates, Series 2006−4) Hearing to be held on 1/31/2011 at 11:15 AM Telephone Hearing. (kgw, Courtroom Deputy) (Entered: 12/14/2010) |
| 12/22/2010 | 80 pgs: 14, 2 | Adversary case 10−02694. Complaint filed by Rollie R Hanson on behalf of Edward and Patricia Kohler , Against Structured Asset Investment Loan Trust Mortgage Pass−Through Certificates, Series 2006−4, U. S. Bank National Association, Chase Manhattan Mortgage, Chase Home Finance LLC, Chase H.E., Mortgage Electronic Registrations Systems, Inc.,Aurora Bank FSB and Aurora Loan Services, LLC.Penny Gentges. Receipt Number WAIVED, Fee Amount $250 (Attachments: # Civil Cover Sheet) (21 (Validity, priority or extent of lien or other interest in property))(Hanson, Rollie) (Entered: 12/22/2010) |
| 01/05/2011 | | An adjourned 341 examination was scheduled for 1/6/2011. The trustee reports the hearing is adjourned to Milwaukee, U.S. Courthouse, Room 428 3/31/2011 11:30 AM. Reason(s) for adjournment: Amended Plan, Amended / Missing Schedules, Resolution to obj. to conf.. (Chapter 13 Milwaukee Office) (Entered: 01/05/2011) |
| 01/31/2011 | | Evidentiary Hearing (RE: 39 Renewed Motion/Letter Renewal filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass−Through Certificates, Series 2006−4) Hearing to be held on 3/30/2011 at 01:30 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (ccb, Law Clerk) (Entered: 01/31/2011) |
| 01/31/2011 | | Evidentiary Hearing (RE: 42 Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass−Through Certificates, Series 2006−4) Hearing to be held on 3/30/2011 at 01:30 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (ccb, Law Clerk) (Entered: 01/31/2011) |
| 02/01/2011 | 81 pgs: 3 | Court Minutes for the January 31, 2011 Status Hearing (RE: 39 Renewed Motion for Relief from Stay by US Bank et. al. & 42 Objection to Confirmation of Plan by U.S. Bank). (ccb, Law Clerk) (Entered: 02/01/2011) |

| | | |
|---|---|---|
| 02/08/2011 | | Adversary Case 2:10–ap–2206 Closed (jth, Deputy Clerk) (Entered: 02/08/2011) |
| 02/08/2011 | | Disposition of Adversary 2:10–ap–2206–Dimissed. (jth, Deputy Clerk) (Entered: 02/08/2011) |
| 02/22/2011 | 82<br>pgs: 5 | Motion to Modify Plan (RE: 24 Chapter 13 Plan with Notice of Motion and Certificate of Service filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. Objections due by 3/15/2011. (Hanson, Rollie) (Entered: 02/22/2011) |
| 02/22/2011 | 83<br>pgs: 2 | Motion to Limit Notice (RE: 82 Motion to Modify Plan) and Certificate of Service filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. (Hanson, Rollie) (Entered: 02/22/2011) |
| 02/28/2011 | 84<br>pgs: 2 | Order for Payroll Deduction from debtor's income. (Pepper, Pamela) (Entered: 02/28/2011) |
| 03/01/2011 | 85<br>pgs: 12, 21, 30, 20, 43 | Objection to Amended Claim Number 12,13 by Claimant U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. *With Affidavit of Service* Filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (Attachments: # Exhibit 1# Exhibit 2# Exhibit 3# Exhibit 4)(Hanson, Rollie) (Entered: 03/01/2011) |
| 03/01/2011 | 86<br>pgs: 14 | Brief *in Support of Objection to Original and Amended Claims Number 12 and 13* Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (RE: 85 Objection to Claim). (Hanson, Rollie) (Entered: 03/01/2011) |
| 03/02/2011 | 87<br>pgs: 1 | Order Regarding (RE: 83 Motion to Limit Notice (RE: 82 Motion to Modify Plan) ). (Pepper, Pamela) (Entered: 03/02/2011) |
| 03/02/2011 | 88<br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: 84 Order to Pay Wages) Service Date 03/02/2011. (Admin.) (Entered: 03/03/2011) |
| 03/03/2011 | 89<br>pgs: 1 | Notice of Hearing (RE: 85 Debtors' Objections to Amended Claims No. 12 and 13 of U.S. Bank, NA). Hearing to be held on 4/19/2011 at 02:30 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (kgw, Courtroom Deputy) (Entered: 03/03/2011) |
| 03/03/2011 | 90<br>pgs: 40 | Third Party Motion for Protective Order and Certificate of Service filed by Edward J. Lesniak of Burke, Warren, MacKay &Serritella, P.C. on behalf of Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. (Lesniak, Edward) (Entered: 03/03/2011) |
| 03/04/2011 | 91<br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: 87 Order Regarding Matter (Bankruptcy)) Service Date 03/04/2011. (Admin.) (Entered: 03/05/2011) |
| 03/05/2011 | 92<br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: 89 Notice of Hearing) Service Date 03/05/2011. (Admin.) (Entered: 03/05/2011) |
| 03/10/2011 | 93<br>pgs: 2 | Court Minutes from the hearing held March 7, 2011 (RE: 90 Motion for Protective Order filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4; Pretrial in Adversary Case No. 2010–2694 and |

| | | |
|---|---|---|
| | | Defendants' Motion to Dismiss that Adversary Case.) (kgw, Courtroom Deputy) (Entered: 03/10/2011) |
| 03/15/2011 | 94 pgs: 1 | Notice of Change of Address *for Creditor MERS* Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (Hanson, Rollie) (Entered: 03/15/2011) |
| 03/16/2011 | 95 pgs: 1 | Affidavit of No Objection/Response/Answer Filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (Re: 82 Motion to Modify Plan (RE: 24 Chapter 13 Plan) ) (Hanson, Rollie) (Entered: 03/16/2011) |
| 03/16/2011 | 96 pgs: 6 | Memorandum of Law *Memorandum of Issues* Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler ( 39 Renewed Motion). (Hanson, Rollie) (Entered: 03/16/2011) |
| 03/16/2011 | 97 pgs: 1 | Affidavit *of Service* Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (RE: 96 Memorandum of Law). (Hanson, Rollie) (Entered: 03/16/2011) |
| 03/17/2011 | 98 pgs: 1 | Order Regarding (RE: 90 Third Party Motion for Protective Order ). (Pepper, Pamela) (Entered: 03/17/2011) |
| 03/19/2011 | 99 pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: 98 Order Regarding Matter (Bankruptcy)) Service Date 03/19/2011. (Admin.) (Entered: 03/20/2011) |
| 03/22/2011 | 100 pgs: 9 | Affidavit *(supplemental affidavit in support of motions for relief from stay)* Filed by Penny G. Gentges on behalf of U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. (RE: 37 Motion for Relief from Stay as to (2d mortgage)., 39 Renewed Motion/Letter Renewal 5 Motion for Relief from Stay as to 5310 S. Skyline Dr.; New Berlin, Wisconsin. filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates). (Gentges, Penny) (Entered: 03/22/2011) |
| 03/25/2011 | | Evidentiary Hearing Continued (RE: 39 Renewed Motion for Relief from the Automatic Stay filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4) Hearing to be held on 5/9/2011 at 01:30 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (kgw, Courtroom Deputy) (Entered: 03/25/2011) |
| 03/25/2011 | | Evidentiary Hearing Continued (RE: 42 Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4, 85 Objection to Claims # 12 and #13 of US Bank, NA filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler) Hearing to be held on 5/9/2011 at 01:30 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (kgw, Courtroom Deputy) (Entered: 03/25/2011) |
| 03/31/2011 | | An adjourned 341 examination was scheduled for 3/31/2011. The trustee reports the hearing is adjourned to Milwaukee, U.S. Courthouse, Room 428 5/26/2011 11:30 AM. Reason(s) for adjournment: Resolution to obj. to conf.. (Chapter 13 Milwaukee Office) (Entered: 03/31/2011) |
| 03/31/2011 | | Evidentiary Hearing Continued (RE: 39 Renewed Motion for Relief from the Automatic Stay filed by Creditor U.S. Bank National Association, as Trustee |

| | | |
|---|---|---|
| | | for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4) Hearing to be held on 5/25/2011 at 02:00 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (kgw, Courtroom Deputy) (Entered: 03/31/2011) |
| 03/31/2011 | | Hearing Continued (RE: 42 Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4 and 85 Objection to Claims #12 &#13 of US Bank filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler) Hearing to be held on 5/25/2011 at 02:00 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (kgw, Courtroom Deputy) (Entered: 03/31/2011) |
| 05/25/2011 | | An adjourned 341 examination was scheduled for 5/26/2011. The trustee reports the hearing is adjourned to Milwaukee, U.S. Courthouse, Room 428 6/30/2011 11:30 AM. Reason(s) for adjournment: Resolution to obj. to conf.. Appearances: Staff Atty For Trustee. (Chapter 13 Milwaukee Office) (Entered: 05/25/2011) |
| 05/26/2011 | 101 pgs: 1 | Court Minutes for the May 25, 2011 Hearing (RE: 39 Renewed Motion for Relief from Stay filed by Creditor U.S. Bank National Association, 42 Objection to Confirmation of Plan with Notice and Certificate of Service filed by U.S. Bank National Association, and 85 Objection to Amended Claim Number 12,13 by Claimant U.S. Bank National Association filed by Debtors). (ccb, Law Clerk) (Entered: 05/26/2011) |
| 05/26/2011 | 102 pgs: 1, 3, 3, 81, 44 | Exhibits filed by Penny G. Gentges and Edward J. Lesniak on behalf of U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. (RE: 101 Court Minutes).(Attachments: # Exhibit– Exhibit A# Exhibit– Exhibit B# Exhibit– Exhibit C# Exhibit– Exhibit D) (jth, Deputy Clerk) (Entered: 05/26/2011) |
| 05/31/2011 | | Oral Ruling Hearing (RE: 39 Renewed Motion/Letter Renewal filed by Creditor U.S. Bank et. al., 42 Objection to Confirmation of Plan filed by Creditor U.S. Bank et. al., and 85 Debtor's Objection to Amended Claims #12, #13). Hearing to be held on 6/27/2011 at 02:00 PM Telephone Hearing. (ccb, Law Clerk) (Entered: 05/31/2011) |
| 06/02/2011 | 103 pgs: 9 | Correspondence *regarding recent U.S. Court of Appeals case* Filed by Penny G. Gentges on behalf of U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. (RE: 101 Court Minutes). (Gentges, Penny) (Entered: 06/02/2011) |
| 06/28/2011 | 104 pgs: 2 | There is no Document No. 104 for this case. This entry was docketed in error. Court Minutes for the June 27, 2011 Hearing (RE: 8 Motion to Dismiss Adversary Proceeding Filed by Defendants). (emm, Law Clerk). (Entered: 06/28/2011) |
| 06/28/2011 | 105 pgs: 2 | Court Minutes and Order Granting Motion for Relief From Automatic Stay from Hearing held on June 27, 2011 (Related Doc # 37 ) and(Related Doc # 39 ); Granting Motion To Consolidate on Case 2:09–bk–35931 and 10–2694 (Related Doc # 49 ); Granting Motion to Dismiss Adversary ; Overruling Debtors' Objections to Claims #12 and #13(Related Doc # 85 ) and Sustaining Objection to Confirmation of Plan (Related Doc# 42 ). (jth, Deputy Clerk) (Entered: 06/28/2011) |

| | | |
|---|---|---|
| 06/28/2011 | 106 | Reclassification of Claim(s) number(s) 12,13– Allowed pursuant to Order signed June 28, 2011. (jth, Deputy Clerk) (Entered: 06/28/2011) |
| 06/30/2011 | 107 pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: 105 Order on Motion for Relief From Automatic Stay) Service Date 06/30/2011. (Admin.) (Entered: 07/01/2011) |
| 07/01/2011 | | An adjourned 341 examination was scheduled for 6/30/2011. The trustee reports the hearing is adjourned to Milwaukee, U.S. Courthouse, Room 428 8/11/2011 11:30 AM. Reason(s) for adjournment: Amended Plan. Appearances: Staff Atty For Trustee. (Chapter 13 Milwaukee Office) (Entered: 07/01/2011) |
| 07/06/2011 | 108 pgs: 2 | Order Granting Relief From Stay (Related Doc # 5 ). (jth, Deputy Clerk) (Entered: 07/06/2011) |
| 07/06/2011 | | Disposition of Adversary 2:10–ap–2694–Dismissed. (jth, Deputy Clerk) (Entered: 07/06/2011) |
| 07/07/2011 | 109 pgs: 4 | Correspondence filed by CT . (RE: 105 Order on Motion for Relief From Automatic Stay, Order on Renewed Motion, Order on Motion to Consolidate Case). (jth, Deputy Clerk) (Entered: 07/07/2011) |
| 07/08/2011 | 110 pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: 108 Order on Motion for Relief From Automatic Stay) Service Date 07/08/2011. (Admin.) (Entered: 07/12/2011) |
| 07/18/2011 | 111 pgs: 7 | Motion to Reconsider (related documents 108 Order on Motion for Relief From Automatic Stay) with Notice of Motion and Certificate of Service filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. Objections due by 8/1/2011. (Hanson, Rollie) (Entered: 07/18/2011) |
| 07/19/2011 | 112 pgs: 23 | Transcript regarding Hearing Held 06/27/2011 RE: Oral Ruling. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 10/17/2011. Until that time the transcript may be viewed at the Bankruptcy Court or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber AudioEdge Transcription LLC, Telephone number 973–618–2310. ( 105 Court Minutes) Notice of Intent to Request Redaction Deadline Due By 7/26/2011. Redaction Request Due By 8/9/2011. Redacted Transcript Submission Due By 8/19/2011. Transcript access will be restricted until 10/17/2011. (jth, Deputy Clerk) (Entered: 07/19/2011) |
| 07/19/2011 | 113 pgs: 107 | Transcript regarding Hearing Held 05/25/2011 RE: Objections/Relief from Stay. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 10/17/2011. Until that time the transcript may be viewed at the Bankruptcy Court or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber AudioEdge Transcription LLC, Telephone number 973–618–2310. (RE: 101 Court Minutes) Notice of Intent to Request Redaction Deadline Due By 7/26/2011. Redaction Request Due By 8/9/2011. Redacted Transcript Submission Due By 8/19/2011. Transcript access will be restricted until 10/17/2011. (jth, Deputy Clerk) (Entered: 07/19/2011) |
| 07/20/2011 | 114 pgs: 107 | Amended Transcript regarding Hearing Held 05/25/2011 RE: Objections/Relief from Stay. THIS TRANSCRIPT WILL BE MADE |

| | | |
|---|---|---|
| | | ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 10/18/2011. Until that time the transcript may be viewed at the Bankruptcy Court or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber AudioEdge Transcription, LLC, Telephone number 973–618–2310. (RE: 101 Court Minutes) Notice of Intent to Request Redaction Deadline Due By 7/27/2011. Redaction Request Due By 8/10/2011. Redacted Transcript Submission Due By 8/22/2011. Transcript access will be restricted until 10/18/2011. (jth, Deputy Clerk) (Entered: 07/20/2011) |
| 07/27/2011 | | Hearing Set (RE: 111 Motion to Reconsider filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler) Hearing to be held on 8/9/2011 at 02:45 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin for 111 , (emm, Law Clerk) (Entered: 07/27/2011) |
| 07/29/2011 | 115 pgs: 1 | Notice of Hearing re 111 Debtors' Motion to Reconsider. Hearing to be held on 8/9/2011 at 02:45 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin for 111 , (pwm, Judicial Assistant) (Entered: 07/29/2011) |
| 07/30/2011 | 116 pgs: 6 | Response Filed by Edward J. Lesniak of Burke, Warren, MacKay &Serritella, P.C. on behalf of Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4. to 111 Motion to Reconsider (related documents 108 Order on Motion for Relief From Automatic Stay) filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler and Certificate of Service (Lesniak, Edward) (Entered: 07/30/2011) |
| 07/31/2011 | 117 pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: 115 Notice of Hearing) Service Date 07/31/2011. (Admin.) (Entered: 07/31/2011) |
| 08/01/2011 | 118 pgs: 3, 1 | Assignment/Transfer of Claim Transfer Agreement 3001 (e) 2 Transferor: Citibank South Dakota NA (Claim No. 18) To Citibank, N.A. Court to send Notice of Transfer of Claim. Objections due within 21 days of the date of this notice. Filed by Creditor Citibank, N.A. (Rossi, Lauren) (Entered: 08/01/2011) |
| 08/04/2011 | 119 pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: 118 Notice of Transfer of Claim filed by Creditor Citibank, N.A.) Service Date 08/04/2011. (Admin.) (Entered: 08/05/2011) |
| 08/08/2011 | 120 pgs: 3, 1 | Motion to Modify Plan (RE: 24 Chapter 13 Plan) with Notice of Motion and Certificate of Service filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. Objections due by 8/29/2011. (Attachments: # Affidavit of Service) (Hanson, Rollie) (Entered: 08/08/2011) |
| 08/08/2011 | 121 pgs: 2 | Motion to Limit Notice (RE: 120 Motion to Modify Plan) and Certificate of Service filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. (Hanson, Rollie) (Entered: 08/08/2011) |
| 08/11/2011 | 122 pgs: 2 | Order for Payroll Deduction from debtor's income. (Pepper, Pamela) (Entered: 08/11/2011) |
| 08/12/2011 | 123 pgs: 2 | Court Minutes (hearing held on 8/9/2011), and Order Denying Motion To Reconsider (Related Doc # 111 ). (djc, Deputy Clerk) (Entered: 08/12/2011) |
| 08/13/2011 | 124 pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: 122 Order to Pay Wages) Service Date 08/13/2011. (Admin.) (Entered: 08/13/2011) |

| | | |
|---|---|---|
| 08/14/2011 | <u>125</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: <u>123</u> Order on Motion To Reconsider) Service Date 08/14/2011. (Admin.) (Entered: 08/14/2011) |
| 08/15/2011 | | An adjourned 341 examination was scheduled for 8/11/2011. The trustee tentatively recommends confirmation based on the plan filed 8/8/2011. A summary of the terms include $6,841.50/Monthly through August 2011; then $176.00 until the end of the plan for a total of 60 months. (Chapter 13 Milwaukee Office) (Entered: 08/15/2011) |
| 08/22/2011 | <u>126</u><br>pgs: 2, 2 | Amended Motion (related document(s): <u>121</u> Motion to Limit Notice (RE: <u>120</u> Motion to Modify Plan) filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler) and Certificate of Service filed by Rollie R. Hanson on behalf of Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler. (Attachments: # Creditor List) (Hanson, Rollie) (Entered: 08/22/2011) |
| 08/22/2011 | <u>127</u><br>pgs: 34 | Transcript regarding Hearing Held 11/22/2010 RE: Status Hearing: Motion for Relief from Automatic Stay and Objection to Confirmation of Plan. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 11/21/2011. Until that time the transcript may be viewed at the Bankruptcy Court or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber AudioEdge Transcription, LLC, Telephone number 973–618–2310. (RE: <u>5</u> Motion for Relief From Automatic Stay filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4, Motion to Abandon, <u>42</u> Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4) Notice of Intent to Request Redaction Deadline Due By 8/29/2011. Redaction Request Due By 9/12/2011. Redacted Transcript Submission Due By 9/22/2011. Transcript access will be restricted until 11/21/2011. (jth, Deputy Clerk) (Entered: 08/22/2011) |
| 08/22/2011 | <u>128</u><br>pgs: 17 | Transcript regarding Hearing Held 12/13/2010 RE: Status Hearing: Motion for Relief from Automatic Stay and Objection to Confirmation of Plan. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 11/21/2011. Until that time the transcript may be viewed at the Bankruptcy Court or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber AudioEdge Transcription, LLC, Telephone number 973–618–2310. (RE: <u>5</u> Motion for Relief From Automatic Stay filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4, Motion to Abandon, <u>42</u> Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4) Notice of Intent to Request Redaction Deadline Due By 8/29/2011. Redaction Request Due By 9/12/2011. Redacted Transcript Submission Due By 9/22/2011. Transcript access will be restricted until 11/21/2011. (jth, Deputy Clerk) (Entered: 08/22/2011) |
| 08/22/2011 | <u>129</u><br>pgs: 34 | Transcript regarding Hearing Held 01/31/2011 RE: Evidentiary Hearing: Renewed Motion/Letter Renewal and Objection to Confirmation of Plan. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING, TRANSCRIPT RELEASE DATE IS 11/21/2011. Until that time the transcript may be viewed at the Bankruptcy Court or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber AudioEdge Transcription, LLC, Telephone number 973–618–2310. (RE: <u>39</u> Renewed Motion/Letter Renewal filed by Creditor U.S. Bank National Association, as Trustee for |

| | | |
|---|---|---|
| | | Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4, 42 Objection to Confirmation of the Plan filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4) Notice of Intent to Request Redaction Deadline Due By 8/29/2011. Redaction Request Due By 9/12/2011. Redacted Transcript Submission Due By 9/22/2011. Transcript access will be restricted until 11/21/2011. (jth, Deputy Clerk) (Entered: 08/22/2011) |
| 08/26/2011 | 130 pgs: 2 | Notice of Appeal Fee Amount $255 Filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (RE: 108 Order on Motion for Relief From Automatic Stay, 123 Order on Motion To Reconsider). (Hanson, Rollie) (Entered: 08/26/2011) |
| 08/26/2011 | | Receipt of Notice of Appeal(09–35931–pp) [appeal,ntcapl] ( 255.00) Filing Fee. Receipt number 6445584. Fee amount 255.00. (U.S. Treasury) (Entered: 08/26/2011) |
| 08/29/2011 | 131 pgs: 3 | Letter to Appellee (RE: 130 Notice of Appeal filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler). (jth, Deputy Clerk) (Entered: 08/29/2011) |
| 08/30/2011 | 132 pgs: 1 | Order Approving Amended Application to Waive Notice of Request to Modify Chapter 13 Plan (Related Doc # 126 ). (jth, Deputy Clerk) (Entered: 08/30/2011) |
| 08/31/2011 | 133 pgs: 4 | BNC Certificate of Mailing – PDF Document. (RE: 131 Letter to Appellee) Service Date 08/31/2011. (Admin.) (Entered: 08/31/2011) |
| 09/01/2011 | 134 pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: 132 Order on Amended Motion) Service Date 09/01/2011. (Admin.) (Entered: 09/01/2011) |
| 09/09/2011 | 135 pgs: 6 | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (RE: 130 Notice of Appeal). Appellee designation due by 09/23/2011. Transmission of Designation Due by 10/11/2011. (Hanson, Rollie) (Entered: 09/09/2011) |
| 09/09/2011 | 136 pgs: 5 | Statement of Issues on Appeal with Certificate of Service, Filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (RE: 135 Appellant Designation). (Hanson, Rollie) (Entered: 09/09/2011) |
| 09/19/2011 | 137 pgs: 2 | Affidavit of No Objection/Response/Answer Filed by Debtor Edward Blaine Kohler, Joint Debtor Patricia Lynn Kohler (Re: 120 Motion to Modify Plan (RE: 24 Chapter 13 Plan) ) and Certificate of Service (Hanson, Rollie) (Entered: 09/19/2011) |
| 09/20/2011 | 138 pgs: 2 | Order Confirming Chapter 13 Plan. (jth, Deputy Clerk) (Entered: 09/20/2011) |
| 09/21/2011 | 139 pgs: 3 | Appellee Designation of Contents for Inclusion in Record of Appeal with Certificate of Service Filed by Creditor U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass–Through Certificates, Series 2006–4 (RE: 130 Notice of Appeal). (Lesniak, Edward) (Entered: 09/21/2011) |

# EXHIBIT SHEET

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

CHAPTER:     13
DATE:     May 25, 2011
JUDGE:     Pamela Pepper
CASE NO.:     2009-35931
DEBTOR:     Edward Blain Kohler & Patricia Lynn Kohler
ADV. NO.:     2010-2694
ADV.:     Edward & Patricia Kohler v. US Bank, et. al.

NATURE OF HEARING:     (1) Defendant's Motion to dismiss adversary proceeding
     (2) Renewed Motion for relief from stay filed by US Bank, et. al.
     (3) Objection to plan confirmation filed by US Bank, et. al.
     (4) Debtor's Objection to claims #12 and #13 of US Bank, et.al.
LOCATION:     Room  149

| Ex. No. | Offered By | Witness Identifying | Description | Objection | Ruling |
|---|---|---|---|---|---|
| A | US Bank, et. al. | Chris Corcoran | Custodian Log for Debtor's First Mortgage | Yes, w/drawn | Adm. |
| B | US Bank, et. al. | Chris Corcoran | Custodian Log for Debtor's Second Mortgage | No | Adm. |
| C | US Bank, et. al. | Chris Corcoran | First Mortgage Loan Documents File | No | Adm. |
| D | US Bank, et. al. | Chris Corcoran | Second Mortgage Loan Documents File | No | Adm. |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

# Complete Loan File Information

| | | | |
|---|---|---|---|
| **Loan Number:** | 00000000000MIL008336 | **Issue:** LH06PC | **Subpool:** LH063006 |
| **Secondary Loan Number:** | | | |

| | |
|---|---|
| Borrower: | KOHLER, EDWARD |
| Address: | 5310 S SKYLINE DR |
| | NEW BERLIN WI 53151 |

MIN:
MOM IND:

## Loan File Withdrawal Information

**Loan Number:** 00000000000MIL008336        **Item:** FILE        **Issue:** LH06PC

**Current Withdrawal Information:**                     **Sent To:**

| | | |
|---|---|---|
| Reason: | FORECLOSURE | CHASE |
| Withdrawn on: | 5/13/2010   by tedtnan | 780 DELTA DRIVE |
| Air Bill Number: | FED9816 9661 8606 | MONROE LA 71203 |
| Transmittal: | 1231670 | |
| Transmitted on: | 5/13/2010 | Attention:   GEORGETTE GORDON |
| Comment: | | Authorized by:  SAUNA WILSON |

## Loan File Withdrawal History

**Prior Withdrawal Information**                     **Sent To**

| | | |
|---|---|---|
| Item: | FILE | |
| Reason: | FORECLOSURE | CHASE |
| Withdrawn on: | 11/9/2009   by CMEDINA | 780 DELTA DRIVE |
| Air Bill Number: | FX9231 9065 3051 | |
| Transmittal: | 1201586 | MONROE LA 71203 |
| Transmitted on: | 11/9/2009 | Attention: GEORGETTE GORDON |
| Comment: | | Authorized by:  SAUNA WILSON |

Changed on:   11/19/2009 14:25:29   by hernchr

## Alternate Numbers

| Alternate Loan Number | Delivery Company | Loan Delivery Date |
|---|---|---|
| 00000000000023305501 | | 4/13/2006 14:34:39 |

## Classification Attribute Changes

| Classification Attribute | Previous Value | Changed By | Changed On |
|---|---|---|---|
| loan_type | | SANJONGCOR | 4/13/2006 14:35:08 |
| loan_state | | SANJONGCOR | 4/13/2006 14:35:08 |
| group_code | | SANJONGCOR | 4/13/2006 14:35:08 |
| product_type | | SANJONGCOR | 4/13/2006 14:35:08 |
| loan_type | | SANJONGCOR | 4/20/2006 09:37:14 |
| loan_state | WET | SANJONGCOR | 4/20/2006 09:37:14 |
| group_code | | SANJONGCOR | 4/20/2006 09:37:14 |
| product_type | | SANJONGCOR | 4/20/2006 09:37:14 |
| loan_type | | SANJONGCOR | 4/20/2006 15:57:38 |
| loan_state | WET | SANJONGCOR | 4/20/2006 15:57:38 |
| group_code | CERTS | SANJONGCOR | 4/20/2006 15:57:38 |
| product_type | | SANJONGCOR | 4/20/2006 15:57:38 |
| issue_id | BN040C | CHOIA | 5/22/2006 12:50:08 |
| loan_type | L29 | CHOIA | 5/22/2006 14:53:23 |
| loan_state | DRY | CHOIA | 5/22/2006 14:53:23 |
| group_code | | CHOIA | 5/22/2006 14:53:23 |
| product_type | | CHOIA | 5/22/2006 14:53:23 |
| issue_id | LH001C | CHOIA | 7/5/2006 12:48:38 |
| loan_type | 122 | CORCORANC | 9/5/2006 18:40:55 |
| loan_state | DRY | CORCORANC | 9/5/2006 18:40:55 |
| group_code | | CORCORANC | 9/5/2006 18:40:55 |
| product_type | | CORCORANC | 9/5/2006 18:40:55 |

## Loan File Inventory History

| Change Type | Attribute Item | Attribute Status | Changed By | Changed On | Current Attribute Status |
|---|---|---|---|---|---|
| C | MORTG | CS | FISCHKE | 8/10/2007 09:07:50 | O |
| C | MORTG | O | hernchr | 11/19/2009 14:25:30 | O |
| C | TITLE | TC | FISCHKE | 8/10/2007 09:07:50 | O |

EXHIBIT
A
Bluebook No. 5208

# Complete Loan File Information

## Loan File Transactions

| Transaction Issue | Attribute Item | Transaction | Transaction Date | Billable Amount | Created By | Billed |
|---|---|---|---|---|---|---|
| BN040C | FILE | INITIAL LOAN REVIEW | 4/20/2006 14:19:46 | | DIAZM | |
| LH06PC | FILE | TRAILING DOCS FILE | 8/10/2007 09:07:50 | | ACSBATCHPR | |
| LH06PC | FILE | TRAILING DOCS FILE | 8/10/2007 09:07:50 | | ACSBATCHPR | |
| LH06PC | FILE | WITHDRAWAL OF FILE FOR SERVICING | 11/9/2009 09:07:50 | $0.00 | CMEDINA | |
| LH06PC | FILE | Return of Loan File | 11/19/2009 14:25:29 | | hemchr | |
| LH06PC | FILE | WITHDRAWAL OF FILE FOR SERVICING | 5/13/2010 08:36:52 | $0.00 | tedtnan | |

## Loan File Request History - eRequest Version 2

| Request ID | Request Type | Item | Requested by/on | Item Status | Trans ID | Tracking Num | Completed by/on | Reject Reason |
|---|---|---|---|---|---|---|---|---|
| 126515452 | Withdrawal | FILE | CMM_WILSONS 05/12/2010 10:49:34 AM | Completed | 1231670 | Fax no:FED9816 9661 8606 | tedtnan 05/13/2010 | |
| 126478560 | Withdrawal | FILE | CMM_WILSONS 11/06/2009 9:29:26 AM | Completed | 1201586 | Fax no:FX9231 9065 3051 | CMEDINA 11/09/2009 | |

# Deutsche Bank

## Loan Inventory

| Issue | Delivery Pool | Loan Number | Name | Item | Item Status | Comment | From Assignment | To Assignment |
|---|---|---|---|---|---|---|---|---|
| LH06PC | LH063006 | 00000000000MIL008336 | KOHLER, EDWARD | Borrower's Name | CMP | | | |
| | | | | Borrowers Address | CMP | | | |
| | | | | Property City | CMP | | | |
| | | | | Property State | CMP | | | |
| | | | | Property Zip Code | CMP | | | |
| | | | | Original Note Rate | CMP | | | |
| | | | | Maturity Date | CMP | | | |
| | | | | Original Scheduled P&I | CMP | | | |
| | | | | Note | O | | | |
| | | | | Mortgage/Deed of Trust | O | | | |
| | | | | Assignment | MMA | MERS | | |
| | | | | Endorsement | BLK | | | |
| | | | | Intervening Assignment | NA | | BNC MORTGAGE, INC., A DELAWA BLANK | |
| | | | | Intervening Assignment | NA | | | |
| | | | | Intervening Endorsement | NA | | | |
| | | | | Intervening Endorsement | NA | | | |
| | | | | Title Policy | O | | | |
| | | | | Modification | UNR | | | |
| | | | | Original Balance | CMP | 7-1-09 BALANCE $226193.04 & TERMS | | |
| | | | | Loan Number | CMP | | | |

Loan Count: 1

# Complete Loan File Information

| | | | |
|---|---|---|---|
| **Loan Number:** | 00000000000MIL008338 | **Issue:** LH06PC | **Subpool:** LH063006 |
| **Secondary Loan Number:** | | | |
| **Borrower:** | KOHLER, EDWARD | | |
| **Address:** | 5310 S SKYLINE DR | **MIN:** | |
| | NEW BERLIN WI 53151 | **MOM IND:** | |

## Loan File Withdrawal Information

**Loan Number:** 00000000000MIL008338     **Item:** FILE     **Issue:** LH06PC

Current Withdrawal Information:     Sent To:

| | | |
|---|---|---|
| Reason: | FORECLOSURE | CHASE |
| Withdrawn on: | 5/13/2010   by tedtnan | 780 DELTA DRIVE |
| Air Bill Number: | FED9816 9661 8606 | MONROE LA 71203 |
| Transmittal: | 1231670 | |
| Transmitted on: | 5/13/2010 | Attention:   GEORGETTE GORDON |
| Comment: | | Authorized by:   SAUNA WILSON |

## Alternate Numbers

| Alternate Loan Number | Delivery Company | Loan Delivery Date |
|---|---|---|
| 00000000000023305519 | | 4/13/2006 14:34:39 |

## Classification Attribute Changes

| Classification Attribute | Previous Value | Changed By | Changed On |
|---|---|---|---|
| loan_type | | SANJONGCOR | 4/13/2006 14:35:08 |
| loan_state | | SANJONGCOR | 4/13/2006 14:35:08 |
| group_code | | SANJONGCOR | 4/13/2006 14:35:08 |
| product_type | | SANJONGCOR | 4/13/2006 14:35:08 |
| loan_type | | SANJONGCOR | 4/20/2006 09:37:14 |
| loan_state | WET | SANJONGCOR | 4/20/2006 09:37:14 |
| group_code | | SANJONGCOR | 4/20/2006 09:37:14 |
| product_type | | SANJONGCOR | 4/20/2006 09:37:14 |
| loan_type | | SANJONGCOR | 4/20/2006 15:57:38 |
| loan_state | WET | SANJONGCOR | 4/20/2006 15:57:38 |
| group_code | CERTS | SANJONGCOR | 4/20/2006 15:57:38 |
| product_type | | SANJONGCOR | 4/20/2006 15:57:38 |
| issue_id | BN040C | CHOIA | 5/22/2006 12:50:08 |
| loan_type | L29 | CHOIA | 5/22/2006 14:53:23 |
| loan_state | DRY | CHOIA | 5/22/2006 14:53:23 |
| group_code | | CHOIA | 5/22/2006 14:53:23 |
| product_type | | CHOIA | 5/22/2006 14:53:23 |
| issue_id | LH001C | CHOIA | 7/5/2006 12:48:38 |
| loan_type | 122 | CORCORANC | 9/5/2006 18:40:55 |
| loan_state | DRY | CORCORANC | 9/5/2006 18:40:55 |
| group_code | | CORCORANC | 9/5/2006 18:40:55 |
| product_type | | CORCORANC | 9/5/2006 18:40:55 |

## Loan File Inventory History

| Change Type | Attribute Item | Attribute Status | Changed By | Changed On | Current Attribute Status |
|---|---|---|---|---|---|
| C | MORTG | CS | FISCHKE | 8/10/2007 09:07:50 | O |
| C | TITLE | TC | FISCHKE | 8/10/2007 09:07:50 | O |

## Loan File Transactions

| Transaction Issue | Attribute Item | Transaction | Transaction Date | Billable Amount | Created By | Billed |
|---|---|---|---|---|---|---|
| BN040C | FILE | INITIAL LOAN REVIEW | 4/20/2006 14:20:37 | | DIAZM | |
| LH06PC | MORTG | Copy/Mail | 8/18/2006 11:29:21 | $0.00 | HERNANDEZJ | |
| LH06PC | NOTE | Copy/Mail | 8/18/2006 11:29:21 | $0.00 | HERNANDEZJ | |
| LH06PC | FILE | TRAILING DOCS FILE | 8/10/2007 09:07:50 | | ACSBATCHPR | |
| LH06PC | FILE | TRAILING DOCS FILE | 8/10/2007 09:07:50 | | ACSBATCHPR | |
| LH06PC | FILE | WITHDRAWAL OF FILE FOR SERVICING | 5/13/2010 08:36:52 | $0.00 | tedtnan | |

EXHIBIT
22

# Complete Loan File Information

## Loan File Request History - eRequest Version 2

| Request ID | Request Type | Item | Requested by/on | Item Status | Trans ID | Tracking Num | Completed by/on | Reject Reason |
|---|---|---|---|---|---|---|---|---|
| 90652480 | Copy | MORTG | CMM_ADONAS 08/17/2006 11:54:25 AM | Completed | 888499 | fed904636214330 | HERNANDEZJU 08/18/2006 | |
| 90652480 | Copy | NOTE | CMM_ADONAS 08/17/2006 11:54:25 AM | Completed | 888499 | fed904636214330 | HERNANDEZJU 08/18/2006 | |
| 126515452 | Withdrawal | FILE | CMM_WILSONS 05/12/2010 10:49:34 AM | Completed | 1231670 | Fax no:FED9816 9661 8606 | tedtnan 05/13/2010 | |

# Deutsche Bank

## Loan Inventory

| Issue | Delivery Pool | Loan Number | Name | Item | Item Status | Comment | From Assignment | To Assignment |
|-------|---------------|-------------|------|------|-------------|---------|-----------------|---------------|
| LH06PC | LH063006 | 00000000000MIL008338 | KOHLER, EDWARD | Borrower's Name | CMP | | | |
| | | | | Borrower's Address | CMP | | | |
| | | | | Property City | CMP | | | |
| | | | | Property State | CMP | | | |
| | | | | Property Zip Code | CMP | | | |
| | | | | Original Note Rate | CMP | | | |
| | | | | Maturity Date | CMP | | | |
| | | | | Original Scheduled P&I | CMP | | | |
| | | | | Note | O | | | |
| | | | | Mortgage/Deed of Trust | O | | | |
| | | | | Assignment | MMA | | LEHMAN BROTHERS BANK, F.S.B | |
| | | | | Endorsement | BLK | | | LANK |
| | | | | Intervening Assignment | NA | | | |
| | | | | Intervening Assignment | NA | | | |
| | | | | Intervening Endorsement | NA | | | |
| | | | | Intervening Endorsement | NA | | | |
| | | | | Title Policy | O | | | |
| | | | | Modification | UNR | 06/01/09 NB $54,910.93 & TERMS | | |
| | | | | Original Balance | CMP | | | |
| | | | | Loan Number | CMP | | | |

Loan Count: 1

Pg 1 of 1

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 24 of 149   Document 1-2
Case 09-35931-pp   Doc 102-2   Filed 05/26/11   Page 3 of 3

24

MIL008336
KOHLER, EDWARD B
KOHLER, PATRICA L
3310 S SKYLINE DR
NEW BERLIN, WI 53151

# LEHMAN

04/12



EXHIBIT
C

2330550|

DP
B205225



LH063006

LH06PC
MIL008336
KOHLER, EDWARD

PMSR-Deutsche Bank

670-SAIL 2006-4

23305501

KOHLER, EDWARD

DEUBNK

CHKE

Please mail to Brian Tucker

# ADJUSTABLE RATE NOTE   X 2330550|

### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| April 6, 2006 | Irvine | California |
|---|---|---|
| [Date] | [City] | [State] |

5310 S SKYLINE DR, NEW BERLIN, WI  53151

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $220,800.00                    (this amount is called "Principal"), plus interest, to the order of Lender. Lender is BNC MORTGAGE, INC., A DELAWARE CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          7.475 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on June 1, 2006                    .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on May 1, 2036                    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at OOMC, Attn:Payment Processing, P.O. Box 44042, Jacksonville, FL. 32231-4042
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $1,540.09                    . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) -
Single Family - Fannie Mae UNIFORM INSTRUMENT
Amended for Wisconsin

VMP-838N(WI) (0006)          Form 3520 1/01
          VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 4          Initials PLK

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of May, 2008 , and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six And 100/1000 percentage points ( 6.100 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.475 % or less than 7.475 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point(s) ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.475 %, or less than 7.475 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower**. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  
EDWARD B. KOHLER        -Borrower

_____ (Seal)  
PATRICIA L. KOHLER       -Borrower

_____ (Seal)  
                         -Borrower

_____ (Seal)  
                         -Borrower

_____ (Seal)  
                         -Borrower

_____ (Seal)  
                         -Borrower

_____ (Seal)  
                         -Borrower

_____ (Seal)  
                         -Borrower

*[Sign Original Only]*

 -838N(WI) (0005)        Page 4 of 4        Form 3520 1/01

**ADDENDUM TO NOTE**
**FOR INTEREST ONLY PAYMENT PERIOD**
THIS ADDENDUM TO NOTE PROVIDES FOR AN INITIAL PERIOD OF
MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT
MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.

This Addendum to Note for Interest Only Payment Period is made this **6th day of**
**April, 2006 ,** and is incorporated into and shall be deemed to amend and supplement the
Adjustable Rate Note of the same date (the "Note") and any Addenda to the Note given by the undersigned (the
"Borrower") to evidence Borrower's indebtedness to
**BNC MORTGAGE, INC., A DELAWARE CORPORATION**

(the "Lender"), which indebtedness is secured by a Mortgage, Deed of Trust or Security Deed (the "Security
Instrument"), of the same date and covering the property described in the Security Instrument and located at:

**5310 S SKYLINE DR, NEW BERLIN, WI 53151**

[Property Address]

**ADDITIONAL COVENANTS:** Unless specifically defined in this Addendum, any capitalized terms shall
have the same meaning as in the Note. Notwithstanding anything to the contrary set forth in the Note, Addenda to
the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

**I.** Sections 3 and 4 of the Note are modified to provide for sixty (60) payments of interest only ("Interest Only
Period") at the interest rates determined in accordance with Sections 2 and 4 of the Note. Sections 3 and 4 of the
Note are modified as follows:

**1. PAYMENTS**

**(A) Time and Place of Payments.**

I will pay interest during the Interest Only Period, and principal and interest thereafter, by making a payment
every month.

I will make my monthly payments on the first day of each month beginning on **June 1, 2006.** I will make these
payments every month until I have paid all of the principal and interest and any other charges described below that I
may own under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to
interest before principal. If on **May 1, 2036** , I still owe amounts under this Note, I will pay those amounts in full
on that date, which is called the "maturity date."

I will make my monthly payments at OOMC, Attn:Payment Processing, P.O. Box 44042, Jacksonville, FL.
32231-4042, or at a different place if required by the Note Holder.

**(B) Amount of My Interest Only Payments.**

The first twenty-four ( 24 ) monthly payments will be in the amount of U.S. **$ 1,375.40** , which equals one
twelfth (1/12) of the amount of yearly interest due on the principal at the initial rate. These payments are called
"Interest Only Payments."

No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce
the principal amount of this Note. **Additional payments of principal may be made in accordance with Section 5
of this Note.**

**(C) Monthly Payment Changes.**

After the Interest Only Period, changes in my monthly payment will reflect changes in the unpaid principal of
my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the
changed amount of my monthly payment in accordance with Section 4 of this Note.

**2. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates.**

The interest rate I will pay may change on the first day of **May, 2008** , and on that day every 6th month
thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index.**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of
interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in
The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately
preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable
information. The Note Holder will give me notice of this choice

**(C) Calculation of Changes.**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
**Six And 100/1000** percentage points ( **6.100** %)
to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one
percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new
interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the
unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in

---

Interest Only Adj. Rate Note Addendum          Page 1 of 2                              Rev. 102703

BNA001

substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes.**

The Interest rate I am required to pay at the first Change Date will not be greater than    10.475   % or less than    7.475      %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  ONE AND 00/100   percentage point(s) ( 1.00  %) from the rate of interest I have been paying for the preceding 6 months.  My interest  rate will never be greater than  14.475 %  or less than  7.475 % .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

II.       All other provisions of the Note and any Addenda are unchanged by this Addendum to Note for Interest Only Payments and remain in full force and effect.

BY SIGNING BELOW,  Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Adjustable Rate Rider.

_(signature)_ _____ (Seal)     _(signature)_ _____(Seal)
**EDWARD B. KOHLER**                              **PATRICIA L. KOHLER**

_____ (Seal)     _____ (Seal)

_____ (Seal)     _____ (Seal)

_____ (Seal)     _____ (Seal)


**I understand that for the interest only period I will not be reducing the principal balance (unless I make additional payments of principal, which may be made in accordance with Section 5 of this Note).**

**After sixty (60) payments if I only made my minimum payment, my principal balance will not be reduced.**

_(signature)_ _____ (Seal)     _(signature)_ _____(Seal)
**EDWARD B. KOHLER**                              **PATRICIA L. KOHLER**

_____ (Seal)     _____ (Seal)

_____ (Seal)     _____ (Seal)

_____ (Seal)     _____ (Seal)

_____

_____

APPLICATION NUMBER:
BORROWERS NAME:     MIL008336

                               KOHLER, EDWARD B

BORROWERS ADDRESS:    KOHLER, PATRICIA L
                               5310 S SKYLINE DR
                               NEW BERLIN, WI  53151

## **ALLONGE TO NOTE**

PAY TO THE ORDER OF:

_____

WITHOUT RECOURSE   **BNC MORTGAGE, INC.**

_____
ELEANORA MARTINO
VICE PRESIDENT OF QUALITY ASSURANCE

# LOAN MODIFICATION AGREEMENT

Borrower ("I")[1]: **Edward B. Kohler and Patricia L. Kohler**
Lender ("Lender"): **Chase Home Finance LLC**
Date of first lien Security Instrument (the "Mortgage") and Note (the "Note"): **April 6, 2006**
Loan Number: **23305501** (the "Loan")
Property Address: **5310 S Skyline Drive, New Berlin, WI 53151** (the "Property")

If my representations in Section 1 continue to be true in all material respects, then the provisions of Section 2 of this Loan Modification Agreement ("Agreement") will, as set forth in Section 2, amend and supplement (i) the Mortgage on the Property, and (ii) the Note secured by the Mortgage. The Mortgage and Note together, as may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement have the meaning given to them in the Loan Documents.

I have provided confirmation of my financial hardship and documents to permit verification of all of my income to determine whether I qualify for the offer described in this Agreement. This Agreement will not take effect unless and until the Lender signs it.

1.   **My Representations.**  I represent to Lender and agree:

   A.   I am experiencing a financial hardship, and as a result, am either in default under the Loan Documents or a default is imminent.

   B.   The Property is neither in a state of disrepair, nor condemned.

   C.   There has been no change in the ownership of the Property since I signed the Loan Documents.

   D.   I am not a party to any litigation involving the Loan Documents, except to the extent I may be a defendant in a foreclosure action.

   E.   I have provided documentation for **all** income that I earn.

   F.   All documents and information I provide pursuant to this Agreement are true and correct.

2.   **The Modification.**  The Loan Documents are hereby modified as of **July 1, 2009** (the "Modification Effective Date") and all unpaid late charges are waived. The Lender agrees to suspend any foreclosure activities so long as I comply with the terms of the Loan Documents, as modified by this Agreement. The Loan Documents will be modified, and the first modified payment will be due on the date set forth in this Section 2:

   A.   The Maturity Date will be: **May 1, 2036.**

   B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) and may include amounts towards taxes, insurance, or other assessments. The new principal balance of my Note is **$226,193.04** (the "New Principal Balance").

   C.   Interest will begin to accrue as of **June 1, 2009**. The first new monthly payment on the New Principal Balance will be due on **July 1, 2009**, and monthly on the same date

---

[1]  If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

thereafter.

My payment schedule for the modified Loan is as follows:

I promise to pay interest on the New Principal Balance at the rate of **6.000%** annually. I promise to make consecutive monthly payments of principal and interest in the amount of **$1,413.16**, which is an amount sufficient to amortize the New Principal Balance over a period of **323** months.

The above terms in this section 2.C shall supersede any provisions to the contrary in the Loan Documents, including but not limited to provisions for an adjustable or step interest rate.

D.  I agree to pay in full any other amounts still owed under the Loan Documents, by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.E below, the date I pay the entire Interest Bearing Principal Balance, or the Maturity Date.

E.  I will be in default if I do not (i) pay the full amount of a monthly payment on the date it is due, or (ii) comply with the terms of the Loan Documents, as modified by this Agreement. If a default rate of interest is permitted under the current Loan Documents, then in the event of default, the interest that will be due on the Interest Bearing Principal Balance will be the rate set forth in section 2.C.

3.  **Additional Agreements.** I agree to the following:

A.  That this Agreement shall supersede the terms of any modification, forbearance or workout plan, if any, that I previously entered into with Lender.

B.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

C.  That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

D.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the Lender shall give me notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which I must

pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F.    That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

G.    If any document is lost, misplaced, misstated, or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender reasonably sustains as a result of my failure.

H.    All payment amounts specified in this Agreement assume that payments will be made as scheduled.

I.    If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

J.    That in agreeing to the changes to the original Loan Documents as reflected in this Agreement, the Lender has relied upon the truth and accuracy of all of the representations made by the Borrower(s), both in this Agreement and in any documentation provided by or on behalf of the Borrower(s) in connection with this Agreement. If the Lender subsequently determines that such representations or documentation were not truthful or accurate, the Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

In Witness Whereof, the Lender and I have executed this Agreement.

**Chase Home Finance LLC**

| Signature | Date |
|---|---|
| _____, Vice President | |

| Signature | Date |
|---|---|
| *Edward B. Kohler* | 6/6/09 |
| **Edward B. Kholer** | |
| *Patricia L. Kohler* | 6/6/09 |
| **Patricia L. Kohler** | |

**LOAN MODIFICATION AGREEMENT**            page 3 of 3 pages            WF101

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 36 of 149   Document 1-2      36
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 12 of 81

**LENDER**

**Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation**

By: _____

     Stacie E. Winters    Vice-President

## ACKNOWLEDGEMENT(S) OF LENDER:

STATE OF <u>TEXAS</u>
COUNTY OF <u>DENTON</u>

    Before me, a Notary Public, in and for said County, personally appeared the above name <u>Stacie E. Winters</u>, the <u>Vice-President</u> of the Lender identified in this Agreement, who, being personally known to me acknowledged that he/she did sign the foregoing instrument for and on behalf of such Lender, and the same is his/her free act and deed.

    In Testimony Whereof, I have hereunto subscribed my name and affixed my official seal at <u>Chase Home Finance, LLC</u>, this <u>23</u>$^{rd}$ day of <u>September</u>, 20<u>09</u>.

<table>
<tr>
<td>
GRACE L. SINGLETARY<br>
Notary Public, State of Texas<br>
My commission Exp. 07-19-2011
</td>
<td>
_____<br>
Grace L Singletary<br>
Notary Public
</td>
</tr>
</table>

My commission expires: <u>07-19- 2011</u>

Page 4 of 4

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 37 of 149   Document 1-2   37
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 13 of 81

# DOCUMENT CORRECTION AGREEMENT
## ("Agreement")

Loan Number 23305501 (the "Loan")

**AGREEMENT TO CORRECT MISSTATED DOCUMENTS AND TO PROVIDE ADDITIONAL DOCUMENTATION OR FEES:** In consideration of Chase Home Finance LLC ("Chase") modifying the Loan (the "Modification") as requested by the undersigned ("Borrower"), and regardless of the reason for any loss, misplacement, or inaccuracy in the modification agreement or any other document prepared in connection with the Modification, Borrower agrees as follows: if any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Modification, upon request of Chase, Borrower will comply with Chase's request to execute, acknowledge, and deliver to Chase any documentation ("Replacement Documents") Chase deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). Borrower agrees to deliver the Replacement Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower also agrees that upon request Borrower will pay to Chase any additional sum ("Fee") previously disclosed to Borrower as a cost or fee associated with the Modification, which, for whatever reason, was not previously collected.

**REQUEST BY CHASE:** Any request under this Agreement made by Chase, (including assignees and persons acting on behalf of Chase), shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower, first class postage prepaid, at the mailing address indicated in Chase's records shall be considered conclusive evidence of receipt by Borrower of the request for Replacement Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, and deliver the Replacement Documents or Fee to Chase more than (10) days after being requested to do so by Chase, Borrower shall be liable for any and all loss or damage which Chase reasonably sustains thereby, including, but not limited to all reasonable attorneys' fees and costs incurred by Chase. In addition, Chase may elect to declare the Modification null and void in which case the Loan shall be payable at the rate and on the terms as existed prior to the Modification. Any funds received by Chase in conjunction with the Modification shall be retained by Chase and applied to the Loan as determined by Chase in its discretion.

This agreement shall inure to the benefit of Lender's successors and assigns and is binding upon the heirs, devisees, personal representatives, successors and assigns of Borrower(s).

_Edward B. Kohler_
Signature                                    Date
**Edward B. Kholer**

_Patricia L. Kohler_  6/6/09
Signature                                    Date
**Patricia L. Kohler**

1

WC3382190-019
DOCUMENT NUMBER
MIL008336

00004 MAY -1 06

# MORTGAGE

MIL008336
LH06PC

2330505501

NAME & RETURN ADDRESS

BNC MORTGAGE, INC.
P.O. BOX 19656
IRVINE, CA 92623-9656

PARCEL IDENTIFIER NUMBER

3382190

REGISTER'S OFFICE
WAUKESHA COUNTY, WI
RECORDED ON

05-01-2006   8:37 AM

MICHAEL J. HASSLINGER
REGISTER OF DEEDS

REC. FEE:        40.00
REC. FEE-CO:      5.00
REC. FEE-ST:      2.00
TRAN. FEE:
TRAN. FEE-STATE:
PAGES:             19

Pd
41/19

─────────────── [Space Above This Line For Recording Data] ───────────────

MIN 100122200002476288

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated April 6, 2006
together with all Riders to this document.
**(B) "Borrower"** is EDWARD B. KOHLER AND PATRICIA L. KOHLER, HUSBAND AND WIFE.

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

WISCONSIN-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT WITH MERS          Form 3050 1/01

VMP® -6A(WI) (0009).01

Page 1 of 15                    Initials: EBK  PLK

VMP MORTGAGE FORMS - (800)521-7291

**(D) "Lender"** is BNC MORTGAGE, INC., A DELAWARE CORPORATION

Lender is a corporation
organized and existing under the laws of Delaware
Lender's address is P.O. BOX 19656, IRVINE, CA 92623-9656

**(E) "Note"** means the promissory note signed by Borrower and dated April 6, 2006
The Note states that Borrower owes Lender two hundred twenty thousand eight hundred and 00/100                                                                 Dollars
(U.S. $220,800.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than May 1, 2036

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials:

-6A(WI) (0005).01                          Page 2 of 15                          Form 3050  1/01

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
COUNTY              of              WAUKESHA, WISCONSIN            :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HERETO AS EXHIBIT A.

which currently has the address of 5310 S SKYLINE DR

                                                                                                        [Street]
NEW BERLIN                                             [City], Wisconsin 53151          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: _____

-6A(WI) (0005).01                    Page 3 of 15                                        Form 3050  1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

-6A(WI) (0005).01                          Page 4 of 15          Initials: _____          Form 3050 1/01

900008 MAY -1 8

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6A(WI) (0005).01    Page 5 of 15    Form 3050  1/01

Case 2:11-cv-00893-CNC  Filed 09/22/11  Page 43 of 149  Document 1-2  43
Case 09-35931-pp  Doc 102-3  Filed 05/26/11  Page 19 of 81

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials:

-6A(WI) (0005).01          Page 6 of 15          Form 3050   1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable

-6A(WI) (0005).01                    Page 7 of 15                    Initials: [signature]          Form 3050  1/01

Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: ___

-6A(WI) (0005).01                      Page 8 of 15                          Form 3050   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials:

-6A(WI) (0005).01

Page 9 of 15

Form 3050  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials:

-6A(WI) (0005).01                   Page 10 of 15                   Form 3050   1/01

000014 MAY -1 08

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials:

-6A(WI) (0005).01          Page 12 of 15          Form 3050   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Accelerated Redemption Periods.** If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

**25. Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

Initials:

-6A(WI) (0005).01

Page 13 of 15

Form 3050 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
EDWARD B. KØHLER                         -Borrower


_____

_____ (Seal)
PATRICIA L. KOHLER                        -Borrower


_____ (Seal)     _____ (Seal)
              -Borrower                           -Borrower


_____ (Seal)     _____ (Seal)
              -Borrower                           -Borrower


_____ (Seal)     _____ (Seal)
              -Borrower                           -Borrower


VMP -6A(WI) (0005).01                Page 14 of 15                Form 3050   1/01

**STATE OF WISCONSIN,**
    The foregoing instrument was acknowledged before me this
by EDWARD B. KOHLER,   PATRICIA L. KOHLER

*WAUKESHA*   **County ss:**
*6TH DAY OF APRIL, 2006.*

My Commission Expires: *4/27/08*



Notary Public, State of Wisconsin

This instrument was prepared by

JESSICA IVAN

-6A(WI) (0005).01                           Page 15 of 15                         **Form 3050**   1/01

Lot 15, Block 4 Maryknoll, Heights Addition No. 1, being a Subdivision of a part of the West One-half (1/2) of the Southeast One-quarter (1/4) of Section Twenty-five (25), Township Six (6) North, Range Twenty (20) East, in the City of New Berlin, Waukesha County, Wisconsin.

For Informational Purposes Only
Tax Parcel Number:    NBC 1251-152
Property Address:      5310 S. Skyline Drive
                       New Berlin, WI  53151

(06-WI-0001.PFD/06-WI-0000/26)

00020 MAY -1 06

Loan No.: **MIL008336**

### ADJUSTABLE RATE RIDER
### WITH INTEREST ONLY PAYMENT PERIOD

This **Adjustable Rate Rider with Interest Only Payment Period** is made this **6th day of April, 2006 ,**

and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date given by the undersigned (the "Borrower") to secure Adjustable Rate Note ("Note") to
**BNC MORTGAGE, INC., A DELAWARE CORPORATION**
, (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 5310 S SKYLINE DR, NEW BERLIN, WI 53151

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**THE NOTE AND ITS ADDENDA CONTAIN PROVISIONS ALLOWING FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.**

### INTEREST ONLY PERIOD.

The Note and its Addenda provide for an initial period of monthly payments of interest only, in the amount of $ **1,375.40** , as follows:

### INTEREST RATE AND MONTHLY PAYMENT CHANGES.

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**I.** Sections 3 and 4 of the Note as modified by its Addenda provide for sixty (60) payments of interest only ("Interest Only Period") at the interest rates determined in accordance with Sections 2 and 4 of the Note.

### 1. PAYMENTS

#### (A) Time and Place of Payments.

I will pay interest during the interest Only Period, and principal and interest thereafter, by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **June 1, 2006**
. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may own under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If on **May 1, 2036** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at **OOMC, Attn:Payment Processing, P.O. Box 44042, Jacksonville, FL. 32231-4042** , or at a different place if required by the Note Holder.

---

Interest Only Adj. Rate Note Rider                                      Rev. 102703

BGADJRJ

Page 1 of 3

Borrower Initials

Case 2:11-cv-00893-CNC Filed 09/22/11 Page 55 of 149 Document 1-2    55
Case 09-35931-pp Doc 102-3 Filed 05/26/11 Page 31 of 81

**(B) Amount of My Interest Only Payments.**

The first **twenty-four** ( 24 ) monthly payments will be in the amount of U.S. $ **1,375.40** , which equals one twelfth 1/12) of the amount of yearly interest due on the principal at the initial rate.  These payments are called "Interest Only Payments."

No payments of principal are due during the Interest Only Period.  The Interest Only Payments will not reduce the principal amount of this Note.  **Additional payments of principal may be made in accordance with Section 5 of the Note.**

**(C) Monthly Payment Changes.**

After the Interest Only Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay.  The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 2. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates.**

The interest rate I will pay may change on the first day of      **May, 2008**                , and on that day every  **6th**  month thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B) The Index.**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C) Calculation of Changes.**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six And 100/1000**                                          percentage points ( **6.100**        %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes.**

The Interest rate I am required to pay at the first Change Date will not be greater than   **10.475**      % or less than    **7.475**        %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  ONE AND 00/100    percentage point(s) ( 1.00  %) from the rate of interest I have been paying for the preceding 6 months.  My interest rate will never be greater than  **14.475** % or less than  **7.475** % .

**(E) Effective Date of Changes.**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

---

Interest  Only  Adj.  Rate  Note  Rider                                        Rev.  102703

Page 2 of 3

Borrower Initials

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

All other provisions of the Note and any Addenda are unchanged by this Addendum to Note for Interest Only Payments and remain in full force and effect.

**II.**    By signing below, Borrower accepts and agrees to the terms and conditions contained in the Interest Only Payment Period Addendum.

_____ (Seal)    _____ (Seal)
**EDWARD B. KOHLER**                  **PATRICIA L. KOHLER**

_____ (Seal)    _____ (Seal)

_____ (Seal)    _____ (Seal)

_____ (Seal)    _____ (Seal)

I understand that for the interest only period I will not be reducing the principal balance (unless I make additional payments of principal, which may be made in accordance with Section 5 of this Note).

After sixty (60) payments if I only made my minimum payment, my principal balance will not be reduced.

_____ (Seal)    _____ (Seal)
**EDWARD B. KOHLER**                  **PATRICIA L. KOHLER**

_____ (Seal)    _____ (Seal)

_____ (Seal)    _____ (Seal)

_____ (Seal)    _____ (Seal)

Interest Only Adj. Rate Note Rider                                    Rev. 102703

Page 3 of 3

Borrower Initials _____ _____ ___ ___

# LOAN POLICY OF TITLE INSURANCE

## Issued by **Lawyers Title Insurance Corporation**

 **LandAmerica**
**Lawyers Title**

*Lawyers Title Insurance Corporation is a member of the LandAmerica family of title insurance underwriters.*

**POLICY NUMBER**

**G47-3468340**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

**IN WITNESS WHEREOF, LAWYERS TITLE INSURANCE CORPORATION** has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**LAWYERS TITLE INSURANCE CORPORATION**

Attest:

*Secretary*

[SEAL: LAWYERS TITLE INSURANCE CORPORATION · SEAL · 1925 · RICHMOND, VA.]

By:

*President*

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

NM 2  PA 20
Dbl. Cover – 1992 ALTA Loan Policy
**Form 1191-68D**

**ORIGINAL**

NJRB 2-08
Valid only if Schedules A and B are attached

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 58 of 149   Document 1-2
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 34 of 81      58

## 1. DEFINITION OF TERMS.

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE.

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

## 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any

third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

## 5. PROOF OF LOSS OR DAMAGE.

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

## 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

LAWYERS TITLE INSURANCE COMPANY

## SCHEDULE A

File Number: 06-WI-0001                          Policy Number: G47-3468340
Amount of Insurance: $ 220,800.00                   Premium: $ 200.00

Date of Policy: May 1, 2006 at 08:40 AM

1.  Name of Insured:

    Mortgage Electronic Registration Systems, Inc. "MERS" solely as nominee for BNC MORTGAGE INC , its
    successors and/or assigns as their respective interests may appear.

2.  The estate or interest in the land which is encumbered by the insured mortgage is:
    Fee Simple

3.  Title to the estate or interest in the land is vested in:
    Edward B. Kohler and Patricia L. Kohler husband and wife.

4.  The insured mortgage and assignments thereof, if any, are described as follows:

    Mortgage executed by EDWARD B. KOHLER and PATRICIA L. KOHLER, husband and wife, to
    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. "MERS" solely as nominee for BNC
    MORTGAGE, INC. dated April 6, 2006 and recorded in the office of the Register of Deeds for Waukesha
    County on May 5, 2006 as Document No. 3382190, in the originally stated amount of $220,800.00.

5.  The land referred to in this policy is described as follows:

    Lot 15, Block 4 Maryknoll, Heights Addition No. 1, being a Subdivision of a part of the West One-half (1/2) of
    the Southeast One-quarter (1/4) of Section Twenty-five (25), Township Six (6) North, Range Twenty (20)
    East, in the City of New Berlin, Waukesha County, Wisconsin.

    For Informational Purposes Only
    Tax Parcel Number:    NBC 1251-152
    Property Address:     5310 S. Skyline Drive
                          New Berlin, WI  53151

**TITLE SERVICES OF HARTLAND, LLC**

**By:** *Beverly A. Barnes*
BEVERLY BARNES

ALTA Loan/Construction Loan Policy
Schedule A (10/17/92)

(06-WI-0001.PFD/06-WI-0000/110)

LAWYERS TITLE INSURANCE COMPANY

**SCHEDULE B**

File Number:  06-WI-0001

Policy Number:  G47-3468340

**EXCEPTIONS FROM COVERAGE
PART I**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.    Easements, or claims or easements, not shown by the public records.

2.    Special Taxes or assessments and special charges, if any, payable with the taxes levied or to be levied for the year 2006 and subsequent years.

3.    General taxes for the year 2006 and subsequent years, not yet due and payable.

4.    Utility Easement granted by an instrument recorded in the Office of the Register of Deeds for Waukesha County, Wisconsin as  Document No. 378437.

5.    Covenants, conditions and restrictions contained in the Declaration of Restrictions recorded as Document No. 503897 but omitting any covenant, condition or restriction, if any, based on race, color, religion, sex, handicap, familial status, or  national origin unless and only to the extent that the covenants, condition or restriction (a) is exempt under Title 42 of the United States  Code, or (b) relates to handicap, but does not discriminate against handicapped persons.

6.    Utility Easement granted by an instrument recorded as Document No. 503899.

        END OF SCHEDULE B PART I

ALTA Loan/Construction Loan Policy
Schedule B - Part I (10/17/92)

(06-WI-0001.PFD/06-WI-0000/111)

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 61 of 149   Document 1-2
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 37 of 81      61

LAWYERS TITLE INSURANCE COMPANY

## SCHEDULE B

File Number:  06-WI-0001                                    Policy Number:  G47-3468340

## PART II

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

Mortgage executed by Edward B. Kohler and Patricia L. Kohler, husband and wife, to Mortgage Electronic registration Systems, Inc. "MERS", solely as nominee for Lehman Brothers Bank, FSB, dated April 6, 2006 and recorded in the office of the Register of Deeds for Waukesha County on May 1, 2006 as Document No. 3382191, in the originally stated amount of $55,200.00..

ALTA Loan/Construction Loan Policy
Schedule B - Part II (10/17/92)

(06-WI-0001.PFD/06-WI-0000/112)

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 62 of 149   Document 1-2      62
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 38 of 81

**ENDORSEMENT**

Attached to Policy Number
G47-3468340

Issued by
LAWYERS TITLE INSURANCE COMPANY

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a) any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States District Court for the district in which the land is located, except as set forth in Schedule B; or

(b) any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

Wisconsin Statute 292

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

May 1, 2006

**TITLE SERVICES OF HARTLAND, LLC**

By: *Beverly A. Barnes*
BEVERLY BARNES

ALTA ENDORSEMENT - Form 8.1
(Environmental Protection Lien)
(3/12/88)

(06-WI-0001.PFD/06-WI-0000/120)

**ENDORSEMENT**

Attached to Policy Number
G47-3468340

Issued by
LAWYERS TITLE INSURANCE COMPANY

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1.  The existence at Date of Policy of any of the following:

    (a)  Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

    (b)  Unless expressly excepted in Schedule B:

        (1)  Present violations on the land of any enforceable covenants, conditions or restrictions, nor do any existing improvements on the land violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.

        (2)  Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land which, in addition, (i) establishes an easement on the land; (ii) provides a lien for liquidated damages; (iii) provides for a private charge or assessment; (iv) provides for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

        (3)  Any encroachment of existing improvements located on the land onto adjoining land, or any encroachment onto the land of existing improvements located on adjoining land.

        (4)  Any encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

        (5)  Any notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.

2.  Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the insured, provided the violation results in:

    (a)  invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or

    (b)  loss of title to the estate or interest in the land if the Insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

3.  Damage to existing improvements, including lawns, shrubbery or trees:

    (a)  which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;

    (b)  resulting from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

4.  Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.

5.  Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a

lease.


As used in paragraphs 1(b)(1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.


May 1, 2006


**TITLE SERVICES OF HARTLAND, LLC**

By: _Beverly A. Barnes_

BEVERLY BARNES

ALTA ENDORSEMENT - Form 9
(Restrictions, Encroachments, Minerals)
(10/17/98)

(06-WI-0001.PFD/06-WI-0000/119)

## THANK YOU.

Title insurance provides for the protection of your real estate investment. We suggest you keep this policy in a safe place where it can be readily available for future reference.

If you have questions about title insurance or the coverage provided by this policy, contact the office that issued this policy, or you may call or write:

Lawyers Title Insurance Corporation
Consumer Affairs
P.O. Box 27567
Richmond, Virginia 23261-7567
*telephone, toll free:* 800 446-7086
web: www.landam.com

We thank you for choosing to do business with Lawyers Title Insurance Corporation, and look forward to meeting your future title insurance needs.

**Lawyers Title Insurance Corporation**
is a member of the LandAmerica family of title insurance underwriters.



**LandAmerica
Lawyers Title**

---

# LOAN POLICY OF TITLE INSURANCE

American Land Title Association (10/17/92)

Issued by

## Lawyers Title
## Insurance Corporation

**Lawyers Title Insurance Corporation**
is a member of the LandAmerica family of title insurance underwriters.



**LandAmerica
Lawyers Title**

LandAmerica Financial Group, Inc.
101 Gateway Centre Parkway
Richmond, Virginia 23235-5153
www.landam.com

---

IN44

Form B 1191-68D

(i)   to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii)   to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7.     DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a)   The liability of the Company under this policy shall not exceed the least of:

(i)   the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii)   the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii)   the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b)   In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c)   The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8.     LIMITATION OF LIABILITY.**

(a)   If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b)   In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c)   The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d)   The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9.     REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

(a)   All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b)   Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c)   Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10.     LIABILITY NONCUMULATIVE.**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11.     PAYMENT OF LOSS.**

(a)   No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or

destruction shall be furnished to the satisfaction of the Company.

(b)   When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12.     SUBROGATION UPON PAYMENT OR SETTLEMENT.**

(a)   The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b)   The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c)   The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13.     ARBITRATION.**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association.   Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation.   All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured.   All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured.   Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties.   The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party.   Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14.     LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a)   This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company.   In interpreting any provision of this policy, this policy shall be construed as a whole.

(b)   Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c)   No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15.     SEVERABILITY.**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16.     NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at: Consumer Affairs Department, P.O. Box 27567, Richmond, Virginia 23261-7567.



# TITLE SERVICES
## OF HARTLAND LLC

September 1 2006

BNC Mortgage Inc
P.O. Box 19658
Irvine, CA 82623

RE: Edward B. Kohler     Our File: 06-WI-0001     Ln No: MIL008336

To whom it may concern:

Thank you for recently using Title Services of Hartland, LLC for your residential or
commercial title insurance requirement. As we are committed to sound, ethical practices in all
of our business relationships, I sincerely hope that your experience with our company was
favorable and welcome any feedback you may provide.

Enclosed with this letter, you will find the above referenced final title policy for your records
and use. Please contact me should you have any questions or require additional information.

It was a pleasure working with you and I look forward to working with you again in
the future.

Sincerely,

*Beverly A. Barnes*

Beverly A. Barnes
Managing Partner

cc: file

Enclosure

**530 Hartbrook Drive, Hartland, WI 53029**
**262-369-0946 / 262-369-1491 fax**

## IOD Print Screen - Loan Summary

| | | | | | | |
|---|---|---|---|---|---|---|
| Loan Num | 23305501 | Sy. tem | MSP | Inv Num | C92 | Property Type | 1 |
| Customer | KOHLER, EDWARD B | | | Orig Date | 4/6/2006 | Nxt Pmt Due | 4/1/2009 |
| Address | 5310S SKYLINE DR | | | Orig Loan Amt | $220,800 | Curr Prin Bal | $220,719.50 |
| City | NEW BERLIN | | | Orig App Val | $276,000 | Loan Type | SUBPRIME |
| State | WI | Lien Position | 1 | Orig Mat Dt | 5/1/2036 | Interest Type | A |
| Zip | 53151 | Affiliate | | Interest Rate | | 9.750% | Financial |
| Fortracs Nbr | | Latest Value | $280,280 | Latest Val Typ | | AVM Latest Val Dt | 09/27/2008 |

### Monthly Income and Expenses

☐ Rental Property   ☐ Unsecured   ☐ HPO
☐ Inv Approved   ☐ PMI Approved

[handwritten: MIL 08336  LH&GPC  PT]

| Borr 1 | Gross | Net | | | | |
|---|---|---|---|---|---|---|
| Inc 1 | $2,166.67 | $1,625.00 Wages/W2/PayStub | 1st Lien Pmt | $1,793.35 | Auto Pmt | $315.00 |
| Inc 2 | | | 2nd Lien Pmt | $514.25 | # in Hshld | 3 |
| Inc 3 | | | Other Lien Pmt | | 1st Lien Hldr | Chase SP Inv |
| Borr 2 | Gross | Net | Mnthly Tax Amt | $467.89 | 1st Lien Stat | Current |
| Inc 1 | $3,189.33 | $2,392.00 Wages/W2/PayStub | Mnthly HOI Amt | $98.08 | 1st Lien Bal | |
| Inc 2 | | | HOA Amount | | Housing Exp | $1,017.00 |
| Inc 3 | | | Neg Rental | | Refrsh FICO | |
| Total | $5,356.00 | $4,017.00 | Latest Val O.R. | | Total Exp | $4,205.57 |

| | | | | | |
|---|---|---|---|---|---|
| Target Housing Ratio | 37.00% | **Auto MOD Successful** | MOD Eff Date | 07/01/2009 | MOD NPV |
| Modification Type | | | In FCL | N | REO NPV |
| Referral Group | Inbound Call | | Source Group | SLU - Specialty Lending Unit | |

| | Interest | Fees/Costs | Escrow | Corp Advances | Late Charges | Total |
|---|---|---|---|---|---|---|
| Capitalization Amt | $5,196.11 | | $1,691.43 | | N/A | $6,887.54 |
| Waived Amount | | | | | | $0.00 |
| Deferred Amount (VLS) | | | | | | $0.00 |
| Down Payment Amt | $1,414.00 | | | | | $1,414.00 |
| Suspense Amount | **Last MOD Step** | Rate Reduction to Floor Modification (4.86) | | | | |

### Modification Scenarios

| | Pre MOD | Auto MOD | Override | Diff (OR/Pre) | Diff (OR/Auto) |
|---|---|---|---|---|---|
| Interest Rate | 9.750% | 6.000% | 6.000% | -3.750% | 0.000% |
| Term | 326 | 323 | 323 | -3 | 0 |
| Amortization Term | 326 | 323 | 323 | -3 | 0 |
| Balance | $220,719.50 | $226,193.04 | $226,193.04 | $5,473.54 | $0.00 |
| PCO Amount | N/A | $0.00 | $0.00 | N/A | $0.00 |
| Cap Amount | N/A | $6,887.54 | $6,887.54 | N/A | N/A |
| Chase Pmt (P&I) | $1,793.35 | $1,413.16 | $1,413.16 | ($380.19) | $0.00 |
| CLTV | 78.75% | 80.70% | 80.70% | 1.950% | 0.000% |
| DTI Ratio | 68.92% | 61.82% | 61.82% | -7.100% | 0.000% |
| Housing Ratio | 44.05% | 36.95% | 36.95% | -7.100% | 0.000% |
| Net Disposable Inc | ($188.57) | $191.62 | $191.62 | $380.19 | $0.00 |
| Down Pmt Required | N/A | $1,414.00 | $1,414.00 | N/A | N/A |
| Amt Deferred | N/A | $0.00 | $0.00 | N/A | N/A |
| Amount Waived | N/A | $0.00 | $0.00 | N/A | N/A |
| Status | Approved on 05/21/2009 (CLIPPERTON, CHAD) | | | | |

http://solomon.jpmchase.net/mod/form_print.aspx     5/21/09

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 69 of 149   Document 1-2   69
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 45 of 81

## Closer Steps

**Address Information:**

Address

City

State

Zip

**Payment Information:**

| Qualify Payment 1 | Date |
| Qualify Payment 2 | Date |
| Qualify Payment 3 | Date |

## Summary and Recommendations

| Date | Last Name | Comment |
|------|-----------|---------|
| 05/21/2009 | CLIPPERTON | ********New Requirements for loan*********** |

1st Comment:
Original Due Date: 6/1/06
Original Interest Rate: 7.475

2nd Comment:
Escrow Cap Total: $1691.43
Escrow Advance: $0
Escrow Pmts: $565.97
Escrow With Chase: Yes, $ 565.97 BOTH TAXES & INS.

3rd Comment:
N/A

4th Comment:
Interest Only loan being converted to P&I --- YES

5th Comment:
P&I loan being converted to Interest Only loan --- NO

6th Comment:
Property address: 5310 S SKYLINE DRIVE, NEW BERLIN, WI 53151

7th Comment:
Mailing address: 5310 S SKYLINE DRIVE, NEW BERLIN, WI 53151

8th Comment:
B1: EDWARD B KOHLER
B2: PATRICIA L KOHLER

9th Comment:
SEE WAM NOTES

10th Comment:
NON PRIME

11th Comment:
MOD APPROVAL / FIXED RATE: 6.00% life.

12th Comment:
NACA file OR Letter Mod --- N/A
back to u/w for rework

| 05/08/2009 | CLIPPERTON |
| 04/30/2009 | CLIPPERTON |

1st Comment:
Original Due Date: 6/1/06
Original Interest Rate: 7.475

2nd Comment:
Escrow Cap Total: $1125.46
Escrow Advance: $0
Escrow Pmts: $565.97
Escrow With Chase: Yes, $ 565.97 BOTH TAXES & INS.

3rd Comment:
N/A

4th Comment:
Interest Only loan being converted to P&I --- YES

5th Comment:
P&I loan being converted to Interest Only loan --- NO

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 70 of 149   Document 1-2
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 46 of 81          70

6th Comment:
Property address: 5310 S SKYLINE DRIVE, NEW BERLIN, WI 53151

7th Comment:
Mailing address: 5310 S SKYLINE DRIVE, NEW BERLIN, WI 53151

8th Comment:
B1: EDWARD B KOHLER
B2: PATRICIA L KOHLER

9th Comment:
SEE WAM NOTES

10th Comment:
NON PRIME

11th Comment:
MOD APPROVAL / FIXED RATE: 6.125% life.

12th Comment:
NACA file OR Letter Mod --- N/A

| Date | Name | Comment |
|---|---|---|
| 04/30/2009 | CLIPPERTON | INCOME FOR B1 IS NOT REAL ACCURATE, FOR FUTURE INCOME, SINCE BORROWER IS TRUCK DRIVER, WHO IS PAID BY MILEAGE, SO THE INCOME THE INITIAL U/W USED, SINCE ONLY THING IN FILE, IS INCOME REC'D FROM TRAINING PERIOD WITH THE COMPANY......BUT BORROWERS HAVE AN I/O ARM, THAT HAS INCREASED IN RATE, BUT IS ALSO GOING BACK DOWN, BUT WILL AUTO MOD WITH CURRENT INFO, SO PYMTS WILL REMAIN CONSTANT FOR THEM, THIS IS ALSO A PIGGY BACK DEAL, WHERE THIS IS THE 1ST AND 2ND STILL NEEDS TO BE REVIEWED. |
| 04/30/2009 | CLIPPERTON | TMQ SAID NO --- SO GOING BAU.........DISREGARD THE PREVIOUS U/W NOTES FOR MOD TERMS DATED 3/24/09...THANKS. |
| 03/24/2009 | GEORGOULAKOS | LOAN POSSIBLY QUALIFIES FOR THE OBAMA PLAN, PENDING GUIDELINES. ALL DOCS IN FILE INDICATE SUBJECT ADDRESS IS PRIMARY ADDRESS. |
| 03/24/2009 | GEORGOULAKOS | MOD APPROVAL RECOMMENDED/STEP RATE: 3% FOR 5 YRS 4% FOR 1 YR 4.98% (FREDDIE MAC SURVEY RATE) FOR LIFE. |
| 03/24/2009 | GEORGOULAKOS | Borrower receives $500/week. (documented)x52=2600/12=2166.67/month. Co-borrower receives $1472 bi weekly x26=38,272/12=3189.33/month. |
| 03/24/2009 | GEORGOULAKOS | BORROWER 1: EDWARD B KOHLER BORROWER 2: PATRICIA L KOHLER |
| 03/24/2009 | GEORGOULAKOS | MAILING ADDRESS: 5310 S SKYLINE DR, NEW BERLIN, WI 53151 |
| 03/24/2009 | GEORGOULAKOS | PROPERTY ADDRESS: 5310 S SKLYINE DR, NEW BERLIN, WI 53151 |
| 03/24/2009 | GEORGOULAKOS | INTEREST ONLY LOAN BEING CONVERTED TO P&I. |
| 03/24/2009 | GEORGOULAKOS | ESCROW CAP TOTAL: 1688.19 ESCROW ADVANCE: 0 |
| 03/24/2009 | GEORGOULAKOS | ORIGINAL DUE DATE: 6/1/06 ORIGINAL INTEREST RATE: 7.475% |

http://solomon.jpmchase.net/mod/form_print.aspx                                   5/21/09

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 71 of 149   Document 1-2
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 47 of 81          71

Form **4506-T**
(Rev. January 2008)

Department of the Treasury
Internal Revenue Service

# Request for Transcript of Tax Return

- **Do not sign this form unless all applicable lines have been completed.**
  **Read the instructions on page 2.**
- **Request may be rejected if the form is incomplete, illegible, or any required**
  **line was blank at the time of signature.**

OMB No. 1545-1872

**TIP:** Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use **Form 4506**, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a Name shown on tax return. If a joint return, enter the name shown first.<br>Patricia L. Kohler | 1b First social security number on tax return or employer<br>identification number (see instructions)<br>3/ ) - 2596 |
|---|---|
| 2a If a joint return, enter spouse's name shown on tax return<br>Edward B. Kohler | 2b Second social security number if joint tax return<br>-1463 |

3  Current name, address (including apt., room, or suite no.), city, state, and ZIP code
   Patricia L. Kohler - 5310 S Skyline Dr , New Berlin WI 53151-8064

4  Previous address shown on the last return filed if different from line 3

5  If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.
   Chase Home Finance LLC Its Successors and/or Assigns, 3415 Vision Drive, Mail Code OH4-7218, Columbus, OH 43219,

**Caution:** **DO NOT SIGN** this form if a third party requires you to complete Form 4506-T, and lines 6 and 9 are blank.

6  Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. •

a  **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days... ☐

b  **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 30 calendar days........ ☐

c  **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years. Most requests will be processed within 30 calendar days ............................................................................................. ☒

7  **Verification of Nonfiling,** which is proof from the IRS that you **did not** file a return for the year. Most requests will be processed within 10 business days..................................................................................................................................................................................................... ☐

8  **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2006, filed in 2007, will not be available from the IRS until 2008. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 45 days ☐

**Caution:** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

9  Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

    12 / 31 / 2008        12 / 31 / 2007        12 / 31 / 2006         /  /

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

|  | Telephone number of taxpayer on line 1a or 2a<br>( ) |
|---|---|

**Sign Here**

▶ *Edward B Kohler* | 6/6/09
   Signature (see instructions)         Date

   Title (if line 1a above is a corporation, partnership, estate, or trust)

▶ *Patricia L. Kohler* | 6/6/09
   Spouse's signature         Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.

1

Cat. No. 37667N
Form **4506-T** (Rev. 1-2008)
©2009, All Rights Reserved

0812010609 [Doc Id 1976 Rev. 04.22.09]

# General Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different RAIVS teams, send your request to the service center based on the address of your most recent return.

**Note.** You can also call 1-800-829-1040 to request a transcript or get more information.

## Chart for individual transcripts (Form 1040 series and Form W-2)

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team Stop 679 Andover, MA 05501 978-247-9255 |
| Alabama, Delaware, Florida, Georgia, North Carolina, Rhode Island, South Carolina, Virginia | RAIVS Team P.O. Box 47-421 Stop 91 Doraville, GA 30362 770-455-2335 |
| Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team Stop 6716 AUSC Austin, TX 73301 512-460-2272 |
| Alaska, Arizona, California, Colorado, Hawaii, Idaho, Iowa, Kansas, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | RAIVS Team Stop 37106 Fresno, CA 93888 559-456-5876 |
| Connecticut, Illinois, Indiana, Iowa, Michigan, Minnesota, Missouri, North Dakota, Ohio, Wisconsin | RAIVS Team Stop 6705-B41 Kansas City, MO 64999 816-292-6102 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250 859-669-3592 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

**Individuals.** Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

**Partnerships.** Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

**All others.** See Internal Revenue Code section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 12 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send the form to this address. Instead, see *Where to file* on this page.

For Privacy Act and Paperwork Reduction Act Notice, see page 2.

Cat. No. 37667N

Form **4506-T** (Rev. 1-2008)
©2009, All Rights Reserved

0812010609 [Doc Id 1976 Rev. 04.22.09]

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 73 of 149   Document 1-2     73
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 49 of 81

Form **4506-T**

(Rev. January 2008)

Department of the Treasury
Internal Revenue Service

# Request for Transcript of Tax Return

- **Do not sign this form unless all applicable lines have been completed.**
  **Read the instructions on page 2.**
- **Request may be rejected if the form is incomplete, illegible, or any required line was blank at the time of signature.**

OMB No. 1545-1872

**TIP:** Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use **Form 4506**, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a Name shown on tax return. If a joint return, enter the name shown first. Edward B. Kholer *oh* | 1b First social security number on tax return or employer identification number (see instructions) |
|---|---|
| 2a If a joint return, enter spouse's name shown on tax return | 2b Second social security number if joint tax return |

3 Current name, address (including apt., room, or suite no.), city, state, and ZIP code
Edward B. Kholer - 5310 S Skyline Dr , New Berlin WI 53151-8064 *oh*

4 Previous address shown on the last return filed if different from line 3

5 If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.
**Chase Home Finance LLC Its Successors and/or Assigns, 3415 Vision Drive, Mail Code OH4-7218, Columbus, OH 43219,**

**Caution: DO NOT SIGN** this form if a third party requires you to complete Form 4506-T, and lines 6 and 9 are blank.

6 **Transcript requested.** Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. •  _____

a **Return Transcript**, which includes most of the line items of a tax return as filed with the IRS. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days ... ☐

b **Account Transcript**, which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 30 calendar days ....... ☐

c **Record of Account**, which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years. Most requests will be processed within 30 calendar days ............................................................................................ ☒

7 **Verification of Nonfiling**, which is proof from the IRS that you **did not** file a return for the year. Most requests will be processed within 10 business days ..................................................................................................................................................................................... ☐

8 **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2006, filed in 2007, will not be available from the IRS until 2008. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 45 days ☐

**Caution:** If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.

9 **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

12 / 31 / 2008      12 / 31 / 2007      12 / 31 / 2006      __ / __ / __

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

Telephone number of taxpayer on line 1a or 2a ▸ (414) 529-4914

**Sign Here**

▸ *Edward B Kohler* | 6/6/09
Signature (see instructions) | Date

▸ *Patricia L. Kohler* | 6/6/09
Title (if line 1a above is a corporation, partnership, estate, or trust)

Spouse's signature | Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.

Cat. No. 37667N

Form **4506-T** (Rev. 1-2008)
©2009, All Rights Reserved

0812010609 [Doc Id 1975 Rev. 04.22.09]

1

# General Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different RAIVS teams, send your request to the team based on the address of your most recent return.

**Note.** You can also call 1-800-829-1040 to request a transcript or get more information.

## Chart for individual transcripts (Form 1040 series and Form W-2)

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team Stop 679 Andover, MA 05501 978-247-9255 |
| Alabama, Delaware, Florida, Georgia, North Carolina, Rhode Island, South Carolina, Virginia | RAIVS Team P.O. Box 47-421 Stop 91 Doraville, GA 30362 770-455-2335 |
| Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team Stop 6716 AUSC Austin, TX 73301 512-460-2272 |
| Alaska, Arizona, California, Colorado, Hawaii, Idaho, Iowa, Kansas, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | RAIVS Team Stop 37106 Fresno, CA 93888 559-456-5876 |
| Arkansas, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey, Ohio, Pennsylvania, West Virginia | RAIVS Team Stop 6705-B41 Kansas City, MO 64999 816-292-6102 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250 859-669-3592 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

**Individuals.** Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

**Corporations.** Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

**Partnerships.** Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

**All others.** See Internal Revenue Code section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 12 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send the form to this address. Instead, see *Where to file* on this page.

---

For Privacy Act and Paperwork Reduction Act Notice, see page 2.

Cat. No. 37667N

Form **4506-T** (Rev. 1-2008)

©2009, All Rights Reserved

0812010609 [Doc Id 1975 Rev. 04.22.09]



EDWARD B. KOHLER 02-07
PATRICIA L. KOHLER
5310 S SKYLINE DR.
NEW BERLIN, WI 53151

12-1295
750
74066005

1300

PAY TO THE
ORDER OF

DATE

$

DOLLARS

CHASE
JPMorgan Chase Bank, N.A.
Milwaukee, Wisconsin 53202
www.Chase.com

MP

MEMO

VOID

⑈:075000019⑈:            ⑈ 1300

---

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

CHASE

CASHIER'S CHECK

282111107 NEW 01/08 8810004306

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

9158201779  25-3
440

Date    06/06/2009

Remitter  PATRICIA KOHLER

Pay:    ONE THOUSAND FOUR HUNDRED FOURTEEN DOLLARS AND 00 CENTS

$ **********1,414.00  ***

Pay To The    CHASE HOME FINANCE, LLC
Order Of

Drawer: JPMORGAN CHASE BANK, N.A.

*Michael Andruss*

Senior Vice President
JPMorgan Chase Bank, N.A.
Columbus, OH

LOAN # 0330557°1

⑈9158201779⑈ ⑈044000037⑈ 75866135 7⑈

# MIN SUMMARY



Member is not associated with MIN

**Summary**

1001222-0000247628-8
5310 S SKYLINE DR
NEW BERLIN, WI 53151-3151

Active (Registered)
MOM
First Lien

| | | | |
|---|---|---|---|
| Reg Date | 04/19/2006 | | |
| County | Waukesha | | |
| Primary Borrower | KOHLER, EDWARD | | |
| Co-Borrower | KOHLER, PATRICIA | | |
| Note Amount | $220,800.00 | Note Date | 04/06/2006 |
| Servicer | 1000277 - Chase Home Finance LLC | | |
| Subservicer | N/A | | |
| Originating Organization | N/A | | |
| Property Preservation Co. | 1007849 - Safeguard Properties - PPC | | |

https://www.mersonline.org/mers/mininfo/minsummary.jsp?aux=964A5C1AA4EE05707...    10/7/2009

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 77 of 149   Document 1-2
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 53 of 81      77

COLLATERAL CHECK OFF SHEET :

X  ORIGINAL NOTE
   Note date matches document date on Deed of Trust/Mortgage
   Property address on Note matches the Closing Instructions
   All parties have signed and signatures are original

X  ORIGINAL ALLONGE TO THE NOTE (BNC to blank)
   NA   *Intervening Assignment of Note (Correspondent to BNC)

N/A  BALLOON ADDENDUM TO ADJUSTABLE RATE NOTE
   (40/30's only)
   N/A   Addendum is signed by all parties (Signatures Are Original)

X  ORIGINAL ADDENDUM TO THE NOTE (Interest Only Product)
   Addendum is signed by all parties (Signatures Are Original)

N/A  ORIGINAL ADDENDUM TO NOTE PREPAYMENT PENALTY CHARGE
   (MULTI STATE)
   N/A   Signed by all parties (Signatures Are Original)

N/A  PREPAYMENT RIDER (when Note indicates a rider on the prepayment clause)
   This can be a copy or an original

X  DEED OF TRUST/MORTGAGE (Cert. Copy)
   Vesting on Mtg matches vesting on the Closing Instructions
   Legal description on Mtg. matches the Title Commitment/Prelim
   All parties have signed and are notarized
   Notary section is complete with dates and county

X  RIDERS TO THE DEED OF TRUST/MORTGAGE (Copy)
   All Riders that are check on the Mtg. are attached
   Riders are signed by all parties

NA  ASSIGNMENT OF DEED OF TRUST/MORTGAGE (Cert. Copy)
   Not Required on a MERS Security Instrument
   NA   *Intervening Assignment of Mtg. (correspondent to BNC & BNC to
   MERS)

X  SPECIFIC CLOSING INSTRUCTIONS (Copy)
   Verified vesting and loan amount

X  PRELIMINARY TITLE REPORT OR TITLE COMMITMENT (Copy)
   Title Commitment must be signed (not required on a Preliminary Title
   Legal description
   Plat Map, Location Map or Survey

*On correspondent loans only

MIL008336KOHL
KOHLER, EDWARD B
KOHLER, PATRICIA L
5310 S SKYLINE DR
NEW BERLIN, WI 53151

Liz
_____
Print your name here

# MORTGAGE

DOCUMENT NUMBER
MIL008336

NAME & RETURN ADDRESS

BNC MORTGAGE, INC.
P.O. BOX 19656
IRVINE, CA 92623-9656

CERTIFIED TRUE
AND CORRECT COPY
DATED 4/10/06 INITIALS DSL

The undersigned hereby certifies this is a true and
Correct copy of the original document or instrument
PARCEL IDENTIFIER NUMBER     BNC Mortgage, Inc.
By:

———————————————————[Space Above This Line For Recording Data]———————————————

MIN 100122200002476288

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 6, 2006
together with all Riders to this document.
(B) "Borrower" is EDWARD B. KOHLER AND PATRICIA L. KOHLER, HUSBAND AND WIFE.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee
under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

WISCONSIN-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3050  1/01

-6A(WI) (0005).01
Page 1 of 15                   Initials
        VMP MORTGAGE FORMS - (800)521-7291

(D) **"Lender"** is BNC MORTGAGE, INC., A DELAWARE CORPORATION

Lender is a corporation
organized and existing under the laws of Delaware
Lender's address is P.O. BOX 19656, IRVINE, CA 92623-9656

(E) **"Note"** means the promissory note signed by Borrower and dated April 6, 2006
The Note states that Borrower owes Lender two hundred twenty thousand eight hundred
and 00/100                                                              Dollars
(U.S. $220,800.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than May 1, 2036

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: _____

-6A(WI) (0005).01                     Page 2 of 15                     Form 3050   1/01

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the
 COUNTY of WAUKESHA, WISCONSIN
 [Type of Recording Jurisdiction] [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HERETO AS EXHIBIT A.

which currently has the address of 5310 S SKYLINE DR
 [Street]
NEW BERLIN [City], Wisconsin 53151 [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(WI) (0005).01 Page 3 of 15 Initials: Form 3050 1/01

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

Initials: _____

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 84 of 149   Document 1-2    84
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 60 of 81

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying Reasonable

-6A(WI) (0005).01        Page 7 of 15      Initials: _____      Form 3050 1/01

Attorneys' Fees (as defined in Section 25) to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _____

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 86 of 149   Document 1-2        86
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 62 of 81

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 87 of 149   Document 1-2    87
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 63 of 81

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 88 of 149   Document 1-2       88
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 64 of 81

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25), property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25) and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, Reasonable Attorneys' Fees (as defined in Section 25); (b) to all sums secured by this Security Instrument; and (c) any excess to the clerk of the circuit court of the county in which the sale is held.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Accelerated Redemption Periods.** If the Property is a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church or owned by a tax exempt charitable organization, Borrower agrees to the provisions of Section 846.101 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate of 20 acres or less six months after a foreclosure judgment is entered. If the Property is other than a one- to four-family residence that is owner-occupied at the commencement of a foreclosure, a farm, a church, or a tax-exempt charitable organization, Borrower agrees to the provisions of Section 846.103 of the Wisconsin Statutes, and as the same may be amended or renumbered from time to time, permitting Lender, upon waiving the right to judgment for deficiency, to hold the foreclosure sale of real estate three months after a foreclosure judgment is entered.

25. **Attorneys' Fees.** If this Security Instrument is subject to Chapter 428 of the Wisconsin Statutes, "Reasonable Attorneys' Fees" shall mean only those attorneys' fees allowed by that Chapter.

Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                     EDWARD B. KOHLER                -Borrower

_____    _____ (Seal)
                                     PATRICIA L. KOHLER              -Borrower

_____ (Seal)    _____ (Seal)
                   -Borrower                                        -Borrower

_____ (Seal)    _____ (Seal)
                   -Borrower                                        -Borrower

_____ (Seal)    _____ (Seal)
                   -Borrower                                        -Borrower

   -6A(WI) (0005).01                    Page 14 of 15                    Form 3050   1/01

STATE OF WISCONSIN,

WAUKESHA    County ss:

The foregoing instrument was acknowledged before me this
by EDWARD B. KOHLER,    PATRICIA L. KOHLER

6TH DAY OF APRIL, 2006.

My Commission Expires: 4/27/08



Notary Public, State of Wisconsin

This instrument was prepared by

JESSICA IVAN

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 93 of 149   Document 1-2
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 69 of 81        93

### ADJUSTABLE RATE RIDER
### WITH INTEREST ONLY PAYMENT PERIOD

This Adjustable Rate Rider with Interest Only Payment Period is made this **6th day of April, 2006 ,**

and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), of the same date given by the undersigned (the "Borrower") to secure Adjustable Rate Note ("Note") to
**BNC MORTGAGE, INC., A DELAWARE CORPORATION**

, (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**5310 S SKYLINE DR, NEW BERLIN, WI 53151**

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

THE NOTE AND ITS ADDENDA CONTAIN PROVISIONS ALLOWING FOR AN INITIAL PERIOD OF MONTHLY PAYMENTS OF INTEREST ONLY AND FOR SUBSEQUENT MONTHLY PAYMENTS OF BOTH PRINCIPAL AND INTEREST.

**INTEREST ONLY PERIOD.**

The Note and its Addenda provide for an initial period of monthly payments of interest only, in the amount of $ 1,375.40 , as follows:

**INTEREST RATE AND MONTHLY PAYMENT CHANGES.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**I.** Sections 3 and 4 of the Note as modified by its Addenda provide for sixty (60) payments of interest only ("Interest Only Period") at the interest rates determined in accordance with Sections 2 and 4 of the Note.

**1. PAYMENTS**

(A) Time and Place of Payments.

I will pay interest during the Interest Only Period, and principal and interest thereafter, by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **June 1, 2006**
. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may own under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If on **May 1, 2036** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "maturity date."

I will make my monthly payments at **OOMC, Attn:Payment Processing, P.O. Box 44042, Jacksonville, FL. 32231-4042** , or at a different place if required by the Note Holder.

---

Interest Only Adj. Rate Note Rider

BNCARM

Page 1 of 3

Rev. 102703

Borrower Initials _EBK_ _AK_ ___ ___

**(B) Amount of My Interest Only Payments.**

The first twenty-four ( 24 ) monthly payments will be in the amount of U.S. $ 1,375.40 , which equals one twelfth 1/12) of the amount of yearly interest due on the principal at the initial rate. These payments are called "Interest Only Payments."

No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce the principal amount of this Note. Additional payments of principal may be made in accordance with Section 5 of the Note.

**(C) Monthly Payment Changes.**

After the Interest Only Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**2. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates.**

The interest rate I will pay may change on the first day of     May, 2008                     , and on that day every   6th   month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index.**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes.**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
**Six And 100/1000**                                                        percentage points
( 6.100    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes.**

The Interest rate I am required to pay at the first Change Date will not be greater than   10.475      %
or less than     7.475      %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 00/100   percentage point(s) ( 1.00  %) from the rate of interest I have been paying for the preceding 6 months. My interest  rate will never be greater than  14.475 % or less than  7.475 % .

**(E) Effective Date of Changes.**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Interest  Only  Adj.  Rate  Note  Rider                                                    Rev.  102703

Page 2 of 3

Borrower Initials

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

All other provisions of the Note and any Addenda are unchanged by this Addendum to Note for Interest Only Payments and remain in full force and effect.

**II.** By signing below, Borrower accepts and agrees to the terms and conditions contained in the Interest Only Payment Period Addendum.

_____ (Seal)  _____ (Seal)
EDWARD B. KOHLER                          PATRICIA L. KOHLER

_____ (Seal)  _____ (Seal)

_____ (Seal)  _____ (Seal)

_____ (Seal)  _____ (Seal)


I understand that for the interest only period I will **not** be reducing the principal balance (unless I make additional payments of principal, which may be made in accordance with Section 5 of this Note).

After sixty (60) payments if I only made my minimum payment, my principal balance will not be reduced.

_____ (Seal)  _____ (Seal)
EDWARD B. KOHLER                          PATRICIA L. KOHLER

_____ (Seal)  _____ (Seal)

_____ (Seal)  _____ (Seal)


Interest Only Adj. Rate Note Rider                                          Rev. 102703

Page 3 of 3

Borrower Initials _____

Lot 15, Block 4 Maryknoll, Heights Addition No. 1, being a Subdivision of a part of the West One-half (1/2) of the Southeast One-quarter (1/4) of Section Twenty-five (25), Township Six (6) North, Range Twenty (20) East, in the City of New Berlin, Waukesha County, Wisconsin.

For Informational Purposes Only
Tax Parcel Number:     NBC 1251-152
Property Address:       5310 S. Skyline Drive
                        New Berlin, WI  53151

(06-WI-0001.PFD/06-WI-0000/26)

FROM: BNC MORTGAGE, INC., A DELAWARE CORPORATION
1901 MAIN STREET
IRVINE, CA 92614
ATTN: FUNDING DEPT.

Document Date: **04/06/2006**

Closing Date: **04/11/2006**

TO: TITLE SERVICES OF          TO: TITLE SERVICES OF          Doc's Expiration Date: 04/30/2006
530 HARTBROOK DR
HARTLAND, WI 53209                                             Loan No.: **MIL008336**

ATTN:                          ATTN: BEVERLY BARNES           Application No.: **MIL008336**

RE: EDWARD B. KOHLER, PATRICIA L. KOHLER                      Title Order No.: **06-WI-0001**

                                                              Escrow No.:

Property Address: 5310 S SKYLINE DR
NEW BERLIN, WI 53151

## SPECIFIC CLOSING INSTRUCTIONS

### LOAN DOCUMENTS

We enclose the following documents necessary to complete the above referenced loan transaction:

( X ) Note                    (   ) Condominium Rider      ( X ) Rescission
( X ) Deed/Mortgage           (   ) Second Home Rider      ( X ) Adj. Rate Rider
( X ) Truth In Lending Disclosure ( X ) Regulation Z       ( X ) Important Application Information
( X ) Payment Letter          ( X ) Prepay Waiver Rider          (VMP Form 128)
( X ) Hazard Requirements     (   ) Assignment of Deed     ( X ) Customer Identification Form
(   ) 1 - 4 Family Rider      ( X ) Good Faith Est.

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure Statement to each Borrower and each person having any ownership interest in the security property. (Refer to General Closing Instructions for distribution of the Notices of Right to Cancel.)

### LOAN TERMS:

Loan Amount: $220,800.00                    Monthly Payment: $ 1,375.40
Sales Price:    0.00                        First Payment Date: 06/01/2006
Term (Months): 360                          Last Payment Date: 05/01/2036
Interest Rate:  7.475                       Adjustable Rate Loan: ( X ) Yes      (   ) No

Secondary Financing in the amount of: $     55,200.00       has been approved.

### CONDITIONS:

Prior to funding/closing, you will be notified in writing of any outstanding conditions. All conditions must be satisfied prior to disbursement of the loan proceeds.

### WE ARE TO BE AT NO EXPENSE IN THIS TRANSACTION.

Do not make any changes to any fees paid to any party or add any additional fees or charges without the express written approval of BNC Mortgage, Inc.

### TITLE INSURANCE REQUIREMENTS:

Lender's ALTA Title Policy is to be issued as follows:

Mortgagee Clause must show: BNC Mortgage, Inc., its successors and/or assigns.

1. This loan must record in first lien position prior to the Doc's Expiration Date noted above.

2. Vesting to read: **EDWARD B. KOHLER AND PATRICIA L. KOHLER, HUSBAND AND WIFE.**

3. ALTA Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan in the amount described herein referencing the recording information of the Security Instrument; (ii) general, specific, state, county, city, school or other taxes and assessments not yet due or payable; (iii) other items as permitted by us in writing; and (iv) the following items as shown on the preliminary title report, commitment, binder or equivalent dated:      **02/28/2006**
   Issue said form of Policy with items:

4. Title Policy must contain the following endorsements (or their equivalents):
   (X)    CLTA 100/ALTA 9 - "Off Record "/Comprehensive
   (X)    ALTA 8.1 - Environmental Protection
   (X)    CLTA 116 - Address/ Location
   (X)    CLTA 111.5/ALTA 6 - Variable Rate Mortgage
   (  )   ALTA 4 - Condominium
   (  )   ALTA 5 - Planned Unit Development
          ALTA 7 - Is required if the property is a Manufactured Housing
   (  )   Other:
   If the CC&R's contain a re-entry and/or reversionary clause, we will require a CLTA 100. 12 endorsement.

5. Survey exceptions are not acceptable.

6. **Provide original and one copy of the ALTA Title Policy to Quality Assurance, P.O. Box 16426, IRVINE, CA 92623-6426.**

7. Forward water or stock certificate showing lender as first Pledgee, where applicable.

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 98 of 149   Document 1-2        98
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 74 of 81

ESTIMATE OF FEES AND COSTS:

| ITEM | AMOUNT | POC | PAID TO |
|------|--------|-----|---------|
| Tax Service Fee | $ 65.00 | | To LENDER |
| FLOOD CERTIFICATION | $ 17.00 | | To LENDER |
| ORIGINATION FEE | $ 1,298.00 | | To LENDER |
| Appraisal Fee | $ 275.00 | | To BROKER |
| CPL Fee | $ 20.00 | | To CLOSINGPROTECTIONLETTER.COM |

Subtotal of Estimated Fees and Costs:  $ 1,675.00

**PER DIEM INTEREST:**
From: 04/11/2006       To: 05/01/2006
(Anticipated Closing Date)

20      days at      45.85      per day.   Subtotal of Per Diem Interest:   $ 917.00

IMPOUNDS/ESCROWS:
Impounds/escrow funds will be deducted from the amount wired.

| | | | | | | |
|---|---|---|---|---|---|---|
| Hazard Insurance | 4 month(s) at | $ 50.92 | per month = | $ 203.68 | | |
| | month(s) at | $ | per month = | $ | | |
| County Property Taxes | 6 month(s) at | $ 441.38 | per month = | $ 2,648.28 | | |
| | month(s) at | $ | per month = | $ | | |
| | month(s) at | $ | per month = | $ | | |

Aggregate Escrow Adjustment: $ -390.53

| | |
|---|---|
| Subtotal of Impounds/Escrow: | $ 2,461.43 |
| Mortgage Broker Fee Paid by Lender: | $ |
| LENDER FEES AND COSTS: | $ 1,400.00 |
| TOTAL WIRE AMOUNT: | $ 216,021.57 |

**HUD-1 SETTLEMENT STATEMENT:**
The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Send the certified final HUD-1 Settlement Statement to us at the following address within 24 hours of settlement: Quality Assurance, P.O. Box 16426, Irvine, CA 92623-6426; or fax to (866) 471-6067

**ADDITIONAL INFORMATION:**
Borrowers must sign and date these closing instructions.

If for any reason this loan does not close within 24 hours of your receipt of funds, immediately return all documents to us and wire all funds to:
☐ Lehman Brothers, FSB, ABA 231170136, B N C Mortgage Clearing Acct. 124700002610

The wire of all funds should not be later than 12:00 noon, New York time, on the business day after the scheduled closing. Deutsche Bank is the intended third party beneficiary of this agreement.

All documents with the exception of those to be recorded (Security Instrument, Riders, Corporation Assignment(s), Grant Deed, Quit Claim, Power of Attorney, etc.) must be returned to our office within 24 hours of the signing. Please return certified copies of those documents that are to be recorded.

_Beverly A. Basner_
Settlement Agent

SPECIFIC CLOSING INSTRUCTIONS

Bns17b3
12/30/2005 SH

**PAYOFF REQUIREMENTS:**
It is a condition to the funding of this loan that the debts listed on the **CONDITIONAL LOAN APPROVAL** be paid.
Indicate payoffs on the HUD-1 Settlement Statement or provide other satisfactory evidence of payoff.

| DEBTS OR LIENS REQUIRED TO BE PAID THROUGH ESCROW | *Estimated Payoff Amount: |
|---|---|
| LANDMARK CREDIT UNIO | $14,679.00 |
| WASH MUTUAL/PROVIDIA | $5,827.00 |
| WASH MUTUAL/PROVIDIA | $3,389.00 |
| HSBC NV | $1,997.00 |
| KOHLS DEP ST | $1,301.00 |
| HSBC NV | $1,085.00 |
| CAPITAL 1 BK | $727.00 |
| THD/CBUSA | $500.00 |
| TNB - TARGET | $468.00 |
| American Family | $58.70 |
| WAMU | $178,670.20 |
| Mid America | $31,789.42 |
| | |
| TOTAL | $240,491.32 |

*All liens of record must be paid in accordance with mortgagee's Pay off Demand Statement.
If you have any questions regarding any of these instructions, please contact the Funding Department at (949) 260-6000.

BORROWER ACKNOWLEDGMENT: I/We have read and acknowledged receipt of these closing instructions.

| | | | |
|---|---|---|---|
| Borrower **EDWARD B. KOHLER** | Date | Borrower **PATRICIA L. KOHLER** | Date |
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

**ACKNOWLEDGED AND AGREED:**

| | | | |
|---|---|---|---|
| Settlement Agent | Date | Title Officer **BEVERLY BARNES** | Date |

**SPECIFIC CLOSING INSTRUCTIONS**

Bic637cl
Page 3 of 3

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 100 of 149   Document 1-2   100
Case 09-35931-pp   Doc 102-3   Filed 05/26/11   Page 76 of 81

# Lawyers Title Insurance Corporation
A LANDAMERICA COMPANY

LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, herein called the Company, for valuable consideration, hereby commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest covered hereby in the land described or referred to in Schedule A, upon payment of the premiums and charges therefor; all subject to the provisions of Schedules A and B and to the Conditions and Stipulations hereof.

This Commitment shall be effective only when the identity of the proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A hereof by the Company, either at the time of the issuance of this Commitment or by subsequent endorsement.

This Commitment is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate six (6) months after the effective date hereof or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue such policy or policies is not the fault of the Company. This Commitment shall not be valid or binding until countersigned by an authorized officer or agent.

IN WITNESS WHEREOF, LAWYERS TITLE INSURANCE CORPORATION has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Commitment to become valid when countersigned by an authorized officer or agent of the Company.

LAWYERS TITLE INSURANCE CORPORATION

Attest: _____    (SEAL)    By _____
                            Secretary                                                                       President

## Conditions and Stipulations

1.  . The term "mortgage," when used herein, shall include deed of trust, trust deed, or other security instrument.

2.  If the proposed Insured has or acquires actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions and Stipulations.

3.  Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in under taking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and Stipulations and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4.  Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

ALTA Commitment - 1966
Cover Page
Form 1004-268                                        **ORIGINAL**

APR-03-2006  11:04                            262 369 1521                                        P.07

LAWYERS TITLE INSURANCE COMPANY

Commitment Number: 06-WI-0001

## SCHEDULE A

1. Commitment Date:    February 28, 2006 at 8 :00 AM ✓

2. Policy (or Policies) to be issued:

   Policy Amount

   (a) Owner's Policy         ( ALTA Own. Policy (10/17/92) )
       Proposed Insured:

   (b) Loan Policy            ( ALTA Loan Policy (10/17/92) )          $ 220,800.00
       Proposed Insured:
       BNC MORTGAGE INC , its successors and/or assigns as
       their respective interests may appear.

   (c) Jr. Loan. Policy       ( ALTA Loan Policy (10/17/92) )          $ 55,200.00
       Proposed Insured:
       BNC MORTGAGE INC. its successors and/or assigns as their
       respective interests may appear.

3. Fee Simple interest in the land described in this Commitment is owned, at the Commitment Date, by:
   EDWARD B. KOHLER and PATRICIA L. KOHLER, husband and wife

4. The land referred to in the Commitment is described as follows:

   Lot 15, Block 4 Maryknoll, Heights Addition No. 1, being a Subdivision of a part of the West One-half (1/2) of
   the Southeast One-quarter (1/4) of Section Twenty-five (25), Township Six (6) North, Range Twenty (20)
   East, in the City of New Berlin, Waukesha County, Wisconsin.

   For Informational Purposes Only
   Tax Parcel Number:    NBC 1251-152 ✓
   Property Address:     5310 S. Skyline Drive
                         New Berlin, WI 53151

TITLE SERVICES OF HARTLAND, LLC

By _____
     BEVERLY BARNES

ALTA Commitment
Schedule A (10/17/92)

(06-WI-0001 PFD/06-WI-0000/16)

APR-03-2006  11:04                    262 369 1521                          P.04

LAWYERS TITLE INSURANCE COMPANY

Commitment Number: 06-WI-0001

## SCHEDULE B - SECTION I
### REQUIREMENTS

The following requirements must be met:

1.  Pay us the premiums, fees and charges for the policy.

2.  Documents satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded.

3.  Mortgage from Edward B. Kohler and Patricia L. Kohler, husband and wife, to BNC Mortgage, Inc., securing the principal amount of $220,800.00.

4.  Mortgage from Edward B. Kohler and Patricia L. Kohler, husband and wife, to BNC Mortgage, Inc., securing the principal amount of $55,200.00.

    NOTE: Date of vesting acquisition JUNE 24, 1993

ALTA Commitment
Schedule B - Section I (10/17/92)

(06-WI-0001.PFD/06-WI-0000/15)

APR-03-2006  11:04                          262 369 1521                              P.05

LAWYERS TITLE INSURANCE COMPANY

Commitment Number: 06-WI-0001

## SCHEDULE B - SECTION II
### EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction.

1.  Facts which would be disclosed by a comprehensive survey of the premises herein described.

2.  Rights or claims of parties in possession.

3.  Mechanics', contractors', or Materialmens' liens and lien claims, if any, where no notice thereof appears of record.

4.  Any change in the title occurring subsequent to the effective date of this Commitment and prior to the date of issuance of the title policy.

5.  Easements, or claims or easements, not shown by the public records.

6.  Liens or deferred charges not shown on the tax roll, for installations and connections of water and sewer laterals, mains and service pipes.

7.  Special Taxes or assessments and special charges, if any, payable with the taxes levied or to be levied for the year 2005 and subsequent years.

8.  General taxes for the year 2005 and subsequent years, not yet due and payable.

9.  Utility Easement granted by an instrument recorded in the Office of the Register of Deeds for Waukesha County, Wisconsin as Document No. 378437.

10. Covenants, conditions and restrictions contained in the Declaration of Restrictions recorded as Document No. 503897 but omitting any covenant, condition or restriction, if any, based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that the covenants, condition or restriction (a) is exempt under Title 42 or the United States Code, or (b) relates to handicap, but does not discriminate against handicapped persons.

11. Utility Easement granted by an instrument recorded as Document No. 503899.

12. Mortgage from Edward B. Kohler and Patricia L. Kohler, husband and wife, to Washington Mutual Bank, FA dated September 8, 2004 and recorded in the Waukesha County Register of Deeds Office on September 14, 2004 as Document No. 3204101.

13. Mortgage from Edward B. Kohler and Patricia L. Kohler, husband wife, to MidAmerica Bank, FSB dated November 4, 2004 and recorded in the Waukesha County Register of Deeds for Waukesha County on November 17, 2004 as Document No. 3224460.

Any questions regarding this commitment, please contact Title Services at 262-369-0946

cc: Family First Mortgage

ALTA Commitment
Schedule B - Section II (10/17/92)

(06-WI-0001.PFD/06-WI-0000/9)

APR-03-2006  11:04          262 369 1521                    P.06

**Location Map**

| Borrower/Client | Edward Kohler | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 5310 S. Skyline Drive | | | | | |
| City | New Berlin | County | Waukesha | State | WI | Zip Code 53151-8064 |
| Lender | Family First Mortgage | | | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

MIL00838
KOHLER, EDWARD B
KOHLER, PATRICIA L
5310 S SKYLINE DR
NEW BERLIN, WI 53151

04/12

# LEHMAN



EXHIBIT
D

DR
R205825



LH063006



LH06PC
MIL00838
KOHLER, EDWARD

# COPY REQUEST LOG SHEET

File name: __MIL008338__    Loan # __Kohler__

## FAX REQUEST

X 233305519

Copy was made on: _____

By: _____    Confirmation filed in file: ☐

☐ FILE    ☐ MORTG    ☐ TITLE    ☐ NOTE    ☐ ASSIGNMENT

☐ OTHER _____

Filed back by: _____ Date: _____

## MAIL REQUEST

Copy was made on: __8/7/06__

By: __Melissa__

☐ FILE    ☑ MORTG    ☐ TITLE    ☑ NOTE    ☐ ASSIGNMENT

☐ OTHER _____

Copies were given to: __J.H__

Date to be mailed out: __8/18/06__

File is filed back by: _____ Date: _____

# BALLOON NOTE
## (Fixed Rate)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| April 6, 2006 | Irvine | California |
|---|---|---|
| [Date] | [City] | [State] |

5310 S SKYLINE DR, NEW BERLIN, WI 53151

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 55,200.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is LEHMAN BROTHERS BANK, FSB

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.725 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

Solely for the purpose of computing interest, a monthly payment received by the Note Holder within 30 days prior to or after the date it is due will be deemed to be paid on such due date.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on June 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to interest before Principal. If, on May 1, 2021, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at OOMC, Attn:Payment Processing, P.O. Box 44042, Jacksonville, FL. 32231-4042 or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 514.25

---

**MULTISTATE BALLOON FIXED RATE NOTE** - Single Family - **FANNIE MAE UNIFORM INSTRUMENT**
**Amended for Wisconsin**                                  Page 1 of 3
VMP-870N(WI) (0008).01                          VMP MORTGAGE FORMS - (800)521-7291

Form 3260 1/01

Initials

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15                calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Form 3268  4/01

Initials: _____

-870N(WI) (0008).01

Page 2 of 3

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
EDWARD B. KOHLER                  -Borrower

_____ (Seal)
PATRICIA L. KOHLER                -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

_____ (Seal)
                                  -Borrower

*[Sign Original Only]*


-870N(WI) (0006).01

Page 3 of 3

Form 3260 1/01

APPLICATION NUMBER:  MIL008338
BORROWERS NAME:  KOHLER, EDWARD B
KOHLER, PATRICIA L

BORROWERS ADDRESS:  5310 S SKYLINE DR
NEW BERLIN, WI  53151

## **ALLONGE TO NOTE**

PAY TO THE ORDER OF:

_____

WITHOUT RECOURSE **LEHMAN BROTHERS BANK, FSB**

_____

JAMIE LANGFORD
VICE PRESIDENT

# LOAN MODIFICATION AGREEMENT

Borrower ("I")[1]:  **Edward B. Kohler and Patricia L. Kohler**
Lender ("Lender"):  **Chase Home Finance LLC**
Date of first lien Security Instrument (the "Mortgage") and Note (the "Note"): **April 6, 2006**
Loan Number: 23305519 (the "Loan")
Property Address: **5310 S Skyline Drive, New Berlin, WI 53151** (the "Property")

If my representations in Section 1 continue to be true in all material respects, then the provisions of Section 2 of this Loan Modification Agreement ("Agreement") will, as set forth in Section 2, amend and supplement (i) the Mortgage on the Property, and (ii) the Note secured by the Mortgage. The Mortgage and Note together, as may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement have the meaning given to them in the Loan Documents.

I have provided confirmation of my financial hardship and documents to permit verification of all of my income to determine whether I qualify for the offer described in this Agreement. This Agreement will not take effect unless and until the Lender signs it.

1.  **My Representations.** I represent to Lender and agree:

    A.  I am experiencing a financial hardship, and as a result, am either in default under the Loan Documents or a default is imminent.

    B.  The Property is neither in a state of disrepair, nor condemned.

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents.

    D.  I am not a party to any litigation involving the Loan Documents, except to the extent I may be a defendant in a foreclosure action.

    E.  I have provided documentation for **all** income that I earn.

    F.  All documents and information I provide pursuant to this Agreement are true and correct.

2.  **The Modification.** The Loan Documents are hereby modified as of **June 1, 2009** (the "Modification Effective Date") and all unpaid late charges are waived. The Lender agrees to suspend any foreclosure activities so long as I comply with the terms of the Loan Documents, as modified by this Agreement. The Loan Documents will be modified, and the first modified payment will be due on the date set forth in this Section 2:

    A.  The Maturity Date will be: **May 1, 2021.**

    B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) and may include amounts towards taxes, insurance, or other assessments. The new principal balance of my Note is **$54,910.93** (the "New Principal Balance").

    C.  Interest will begin to accrue as of **May 1, 2009.** The first new monthly payment on the New Principal Balance will be due on **June 1, 2009,** and monthly on the same date

---

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

LOAN MODIFICATION AGREEMENT    page 1 of 4 pages    WF101

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 112 of 149   Document 1-2   112
Case 09-35931-pp   Doc 102-4   Filed 05/26/11   Page 7 of 44

thereafter.

My payment schedule for the modified Loan is as follows:

I promise to pay interest on the New Principal Balance at the rate of **6.875%** annually. I promise to make consecutive monthly payments of principal and interest in the amount of **$373.22**, which is an amount sufficient to amortize the New Principal Balance to the remaining Balloon Payment over a period of **144** months.

If the Loan Documents currently provide for a balloon, the Balloon Amount resulting from this modification may be different. The Balloon Payment of **$42,087.39** will be due on the Maturity Date unless due earlier in accordance with Section 2.D.

The above terms in this section 2.C shall supersede any provisions to the contrary in the Loan Documents, including but not limited to provisions for an adjustable or step interest rate.

D.  I agree to pay in full any other amounts still owed under the Loan Documents, including the Balloon Payment, as identified within this Agreement by the earliest of the date I sell or transfer an interest in the Property, subject to Section 3.E below, the date I pay the entire Interest Bearing Principal Balance, or the Maturity Date.

E.  I will be in default if I do not (i) pay the full amount of a monthly payment on the date it is due, or (ii) comply with the terms of the Loan Documents, as modified by this Agreement. If a default rate of interest is permitted under the current Loan Documents, then in the event of default, the interest that will be due on the Interest Bearing Principal Balance will be the rate set forth in section 2.C.

3.  **Additional Agreements.** I agree to the following:

A.  That this Agreement shall supersede the terms of any modification, forbearance or workout plan, if any, that I previously entered into with Lender.

B.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan. This Agreement does not waive future escrow requirements. If the Loan includes collection for tax and insurance premiums, this collection will continue for the life of the Loan.

C.  That the Loan Documents are composed of valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

D.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

E.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without the Lender's prior written consent, the Lender may, at its

LOAN MODIFICATION AGREEMENT                  page 2 of 4 pages                                    WF101

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 113 of 149   Document 1-2      113
Case 09-35931-pp   Doc 102-4   Filed 05/26/11   Page 8 of 44

option, require immediate payment in full of all sums secured by the Mortgage. However, the Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If the Lender exercises this option, the Lender shall give me notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

F.     That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. In any event, this Agreement may not be assigned to, or assumed by, a buyer of the Property.

G.     If any document is lost, misplaced, misstated, or inaccurately reflects the true and correct terms and conditions of the Loan Documents as amended by this Agreement, within ten (10) days after my receipt of the Lender's request, I will execute, acknowledge, initial, and deliver to the Lender any documentation the Lender deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). If I fail to do so, I will be liable for any and all loss or damage which the Lender reasonably sustains as a result of my failure.

H.     All payment amounts specified in this Agreement assume that payments will be made as scheduled.

I.     If the Borrower(s) received a discharge in a Chapter 7 bankruptcy subsequent to the execution of the Loan Documents, the Lender agrees that such Borrower(s) will not have personal liability on the debt pursuant to this Agreement.

J.     That in agreeing to the changes to the original Loan Documents as reflected in this Agreement, the Lender has relied upon the truth and accuracy of all of the representations made by the Borrower(s), both in this Agreement and in any documentation provided by or on behalf of the Borrower(s) in connection with this Agreement. If the Lender subsequently determines that such representations or documentation were not truthful or accurate, the Lender may, at its option, rescind this Agreement and reinstate the original terms of the Loan Documents as if this Agreement never occurred.

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

In Witness Whereof, the Lender and I have executed this Agreement.

**Chase Home Finance LLC**

_____
Signature                        Date
_____, Vice President

_____
Signature                        Date
Edward B. Kohler

_____
Signature                        Date
Patricia L. Kohler

LOAN MODIFICATION AGREEMENT          page 4 of 4 pages          WF101

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 115 of 149   Document 1-2   115
Case 09-35931-pp   Doc 102-4   Filed 05/26/11   Page 10 of 44

# DOCUMENT CORRECTION AGREEMENT
## ("Agreement")

**Loan Number 23305519 (the "Loan")**

**AGREEMENT TO CORRECT MISSTATED DOCUMENTS AND TO PROVIDE ADDITIONAL DOCUMENTATION OR FEES:** In consideration of Chase Home Finance LLC ("Chase") modifying the Loan (the "Modification") as requested by the undersigned ("Borrower"), and regardless of the reason for any loss, misplacement, or inaccuracy in the modification agreement or any other document prepared in connection with the Modification, Borrower agrees as follows: if any document is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of the Modification, upon request of Chase, Borrower will comply with Chase's request to execute, acknowledge, and deliver to Chase any documentation ("Replacement Documents") Chase deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s). Borrower agrees to deliver the Replacement Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower also agrees that upon request Borrower will pay to Chase any additional sum ("Fee") previously disclosed to Borrower as a cost or fee associated with the Modification, which, for whatever reason, was not previously collected.

**REQUEST BY CHASE:** Any request under this Agreement made by Chase, (including assignees and persons acting on behalf of Chase), shall be <u>prima facie</u> evidence of the necessity for same. A written statement addressed to Borrower, first class postage prepaid, at the mailing address indicated in Chase's records shall be considered conclusive evidence of receipt by Borrower of the request for Replacement Documents.

**BORROWER LIABILITY:** If Borrower fails or refuses to execute, acknowledge, and deliver the Replacement Documents or Fee to Chase more than (10) days after being requested to do so by Chase, Borrower shall be liable for any and all loss or damage which Chase reasonably sustains thereby, including, but not limited to all reasonable attorneys' fees and costs incurred by Chase. In addition, Chase may elect to declare the Modification null and void in which case the Loan shall be payable at the rate and on the terms as existed prior to the Modification. Any funds received by Chase in conjunction with the Modification shall be retained by Chase and applied to the Loan as determined by Chase in its discretion.

This agreement shall inure to the benefit of Lender's successors and assigns and is binding upon the heirs, devisees, personal representatives, successors and assigns of Borrower(s).

_Edward B Kohler_ 5/26/09
Signature                     Date
**Edward B. Kohler**

_Patricia L. Kohler_ 5/26/09
Signature                     Date
**Patricia L. Kohler**

1

3382191

## MORTGAGE

|||||||||||||||||||
WC3382191-007

DOCUMENT NUMBER:
MIL008338

NAME & RETURN ADDRESS:
LEHMAN BROTHERS BANK, FSB
P.O. BOX 19656
IRVINE, CA 92623-9656

MIL008338

LH06PC

REGISTER'S OFFICE
WAUKESHA COUNTY, WI
RECORDED ON

05-01-2006   8:37 AM

MICHAEL J. HASSLINGER
REGISTER OF DEEDS

REC. FEE:        15.00
REC. FEE-CO:      5.00
REC. FEE-ST:      2.00
TRAN. FEE:
TRAN. FEE-STATE:
PAGES:            7

PARCEL IDENTIFIER NUMBER:

MIN 10012220002476320
   THIS MORTGAGE is made this 6th          day of April, 2006                    , between the Mortgagor,
EDWARD B. KOHLER AND PATRICIA L. KOHLER, HUSBAND AND WIFE.

(herein "Borrower"), and the Mortgagee,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. LEHMAN BROTHERS BANK, FSB

, ("Lender") is organized and
existing under the laws of the United States                                  , and has an address of
P.O. BOX 19656, IRVINE, CA 92623-9656

   WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 55,200.00                       , which
indebtedness is evidenced by Borrower's note dated April 6, 2006                    and extensions and renewals
thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not
sooner paid, due and payable on May 1, 2021                          ;
   TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all
other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey
to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with
power of sale, the following described property located in the County of WAUKESHA
                                        , State of Wisconsin:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HERETO AS EXHIBIT A.

which has the address of 5310 S SKYLINE DR                                                    [Street]
NEW BERLIN                              [City], Wisconsin 53151          [Zip Code] (herein "Property Address");

   TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances
and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the
foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as
the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this
Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and
assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the
Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.
   Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and
convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that

**WISCONSIN** - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

-76N(WI) (0308).01

Form 3850
Amended 2/9?

Page 1 of 4                                Initials:

VMP Mortgage Solutions (800)521-7291

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. If an amount larger than one full payment on the Note is more than 10 days overdue (or the first or last payment is more than 40 days overdue), or if any other condition in the Note or this Mortgage (including paragraph 16 hereof) is violated, and such breach materially impairs the condition, value or protection of or Lender's right in the Property, or materially impairs Borrower's ability to pay amounts due, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 15 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the clerk of the Circuit Court of the County in which the sale is held.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before the sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, and at any time prior to the expiration of any period of redemption following sale of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents

VMP-76N(WI) (9308).01     Page 3 of 4     Initials _____     Form 3850

collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any, unless applicable law provides otherwise.

**21. Accelerated Redemption Periods.** If (i) the Property is twenty (20) acres or less in size, (ii) Lender in an action to foreclose this Mortgage waives all right to a judgment for deficiency and (iii) Lender consents to Borrower's remaining in possession of the Property, then the sale of the Property may be six (6) months from the date the judgment is entered if the Property is owner-occupied at the time of the commencement of the foreclosure action. If conditions (ii) and (iii) above are met and the Property is not owner-occupied at the time of the commencement of the foreclosure action, then the sale of the Property may be three (3) months from the date the judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be two (2) months from the date the judgment is entered.

## REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

### NOTICE TO CUSTOMER
(a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON ALL PAGES, EVEN IF OTHERWISE ADVISED.
(b) DO NOT SIGN IF IT CONTAINS ANY BLANK SPACES.
(c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

_____ (Seal) -Borrower
EDWARD B. KOHLER

_____ (Seal) -Borrower
PATRICIA L. KOHLER

*[Sign Original Only]*

**STATE OF WISCONSIN,** WAUKESHA County ss:
The foregoing instrument was acknowledged before me this 6TH DAY OF APRIL, 2006 by
EDWARD B. KOHLER, PATRICIA L. KOHLER

My Commission Expires: 4/27/08

Notary Public, State of Wisconsin

This instrument was prepared by JESSICA IVAN

(Seal)

BEVERLY A. BARNES — NOTARY PUBLIC STATE OF WISCONSIN

-76N(WI) (0308).01    Page 4 of 4    Form 3850

LEHMAN BROTHERS BANK, FSB
P.O. BOX 19656
IRVINE, CALIFORNIA 92623-9656
──────────────── [Space Above This Line For Recording Data] ────────────────
LOAN #: MIL008338

## Balloon Rider

THIS BALLOON RIDER is made this **6th** **day** **of** **April, 2006** ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note (the "Note") to
**LEHMAN BROTHERS BANK, FSB**
(the "Lender") of the same date and covering the property described in the Security Instrument
and located at:

**5310 S SKYLINE DR, NEW BERLIN, WI 53151**

[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is
called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and
this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by
transfer and who is entitled to receive payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the
Security Instrument, Borrower and Lender further covenant and agree as follows (despite
anything to the contrary contained in the Security Instrument or the Note):

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE
ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE.
THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT
TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF
OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER,
WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND
YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY
HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED
WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME
LENDER.**

──────────────────────────────────────────────
**BALLOON RIDER-MULTISTATE (01/97)**

Page 1 of 2

BALRD

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Balloon Rider.

_Edward B Kohler_                          _4/6/06_
_____          _____
EDWARD B. KOHLER         -Borrower          Date

_Patricia L. Kohler_                          _4/6/06_
_____          _____
PATRICIA L. KOHLER       -Borrower          Date

_____          _____
                         -Borrower          Date

_____          _____
                         -Borrower          Date

_____          _____
                         -Borrower          Date

_____          _____
                         -Borrower          Date

**BALLOON RIDER-MULTISTATE (01/97)**

Page 2 of 2

BALRD2

Lot 15, Block 4 Maryknoll, Heights Addition No. 1, being a Subdivision of a part of the West One-half (1/2) of the Southeast One-quarter (1/4) of Section Twenty-five (25), Township Six (6) North, Range Twenty (20) East, in the City of New Berlin, Waukesha County, Wisconsin.

For Informational Purposes Only
Tax Parcel Number:     NBC 1251-152
Property Address:       5310 S. Skyline Drive
                        New Berlin, WI  53151

(06-WI-0001.PFD/06-WI-0000/26)

LAWYERS TITLE INSURANCE COMPANY

**SCHEDULE A**

File Number: 06-WI-0001                    Policy Number: G47-3468341
Amount of Insurance: $ 55,200.00           Premium: $ 100.00

Date of Policy: May 1, 2006 at 08:40 AM

1.  Name of Insured:

    Mortgage Electronic Registration Systems, Inc. "MERS" solely as nominee for BNC MORTGAGE INC ; its
    successors and/or assigns as their respective interests may appear.

2.  The estate or interest in the land which is encumbered by the insured mortgage is:
    Fee Simple

3.  Title to the estate or interest in the land is vested in:
    Edward B. Kohler and Patricia L. Kohler husband and wife.

4.  The insured mortgage and assignments thereof, if any, are described as follows:

    Mortgage executed by EDWARD B. KOHLER and PATRICIA L. KOHLER, husband and wife, to
    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. "MERS" solely as nominee for BNC
    MORTGAGE, INC. dated April 6, 2006 and recorded in the office of the Register of Deeds for Waukesha
    County on May 5, 2006 as Document No. 3382191, in the originally stated amount of $55,200.00.

5.  The land referred to in this policy is described as follows:

    Lot 15, Block 4 Maryknoll, Heights Addition No. 1, being a Subdivision of a part of the West One-half (1/2) of
    the Southeast One-quarter (1/4) of Section Twenty-five (25), Township Six (6) North, Range Twenty (20)
    East, in the City of New Berlin, Waukesha County, Wisconsin.

    For Informational Purposes Only
    Tax Parcel Number:    NBC 1251-152
    Property Address:     5310 S. Skyline Drive
                          New Berlin, WI 53151

**TITLE SERVICES OF HARTLAND, LLC**

By: *Beverly a. Barnes*
    BEVERLY BARNES

ALTA Loan/Construction Loan Policy
Schedule A (10/17/92)

(06-WI-0001.PFD/06-WI-0000/113)

LAWYERS TITLE INSURANCE COMPANY

## SCHEDULE B

File Number: 06-WI-0001                    Policy Number: G47-3468341

### EXCEPTIONS FROM COVERAGE
### PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Easements, or claims or easements, not shown by the public records.

2.  Special Taxes or assessments and special charges, if any, payable with the taxes levied or to be levied for the year 2006 and subsequent years.

3.  General taxes for the year 2006 and subsequent years, not yet due and payable.

4.  Utility Easement granted by an instrument recorded in the Office of the Register of Deeds for Waukesha County, Wisconsin as  Document No. 378437.

5.  Covenants, conditions and restrictions contained in the Declaration of Restrictions recorded as Document No. 503897 but omitting any covenant, condition or restriction, if any, based on race, color, religion, sex, handicap, familial status, or  national origin unless and only to the extent that the covenants, condition or restriction (a) is exempt under Title 42 or the United States  Code, or (b) relates to handicap, but does not discriminate against handicapped persons.

6.  Utility Easement granted by an instrument recorded as Document No. 503899.

7.  A mortgage to secure an original indebtedness of $220,800.00, and any other amounts or obligations secured thereby, recorded May 1, 2006 as Document No. 3382190. Dated: April 6, 2006; Mortgagor: Edward B. Kohler and Patricia L. Kohler, husband and wife; Mortgagee/Beneficiary: Mortgage Electronic Registration Systems, Inc."MERS", solely as nominee for BNC Mortgage, Inc..

### END OF SCHEDULE B

ALTA Loan/Construction Loan Policy
Schedule B - Part I (10/17/92)

(06-WI-0001.PFD/06-WI-0000/114)

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 125 of 149   Document 1-2    125
Case 09-35931-pp   Doc 102-4   Filed 05/26/11   Page 20 of 44

LAWYERS TITLE INSURANCE COMPANY

## SCHEDULE B

File Number: 06-WI-0001                                      Policy Number: G47-3468341

### PART II

In addition to the matters set forth in Part I of this Schedule, the title to the estate or interest in the land described or referred to in Schedule A is subject to the following matters, if any be shown, but the Company insures that these matters are subordinate to the lien or charge of the insured mortgage upon the estate or interest:

NONE

ALTA Loan/Construction Loan Policy
Schedule B - Part II (10/17/92)

(06-WI-0001.PFD/06-WI-0000/115)

**ENDORSEMENT**

Attached to Policy Number
G47-3468341

Issued by
LAWYERS TITLE INSURANCE COMPANY

The insurance afforded by this endorsement is only effective if the land is used or is to be used primarily for residential purposes.

The Company insures the insured against loss or damage sustained by reason of lack of priority of the lien of the insured mortgage over:

(a)    any environmental protection lien which, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge, or filed in the records of the clerk of the United States District Court for the district in which the land is located, except as set forth in Schedule B; or

(b)    any environmental protection lien provided for by any state statute in effect at Date of Policy, except environmental protection liens provided for by the following state statutes:

Wisconsin Statute 292

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

May 1, 2006

**TITLE SERVICES OF HARTLAND, LLC**

By: *Beverly A. Barnes*
BEVERLY BARNES

ALTA ENDORSEMENT - Form 8.1
(Environmental Protection Lien)
(3/12/88)

(06-WI-0001.PFD/06-WI-0000/117)

**ENDORSEMENT**

Attached to Policy Number
G47-3468341

Issued by
LAWYERS TITLE INSURANCE COMPANY

The Company insures the owner of the indebtedness secured by the insured mortgage against loss or damage sustained by reason of:

1. The existence at Date of Policy of any of the following:

   (a) Covenants, conditions or restrictions under which the lien of the mortgage referred to in Schedule A can be divested, subordinated or extinguished, or its validity, priority or enforceability impaired.

   (b) Unless expressly excepted in Schedule B:

      (1) Present violations on the land of any enforceable covenants, conditions or restrictions, nor do any existing improvements on the land violate any building setback lines shown on a plat of subdivision recorded or filed in the public records.

      (2) Any instrument referred to in Schedule B as containing covenants, conditions or restrictions on the land which, in addition, (i) establishes an easement on the land; (ii) provides a lien for liquidated damages; (iii) provides for a private charge or assessment; (iv) provides for an option to purchase, a right of first refusal or the prior approval of a future purchaser or occupant.

      (3) Any encroachment of existing improvements located on the land onto adjoining land, or any encroachment onto the land of existing improvements located on adjoining land.

      (4) Any encroachment of existing improvements located on the land onto that portion of the land subject to any easement excepted in Schedule B.

      (5) Any notices of violation of covenants, conditions and restrictions relating to environmental protection recorded or filed in the public records.

2. Any future violation on the land of any existing covenants, conditions or restrictions occurring prior to the acquisition of title to the estate or interest in the land by the insured, provided the violation results in:

   (a) invalidity, loss of priority, or unenforceability of the lien of the insured mortgage; or

   (b) loss of title to the estate or interest in the land if the Insured shall acquire title in satisfaction of the indebtedness secured by the insured mortgage.

3. Damage to existing improvements, including lawns, shrubbery or trees:

   (a) which are located on or encroach upon that portion of the land subject to any easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved;

   (b) resulting from the future exercise of any right to use the surface of the land for the extraction or development of minerals excepted from the description of the land or excepted in Schedule B.

4. Any final court order or judgment requiring the removal from any land adjoining the land of any encroachment excepted in Schedule B.

5. Any final court order or judgment denying the right to maintain any existing improvements on the land because of any violation of covenants, conditions or restrictions or building setback lines shown on a plat of subdivision recorded or filed in the public records.

Wherever in this endorsement the words "covenants, conditions or restrictions" appear, they shall not be deemed to refer to or include the terms, covenants, conditions or limitations contained in an instrument creating a

ENDORSEMENT
Attached to Policy Number
G47-3468341
(Continued)

lease.

As used in paragraphs 1(b)(1) and 5, the words "covenants, conditions or restrictions" shall not be deemed to refer to or include any covenants, conditions or restrictions relating to environmental protection.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

May 1, 2006

TITLE SERVICES OF HARTLAND, LLC

By: _Beverly a. Barnes_
BEVERLY BARNES

ALTA ENDORSEMENT - Form 9
(Restrictions, Encroachments, Minerals)
(10/17/98)

(06-WI-0001.PFD/06-WI-0000/118)

# LOAN POLICY OF TITLE INSURANCE

*MiL008338*

## Issued by **Lawyers Title Insurance Corporation**

**LandAmerica**
**Lawyers Title**

*Lawyers Title Insurance Corporation is a member of the LandAmerica family of title insurance underwriters.*

**POLICY NUMBER**

**G47-3468341**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage;
7. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material:
   (a) arising from an improvement or work related to the land which is contracted for or commenced prior to Date of Policy; or
   (b) arising from an improvement or work related to the land which is contracted for or commenced subsequent to Date of Policy and which is financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance;
8. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule A, or the failure of the assignment shown in Schedule A to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, LAWYERS TITLE INSURANCE CORPORATION has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**LAWYERS TITLE INSURANCE CORPORATION**

Attest:

*Secretary*

SEAL
1925
RICHMOND, VA

By:

*President*

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (a) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
   (b) the subordination of the interest of the insured mortgage as a result of the application of the doctrine of equitable subordination; or
   (c) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
      (i) to timely record the instrument of transfer; or
      (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

NM 2   PA 20
Dbl. Cover – 1992 ALTA Loan Policy                                                                                            NJRB 2-08
**Form 1191-68D**                              **ORIGINAL**                        Valid only if Schedules A and B are attached

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 130 of 149   Document 1-2
Case 09-35931-pp   Doc 102-4   Filed 05/26/11   Page 25 of 44        130

**1. DEFINITION OF TERMS.**

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A. The term "insured" also includes

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(d) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(e) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(f) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge. With respect to Section 1(a)(iv) of the Exclusions From Coverage, "public records" shall also include environmental protection liens filed in the records of the clerk of the United States district court for the district in which the land is located.

(g) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

**2. CONTINUATION OF INSURANCE.**

(a) After Acquisition of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of (i) an insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from the insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to the insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance shall in neither event exceed the least of:

(i) the Amount of Insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

**3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT.**

The insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to the insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

**4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE.**

(a) Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any

third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, the insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of the insured for this purpose. Whenever requested by the Company, the insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of the insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

**5. PROOF OF LOSS OR DAMAGE.**

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the insured claimant to provide the required proof of loss or damage, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, the insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by the insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

**6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY.**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of either of the options provided for in paragraphs a(i) or (ii), all liability and obligations to the insured under this policy, other than to make the payment required in those paragraphs, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.

Form B 1191-68D

# LOAN POLICY OF TITLE INSURANCE

American Land Title Association (10/17/92)

Issued by

## Lawyers Title Insurance Corporation



**LandAmerica**
**Lawyers Title**

LandAmerica Financial Group, Inc.
101 Gateway Centre Parkway
Richmond, Virginia 23235-5153
www.landam.com

Lawyers Title Insurance Corporation is a member of the LandAmerica family of title insurance underwriters.

# THANK YOU.

Title insurance provides for the protection of your real estate investment. We suggest you keep this policy in a safe place where it can be readily available for future reference.

If you have questions about title insurance or the coverage provided by this policy, contact the office that issued this policy, or you may call or write:

Lawyers Title Insurance Corporation
Consumer Affairs
P.O. Box 27567
Richmond, Virginia 23261-7567
telephone, toll free: 800 446-7086
web: www.landam.com

We thank you for choosing to do business with Lawyers Title Insurance Corporation, and look forward to meeting your future title insurance needs.



**LandAmerica**
**Lawyers Title**

Lawyers Title Insurance Corporation is a member of the LandAmerica family of title insurance underwriters.

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs b(i) or (ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**7. DETERMINATION AND EXTENT OF LIABILITY.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8. LIMITATION OF LIABILITY.**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company except as provided in Section 2(a) of these Conditions and Stipulations.

**10. LIABILITY NONCUMULATIVE.**

If the insured acquires title to the estate or interest in satisfaction of the indebtedness secured by the insured mortgage, or any part thereof, it is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy.

**11. PAYMENT OF LOSS.**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or

destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT.**

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

(b) The Insured's Rights and Limitations.

Notwithstanding the foregoing, the owner of the indebtedness secured by the insured mortgage, provided the priority or the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(c) The Company's Rights Against Non insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of the insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13. ARBITRATION.**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage or of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15. SEVERABILITY.**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16. NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at: Consumer Affairs Department, P.O. Box 27567, Richmond, Virginia 23261-7567.

## MORGAGE

DOCUMENT NUMBER:
MIL008338

CERTIFIED TRUE
AND CORRECT COPY
DATED 4/0/06 INITIALS 2014

NAME & RETURN ADDRESS:
LEHMAN BROTHERS BANK, FSB
P.O. BOX 19656
IRVINE, CA 92623-9656

The undersigned hereby certifies this is a true and
Correct copy of the original document or instrument
BNC Mortgage, Inc.
By: _____

PARCEL IDENTIFIER NUMBER:

MIN 100122200002476320

THIS MORTGAGE is made this 6th     day of April, 2006     , between the Mortgagor,
EDWARD B. KOHLER AND PATRICIA L. KOHLER, HUSBAND AND WIFE.

(herein "Borrower"), and the Mortgagee,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's
successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. LEHMAN BROTHERS BANK, FSB

, ("Lender") is organized and
existing under the laws of the United States     , and has an address of
P.O. BOX 19656, IRVINE, CA 92623-9656

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 55,200.00     , which
indebtedness is evidenced by Borrower's note dated April 6, 2006     and extensions and renewals
thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not
sooner paid, due and payable on May 1, 2021     ;
TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all
other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey
to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with
power of sale, the following described property located in the County of WAUKESHA
, State of Wisconsin:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HERETO AS EXHIBIT A.

which has the address of 5310 S SKYLINE DR                      [Street]
NEW BERLIN               [City], Wisconsin 53151       [Zip Code] (herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances
and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the
foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as
the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this
Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and
assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the
Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.
Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and
convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that

---

**WISCONSIN** - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

-76N(WI) (0308).01

Page 1 of 4

VMP Mortgage Solutions (800)521-7291

Form 3850
Amended 2/01
Initials _____

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

Initials:

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** If an amount larger than one full payment on the Note is more than 10 days overdue (or the first or last payment is more than 40 days overdue), or if any other condition in the Note or this Mortgage (including paragraph 16 hereof) is violated, and such breach materially impairs the condition, value or protection of or Lender's right in the Property, or materially impairs Borrower's ability to pay amounts due, Lender prior to acceleration shall mail notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 15 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Lender shall publish the notice of sale and the Property shall be sold in the manner prescribed by applicable law. Lender or Lender's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable attorneys' fees and costs of title evidence; (b) to all sums secured by this Mortgage; and (c) the excess, if any, to the clerk of the Circuit Court of the County in which the sale is held.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to the earlier to occur of (i) the fifth day before the sale of the Property pursuant to the power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, and at any time prior to the expiration of any period of redemption following sale of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents

Form 3850

collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any, unless applicable law provides otherwise.

**21. Accelerated Redemption Periods.** If (i) the Property is twenty (20) acres or less in size, (ii) Lender in an action to foreclose this Mortgage waives all right to a judgment for deficiency and (iii) Lender consents to Borrower's remaining in possession of the Property, then the sale of the Property may be six (6) months from the date the judgment is entered if the Property is owner-occupied at the time of the commencement of the foreclosure action. If conditions (ii) and (iii) above are met and the Property is not owner-occupied at the time of the commencement of the foreclosure action, then the sale of the Property may be three (3) months from the date the judgment is entered. In any event, if the Property has been abandoned, then the sale of the Property may be two (2) months from the date the judgment is entered.

### REQUEST FOR NOTICE OF DEFAULT
#### ——————AND FORECLOSURE UNDER SUPERIOR——————
#### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

---

**NOTICE TO CUSTOMER**

(a)  DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON ALL PAGES, EVEN IF OTHERWISE ADVISED.
(b)  DO NOT SIGN IF IT CONTAINS ANY BLANK SPACES.
(c)  YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN.
(d)  YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

---

_____ (Seal)   _____ (Seal)
EDWARD B. KOHLER          -Borrower   PATRICIA L. KOHLER        -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                             -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                             -Borrower

_____ (Seal)   _____ (Seal)
                          -Borrower                             -Borrower

*[Sign Original Only]*

**STATE OF WISCONSIN,**    WAUKESHA    **County ss:**
    The foregoing instrument was acknowledged before me this  6TH DAY OF APRIL, 2006    by
EDWARD B. KOHLER.    PATRICIA L. KOHLER

My Commission Expires: 4/27/08    

This instrument was prepared by JESSICA IVAN    Notary Public, State of Wisconsin

(Seal)

NOTARY PUBLIC
BEVERLY A. BARNES
STATE OF WISCONSIN

-76N(WI) (0308).01    Page 4 of 4    Form 3850

LEHMAN BROTHERS BANK, FSB
P.O. BOX 19656
IRVINE, CALIFORNIA 92623-9656

———————————— [Space Above This Line For Recording Data] ————————————

LOAN #: MIL008338

## Balloon Rider

THIS BALLOON RIDER is made this 6th day of April, 2006 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to
LEHMAN BROTHERS BANK, FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 5310 S SKYLINE DR, NEW BERLIN, WI 53151
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

BALLOON RIDER-MULTISTATE (01/97)

Page 1 of 2

BALRD

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_Edward B Kohler_ _____ (Seal)     _4/6/06_ _____
EDWARD B. KOHLER                          -Borrower          Date

_Patricia L. Kohler_ _____ (Seal)     _4/6/06_ _____
PATRICIA L. KOHLER                        -Borrower          Date

_____          _____
                                          -Borrower          Date

_____          _____
                                          -Borrower          Date

_____          _____
                                          -Borrower          Date

_____          _____
                                          -Borrower          Date

BALLOON RIDER-MULTISTATE (01/97)

Page 2 of 2

BALRD2

Lot 15, Block 4 Maryknoll, Heights Addition No. 1, being a Subdivision of a part of the West One-half (1/2) of the Southeast One-quarter (1/4) of Section Twenty-five (25), Township Six (6) North, Range Twenty (20) East, in the City of New Berlin, Waukesha County, Wisconsin.

For Informational Purposes Only
Tax Parcel Number:    NBC 1251-152
Property Address:     5310 S. Skyline Drive
                      New Berlin, WI 53151

(06-WI-0001.PFD/06-WI-0000/26)

COLLATERAL CHECK OFF SHEET

X ORIGINAL NOTE
   Note date matches document date on Deed of Trust/Mortgage
   Property address on Note matches the Closing Instructions
   All parties have signed and signatures are original

X ORIGINAL ALLONGE TO THE NOTE (BNC to blank)
   NA   *Intervening Assignment of Note (Correspondent to BNC)

N/A BALLOON ADDENDUM TO ADJUSTABLE RATE NOTE
   (40/30's only)
   N/A   Addendum is signed by all parties (Signatures Are Original)

N/A ORIGINAL ADDENDUM TO THE NOTE (Interest Only Product)
   N/A   Addendum is signed by all parties (Signatures Are Original)

N/A ORIGINAL ADDENDUM TO NOTE PREPAYMENT PENALTY CHARGE
   (MULTI STATE)
   N/A   Signed by all parties (Signatures Are Original)

N/A PREPAYMENT RIDER (when Note indicates a rider on the prepayment clause)
   This can be a copy or an original

X DEED OF TRUST/MORTGAGE (Cert. Copy)
   Vesting on Mtg matches vesting on the Closing Instructions
   Legal description on Mtg. matches the Title Commitment/Prelim
   All parties have signed and are notarized
   Notary section is complete with dates and county

X RIDERS TO THE DEED OF TRUST/MORTGAGE (Copy)
   All Riders that are check on the Mtg. are attached
   Riders are signed by all parties

NA ASSIGNMENT OF DEED OF TRUST/MORTGAGE (Cert. Copy)
   Not Required on a MERS Security Instrument
   NA   *Intervening Assignment of Mtg. (correspondent to BNC & BNC to
        MERS)

X SPECIFIC CLOSING INSTRUCTIONS (Copy)
   Verified vesting and loan amount

X PRELIMINARY TITLE REPORT OR TITLE COMMITMENT (Copy)
   Title Commitment must be signed (not required on a Preliminary Title
   Legal description
   Plat Map, Location Map or Survey

*On correspondent loans only

Print your name here

MIL008338KOHL
KOHLER, EDWARD B
KOHLER, PATRICIA L
5310 S SKYLINE DR
NEW BERLIN, WI 53151

FROM: **LEHMAN BROTHERS ~~NK, FSB**
      **1901 MAIN STREET**
      **IRVINE, CA 92614**
      **ATTN: FUNDING DEPT.**

Document Date: **04/06/2006**

Closing Date:   **04/11/2006**

TO: **TITLE SERVICES OF**    TO: **TITLE SERVICES OF**
     **530 HARTBROOK DR**
     **HARTLAND, WI 53209**

Doc's Expiration Date: **04/30/2006**

ATTN:                ATTN:**BEVERLY BARNES**

Loan No.:  **MIL008338**

Application No.: **MIL008338**

RE: **EDWARD B. KOHLER,  PATRICIA L. KOHLER**

Title Order No.: **06-WI-0001**

Escrow No.:

    Property Address: **5310 S SKYLINE DR**
    **NEW BERLIN, WI 53151**

---

## SPECIFIC CLOSING INSTRUCTIONS

### LOAN DOCUMENTS
We enclose the following documents necessary to complete the above referenced loan transaction:

| | | |
|---|---|---|
| ( X ) Note | (  ) Condominium Rider | ( X ) Rescission |
| ( X ) Deed/Mortgage | (  ) Second Home Rider | (  ) Adj. Rate Rider |
| ( X ) Truth In Lending Disclosure | ( X ) Regulation Z | |
| ( X ) Payment Letter | (  ) Prepay Rider | |
| ( X ) Hazard Requirements | (  ) Assignment of Deed | |
| (   ) 1 - 4 Family Rider | ( X ) Good Faith Est. | |

Deliver one (1) copy of all loan documents to the Borrower(s); deliver one (1) copy of the Federal Truth-In-Lending Disclosure Statement to **each** Borrower and **each** person having any ownership interest in the security property. (Refer to General Closing Instructions for distribution of the Notices of Right to Cancel.)

### LOAN TERMS:

| | |
|---|---|
| Loan Amount: $55,200.00 | Monthly P&I: $ 514.25 |
| Sales Price:   0.00 | First Payment Date: 06/01/2006 |
| Term (Months): 360 | Last Payment Date: 05/01/2021 |
| Interest Rate:  10.725 | Adjustable Rate Loan: (  ) Yes   ( X ) No |

Secondary Financing in the amount of: $   **220,800.00**   has been approved.

### CONDITIONS:
Prior to funding/closing, you will be notified in writing of any outstanding conditions. All conditions must be satisfied prior to disbursement of the loan proceeds.

### WE ARE TO BE AT NO EXPENSE IN THIS TRANSACTION.
Do not make any changes to any fees paid to any party or add any additional fees or charges without the express written approval of  Lehman Brothers Bank, FSB

### TITLE INSURANCE REQUIREMENTS:
Lender's ALTA Title Policy is to be issued as follows:

Mortgagee Clause must show:  Lehman Brothers Bank, FSB, its successors and/or assigns.

1.  This  loan must record in second lien position prior to the Doc's Expiration Date noted above.

2.  Vesting to read: **EDWARD B. KOHLER AND PATRICIA L. KOHLER, HUSBAND AND WIFE.**

3.  Short Form Title Policy must be free from liens, encumbrances, easements, encroachments and other title matters except (i) the lien of our loan in the amount described herein referencing the recording information of the Security Instrument; (ii) 1st Trust Deed to remain (iii) general, specific, state, county, city, school or other taxes and assessments not yet due or payable; (iv) other items as permitted by us in writing; and (v) the following items as shown on the preliminary title report, commitment, binder or equivalent dated:    **02/28/2006**
Issue said form of Policy with items:

4.  **Provide original and one copy of the ALTA Title Policy to  Quality Assurance, P.O. Box 16426, IRVINE, CA 92623-6426.**

3SC11T
05/29/2003
***    SPECIFIC CLOSING INSTRUCTIONS      Page 1 of 3

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 142 of 149   Document 1-2   142
Case 09-35931-pp   Doc 102-4   Filed 05/26/11   Page 37 of 44

**ESTIMATE OF FEES AND COSTS:**

| ITEM | AMOUNT | POC | PAID TO |
|---|---|---|---|
| | | | |

Subtotal of Estimated Fees and Costs: **$ 0.00**

**PER DIEM INTEREST:**
From: **04/11/2006**          To: **05/01/2006**
(Anticipated Closing Date)

20          days at          16.45          per day.          Subtotal of Per Diem Interest:          **$ 329.00**

**IMPOUNDS/ESCROWS:**
Impounds/escrow funds will be deducted from the amount wired.

| | | | |
|---|---|---|---|
| _____ | __month(s) at $ _____ | per month = $ _____ |
| _____ | __month(s) at $ _____ | per month = $ _____ |
| _____ | __month(s) at $ _____ | per month = $ _____ |
| _____ | __month(s) at $ _____ | per month = $ _____ |
| _____ | __month(s) at $ _____ | per month = $ _____ |

Aggregate Escrow Adjustment: $ _____

Subtotal of Impounds/Escrow:          $ _____
Mortgage Broker Fee Paid by Lender:          $ _____
**LENDER FEES AND COSTS:**          **$ 0.00**
**TOTAL WIRE AMOUNT:**          **$ 54,871.00**

**HUD-1 SETTLEMENT STATEMENT:**
The final HUD-1 Settlement Statement must be completed at settlement and must accurately reflect all receipts and disbursements indicated in these closing instructions and any amended closing instructions subsequent hereto. If any changes to fees occur documents may need to be re-drawn and re-signed. Send the certified final HUD-1 Settlement Statement to us at the following address within 24 hours of settlement:  Quality Assurance, P.O. Box 16426, Irvine, CA 92623-6426

**ADDITIONAL INFORMATION:**
Borrowers must sign and date these closing instructions.

If for any reason this loan does not close within 24 hours of your receipt of funds, immediately return all documents to us and wire all funds to:
☐  Lehman Brothers, FSB, ABA 231170136, B N C Mortgage Clearing Acct. 124700002610

The wire of all funds should not be later than 12:00 noon, New York time, on the business day after the scheduled closing. Deutsche Bank is the intended third party beneficiary of this agreement.

All documents with the exception of those to be recorded (Security Instrument, Riders, Corporation Assignment(s), Grant Deed, Quit Claim, Power of Attorney, etc.) must be returned to our office within 24 hours of the signing. Please return certified copies of those documents that are to be recorded.

_~signature~_
Settlement Agent

SPECIFIC CLOSING INSTRUCTIONS

25CI1728
09/07/2005 SH

**PAYOFF REQUIREMENTS:**
It is a condition to the funding of this loan that the debts listed on the **CONDITIONAL LOAN APPROVAL** be paid.
Indicate payoffs on the HUD-1 Settlement Statement or provide other satisfactory evidence of payoff.

**DEBTS OR LIENS REQUIRED TO BE PAID THROUGH ESCROW**          ***Estimated Payoff Amount:**

TOTAL                                                                                    $0.00

*All liens of record must be paid in accordance with mortgagee's Pay off Demand Statement.

If you have any questions regarding any of these instructions, please contact the Funding Department at (949) 260-6000.

BORROWER ACKNOWLEDGMENT: I/We have read and acknowledged receipt of these closing instructions.

| | | | |
|---|---|---|---|
| Borrower  **EDWARD B. KOHLER** | Date | Borrower  **PATRICIA L. KOHLER** | Date |

| | | | |
|---|---|---|---|
| Borrower | Date | Borrower | Date |

| | | | |
|---|---|---|---|
| Borrower | Date | Borrower | Date |

**ACKNOWLEDGED AND AGREED:**

| | | | |
|---|---|---|---|
| Settlement Agent | Date | Title Officer **BEVERLY BARNES** | Date |

SPECIFIC CLOSING INSTRUCTIONS

2ktH

Page 3 of 3

# Lawyers Title Insurance Corporation
A LANDAMERICA COMPANY

LAWYERS TITLE INSURANCE CORPORATION, a Virginia corporation, herein called the Company, for valuable consideration, hereby commits to issue its policy or policies of title insurance, as identified in Schedule A, in favor of the proposed Insured named in Schedule A, as owner or mortgagee of the estate or interest covered hereby in the land described or referred to in Schedule A, upon payment of the premiums and charges therefor; all subject to the provisions of Schedules A and B and to the Conditions and Stipulations hereof.

This Commitment shall be effective only when the identity of the proposed Insured and the amount of the policy or policies committed for have been inserted in Schedule A hereof by the Company, either at the time of the issuance of this Commitment or by subsequent endorsement.

This Commitment is preliminary to the issuance of such policy or policies of title insurance and all liability and obligations hereunder shall cease and terminate six (6) months after the effective date hereof or when the policy or policies committed for shall issue, whichever first occurs, provided that the failure to issue such policy or policies is not the fault of the Company. This Commitment shall not be valid or binding until countersigned by an authorized officer or agent.

IN WITNESS WHEREOF, LAWYERS TITLE INSURANCE CORPORATION has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Commitment to become valid when countersigned by an authorized officer or agent of the Company.

LAWYERS TITLE INSURANCE CORPORATION

Attest: _____ Secretary    (SEAL 1925)    By: _____ President

## Conditions and Stipulations

1. The term "mortgage," when used herein, shall include deed of trust, trust deed, or other security instrument.

2. If the proposed Insured has or acquires actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof, and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly, but such amendment shall not relieve the Company from liability previously incurred pursuant to paragraph 3 of these Conditions and Stipulations.

3. Liability of the Company under this Commitment shall be only to the named proposed Insured and such parties included under the definition of Insured in the form of policy or policies committed for and only for actual loss incurred in reliance hereon in under taking in good faith (a) to comply with the requirements hereof, or (b) to eliminate exceptions shown in Schedule B, or (c) to acquire or create the estate or interest or mortgage thereon covered by this Commitment. In no event shall such liability exceed the amount stated in Schedule A for the policy or policies committed for and such liability is subject to the insuring provisions and Conditions and Stipulations and the Exclusions from Coverage of the form of policy or policies committed for in favor of the proposed Insured which are hereby incorporated by reference and are made a part of this Commitment except as expressly modified herein.

4. Any action or actions or rights of action that the proposed Insured may have or may bring against the Company arising out of the status of the title to the estate or interest or the status of the mortgage thereon covered by this Commitment must be based on and are subject to the provisions of this Commitment.

ALTA Commitment - 1966
Cover Page
Form 1004-268

ORIGINAL

APR-03-2006  11:04                    262 369 1521                    P.07

LAWYERS TITLE INSURANCE COMPANY

Commitment Number: 06-WI-0001

## SCHEDULE A

1. Commitment Date: February 28, 2006 at 8 :00 AM

2. Policy (or Policies) to be issued:

   Policy Amount

   (a) Owner's Policy        ( ALTA Own. Policy (10/17/92) )
       Proposed Insured:

   (b) Loan Policy           ( ALTA Loan Policy (10/17/92) )      $ 220,800.00
       Proposed Insured:
       BNC MORTGAGE INC , its successors and/or assigns as
       their respective interests may appear.

   (c) Jr. Loan. Policy      ( ALTA Loan Policy (10/17/92) )      $ 55,200.00
       Proposed Insured:
       BNC MORTGAGE INC. its successors and/or assigns as their
       respective interests may appear.

3. Fee Simple interest in the land described in this Commitment is owned, at the Commitment Date, by:
   EDWARD B. KOHLER and PATRICIA L. KOHLER, husband and wife

4. The land referred to in the Commitment is described as follows:

   Lot 15, Block 4 Maryknoll, Heights Addition No. 1, being a Subdivision of a part of the West One-half (1/2) of
   the Southeast One-quarter (1/4) of Section Twenty-five (25), Township Six (6) North, Range Twenty (20)
   East, in the City of New Berlin, Waukesha County, Wisconsin.

   For Informational Purposes Only
   Tax Parcel Number:    NBC 1251-152
   Property Address:     5310 S. Skyline Drive
                         New Berlin, WI 53151


   TITLE SERVICES OF HARTLAND, LLC

   By _____
          BEVERLY BARNES

ALTA Commitment
Schedule A (10/17/92)

(06-WI-0001.PFD/06-WI-0000/16)

APR-03-2006  11:04                    262 369 1521                        P.04

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 146 of 149   Document 1-2   146
Case 09-35931-pp   Doc 102-4   Filed 05/26/11   Page 41 of 44

LAWYERS TITLE INSURANCE COMPANY

Commitment Number: 06-WI-0001

## SCHEDULE B - SECTION I
## REQUIREMENTS

The following requirements must be met:

1. Pay us the premiums, fees and charges for the policy.

2. Documents satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded.

3. Mortgage from Edward B. Kohler and Patricia L. Kohler, husband and wife, to BNC Mortgage, Inc., securing the principal amount of $220,800.00.

4. Mortgage from Edward B. Kohler and Patricia L. Kohler, husband and wife, to BNC Mortgage, Inc., securing the principal amount of $55,200.00.

   NOTE: Date of vesting acquisition JUNE 24, 1993

ALTA Commitment
Schedule B - Section I (10/17/92)

(06-WI-0001.PFD/06-WI-0000/15)

APR-03-2006 11:04                262 369 1521                P.05

Commitment Number: 06-WI-0001

## SCHEDULE B - SECTION II
### EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction.

1.  Facts which would be disclosed by a comprehensive survey of the premises herein described.

2.  Rights or claims of parties in possession.

3.  Mechanics', contractors', or Materialmens' liens and lien claims, if any, where no notice thereof appears of record.

4.  Any change in the title occurring subsequent to the effective date of this Commitment and prior to the date of issuance of the title policy.

5.  Easements, or claims or easements, not shown by the public records.

6.  Liens or deferred charges not shown on the tax roll, for installations and connections of water and sewer laterals, mains and service pipes.

7.  Special Taxes or assessments and special charges, if any, payable with the taxes levied or to be levied for the year 2005 and subsequent years.

8.  General taxes for the year 2005 and subsequent years, not yet due and payable.

9.  Utility Easement granted by an instrument recorded in the Office of the Register of Deeds for Waukesha County, Wisconsin as Document No. 378437.

10. Covenants, conditions and restrictions contained in the Declaration of Restrictions recorded as Document No. 503897 but omitting any covenant, condition or restriction, if any, based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that the covenants, condition or restriction (a) is exempt under Title 42 or the United States Code, or (b) relates to handicap, but does not discriminate against handicapped persons.

11. Utility Easement granted by an instrument recorded as Document No. 503899.

12. Mortgage from Edward B. Kohler and Patricia L. Kohler, husband and wife, to Washington Mutual Bank, FA dated September 8, 2004 and recorded in the Waukesha County Register of Deeds Office on September 14, 2004 as Document No. 3204101.

13. Mortgage from Edward B. Kohler and Patricia L. Kohler, husband wife, to MidAmerica Bank, FSB dated November 4, 2004 and recorded in the Waukesha County Register of Deeds for Waukesha County on November 17, 2004 as Document No. 3224460.

Any questions regarding this commitment, please contact Title Services at 262-369-0946

cc: Family First Mortgage

ALTA Commitment
Schedule B - Section II (10/17/92)

(06-WI-0001.PFD/06-WI-0000/9)

APR-03-2006  11:04                    262 369 1521                         P.06

## Location Map

| Borrower/Client | Edward Kohler | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 5310 S. Skyline Drive | | | | | | |
| City | New Berlin | | County | Waukesha | State | WI | Zip Code 53151-8064 |
| Lender | Family First Mortgage | | | | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE