# U.S. Bankruptcy Court
## Eastern District of Wisconsin (Milwaukee)
## Adversary Proceeding #: 10–02694–pp

*Assigned to:* Pamela Pepper
*Lead BK Case:* 09–35931
*Lead BK Title:* Edward Blaine Kohler and Patricia Lynn Kohler
*Lead BK Chapter:* 13
*Demand:*

*Date Filed:* 12/22/10
*Date Dismissed:* 07/06/11

  *Nature[s] of Suit:*   21 Validity, priority or extent of lien or other interest in property

**Plaintiff**
————————————————

**Edward Blaine Kohler**
5310 S. Skyline Drive
New Berlin, WI 53151
SSN / ITIN: xxx–xx–1463

represented by **Rollie R. Hanson**
6737 W. Washington Street
Suite 1420
West Allis, WI 53214–5649
414–321–9733
Fax : 414–321–9601
Email: rollie@hansonlaw.net
*LEAD ATTORNEY*

**Patricia Lynn Kohler**
5310 S. Skyline Drive
New Berlin, WI 53151
SSN / ITIN: xxx–xx–2596

represented by **Rollie R. Hanson**
(See above for address)
*LEAD ATTORNEY*

V.

**Defendant**
————————————————

**Structured Asset Investment Loan Trust Mortgage Pass–Through Certificates, Series 2006–4,**
c/o U.S. National Bank Association
One Federal Street
Boston, MA 02110

represented by **Edward J. Lesniak**
Burke, Warren, MacKay &Serritella, P.C.
330 N. Wabash Avenue, 22nd Floor
Chicago, IL 60611–3607
312–840–7007
Fax : 312–840–7900
Email: elesniak@burkelaw.com

**Penny G. Gentges**
501 W. Northshore Dr.
Suite 300
Milwaukee, WI 53217
414–228–6700
Email: penny@basmog.com
*LEAD ATTORNEY*

**U.S. Bank National Association**
One Federal Street
Boston, MA 02110

represented by **Edward J. Lesniak**
(See above for address)

**Chase Manhattan Mortgage Corporation**

represented by **Edward J. Lesniak**
(See above for address)

3415 Vision Drive
Columbus, OH 43219

                                     **Penny G. Gentges**
(See above for address)
*LEAD ATTORNEY*

**Chase Home Finance LLC**             represented by
CT Corporation System
8040 Excelsior Dr                          **Edward J. Lesniak**
Ste 200                                  (See above for address)
Madison, WI 53717

                                     **Penny G. Gentges**
(See above for address)
*LEAD ATTORNEY*

**Chase H.E.**                         represented by **Edward J. Lesniak**
3415 Vision Drive                            (See above for address)
Columbus, OH 43219

                                     **Penny G. Gentges**
(See above for address)
*LEAD ATTORNEY*

**Mortgage Electronic Registrations**   represented by
**Systems, Inc**
1818 Library Street                         **Edward J. Lesniak**
Suite 300                               (See above for address)
Reston, VA 20190–6280

                                     **Penny G. Gentges**
(See above for address)
*LEAD ATTORNEY*

| Filing Date | # | Docket Text |
|---|---|---|
| 12/22/2010 | <u>1</u><br>pgs:<br>14, 2 | Adversary case 10–02694. Complaint filed by Rollie R Hanson on behalf of Edward and Patricia Kohler , Against Structured Asset Investment Loan Trust Mortgage Pass–Through Certificates, Series 2006–4, U. S. Bank National Association, Chase Manhattan Mortgage, Chase Home Finance LLC, Chase H.E., Mortgage Electronic Registrations Systems, Inc.,Aurora Bank FSB and Aurora Loan Services, LLC.~~Penny Gentges~~. Receipt Number WAIVED, Fee Amount $250 (Attachments: # Civil Cover Sheet) (21 (Validity, priority or extent of lien or other interest in property))(Hanson, Rollie) (Entered: 12/22/2010) |
| 12/22/2010 | | Withdrawal of Document. This document is being withdrawn because to refile with attached summons Filed by Rollie R. Hanson on behalf of Rollie R Hanson. (RE: <u>1</u> Complaint). (Hanson, Rollie) (Entered: 12/22/2010) |
| 12/22/2010 | | Withdrawal of Document. This document is being withdrawn because The Summons will be issued by the Court. Filed by Rollie R. Hanson on behalf of Rollie R Hanson. (RE: Withdraw Document). (Hanson, Rollie) (Entered: 12/22/2010) |
| 12/23/2010 | <u>2</u><br>pgs: 2 | **Summons Issued.** Attorney for Plaintiff must serve the summons and a copy of the complaint on parties pursuant to Fed.R.Bankr.P. 7004, and file a certificate of service with the Court. Answer Due by 1/24/2011. United States and its offices and agencies answer due by 1/27/2011. Pre–Trial Conference set for 3/7/2011 at 10:45 AM at Telephone Conference. (pwm, Judicial Assistant) (Entered: 12/23/2010) |

| | | |
|---|---|---|
| 12/30/2010 | [3](#) pgs: 2 | Summons Service Executed on Chase H.E. 12/30/2010; Chase Home Finance LLC 12/30/2010; Chase Manhattan Mortgage Corporation 12/30/2010 (Hanson, Rollie) (Entered: 12/30/2010) |
| 12/30/2010 | [4](#) pgs: 2 | Summons Service Executed on Mortgage Electronic Registrations Systems, Inc 12/30/2010 (Hanson, Rollie) (Entered: 12/30/2010) |
| 12/30/2010 | [5](#) pgs: 2 | Summons Service Executed on Structured Asset Investment Loan Trust Mortgage Pass–Through Certificates, Series 2006–4, 12/30/2010; U.S. Bank National Association 12/30/2010 (Hanson, Rollie) (Entered: 12/30/2010) |
| 12/30/2010 | [6](#) pgs: 2 | Summons Service Executed on *Attorney Edward Lesniak and Attorney Penny Gentges on behalf of* Chase Home Finance LLC 12/30/2010; Mortgage Electronic Registrations Systems, Inc 12/30/2010; U.S. Bank National Association 12/30/2010 (Hanson, Rollie) (Entered: 12/30/2010) |
| 01/06/2011 | [7](#) pgs: 14, 2 | Amended Complaint by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler against Chase H.E., Chase Home Finance LLC, Chase Manhattan Mortgage Corporation, Mortgage Electronic Registrations Systems, Inc, Structured Asset Investment Loan Trust Mortgage Pass–Through Certificates, Series 2006–4,, U.S. Bank National Association. (RE: [1](#) Adversary case 10–02694. Complaint filed by Rollie R Hanson on behalf of Edward and Patricia Kohler, Against Structured Asset Investment Loan Trust Mortgage Pass–Through Certificates, Series 2006–4, U. S. Bank National Association, Chase Manhattan Mortgage, Chase Home Finance LLC, Chase H.E., Mortgage Electronic Registrations Systems, Inc.,~~Aurora Bank FSB and Aurora Loan Services, LLC.~~Penny Gentges. Receipt Number WAIVED, Fee Amount $250). (Attachments: # Affidavit Affidavit of Service) (Hanson, Rollie) (Entered: 01/06/2011) |
| 01/24/2011 | [8](#) pgs: 10 | Motion to Dismiss Adversary Proceeding and Certificate of Service Filed by Defendants Chase H.E., Chase Home Finance LLC, Chase Manhattan Mortgage Corporation, Mortgage Electronic Registrations Systems, Inc, Structured Asset Investment Loan Trust Mortgage Pass–Through Certificates, Series 2006–4,, U.S. Bank National Association (Lesniak, Edward) (Entered: 01/24/2011) |
| 02/07/2011 | [9](#) pgs: 2 | Objection Filed by Plaintiffs Edward Blaine Kohler, Patricia Lynn Kohler (Re: [8](#) Motion to Dismiss Adversary Proceeding filed by Defendant Chase Manhattan Mortgage Corporation, Defendant Structured Asset Investment Loan Trust Mortgage Pass–Through Certificates, Series 2006–4,, Defendant U.S. Bank National Association, Defendant Chase Home Finance LLC, Defendant Chase H.E., Defendant Mortgage Electronic Registrations Systems, Inc) (Hanson, Rollie) (Entered: 02/07/2011) |
| 02/07/2011 | [10](#) pgs: 22, 13, 31, 4, 1 | Brief *in Support of Objction to Motion by Defendants to Dismiss Amended Complaint* and Certificate of Service Filed by Rollie R. Hanson on behalf of Edward Blaine Kohler, Patricia Lynn Kohler. (RE: [8](#) Motion to Dismiss Adversary Proceeding ). and Certificate of Service. (Attachments: # Exhibit Exhibit 1# Exhibit 2# Exhibit 3# Affidavit of Service) (Hanson, Rollie) (Entered: 02/07/2011) |
| 02/09/2011 | [11](#) pgs: 1 | Notice of Hearing (RE: [8](#) Motion to Dismiss Adversary Proceeding )to be heard along with the scheduled Pretrial Conference. Hearing to be held on 3/7/2011 at 10:45 AM Telephone Conference. (kgw, Courtroom Deputy) (Entered: 02/09/2011) |
| 02/11/2011 | [12](#) pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: [11](#) Notice of Hearing) Service Date 02/11/2011. (Admin.) (Entered: 02/11/2011) |

| | | |
|---|---|---|
| 02/22/2011 | <u>13</u><br>pgs: 1 | Returned Mail RE: <u>11</u> Notice of Hearing. (ymr, Deputy Clerk) (Entered: 02/23/2011) |
| 03/09/2011 | <u>14</u><br>pgs: 2 | Court Minutes for the March 7, 2011 Hearing (RE: Pretrial and <u>8</u> Defendants' Motion to Dismiss Adversary Proceeding). (ccb, Law Clerk) (Entered: 03/09/2011) |
| 05/24/2011 | | Hearing Continued (RE: <u>8</u> Defendant's Motion to Dismiss). Hearing to be held on 5/26/2011 at 02:00 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin for <u>8</u> . (ccb, Law Clerk) (Entered: 05/24/2011) |
| 05/24/2011 | | CORRECTION: Hearing Continued (RE: <u>8</u> Defendant's Motion to Dismiss). Hearing to be held on 5/25/2011 at 02:00 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin. (ccb, Law Clerk) (Entered: 05/24/2011) |
| 05/26/2011 | <u>15</u><br>pgs: 1 | Court Minutes for the May 25, 2011 Hearing (RE: <u>8</u> Motion to Dismiss Adversary Proceeding Filed by Defendants). (ccb, Law Clerk) (Entered: 05/26/2011) |
| 06/28/2011 | <u>16</u><br>pgs: 2 | There is no Document No. 16 for this case. This entry was docketed in error. ~~Court Minutes for June 27, 2011 Hearing (RE: 8 Motion to Dismiss Adversary Proceeding Filed by Defendants). (emm, Law Clerk)~~ . (Entered: 06/28/2011) |
| 06/28/2011 | <u>17</u><br>pgs: 2 | Court Minutes and Order ~~Granting Motion to Dismiss Adversary Proceeding from Hearing held on June 27, 2011.~~ (Related Doc # <u>8</u> ). (jth, Deputy Clerk) (Entered: 06/28/2011) |
| 06/30/2011 | <u>18</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: <u>17</u> Order on Motion to Dismiss Adversary Proceeding) Service Date 06/30/2011. (Admin.) (Entered: 07/01/2011) |
| 07/06/2011 | <u>19</u><br>pgs: 1 | Order Dismissing Adversary Complaint (Related Doc # <u>8</u> ). (jth, Deputy Clerk) (Entered: 07/06/2011) |
| 07/06/2011 | | Disposition of Adversary 2:10–ap–2694–Dismissed. (jth, Deputy Clerk) (Entered: 07/06/2011) |
| 07/08/2011 | <u>20</u><br>pgs: 2 | BNC Certificate of Mailing – PDF Document. (RE: <u>19</u> Order on Motion to Dismiss Adversary Proceeding) Service Date 07/08/2011. (Admin.) (Entered: 07/12/2011) |
| 07/18/2011 | <u>21</u><br>pgs: 7 | Motion to Reconsider (related documents <u>19</u> Order on Motion to Dismiss Adversary Proceeding) with Notice of Motion and Certificate of Service Filed by Plaintiffs Edward Blaine Kohler, Patricia Lynn Kohler Objections due by 8/1/2011. (Hanson, Rollie) (Entered: 07/18/2011) |
| 07/18/2011 | <u>22</u><br>pgs: 3 | Correspondence Filed by CT Corporation System (RE: <u>19</u> Order on Motion to Dismiss Adversary Proceeding). (jth, Deputy Clerk) (Entered: 07/19/2011) |
| 07/27/2011 | | Hearing Set Hearing to be held on 8/9/2011 at 02:45 PM United States Courthouse at 517 East Wisconsin Avenue, Room 149, Milwaukee, Wisconsin for <u>21</u> Motion to Reconsider (emm, Law Clerk) (Entered: 07/27/2011) |

| | | |
|---|---|---|
| 07/30/2011 | <u>23</u><br>pgs: 6 | Motion to Reconsider (related documents <u>21</u> Motion to Reconsider) *Response* and Certificate of Service Filed by Defendant U.S. Bank National Association (Lesniak, Edward) (Entered: 07/30/2011) |
| 07/30/2011 | | **Defective Filing Notification – Action Required by the Filer.** The event used to docket the pleading is incorrect. Please call the CM/ECF Support Desk at 414–297–3291, extension 3200 for help in determining the appropriate event. (RE: <u>23</u> Motion to Reconsider filed by Defendant U.S. Bank National Association) (jth, Deputy Clerk) (Entered: 08/01/2011) |
| 08/01/2011 | <u>24</u><br>pgs: 6 | Response Filed by Defendant U.S. Bank National Association to ( <u>21</u> Motion to Reconsider (related documents <u>19</u> Order on Motion to Dismiss Adversary Proceeding) filed by Plaintiff Edward Blaine Kohler, Plaintiff Patricia Lynn Kohler) Filed by Edward J. Lesniak on behalf of U.S. Bank National Association. (RE: <u>21</u> Motion to Reconsider (related documents <u>19</u> Order on Motion to Dismiss Adversary Proceeding ) ). (Lesniak, Edward) (Entered: 08/01/2011) |
| 08/12/2011 | <u>25</u><br>pgs: 2 | Court Minutes (hearing held on 8/9/2011), and Order Denying Motion To Reconsider (Related Doc # <u>21</u> ). (djc, Deputy Clerk) (Entered: 08/12/2011) |
| 08/14/2011 | <u>26</u><br>pgs: 3 | BNC Certificate of Mailing – PDF Document. (RE: <u>25</u> Order on Motion To Reconsider) Service Date 08/14/2011. (Admin.) (Entered: 08/14/2011) |

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF WISCONSIN

In re:   EDWARD BLAINE KOHLER and
          PATRICIA LYNN KOHLER,
                    Debtors.

Chapter 13

Case No. 09-35931-PP

EDWARD BLAINE KOHLER and
PATRICIA LYNN KOHLER,
          Plaintiffs,

v.

STRUCTURED ASSET INVESTMENT LOAN
TRUST MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-4,
U.S. BANK NATIONAL ASSOCIATION,
CHASE MANHATTAN MORTGAGE,
CHASE HOME FINANCE LLC, CHASE H.E.,
MORTGAGE ELECTRONIC REGISTRATIONS
SYSTEMS, INC., AURORA BANK FSB and
AURORA LOAN SERVICES, LLC
          Defendants.

Adversary Proceeding
Case No.

Additional parties,
MARY GROSSMAN,
Chapter 13 Trustee

### COMPLAINT TO DETERMINE VALIDITY AND ENFORCEABILITY OF THE DEFENDANTS' LIEN AND TO DETERMINE STATUS OR EXPUNGE CLAIMS

### INTRODUCTION

1.   This is an action brought by the Debtors/Plaintiffs for a Declaratory Judgment, to determine the validity and enforceability of the defendant's lien rights and for any other equitable relief pursuant to Sections 105(a), 502(b)(1), 506 and 544(a) of the Bankruptcy Code and applicable Bankruptcy Rules.

THE LAW OFFICES OF ROLLIE R. HANSON, S.C.
6737 West Washington St., Suite 1420
West Allis, Wisconsin 53214
(414)321-9733 Fax (414)321-9601
Rollie@hansonlaw.net

## JURISDICTION

2. This is a core proceeding as that term is defined by Section 157(b)(2) of Title 28 of the United States Code in that it concerns claims and counter-claims to the Proof of Claim and matters arising out of the administration of this bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

3. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code and Section 157(b)(2) of Title 28 of the United States Code.

4. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

## THE PARTIES

5. Edward Blaine Kohler and Patricia Lynn Kohler are debtors under Chapter 13 of Title 11 of the United States Code.

6. Mary Grossman is the standing Chapter 13 Trustee for the United States Bankruptcy Court for the Eastern District of Wisconsin, and is the assigned Trustee in Kohler's case.

7. **Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2006-4 ("SAIL Trust")** upon information and belief is a common law trust formed pursuant to New York Law. The corpus of the trust allegedly consists of a pool of residential mortgage notes allegedly secured by liens on residential real estate. Upon information and belief the trust has no officers or directors and no continuing duties other than to hold assets and to issue a series of certificates of investment as described in the Free Writing Prospectus identified below. Further, upon information

and belief, said trust has filed with the Securities and Exchange Commission a Form

425B5 (the "Free Writing Prospectus") for the pool of residential mortgage notes.

The internet link for the Free Writing Prospectus dated June 20, 2006 and prospectus

dated June 2, 2006  is as follows:

http://www.sec.gov/Archives/edgar/data/1366930/000114420406025644/v045957_fwp.htmh

and that upon information and belief, the Trust's SEC CIK Code for all filings is

0001366930.

The Mortgage Loan Sale and Assignment Agreement dated June 1, 2006 and

referenced and defined in the SAIL Trust is a public document on file with the SEC.

The website or link for this document is:

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm

The Trust Agreement is a public document on file with the SEC.  The website or link

for this document  is:

http://www.sec.gov/Archives/edgar/data/1366930/000116231806000994/exhibit41.htm

8. **U.S. Bank National Association (hereafter "US Bank")** is a national banking

   association organized under the laws of the United States and is wholly owned

   subsidiary of U.S. Bancorp.  The plaintiffs allege that U.S. Bank National

   Association ("the Trustee") is the named **Trustee** for the Trust. The principal

   location for the Trustee is One Federal Street, Boston Massachusetts 02110.

9. **Chase Manhattan Mortgage Corporation** is a mortgage servicing corporation

   believed to be organized under the laws of the State of New Jersey with its

   principal offices located at 3415 Vision Drive, Columbus, Ohio 43219 (hereafter

   "Chase Manhattan") and that said Chase Manhattan acted as a sub-servicer in

   collecting mortgage payments from the debtors under this mortgage.   The debtors

named Chase Manhattan to obtain clarification that said corporation has no interest in any mortgage loans of the debtors.

10. **Chase Home Finance LLC** is a Delaware limited liability company (hereafter "Chase Home") with its principal office located at 1209 Orange St, Wilmington, Delaware 19801 and its registered agent CT Corporation System 8040 Excelsior Dr Ste 200, Madison Wisconsin 53717.  Chase Home claims to be "attorney in fact for" BNC Mortgage, Inc. and  a representative of Chase Home purportedly signed an allonge dated December 2, 2009 to the first mortgage note (more particularly described in the allegations below) in such alleged capacity. Upon information, Chase Home Finance, LLC has acted at the bequest and as an agent for the defendants, the SAIL Trust and US Bank.

11. **Chase H.E**. is listed on Proof of Claims #12 and #13 and amended claims 12 and 13 as the entity where the plaintiffs' payments should be sent and does business at 3415 Vision Drive, Columbus Drive, Columbus, Ohio 43219 and upon information and belief may be a servicer or sub-servicer for the plaintiffs' mortgage loans and also maybe an affiliate of Chase Manhattan Mortgage Corporation.  The debtors named Chase H.E. to obtain clarification that said corporation has no interest in any mortgage loans of the debtors.

12. **Mortgage Electronic Registrations Systems, Inc**. (hereafter MERS") is an electronic registration system for purpose of tracking mortgage transfers in the lending industry and is a foreign corporation with its principal place of business located at 1595 Spring Hill Road, Suite 310, Vienna, Virginia 22182.  MERS is named as a nominee of the lender on the first  mortgage dated April 6, 2006 and the second mortgage of the same date.  Upon information, MERS has acted at the

request and benefit of the defendants, the SAIL Trust and US Bank in post petition attempts to assign mortgages of the debtors.

## ADDITIONAL ACTORS

13. That upon information and belief, the originator of the first mortgage loan in this case BNC Mortgage Inc., on or about August 22, 2007 closed its business and further that BNC Mortgage Inc. is a wholly-owned, direct subsidiary of Lehman Brothers Bank, FSB which is a wholly-owned, direct subsidiary of Lehman Brothers Bancorp Inc. which is a wholly-owned, direct subsidiary of Lehman Brothers Holdings Inc. who was also the seller of the mortgage backed Trust identified herein and that said Lehman Brothers Holdings Inc. filed for Chapter 11 bankruptcy in September 2008 in the US Bankruptcy Court for the Southern District of New York Case No. 08-13555.

14. Furthermore, upon information and belief, that Structured Asset Securities Corporation, the "purchaser and depositor" for the mortgage backed Trust identified herein was also a wholly owned, direct subsidiary of Lehman Brothers, Inc., and direct subsidiary of the "sponsor", Lehman Brothers Holding Inc.

## FACTUAL ALLEGATIONS

15. This case was commenced by the filing of a Chapter 7 petition with the Clerk of this court on November 3, 2009.

16. An Order for Relief under the provisions of Chapter 7 of the Bankruptcy Code was duly entered by this Court upon the filing of the petition. This order served to invoke the provisions of Section 362(a) of the Bankruptcy Code.

17. The 341(a) meeting of creditors was held on December 11, 2009 in Waukesha, Wisconsin.

18. That a Motion for Relief from Stay and Abandonment was filed on December 9, 2009 by U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass Through Certificates, Series 2006-4 and an Objection to said motion was filed by the debtors on December 23, 2009.

19. That a Motion to Voluntarily Convert the case to a Chapter 13 proceeding pursuant to 11 USC Section 706(a) was granted by the court on February 16, 2010.

20. Prior to the filing of the bankruptcy petition in this case, the debtors refinanced their home on April 6, 2006.  In order to complete the refinance, the debtors signed a note and mortgage in favor of BNC Mortgage, Inc. for the first mortgage in the amount of $220,000.00 and also signed a second mortgage at the same closing in favor of Lehmann Brothers Bank, FSB in the amount of $55,000.00.

21. The debtors have listed on Schedule D a debt to Chase Manhattan Mortgage (the pre-petition mortgage servicer) in the current outstanding amount of $226,193. The debt is disputed to the extent that the debtors deny that Chase Manhattan or the Trust held a valid, and enforceable secured claim against property of the bankruptcy estate, specifically:  the debtors' single-family home located at 5310 S. Skyline Dr., New Berlin, WI 53151 and more particularly described as follows: Lot Fifteen(15), Block Four(4), Maryknoll Heights Addition No. 1, being a Subdivision of a part of the West One-half(1/2) of the Southwest One-quarter(1/4) of Section Twenty-five(25), Township Six(6) North, Range Twenty(20) East, City of New Berlin, Waukesha County , Wisconsin.

22. The debtors signed an Adjustable Rate Note (issued on the standard Fannie/Freddie Mac Uniform instrument, Form 3520 1/01) on April 6, 2006 in the

principal amount of $220,800.00. The said note provides for an adjustable rate of interest with an initial interest rate of 7.475% and with initial monthly payments of $1540.09 due on the first day of each month for a term of thirty (30) years, beginning on June 1, 2006 and further provided in an Addendum to Note for interest only payments for a period of time. The "lender" named on the note is BNC Mortgage, Inc.

23. The above-referred note was allegedly secured by a first mortgage issued on Wisconsin-Single Family- Fannie/Freddie Mac Uniform Instrument Form 3050 1/01 and an Adjustable Rate Rider recorded in the Waukesha County Register's Office on May 1, 2006. According to the language of the mortgage, Mortgage Electronic Systems, Inc ("MERS") is named as the "mortgagee" and further states that MERS is "acting solely as a nominee for Lender and Lender's successors and assigns". The said mortgage also lists BNC Mortgage Inc. as the lender. The plaintiffs allege that as of the date of the filing of the petition the note and mortgage had not been assigned to any other party.

24. The debtors have listed on Schedule D a debt to Chase Manhattan Mortgage (the pre-petition mortgage servicer) in the current outstanding amount of $54,793. The debt is disputed to the extent that the debtors deny that Chase Manhattan or the Trust held a valid, and enforceable secured claim against property of the bankruptcy estate, specifically the debtors' single-family home described above.

25. The debtors signed a Balloon Note (on the standard Fannie/Freddie Mac Uniform instrument, Form 3260 1/01) on April 6, 2006 in the principal amount of $55,200.00. Said note provides for interest at a rate of 10.725% and with initial monthly payments of $514.25 due on the first day of each month beginning on

June 1, 2006 and a maturity date of May 1, 2021. The "lender" named on the note is Lehman Brothers Bank, FSB.

26. The above-referenced note was allegedly secured by a second mortgage issued on Wisconsin-Single Family- Fannie/Freddie Mac Uniform Instrument Form 3850 1/01 and an Adjustable Rate Rider recorded in the Waukesha County Register's Office on May 1, 2006. According to the language of the mortgage, Mortgage Electronic Systems, Inc ("MERS") is named as the "mortgagee" and further states that MERS is "acting solely as a nominee for Lender and Lender's successors and assigns". The said second mortgage also lists Lehman Brothers Bank, FSB as the lender. The plaintiffs allege that as of the date of the filing of the petition the note and mortgage had not been assigned to any other party.

27. After the filing of the bankruptcy, US Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass Through Certificates, Series 2006-4 upon information claimed a secured claim (claim 12) and amended claim 12 for the first mortgage and asserting that said SAIL Trust is a secured creditor in this bankruptcy. However, the documentation attached to claim 12 or amended claim 12 does not show that the SAIL Trust is the true mortgagee of the Plaintiffs' property.

28. US Bank National Association, Trustee for Structured Asset Investment Loan Trust, Mortgage Pass Through Certificates, Series 2006-4 also filed a claim (claim number 13) and amended claim 13 asserting that the SAIL Trust is a secured creditor in this bankruptcy. However, the documentation attached to claim number 13 or amended claim 13 does not show that the SAIL Trust is the true mortgagee of the plaintiffs' property.

29. The SAIL Trust Agreement dated June 1, 2006 and referenced in ¶9 above

contains the following preliminary statement:

> The Depositor has acquired the Mortgage Loans from the Seller, and at the Closing Date is the owner of the Mortgage Loans and the other property being conveyed by it to the Trustee hereunder for inclusion in the Trust Fund. On the Closing Date, the Depositor will acquire the Certificates from the Trust Fund, as consideration for its transfer to the Trust Fund of the Mortgage Loans and the other property constituting the Trust Fund. The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Mortgage Loans and the other property constituting the Trust Fund. All covenants and agreements made by the Seller in the Mortgage Loan Sale Agreement and by the Depositor, the Master Servicer, the Securities Administrator and the Trustee herein with respect to the Mortgage Loans and the other property constituting the Trust Fund are for the benefit of the Holders from time to time of the Certificates and, to the extent provided herein, any NIMS Insurer, the Swap Counterparty and the Cap Counterparty. The Depositor, the Trustee, the Master Servicer, the Securities Administrator and the Credit Risk Manager are entering into this Agreement, and the Trustee is accepting the Trust Fund created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

> As provided herein, an election shall be made that the Trust Fund (exclusive of (i) the Swap Agreement, (ii) the Swap Account, (iii) the right to receive and the obligation to pay Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls, (iv) the Basis Risk Reserve Fund, (v) the Supplemental Interest Trust, (vi) the Interest Rate Cap Agreement, (vii) the Interest Rate Cap Account and (viii) the obligation to pay Class I Shortfalls (collectively, the "Excluded Trust Assets")) be treated for federal income tax purposes as comprising four real estate mortgage investment conduits under Section 860D of the Code (each a "REMIC" or, in the alternative "REMIC 1," "REMIC 2," "REMIC 3," and "REMIC 4" (REMIC 4 also being referred to as the "Upper Tier REMIC")). Any inconsistencies or ambiguities in this Agreement or in the administration of this Agreement shall be resolved in a manner that preserves the validity of such REMIC elections.

> Each Certificate, other than the Class R and Class LT-R Certificates, represents ownership of a regular interest in the Upper Tier REMIC for purposes of the REMIC Provisions. In addition, each Certificate, other than the Class R, Class LT-R, Class X and Class P Certificates, represents (i) the right to receive payments with respect to any Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls and (ii) the obligation to pay Class I

Shortfalls. The Class LT-R Certificate represents ownership of the sole Class of residual interest in REMIC 1. The Class R Certificate represents ownership of the sole Class of residual interest in each of REMIC 2, REMIC 3, and the Upper Tier REMIC for purposes of the REMIC Provisions.

The Upper Tier REMIC shall hold as its assets the uncertificated Lower Tier Interests in REMIC 3, other than the Class LT3-R interest, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 3 for purposes of the REMIC Provisions. REMIC 3 shall hold as its assets the uncertificated Lower Tier Interests in REMIC 2, other than the Class LT2-R interest, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 2. REMIC 2 shall hold as its assets the uncertificated Lower Tier Interests in REMIC 1, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 1. REMIC 1 shall hold as its assets the property of the Trust Fund other than the Lower Tier Interests in REMIC 1, REMIC 2, and REMIC 3 and the Excluded Trust Assets.

The startup day for each REMIC created hereby for purposes of the REMIC Provisions is the Closing Date. In addition, for purposes of the REMIC Provisions, the latest possible maturity date for each regular interest in each REMIC created hereby is the Latest Possible Maturity Date.

30. The SAIL Trust defines the "mortgage loan sale agreement" as "the mortgage loan sale and assignment agreement dated as of June 1, 2006 for the sale of the mortgage loans by the seller to the depositor." Further, the SAIL Trust defines the closing date as of June 30, 2006 and defines the cutoff date as of June 1, 2006.

31. The mortgage loan sale and assignment agreement dated June 1, 2006 and referenced in ¶9 above shows the seller of the mortgage loans for the SAIL Trust to be Lehmann Brothers, Inc. and the purchaser to be Structured Asset Securities Corporation. Further, Structured Asset Securities Corporation is also named and defined in the SAIL Trust as the depositor which is the party that will convey and transfer the mortgage loans to US Bank National Association as the trustee for the SAIL Trust.

32. Article I of the mortgage loan sale agreement (MLSAA) is titled "Conveyance of

Mortgage Loans" and states in Section 1.01(a) Sale of Mortgage Loans as follows:

> "Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02, 2.04, 2.05 and 2.06, in trust, all the right, title and interest of the Depositor in and to the Mortgage Loans."

Further, Section 2.01(b) of the SAIL Trust dated June 1, 2006 states, in part with

respect to the transfer of each mortgage loan that:

> "In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee, and/or the Custodian acting on the Trustee's behalf, the following documents or instruments with respect to each Mortgage Loan (each a "Mortgage File") so transferred and assigned:
>
> (i)
> with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or in blank (in each case, with all necessary intervening endorsements, as applicable) or with respect to any lost Mortgage Note, a lost note affidavit stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note;
>
> (ii)
> the original of any guarantee executed in connection with the Mortgage Note, assigned to the Trustee;
>
> (iii)
> with respect to any Mortgage Loan other than a Cooperative Loan, the original recorded Mortgage with evidence of recording indicated thereon and the original recorded power of attorney, with evidence of recording thereon. If, in connection with any Mortgage Loan, the Depositor cannot deliver the Mortgage or power of attorney with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage or power of attorney has been lost, the Depositor shall deliver or cause to be delivered to the Trustee (or the applicable Custodian), in the case of a delay due to recording, a true copy of such Mortgage or power of attorney, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such Mortgage or power of attorney delivered to the Trustee (or the applicable Custodian) is a true copy and that the original of

such Mortgage or power of attorney has been forwarded to the public recording office, or, in the case of a Mortgage or power of attorney that has been lost, a copy thereof (certified as provided for under the laws of the appropriate jurisdiction) and a written Opinion of Counsel acceptable to the Trustee and the Depositor that an original recorded Mortgage or power of attorney is not required to enforce the Trustee's interest in the Mortgage Loan; . . .

The parties hereto acknowledge and agree that the form of endorsement attached hereto as Exhibit B-4 is intended to effect the transfer to the Trustee, for the benefit of the Certificateholders, of the Mortgage Notes and the Mortgages."

33. The SAIL Trust agreement dated June 1, 2006 and the MLSAA dated June 5, 2006 require a sale of the mortgage loans from Lehmann Brothers Holdings, Inc. as the seller to → Structured Asset Securities Corporation as the purchaser and then Structured Asset Securities Corporation as the depositor of the SAIL Trust to convey and transfer the mortgage loans to → US Bank as Trustee for the SAIL Trust.  The SAIL Trust and the mortgage loan sale and assignment agreement require a specific sequence of transfers to have occurred in order to convey the debtors' mortgage loans to the trust.

34. The terms of the SAIL Trust required the loans to be transferred to the trust by the cutoff date of June 30, 2006 in accordance with the terms of the mortgage loan sale and assignment agreement and the SAIL Trust itself.  Further, Section 2.02(b) of the SAIL Trust titled "Acceptance of Trust Fund by Trustee:  Review of Documents in the Trust Fund" requires the trustee to review documentation of the trust fund with the obligation to review all required documents set forth in Section 2.01 of the trust and to ascertain the mortgage loans listed on the mortgage loan schedule were properly transferred to the trust within forty-five (45) days after the closing date of June 30, 2006 and states as follows:

(b)

Within 45 days after the Closing Date, the Trustee or the applicable Custodian on behalf of the Trustee, will, for the benefit of Holders of the Certificates, review each Mortgage File to ascertain that all required documents set forth in Section 2.01 have been received and appear on their face to contain the requisite signatures by or on behalf of the respective parties thereto, and shall deliver to the Trustee, the Depositor, the Master Servicer and any NIMS Insurer an Interim Certification in the form annexed hereto as Exhibit B-2 (or in the form annexed to the Custodial Agreement as Exhibit B-2, as applicable) to the effect that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan prepaid in full or any Mortgage Loan specifically identified in such certification as not covered by such certification), (i) all of the applicable documents specified in Section 2.01(b) are in its possession and (ii) such documents have been reviewed by it and appear to relate to such Mortgage Loan. The Trustee, or the applicable Custodian on behalf of the Trustee, shall determine whether such documents are executed and endorsed, but shall be under no duty or obligation to inspect, review or examine any such documents, instruments, certificates or other papers to determine that the same are valid, binding, legally effective, properly endorsed, genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded or are in recordable form or that they are other than what they purport to be on their face. Neither the Trustee nor the applicable Custodian shall have any responsibility for verifying the genuineness or the legal effectiveness of or authority for any signatures of or on behalf of any party or endorser.

35. The SAIL Trust Agreement and MLSAA required a specific A→ B→ C→ D sequence of transfers for proper conveyance and a true sale of the mortgage loan to the trust. For the April 6, 2006 $220,000.00 note the SAIL Trust and MLSAA required a transfer from (A.) BNC Mortgage, Inc. as the Originator → (B.) Lehmann Brothers, Inc. as Seller → (C.) Structured Asset Securities Corporation as Purchaser/Depositor → (D.) U.S. Bank as Trustee for the SAIL Trust. For the April 6, 2006 note in the amount of $55,200.00, the SAIL Trust and MLSAA required a transfer from (A.) Lehmann Brothers Bank, FSB n/k/a Aurora Bank, FSB. as the Originator → (B.) Lehmann Brothers Holdings, Inc. as Seller → (C.)

Structured Asset Securities Corporation as Purchaser/Depositor → (D.) U.S. Bank as Trustee for the SAIL Trust.

36. The defendants have failed to provide any adequate and appropriate loan documentation to show that they have a proper mortgage on the property of the debtors.

37. Without documentation and proof of proper conveyance of the mortgage note to the Trust any ownership by the Trust of said note, the above referenced claims 12 and 13 and amended claims 12 and 13 must be expunged since there is no proof to establish lien rights.

WHEREFORE, the plaintiffs demand judgment as follows:

a.   Determination that none of the above referenced defendants have established a valid lien on the real estate located at 5310 S. Skyline Drive in New Berlin, Wisconsin 53151 and expungement of said claims.

b.   For other such relief as the Court deems just and proper.


Dated this the 22nd day of December, 2010.


                                    /s/Rollie R. Hanson
                                    Rollie R. Hanson
                                    Attorney for Debtors

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS** Edward Blaine Kohler and Patricia Lynn Kohler<br>Mary Grossman, Chapter 13 Trustee | **DEFENDANTS** Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Serie 2006-4, U.S. Bank National Association, Chase Manhattan Mortgage, Chase Home H.E., MERS, Inc. |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>The Law Offices of Rollie R. Hanson, S.C.<br>6737 W. Washington St., Ste. 1420,<br>West Allis, WI 53214          (414) 321-9733 | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only)<br>☒ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor          ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Request a determination that U.S. Bank National Association et al does not hold any valid claim to the Debtors' homestead real estate and an Order stripping the mortgage held by U.S. National Association et al. Statutes: 11 U.S.C. Section 502(b)(1), 506 & 544(a)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
[1] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – reinstatement of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR    Edward Blaine Kohler and<br>                           Patricia Lynn Kohler | | BANKRUPTCY CASE NO.<br>09-35931-PP |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern District of Wisconsin | DIVISIONAL OFFICE<br>Milwaukee | NAME OF JUDGE<br>Hon. Pamela Pepper |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>    /s/ Rollie R. Hanson | | |
| DATE<br>   April 16, 2010 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>       Attorney Rollie R. Hanson | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

In re:   EDWARD BLAINE KOHLER and
         PATRICIA LYNN KOHLER,

                                                    Chapter 13

                                                    Case No. 09-35931-PP

                Debtor.

EDWARD BLAINE KOHLER and
PATRICIA LYNN KOHLER,

        Plaintiff,

                                                    Adversary Proceeding
v.                                                  Case No. 10-02694-PP

STRUCTURED ASSET INVESTMENT LOAN
TRUST MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-4, U.S. BANK
NATIONAL ASSOCIATION, CHASE
MANHATTAN MORTGAGE, CHASE HOME
FINANCE LLC, CHASE H.E., MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC.,

        Defendants.

Additional parties,
MARY GROSSMAN,
Chapter 13 Trustee

---

## AMENDED COMPLAINT TO DETERMINE VALIDITY AND ENFORECEABILITY OF
## THE DEFENDANTS' LIEN AND TO DETERMINE STATUS OR EXPUNGE CLAIMS

---

### INTRODUCTION

1. This is an action brought by the Debtors/Plaintiffs for a Declaratory Judgment, to
   determine the validity and enforceability of the defendant's lien rights and for any
   other equitable relief pursuant to Sections 105(a), 506, and 544(a) of the Bankruptcy
   Code and applicable Bankruptcy Rules.

THE LAW OFFICES OF ROLLIE R. HANSON, S.C.
6737 West Washington Street, Suite 1420
West Allis, WI 53214
(414)321-9733 Fax (414)321-9601
Rollie@hansonlaw.net

## JURISDICTION

2. This is a core proceeding as that term is defined by Section 157(b)(2) of Title 28 of the United States Code in that it concerns claims and counter-claims to the Proof of Claim and matters arising out of the administration of this bankruptcy case and rights duly established under Title 11 of the United States Code and other applicable federal law.

3. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code and Section 157(b)(2) of Title 28 of the United States Code.

4. Venue lies in this District pursuant to Section 1391(b) of Title 28 of the United States Code.

## THE PARTIES

5. Edward Blaine Kohler and Patricia Lynn Kohler are debtors under Chapter 13 of Title 11 of the United States Code.

6. Mary Grossman is the standing Chapter 13 Trustee for the United States Bankruptcy Court for the Eastern District of Wisconsin, and is the assigned Trustee in Kohler's case.

7. **Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2006-4 ("SAIL Trust")** upon information and belief is a common law trust formed pursuant to New York Law. The corpus of the trust allegedly consists of a pool of residential mortgage notes allegedly secured by liens on residential real estate. Upon information and belief the trust has no officers or directors and no continuing duties other than to hold assets and to issue a series of certificates of investment as described in the Free Writing Prospectus identified below. Further, upon information

and belief, said trust has filed with the Securities and Exchange Commission a Form 425B5 (the "Free Writing Prospectus") for the pool of residential mortgage notes. The internet link for the Free Writing Prospectus dated June 20, 2006 and prospectus dated June 2, 2006 is as follows:

http://www.sec.gov/Archives/edgar/data/1366930/000114420406025644/v045957_fwp.htmh

and that upon information and belief, the Trust's SEC CIK Code for all filings is 0001366930.

The Mortgage Loan Sale and Assignment Agreement dated June 1, 2006 and referenced and defined in the SAIL Trust is a public document on file with the SEC. The website or link for this document is:

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm

The Trust Agreement is a public document on file with the SEC. The website or link for this document is:

http://www.sec.gov/Archives/edgar/data/1366930/000116231806000994/exhibit41.htm

8. **U.S. Bank National Association (hereafter "US Bank")** is a national banking association organized under the laws of the United States and is wholly owned subsidiary of U.S. Bancorp. The plaintiffs allege that U.S. Bank National Association ("the Trustee") is the named **Trustee** for the Trust. The principal location for the Trustee is One Federal Street, Boston Massachusetts 02110.

9. **Chase Manhattan Mortgage Corporation** is a mortgage servicing corporation believed to be organized under the laws of the State of New Jersey with its principal offices located at 3415 Vision Drive, Columbus, Ohio 43219 (hereafter "Chase Manhattan") and that said Chase Manhattan acted as a sub-servicer in collecting mortgage payments from the debtors under this mortgage. The debtors

named Chase Manhattan to obtain clarification that said corporation has no interest in any mortgage loans of the debtors.

10. **Chase Home Finance LLC** is a Delaware limited liability company (hereafter "Chase Home") with its principal office located at 1209 Orange St, Wilmington, Delaware 19801 and its registered agent CT Corporation System 8040 Excelsior Dr Ste 200, Madison Wisconsin 53717.  Chase Home claims to be "attorney in fact for" BNC Mortgage, Inc. and  a representative of Chase Home purportedly signed an allonge dated December 2, 2009 to the first mortgage note (more particularly described in the allegations below) in such alleged capacity. Upon information, Chase Home Finance, LLC has acted at the bequest and as an agent for the defendants, the SAIL Trust and US Bank.

11. **Chase H.E**. is listed on Proof of Claims #12 and #13 and amended claims 12 and 13 as the entity where the plaintiffs' payments should be sent and does business at 3415 Vision Drive, Columbus Drive, Columbus, Ohio 43219 and upon information and belief may be a servicer or sub-servicer for the plaintiffs' mortgage loans and also maybe an affiliate of Chase Manhattan Mortgage Corporation.  The debtors named Chase H.E. to obtain clarification that said corporation has no interest in any mortgage loans of the debtors.

12. **Mortgage Electronic Registrations Systems, Inc**. (hereafter MERS") is an electronic registration system for purpose of tracking mortgage transfers in the lending industry and is a foreign corporation with its principal place of business located at 1595 Spring Hill Road, Suite 310, Vienna, Virginia 22182.  MERS is named as a nominee of the lender on the first  mortgage dated April 6, 2006 and the second mortgage of the same date.  Upon information, MERS has acted at the

request and benefit of the defendants, the SAIL Trust and US Bank in post

petition attempts to assign mortgages of the debtors.

## ADDITIONAL ACTORS

13. That upon information and belief, the originator of the first mortgage loan in this

case BNC Mortgage Inc., on or about August 22, 2007 closed its business and

further that BNC Mortgage Inc. is a wholly-owned, direct subsidiary of Lehman

Brothers Bank, FSB which is a wholly-owned, direct subsidiary of Lehman

Brothers Bancorp Inc. which is a wholly-owned, direct subsidiary of Lehman

Brothers Holdings Inc. who was also the seller of the mortgage backed Trust

identified herein and that said Lehman Brothers Holdings Inc. filed for Chapter 11

bankruptcy in September 2008 in the US Bankruptcy Court for the Southern

District of New York  Case No. 08-13555.

14. Furthermore, upon information and belief, that Structured Asset Securities

Corporation, the "purchaser and depositor" for the  mortgage backed Trust

identified  herein was also a wholly owned, direct subsidiary of Lehman Brothers,

Inc., and direct subsidiary of the "sponsor", Lehman Brothers Holding Inc.

## FACTUAL ALLEGATIONS

15.  This case was commenced by the filing of a Chapter 7 petition with the Clerk of

this court on November 3, 2009.

16.  An Order for Relief under the provisions of Chapter 7 of the Bankruptcy Code

was duly entered by this Court upon the filing of the petition.  This order served

to invoke the provisions of Section 362(a) of the Bankruptcy Code.

17. The 341(a) meeting of creditors was held on December 11, 2009 in Waukesha,

Wisconsin.

18. That a Motion for Relief from Stay and Abandonment was filed on December 9, 2009 by U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass Through Certificates, Series 2006-4 and an Objection to said motion was filed by the debtors on December 23, 2009.

19. That a Motion to Voluntarily Convert the case to a Chapter 13 proceeding pursuant to 11 USC Section 706(a) was granted by the court on February 16, 2010.

20. Prior to the filing of the bankruptcy petition in this case, the debtors refinanced their home on April 6, 2006. In order to complete the refinance, the debtors signed a note and mortgage in favor of BNC Mortgage, Inc. for the first mortgage in the amount of $220,000.00 and also signed a second mortgage at the same closing in favor of Lehmann Brothers Bank, FSB in the amount of $55,000.00.

21. The debtors have listed on Schedule D a debt to Chase Manhattan Mortgage (the pre-petition mortgage servicer) in the current outstanding amount of $226,193. The debt is disputed to the extent that the debtors deny that Chase Manhattan or the Trust held a valid, and enforceable secured claim against property of the bankruptcy estate, specifically: the debtors' single-family home located at 5310 S. Skyline Dr., New Berlin, WI 53151 and more particularly described as follows: Lot Fifteen(15), Block Four(4), Maryknoll Heights Addition No. 1, being a Subdivision of a part of the West One-half(1/2) of the Southwest One-quarter(1/4) of Section Twenty-five(25), Township Six(6) North, Range Twenty(20) East, City of New Berlin, Waukesha County , Wisconsin.

22. The debtors signed an Adjustable Rate Note (issued on the standard Fannie/Freddie Mac Uniform instrument, Form 3520 1/01) on April 6, 2006 in the

principal amount of $220,800.00. The said note provides for an adjustable rate of interest with an initial interest rate of 7.475% and with initial monthly payments of $1540.09 due on the first day of each month for a term of thirty (30) years, beginning on June 1, 2006 and further provided in an Addendum to Note for interest only payments for a period of time. The "lender" named on the note is BNC Mortgage, Inc.

23.  The above-referred note was allegedly secured by a first mortgage issued on Wisconsin-Single Family- Fannie/Freddie Mac Uniform Instrument Form 3050 1/01 and an Adjustable Rate Rider recorded in the Waukesha County Register's Office on May 1, 2006.  According to the language of the mortgage, Mortgage Electronic Systems, Inc ("MERS") is named as the "mortgagee" and further states that MERS is "acting solely as a nominee for Lender and Lender's successors and assigns". The said mortgage also lists BNC Mortgage Inc. as the lender.   The plaintiffs allege that as of the date of the filing of the petition the note and mortgage had not been assigned to any other party.

24. The debtors have listed on Schedule D a debt to Chase Manhattan Mortgage (the pre-petition mortgage servicer) in the current outstanding amount of $54,793. The debt is disputed to the extent that the debtors deny that Chase Manhattan or the Trust held a valid, and enforceable secured claim against property of the bankruptcy estate, specifically the debtors' single-family home described above.

25. The debtors signed a Balloon Note (on the standard Fannie/Freddie Mac Uniform instrument, Form 3260 1/01) on April 6, 2006 in the principal amount of $55,200.00. Said note provides for interest at a rate of 10.725% and with initial monthly payments of $514.25 due on the first day of each month beginning on

June 1, 2006 and a maturity date of May 1, 2021. The "lender" named on the note is Lehman Brothers Bank, FSB.

26. The above-referenced note was allegedly secured by a second mortgage issued on Wisconsin-Single Family- Fannie/Freddie Mac Uniform Instrument Form 3850 1/01 and an Adjustable Rate Rider recorded in the Waukesha County Register's Office on May 1, 2006. According to the language of the mortgage, Mortgage Electronic Systems, Inc ("MERS") is named as the "mortgagee" and further states that MERS is "acting solely as a nominee for Lender and Lender's successors and assigns". The said second mortgage also lists Lehman Brothers Bank, FSB as the lender. The plaintiffs allege that as of the date of the filing of the petition the note and mortgage had not been assigned to any other party.

27. After the filing of the bankruptcy, US Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass Through Certificates, Series 2006-4 upon information claimed a secured claim (claim 12) and amended claim 12 for the first mortgage and asserting that said SAIL Trust is a secured creditor in this bankruptcy. However, the documentation attached to claim 12 or amended claim 12 does not show that the SAIL Trust is the true mortgagee of the Plaintiffs' property.

28. US Bank National Association, Trustee for Structured Asset Investment Loan Trust, Mortgage Pass Through Certificates, Series 2006-4 also filed a claim (claim number 13) and amended claim 13 asserting that the SAIL Trust is a secured creditor in this bankruptcy. However, the documentation attached to claim number 13 or amended claim 13 does not show that the SAIL Trust is the true mortgagee of the plaintiffs' property.

29. The SAIL Trust Agreement dated June 1, 2006 and referenced in ¶9 above

contains the following preliminary statement:

> The Depositor has acquired the Mortgage Loans from the Seller, and at the Closing Date is the owner of the Mortgage Loans and the other property being conveyed by it to the Trustee hereunder for inclusion in the Trust Fund. On the Closing Date, the Depositor will acquire the Certificates from the Trust Fund, as consideration for its transfer to the Trust Fund of the Mortgage Loans and the other property constituting the Trust Fund. The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Mortgage Loans and the other property constituting the Trust Fund. All covenants and agreements made by the Seller in the Mortgage Loan Sale Agreement and by the Depositor, the Master Servicer, the Securities Administrator and the Trustee herein with respect to the Mortgage Loans and the other property constituting the Trust Fund are for the benefit of the Holders from time to time of the Certificates and, to the extent provided herein, any NIMS Insurer, the Swap Counterparty and the Cap Counterparty. The Depositor, the Trustee, the Master Servicer, the Securities Administrator and the Credit Risk Manager are entering into this Agreement, and the Trustee is accepting the Trust Fund created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

> As provided herein, an election shall be made that the Trust Fund (exclusive of (i) the Swap Agreement, (ii) the Swap Account, (iii) the right to receive and the obligation to pay Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls, (iv) the Basis Risk Reserve Fund, (v) the Supplemental Interest Trust, (vi) the Interest Rate Cap Agreement, (vii) the Interest Rate Cap Account and (viii) the obligation to pay Class I Shortfalls (collectively, the "Excluded Trust Assets")) be treated for federal income tax purposes as comprising four real estate mortgage investment conduits under Section 860D of the Code (each a "REMIC" or, in the alternative "REMIC 1," "REMIC 2," "REMIC 3," and "REMIC 4" (REMIC 4 also being referred to as the "Upper Tier REMIC")). Any inconsistencies or ambiguities in this Agreement or in the administration of this Agreement shall be resolved in a manner that preserves the validity of such REMIC elections.

> Each Certificate, other than the Class R and Class LT-R Certificates, represents ownership of a regular interest in the Upper Tier REMIC for purposes of the REMIC Provisions. In addition, each Certificate, other than the Class R, Class LT-R, Class X and Class P Certificates, represents (i) the right to receive payments with respect to any Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls and (ii) the obligation to pay Class I

Shortfalls. The Class LT-R Certificate represents ownership of the sole Class of residual interest in REMIC 1. The Class R Certificate represents ownership of the sole Class of residual interest in each of REMIC 2, REMIC 3, and the Upper Tier REMIC for purposes of the REMIC Provisions.

The Upper Tier REMIC shall hold as its assets the uncertificated Lower Tier Interests in REMIC 3, other than the Class LT3-R interest, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 3 for purposes of the REMIC Provisions. REMIC 3 shall hold as its assets the uncertificated Lower Tier Interests in REMIC 2, other than the Class LT2-R interest, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 2. REMIC 2 shall hold as its assets the uncertificated Lower Tier Interests in REMIC 1, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 1. REMIC 1 shall hold as its assets the property of the Trust Fund other than the Lower Tier Interests in REMIC 1, REMIC 2, and REMIC 3 and the Excluded Trust Assets.

The startup day for each REMIC created hereby for purposes of the REMIC Provisions is the Closing Date. In addition, for purposes of the REMIC Provisions, the latest possible maturity date for each regular interest in each REMIC created hereby is the Latest Possible Maturity Date.

30. The SAIL Trust defines the "mortgage loan sale agreement" as "the mortgage loan sale and assignment agreement dated as of June 1, 2006 for the sale of the mortgage loans by the seller to the depositor." Further, the SAIL Trust defines the closing date as of June 30, 2006 and defines the cutoff date as of June 1, 2006.

31. The mortgage loan sale and assignment agreement dated June 1, 2006 and referenced in ¶9 above shows the seller of the mortgage loans for the SAIL Trust to be Lehmann Brothers, Inc. and the purchaser to be Structured Asset Securities Corporation. Further, Structured Asset Securities Corporation is also named and defined in the SAIL Trust as the depositor which is the party that will convey and transfer the mortgage loans to US Bank National Association as the trustee for the SAIL Trust.

32. Article I of the mortgage loan sale agreement (MLSAA) is titled "Conveyance of

Mortgage Loans" and states in Section 1.01(a) Sale of Mortgage Loans as follows:

> "Concurrently with the execution and delivery of this Agreement, the
> Depositor does hereby transfer, assign, set over, deposit with and
> otherwise convey to the Trustee, without recourse, subject to Sections
> 2.02, 2.04, 2.05 and 2.06, in trust, all the right, title and interest of the
> Depositor in and to the Mortgage Loans."

Further, Section 2.01(b) of the SAIL Trust dated June 1, 2006 states, in part with

respect to the transfer of each mortgage loan that:

> "In connection with such transfer and assignment, the Depositor does
> hereby deliver to, and deposit with, or cause to be delivered to and
> deposited with, the Trustee, and/or the Custodian acting on the Trustee's
> behalf, the following documents or instruments with respect to each
> Mortgage Loan (each a "Mortgage File") so transferred and assigned:
>
> (i)
> with respect to each Mortgage Loan, the original Mortgage Note endorsed
> without recourse in proper form to the order of the Trustee, or in blank (in
> each case, with all necessary intervening endorsements, as applicable) or
> with respect to any lost Mortgage Note, a lost note affidavit stating that the
> original Mortgage Note was lost, misplaced or destroyed, together with a
> copy of the related Mortgage Note;
>
> (ii)
> the original of any guarantee executed in connection with the Mortgage
> Note, assigned to the Trustee;
>
> (iii)
> with respect to any Mortgage Loan other than a Cooperative Loan, the
> original recorded Mortgage with evidence of recording indicated thereon
> and the original recorded power of attorney, with evidence of recording
> thereon. If, in connection with any Mortgage Loan, the Depositor cannot
> deliver the Mortgage or power of attorney with evidence of recording
> thereon on or prior to the Closing Date because of a delay caused by the
> public recording office where such Mortgage has been delivered for
> recordation or because such Mortgage or power of attorney has been lost,
> the Depositor shall deliver or cause to be delivered to the Trustee (or the
> applicable Custodian), in the case of a delay due to recording, a true copy
> of such Mortgage or power of attorney, pending delivery of the original
> thereof, together with an Officer's Certificate of the Depositor certifying
> that the copy of such Mortgage or power of attorney delivered to the
> Trustee (or the applicable Custodian) is a true copy and that the original of

such Mortgage or power of attorney has been forwarded to the public recording office, or, in the case of a Mortgage or power of attorney that has been lost, a copy thereof (certified as provided for under the laws of the appropriate jurisdiction) and a written Opinion of Counsel acceptable to the Trustee and the Depositor that an original recorded Mortgage or power of attorney is not required to enforce the Trustee's interest in the Mortgage Loan; . . .

The parties hereto acknowledge and agree that the form of endorsement attached hereto as Exhibit B-4 is intended to effect the transfer to the Trustee, for the benefit of the Certificateholders, of the Mortgage Notes and the Mortgages."

33. The SAIL Trust agreement dated June 1, 2006 and the MLSAA dated June 5, 2006 require a sale of the mortgage loans from Lehmann Brothers Holdings, Inc. as the seller to → Structured Asset Securities Corporation as the purchaser and then Structured Asset Securities Corporation as the depositor of the SAIL Trust to convey and transfer the mortgage loans to → US Bank as Trustee for the SAIL Trust. The SAIL Trust and the mortgage loan sale and assignment agreement require a specific sequence of transfers to have occurred in order to convey the debtors' mortgage loans to the trust.

34. The terms of the SAIL Trust required the loans to be transferred to the trust by the cutoff date of June 30, 2006 in accordance with the terms of the mortgage loan sale and assignment agreement and the SAIL Trust itself. Further, Section 2.02(b) of the SAIL Trust titled "Acceptance of Trust Fund by Trustee: Review of Documents in the Trust Fund" requires the trustee to review documentation of the trust fund with the obligation to review all required documents set forth in Section 2.01 of the trust and to ascertain the mortgage loans listed on the mortgage loan schedule were properly transferred to the trust within forty-five (45) days after the closing date of June 30, 2006 and states as follows:

(b)

Within 45 days after the Closing Date, the Trustee or the applicable Custodian on behalf of the Trustee, will, for the benefit of Holders of the Certificates, review each Mortgage File to ascertain that all required documents set forth in Section 2.01 have been received and appear on their face to contain the requisite signatures by or on behalf of the respective parties thereto, and shall deliver to the Trustee, the Depositor, the Master Servicer and any NIMS Insurer an Interim Certification in the form annexed hereto as Exhibit B-2 (or in the form annexed to the Custodial Agreement as Exhibit B-2, as applicable) to the effect that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan prepaid in full or any Mortgage Loan specifically identified in such certification as not covered by such certification), (i) all of the applicable documents specified in Section 2.01(b) are in its possession and (ii) such documents have been reviewed by it and appear to relate to such Mortgage Loan. The Trustee, or the applicable Custodian on behalf of the Trustee, shall determine whether such documents are executed and endorsed, but shall be under no duty or obligation to inspect, review or examine any such documents, instruments, certificates or other papers to determine that the same are valid, binding, legally effective, properly endorsed, genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded or are in recordable form or that they are other than what they purport to be on their face. Neither the Trustee nor the applicable Custodian shall have any responsibility for verifying the genuineness or the legal effectiveness of or authority for any signatures of or on behalf of any party or endorser.

35. The SAIL Trust Agreement and MLSAA required a specific A→ B→ C→ D sequence of transfers for proper conveyance and a true sale of the mortgage loan to the trust. For the April 6, 2006 $220,000.00 note the SAIL Trust and MLSAA required a transfer from (A.) BNC Mortgage, Inc. as the Originator → (B.) Lehmann Brothers, Inc. as Seller → (C.) Structured Asset Securities Corporation as Purchaser/Depositor → (D.) U.S. Bank as Trustee for the SAIL Trust. For the April 6, 2006 note in the amount of $55,200.00, the SAIL Trust and MLSAA required a transfer from (A.) Lehmann Brothers Bank, FSB n/k/a Aurora Bank, FSB. as the Originator → (B.) Lehmann Brothers Holdings, Inc. as Seller → (C.)

Structured Asset Securities Corporation as Purchaser/Depositor→ (D.) U.S. Bank as Trustee for the SAIL Trust.

36.     The defendants have failed to provide any adequate and appropriate loan documentation to show that they have a proper mortgage on the property of the debtors.

37.     Without documentation and proof of proper conveyance of the mortgage note to the Trust any ownership by the Trust of said note, the above referenced claims 12 and 13 and amended claims 12 and 13 must be expunged since there is no proof to establish lien rights.

WHEREFORE, the plaintiffs demand judgment as follows:

a.   Determine that none of the above referenced defendants have established a valid lien on the real estate located at 5310 S. Skyline Drive in New Berlin, Wisconsin 53151 and expungement of said claims.

b.   For other such relief as the Court deems just and proper.

Dated this the 5th day of January, 2011.

/s/Rollie R. Hanson
Rollie R. Hanson
Attorney for Debtors

14

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: EDWARD BLAINE KOHLER and<br>PATRICIA LYNN KOHLER,<br>       Debtors. | Chapter 13<br><br>Case No. 09-35931-PP |

| | |
|---|---|
| EDWARD BLAINE KOHLER and<br>PATRICIA LYNN KOHLER,<br>      Plaintiffs,<br><br>v.<br><br>STRUCTURED ASSET INVESTMENT LOAN<br>TRUST MORTGAGE PASS-THROUGH<br>CERTIFICATES, SERIES 2006-4,<br>U.S. BANK NATIONAL ASSOCIATION,<br>CHASE MANHATTAN MORTGAGE,<br>CHASE HOME FINANCE LLC, CHASE H.E.,<br>MORTGAGE ELECTRONIC REGISTRATIONS<br>SYSTEMS, INC.,<br>      Defendants. | Adversary Proceeding<br>Case No. 10-02694-PP |

Additional parties,
MARY GROSSMAN,
Chapter 13 Trustee

---

### AFFIDAVIT OF SERVICE

---

| | |
|---|---|
| STATE OF WISCONSIN | ) |
| | (SS |
| COUNTY OF MILWAUKEE | ) |

Leigh Anne Muller, being first duly sworn on oath, deposes and says that on January 6, 2011 she electronically served via First Class Mail at West Allis, Wisconsin, a true and correct copy of the ***Amended Complaint to Determine Validity and Enforceability of the Defendants' Lien and to Determine Status or Expunge Claims*** to all of the following interested parties:

LAW OFFICE OF ROLLIE R. HANSON, S.C.
6737 W. Washington Street, Suite 1420
West Allis, WI 53214
(414) 321-9733/facsimile (414) 321-9601
Rollie@hansonlaw.net
U.S. Bank National Association, Structured Asset Investment Loan Trust,

Mortgage Pass-Through Certificates, Series2006-4, Chase Home Finance, LLC
Mortgage Electronic Registration Systems, Inc.

c/o Attorney Edward Lesniak       Co-Counsel Attorney Penny Gentges
Burke, Warren, McKay, et.al.        7020 N. Port Washington Rd., Suite 206
330 N. Wabash, 22nd Floor         Milwaukee, WI 53212
Chicago, IL 60611-3607

Mary Grossman
Chapter 13 Trustee
P.O. Box 510920
Milwaukee, WI 53203

Chase Manhattan Mortgage Corporation
194 Wood Avenue South
Iselin, NJ 08830

Chase Home Finance, LLC
c/o CT Corporation System
8040 Excelsior Drive, Suite 200
Madison, WI 53717

Chase H.E.
3415 Vision Drive
Columbus, OH 43219

R.K. Arnold, President & CEO
Mortgage Electronic Registration Systems, Inc.
1818 Library Street, Suite 300
Reston, VA 20190

Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates
Series 2006-4
c/o Richard K. Davis, C.E.O.
U.S. Bank National Association
425 Walnut Street
Cincinnati, OH 45202

                                          */s/Leigh Anne Muller*

Subscribed and sworn to before        Leigh Anne Muller
me this 6th day of January, 2011.

*/s/ Jared M. Nusbaum*
Jared M. Nusbaum
Notary Public, State of Wisconsin
My Commission is Permanent

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| EDWARD BLAINE KOHLER and | ) | Case No. 09-35931-pp |
| PATRICIA LYNN KOHLER, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| EDWARD BLAINE KOHLER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 10-02694-pp |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION, as | ) | |
| Trustee, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION BY DEFENDANTS TO DISMISS AMENDED COMPLAINT PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1), 12(b)(6) AND 12(h)(3),
FEDERAL RULE OF BANKRUPTCY PROCEDURE 7001, AND 11 U.S.C. 105(a)**

Defendants (1) U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4 ("U.S. Bank"), (2) Chase Home Finance, LLC, for itself and as successor-by-merger to Chase Manhattan Mortgage Company ("CHF"), and for Chase H.E., a division of CHF ("CHE"), and (3) Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively, "Defendants"), hereby move to dismiss the Amended Complaint ("Complaint") filed by Edward Blaine Kohler and Patricia Lynn Kohler ("Debtors") for failure to state a cause of action pursuant to Rule 12(b)(1), 12(b)(6) and 12(h)(3) of the Federal Rules of Civil Procedure ("Federal Rules") made applicable by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), pursuant to Rule 7001 of the Bankruptcy Rules, and 11 U.S.C.105(a), in support of which Defendants state the following:

# I. PREFATORY STATEMENT

The Debtors acknowledge the existence of two mortgage liens on their property. The only issue raised by the Complaint relates to the ownership of those mortgage liens based on the legal effect of the assignments of the two mortgages and the related notes from one creditor to another creditor. However, this type of challenge to the ownership of a mortgage lien is not one of the prescribed matters that can be brought as an adversary proceeding. Bankruptcy Rule 7001(2) permits the filing of an adversary proceeding only to determine the "validity, priority or extent of a lien." Admittedly, Debtors characterize their claim as one to determine the validity of a lien under Bankruptcy Rule 7001(2). However, their allegations belie their characterization of their cause of action. Nowhere in the Complaint do they seek to determine the "validity, priority, or extent of a lien. . ." Bankruptcy Rule 7001(2) Rather, they seek only to challenge the Defendants' ownership of two otherwise valid liens. They cannot maintain this type of claim in an adversary proceeding, and it should be dismissed. Moreover, Debtors have already raised these exact same issues in their previously filed objections to two pending motions to lift the automatic stay in order to enforce the two mortgages. These issues can and should be addressed, as a contested matter, in connection with those long-pending motions.

# II. APPLICABLE STANDARD

Regarding Rule 7012(b)(6), in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court abrogated the pleading standards set forth in Conley v. Gibson, 355 U.S. 41 (1957), long relied on by plaintiffs to avoid dismissal. The Supreme Court admonished that Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and that a complaint containing "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," does not state a cognizable claim for relief. Ashcroft, 129 S. Ct. at 1949.

"A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft, 129 S. Ct. at 1949 (*quoting* Twombly, internal citations omitted). As set out by the Supreme Court:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Id. (internal citations omitted).

Under Twombly and Ashcroft, the court first identifies those allegations that are nothing more than "legal conclusions" or "naked assertions." Twombly, 550 U.S. at 555, 557. Those allegations are "not entitled to the assumption of truth" and must be disregarded. Ashcroft, 129 S. Ct. at 1950. The court then assesses the "nub" of the plaintiff's complaint – the well-pleaded, nonconclusory factual allegations – to determine whether it states a plausible claim for relief. Id.; Twombly, 550 U.S. at 565.

Rule 8 of the Federal Rules is made applicable to adversary proceedings by Rule 7008 of the Bankruptcy Rules. Thus, the standards established in Twombly and Ashcroft, apply to the instant case.

Rule 12(h)(3) requires the Court to dismiss an action if, at any time, it determines that it lacks subject matter jurisdiction.

11 U.S.C. 105(a) provides that this Court "may issue any order…that is necessary or appropriate to carry out the provisions of this title."

## III. FACTUAL BACKGROUND

In their Schedule D, Debtors acknowledge the existence of two mortgage liens on their property located at 5310 S. Skyline Drive, New Berlin, Wisconsin, for which Debtors identify Chase Manhattan Mortgage as the creditor.[1]  (Schedule D, Docket No. 1) (Complaint, paras. 20-26)

As to the first mortgage, U.S. Bank has filed an amended proof of claim for a total of $232,568.20 ("Claim No. 12").  Along with the standard proof of claim form, U.S. Bank filed documents that set out the historic ownership of the note and mortgage.  First, U.S. Bank attached a copy of the Mortgage dated April 6, 2006 and recorded with the Register of Waukesha County on May 1, 2006 as Document No. 3382190 ("First Mortgage").  The First Mortgage identifies BNC Mortgage Inc., a Delaware corporation, as the lender, and it clearly identifies Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee for BNC Mortgage, Inc.  Also, attached to Claim No. 12 is an Assignment of Mortgage dated November 30, 2009 and recorded with the Register of Deeds of Waukesha County as Document No. 3710217 on December 3, 2009.  The Assignment provides that MERS, as nominee for BNC Mortgage, Inc. (the mortgagee under the First Mortgage) assigns all of its interest in the Mortgage to U.S. Bank.

Similarly, Claim No. 12 includes the Adjustable Rate Note that is secured by the First Mortgage.  It is dated April 6, 2006, and it identifies BNC Mortgage, Inc. as the payee ("First Note").  Attached to the First Note is an Allonge in which BNC Mortgage, Inc., through its stated attorney-in-fact, Chase Home Finance LLC, assigns all of its interest in the First Note to U.S. Bank.  Claim No. 12 is supplemented with a complete copy made from the original Note (with allonge executed pre-petition) showing the original Note endorsed in blank.

---

[1]  Chase Manhattan Mortgage Corporation is no longer in existence, but rather has been merged into and is succeeded by Chase Home Finance LLC.

U.S. Bank has also filed an amended proof of claim related to the second mortgage in the amount of $57,077.36 ("Claim No. 13"). Attached to the standard proof of claim form is a copy of the Mortgage dated April 6, 2006 and recorded with the Register of Waukesha County on May 1, 2006 as Document No. 3382191 ("Second Mortgage"). The mortgagee of the Second Mortgage is stated to be Lehman Brothers Bank, FSB. MERS is stated to be the nominee for Lehman Brothers Bank, FSB. Also attached to Claim No. 13 is an Assignment of Mortgage dated March 2, 2010 from MERS as nominee for Lehman Brothers Bank, FSB, to U.S. Bank.

Similarly, Claim No. 13 includes a Balloon Note that is secured by the Second Mortgage. It is dated April 6, 2006 and Lehman Brothers Bank is the payee ("Second Note"). Also attached to the Second Note is an Allonge whereby Lehman Brothers Bank, FSB assigns its entire interest in the Note to U.S. Bank. Amended Claim No. 13 is supplemented with a complete copy made from the original Note (with allonge executed pre-petition) showing the original Note endorsed in blank.

On December 9, 2009, U.S.Bank filed a Motion for Relief from Stay as to the First Mortgage. (Docket No. 5) Debtors filed their Objection thereto on December 23, 2009 wherein they raised the exact same issues regarding U.S.Bank's standing to enforce the First Mortgage that are raised in the Complaint. (Docket No. 7) On March 1, 2010, the parties entered into a Stipulation to resolve the initial Motion for Relief from Stay (docket NO. 28), but on March 22, 2010, U.S.Bank renewed its Motion for Relief from Stay as to the First Mortgage. (Docket No. 39) Debtors then restated their initial objection to U.S.Bank's standing on April 15, 2010. (Docket No. 47)

On March 12, 2010, U.S.Bank filed its Motion for Relief from Automatic Stay as to the Second Mortgage. (Docket No. 37) Debtors filed their Objection thereto on March 26, 2010.

(Docket No. 40)  Again, in their Objection, the Debtors raised the exact same issues regarding U.S.Bank's standing to enforce the Second Mortgage that are raised in the Complaint. U.S.Bank's Motions for Relief from Automatic Stay as to both the First Mortgage and Second Mortgage remain pending and unresolved.

## IV. ARGUMENT

Debtors have entitled their Complaint as one "to Determine Validity and Enforceability of the Defendants' Lien and to Determine Status of or Expunge Claim."  However, Debtors' conclusory characterization of their claim is not warranted by the facts alleged.  It is readily apparent that Debtors' complaint is filed for the sole purpose of challenging Defendants' ownership interest in the pertinent mortgages in Claims No. 12 and 13.  In doing so, Debtors completely ignore the endorsements of the notes and the written assignments of the mortgages. Instead, they focus solely on the purported transfer provisions of certain sale and purchase documents to which they are not a party, but regarding which they claim the requirements for the assignment of the mortgages from one creditor to another were not complied with.  As a result, the Debtors claim there has been no proof of ownership of the Notes and Mortgage by U.S.Bank. (Complaint, para. 37)

However, Bankruptcy Rule 7001 does not permit an adversary to determine who owns a note or mortgage.  Rule 7001(2) states that an adversary may be filed only to determine the "validity, priority or extent of a lien."  In re Beard, 112 B.R. 951 (Bankr. N.D. Ind. 1990); In re The Crestwood Company, 127 B.R. 213, 214 (Bankr. E.D. Ark. 1991); In re McMillan, 251 B.R. 484, 488 (Bankr. E.D. Mich. 2000).  It does not authorize the filing of an adversary proceeding to challenge the ownership interest of a lien or the standing of a lien claimant.  Accordingly, the Complaint should be dismissed and this Court should immediately schedule a hearing on the

long-pending motions for relief from the automatic stay as to both the First Mortgage and Second Mortgage.

A.     Debtors Do Not Challenge The Validity of Either Mortgage.

A challenge to "validity" of a lien under Rule 7001(2) is a challenge to the "existence or legitimacy of the lien itself." In re Beard, 112 B.R. at 955. Here, Debtors do not challenge the existence or legitimacy of the lien, but rather the validity of the assignment of the lien from one creditor to another.

Debtors readily acknowledge that they took out two loans and executed mortgages to secure the loans. (Complaint, paras 20, 23 and 26)  During the discovery process Debtors' counsel has twice reviewed the two original notes and mortgages alleged in the Complaint bearing the wet ink signatures of the Debtors and the endorsements of the Notes and assignments of the Mortgages.  Yet, Debtors make no assertions whatsoever that challenge the validity of either of the Mortgages as viable liens on their property.  For example, in In re McMillan, supra, the debtors were required to proceed by way of an adversary proceeding because they challenged the mortgage securing the creditor's claim as invalid under a specific Michigan statute.  Debtors make no such challenge to the validity of the Mortgages here.

B.     Debtors' Complaint Does Not Challenge The Priority Of The Mortgage Liens.

Rule 7001(2) requires challenges to the priority of a lien to be raised in an adversary proceeding.  Priority relates to the lien's relationship to other claims to or interests in the collateral.  Beard, 112 B.R. at 955.  In their Complaint, Debtors raise no claims as to the relationship of either of the two Mortgages to some other claim or interest in the property.

C.    Debtors' Complaint Does Not Challenge The Extent Of The Mortgage Lien.

Debtors also raise no challenge to the extent of the mortgage liens.  Extent relates to the scope of the property encompassed by or subject to the lien.  <u>Beard</u>, 112 B.R. at 955.  Debtors raise no issue as to the scope of the property encompassed by or subject to the lien.  In the language of both Mortgages, the Debtors grant a fee simple interest in their property to the named mortgagees, and the allegations of their Complaint raise no challenge to the scope of the interest conveyed or the description of the property regarding which it was conveyed.

## V.  CONCLUSION

There are two ways to resolve disputes in bankruptcy proceedings -- contested matters and adversary proceedings.   <u>In re Griffiths</u>, 2007 WL 1309049 at * 2 (Bankr. E.D. Va.).  Objections to claims are contested matters and not adversary proceedings because they do not challenge the basis of the lien itself.  <u>Id</u>.  Here, Debtors raise no issue as to the validity of the mortgage liens themselves, only who owns it.  Because they raise no issue as to the validity of a mortgage lien, the priority of a mortgage lien or the extent of a mortgage lien, they cannot pursue this adversary proceeding, and it should be dismissed for the reasons set forth herein, and pursuant to the applicable rules and statute stated herein.  In addition, the Court should promptly

schedule a hearing on the long-pending motions previously filed by U.S. Bank to lift the automatic stay as to the First Mortgage and the Second Mortgage.

> U.S. BANK NATIONAL ASSOCIATION, as
> Trustee for Structured Asset Investment Loan
> Trust Mortgage Pass-Through Certificates, Series
> 2006-4, CHASE HOME FINANCE LLC and
> MORTGAGE ELECTRONIC REGISTRATION
> SYSTEMS, INC., Defendants
>
>
> By:___/s/_____Edward J. Lesniak_____
> (Illinois ARDC #1624261, Admitted to District
> Court for the Eastern District of Wisconsin on
> January 23, 2006)
> Burke, Warren, MacKay & Serritella, P.C.
> 330 N. Wabash Avenue, 22nd Floor
> Chicago, IL 60611-3607
> Telephone: (312) 840-7000
> Facsimile: (312) 840-7900
> E-mail: elesniak@burkelaw.com

/Penny Gentges
Co-Counsel for Defendants
Bass & Maglowsky, S.C.
7020 N. Port Washington Road
Suite 206
Milwaukee, WI 53217
Telephone: (414) 228-6700
Facsimile: (414) 228-6506
E-mail: penny@basmog.com
09135\00600\804248.1

9

## CERTIFICATE OF SERVICE

Edward J. Lesniak, one of the attorneys for certain Defendants, certifies that a true and correct copy of the Motion by Certain Defendants to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7001 was served by the Court's CM/ECF filing system on January 24, 2011, at the time the Motion was filed, on the following parties:

> Rollie R. Hanson
> Penny Gentges
> Mary Grosman (Chapter 13 Trustee)
> Office of the United States Trustee

> /s/    Edward J. Lesniak
> Edward J. Lesniak
> Attorney for Certain Defendants
> (Illinois ARDC #1624261, Admitted to District
> Court for the Eastern District of Wisconsin on
> January 23, 2006)
> Burke, Warren, MacKay & Serritella, P.C.
> 330 N. Wabash Avenue, 22nd Floor
> Chicago, IL 60611-3607
> Telephone: (312) 840-7000
> Facsimile: (312) 840-7900
> E-mail: elesniak@burkelaw.com

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

In re:   EDWARD BLAINE KOHLER and
PATRICIA LYNN KOHLER,

                    Debtors.

Chapter 13

Case No. 09-35931-PP

EDWARD BLAINE KOHLER and
PATRICIA LYNN KOHLER,

            Plaintiffs,

v.

Adversary Proceeding
Case No. 10-022694-PP

STRUCTURED ASSET INVESTMENT LOAN
TRUST MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-4,
U.S. BANK NATIONAL ASSOCIATION,
CHASE MANHATTAN MORTGAGE,
CHASE HOME FINANCE, LLC, CHASE H.E.,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.,

            Defendants.

Mary Grossman, Chapter 13 Trustee,

Additional Party

---

### OBJECTION TO MOTION TO DISMISS AMENDED COMPLAINT

---

The above referenced Plaintiffs/Debtors hereby Object to the Motion on File by the

Defendants to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure

12(b)(1), 12(b)(6) and 12(h)(3) and Federal Rule of Bankruptcy Procedure 7001 and 11 U.S.C.

105(a).

THE LAW OFFICE OF ROLLIE R. HANSON, S.C.
6737 West Washington Street, Suite 1420
West Allis, Wisconsin 53214
(414)321-9733 Fax (414)321-9601
Rollie@hansonlaw.net

In support of this Objection, the Plaintiffs/Debtors assert that they have stated a claim upon which relief may be granted by the Court and also rely upon the Brief in Support of this objection.

Dated this 7th day of February, 2010 at West Allis, Wisconsin

/s/Rollie R. Hanson
Rollie R. Hanson, Attorney for Debtors

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:  EDWARD BLAINE KOHLER and<br>PATRICIA LYNN KOHLER, | Chapter 13 |
| | Case No. 09-35931-PP |
| Debtors. | |

| | |
|---|---|
| EDWARD BLAINE KOHLER and<br>PATRICIA LYNN KOHLER, | |
| Plaintiffs, | |
| | Adversary Proceeding |
| v. | Case No. 10-02694-PP |
| STRUCTURED ASSET INVESTMENT LOAN<br>TRUST MORTGAGE PASS-THROUGH<br>CERTIFICATES, SERIES 2006-4,<br>U.S. BANK NATIONAL ASSOCIATION,<br>CHASE MANHATTAN MORTGAGE,<br>CHASE HOME FINANCE, LLC, CHASE H.E.,<br>MORTGAGE ELECTRONIC REGISTRATION<br>SYSTEMS, INC., | |
| Defendants. | |

Mary Grossman, Chapter 13 Trustee,

Additional Party

---

**BRIEF IN SUPPORT OF OBJECTION TO MOTION BY DEFENDANTS TO DISMISS
AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE
12(b)(1), 12(b)(6) AND 12 (h)(3), FEDERAL RULE OF BANKRUPTCY PROCEDURE
7001 AND 11 U.S.C. 105(a)**

---

## INTRODUCTION

The Plaintiffs/Debtors, Edward B. Kohler and Patricia L. Kohler (hereafter "Kohlers")

THE LAW OFFICE OF ROLLIE R. HANSON, S.C.
6737 West Washington Street, Suite 1420
West Allis, Wisconsin 53214
(414)321-9733 (Fax (414)321-9601
Rollie@hansonlaw.net

have filed this Adversary Proceeding to challenge the validity of the lien rights asserted by U.S. Bank National Association as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates Series 2006-4 as well as the other parties named in the Complaint (hereafter "Defendant"). The Kohlers have the right to file this Adversary Proceeding to challenge the validity of the lien rights of the Defendants and request relief under Bankruptcy Rule 7001(2) which requires an Adversary Proceeding to determine the validity, priority or extent of a lien or other interest in property. *See, Cen-Pen Corp v. Hanson,* 58 F 3d 89, 33 CBC 2d 1159 (4th Cir. 1995). Moreover the Kohlers bring this action under 11 U.S.C. §506 for determination of the secured status. Section 506(d) states "to the extent that a lien secures the claim against a debtor that is not an allowed secured claim, such lien is void . . ." Moreover, the debtors have the right to file this Adversary Proceeding and challenge the position of the Defendants in a Chapter 13 to pursue claims on behalf of themselves as well as on behalf of the estate. *See, Cable v. Ivy Tech State College* 200 F 3d 467 (7th Cir. 1999).

The Defendants state in their Prefatory Statement on their Motion to Dismiss the Complaint that the Kohlers cannot seek a determination of the validity priority extent of the lien but rather seek to challenge the Defendant's ownership of the liens. The Defendant fails to recognize that ownership of the mortgage loans including the notes and mortgages subject of the Adversary Proceeding directly relate to the validity and extent of its lien rights in this Chapter 13 bankruptcy. Moreover, the Kohlers maintained specific allegations to question and challenge the validity of the liens in this Chapter 13 bankruptcy by the Defendants. The specific allegations contained in the Complaint relate to

convoluted, contradictory and confusing documents attached to the original Claims 12 and 13 and Amended Claims 12 and 13 on file in this case by the Defendant.

## STANDARD FOR MOTION TO DISMISS

### I. The Kohlers Complaint Contains Specific Factual Allegations To State A Claim Upon Which Relief May Be Granted And To Withstand A Motion To Dismiss Under Rule 12 (b)(6)

In *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) the Supreme Court clarified the law concerning the standard for a Motion to Dismiss under F.R.C.P. 12(b)(6). According to the *Iqbal* decision, Rule 8(a) requires: "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Iqbal,* 129 S. Ct. at, 1949. A claim has facial plausibility, " when the Plaintiff pleads factual content that allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Id.* As shown below in this brief, the Kohlers have sufficiently pled multiple facts pertaining to confusing and contradictory documents attached to the Claims on file by the Defendant which state a claim to relief plausible on its face. There are real questions as to the Defendant's ownership of the note as well as the validity of alleged assignments of the mortgage done after the filing of the bankruptcy as well as issues related to compliance with conveyance requirements under the Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4 (hereafter "SAIL Trust"). The Kohlers assert that the Defendant does not own the notes and mortgages subject to Original and Amended Claims 12 and 13 and therefore have no valid lien to assert against either the debtors or the bankruptcy estate.

## ARGUMENT

### II. The Defendant Has Not Provided Documentation Or Evidence To Show That It Owns The Mortgage Note Or Holds The Mortgages Referenced In Original And Amended Claims 12 And 13 And Therefore Cannot

**Demonstrate It Has Valid Lien Rights To Assert In This Bankruptcy Proceeding.**

Originally, the Defendant filed Claim Number 12 dated March 16, 2010 attaching copies of the note and mortgage as well as an allonge dated December 2, 2009 and signed by Whitney K. Cook, Assistant Secretary for Chase Home Finance "as Attorney-in-Fact". The purported allonge had no Power of Attorney attached to it to show that Ms. Cook or Chase Home Finance had appropriate authority to actually sign as Attorney-in-Fact on behalf of the originator, BNC Mortgage, Inc. and the signature was dated twenty-nine (29) days after the filing of the bankruptcy petition in this case. In addition, the original Claim Number 12 also attached an Assignment of mortgage dated November 30, 2009 and signed by Attorney Shawn Hillman as Vice-President of MERS, as nominee for BNC Mortgage, Inc. This assignment occurred twenty-seven (27) days after the filing of the Bankruptcy Petition.

Thereafter, and months after the filing of the bankruptcy in this case, the Defendant amended Claim Number 12 and added an undated blank allonge either in addition to or to replace or supplant the allonge dated December 2, 2009. This new or additional allonge is purportedly signed by Eleanor Martino, Vice-President of Quality Assurance for BNC Mortgage, Inc. However, the allonge does not reference the note either in terms of the date of the note or the amount borrowed as shown on the face of the note. The undated blank allonge does contain the names and address of the borrowers. At this point, Amended Claim 12 has an allonge originally dated December 2, 2009 signed by Whitney K. Cook (and also attached to Original Claim 12) along with another blank undated allonge which the Kohlers understand the Defendant will assert is the "real" or original allonge but there is nothing to show when this allonge was created or executed or whether the individual executing it, Eleanor Martino had proper authority to do so.

There are similar circumstances surrounding the Original and Amended Claim 13 filed in this case. The Original Claim 13 included an allonge dated post-petition on March 8, 2010 by one Deborah A. Lenhart, with a title of "Vice President" for "Lehman Brothers Bank, FSB n/k/a Aurora Bank, FSB". Amended Claim 13 has added an additional blank and undated allonge purportedly signed by Jamie Langford, Vice-President of Lehman Brothers Bank, FSB. The additional blank allonge attached to Amended Claim Number 13 does not reference the date of the note or the amount of the note and contains only the borrowers' names and address. Once again, there is no way of knowing when this purported allonge was created or whether it actually corresponds to any note signed by the Kohlers.

The Original and Amended Claim 13 also include a document titled "Assignment of Mortgage" signed post-petition on March 8, 2010 by Attorney Shawn Hillmann as Vice-President of MERS as nominee for Lehman Brothers Bank, FSB. This assignment of mortgage occurred one-hundred and nineteen (119) days after the filing of the bankruptcy petition in this case and there is no indication that the staff attorney of Bass and Moglowsky, Shawn Hillmann, had proper authority to execute this assignment of mortgage.

At this point, it would appear that the post dated allonges submitted with Original Claims 12 and 13 were made up or fabricated in the sense that they were executed for the sole purpose of filing claims in the Kohler bankruptcy. That is, these documents were not executed for the purpose of negotiating the notes to the SAIL Trust although this apparently was the Defendant's contention at the time of the filing of the Original Claims. Presently, the newly produced allonges attached to Amended Claims 12 and 13 have the following problems.

1. It is impossible at this point to know when these undated blank allonges were executed.

2. There is nothing on record to show that any person of authority executed the documents.

3. The blank undated allonges submitted with Amended Claims 12 and 13 lack documentation and verification that the purported transfer of the Kohler notes complied with the conveyance requirements as set forth in the SAIL Trust dated June 1, 2006 or the Mortgage Loan Sale Agreement dated June 1, 2006 as reference in the Trust.

4. The notes and mortgages appear to have been separated prior to the filing of the Bankruptcy Petition and the post-petition assignments of mortgages cannot confer lien rights on to the Defendant.

### III. The Documentation Attached To Original And Amended Claims 12 And 13 Fail To Show That The Sail Trust Acquired Ownership Of The Kohler Loans In Accordance With The Trust's Conveyance Requirements.

The SAIL Trust agreement dated June 1, 2006 contains a preliminary statement as follows:

### PRELIMINARY STATEMENT

The Depositor has acquired the Mortgage Loans from the Seller, and at the Closing Date is the owner of the Mortgage Loans and the other property being conveyed by it to the Trustee hereunder for inclusion in the Trust Fund. On the Closing Date, the Depositor will acquire the Certificates from the Trust Fund, as consideration for its transfer to the Trust Fund of the Mortgage Loans and the other property constituting the Trust Fund. The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Mortgage Loans and the other property constituting the Trust Fund. All covenants and agreements made by the Seller in the Mortgage Loan Sale Agreement and by the Depositor, the Master Servicer, the Securities Administrator and the Trustee herein with respect to the Mortgage Loans and the other property constituting the Trust Fund are for the benefit of the Holders from time to time of the Certificates and, to the extent provided herein, any NIMS Insurer, the Swap Counterparty and the Cap Counterparty. The Depositor, the Trustee, the Master Servicer, the Securities Administrator and the Credit Risk Manager are entering into this Agreement, and the Trustee is accepting the Trust Fund created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

As provided herein, an election shall be made that the Trust Fund (exclusive of (i) the Swap Agreement, (ii) the Swap Account, (iii) the right to receive and the obligation to pay Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls, (iv) the Basis Risk Reserve Fund, (v) the Supplemental Interest Trust, (vi) the Interest Rate Cap Agreement, (vii) the Interest Rate Cap Account and (viii) the obligation to pay Class I Shortfalls (collectively, the "Excluded Trust Assets")) be treated for federal income tax purposes as comprising four real estate mortgage investment conduits under Section 860D of the Code (each a "REMIC" or, in the alternative

"REMIC 1," "REMIC 2," "REMIC 3," and "REMIC 4" (REMIC 4 also being referred to as the "Upper Tier REMIC")). Any inconsistencies or ambiguities in this Agreement or in the administration of this Agreement shall be resolved in a manner that preserves the validity of such REMIC elections.

Each Certificate, other than the Class R and Class LT-R Certificates, represents ownership of a regular interest in the Upper Tier REMIC for purposes of the REMIC Provisions. In addition, each Certificate, other than the Class R, Class LT-R, Class X and Class P Certificates, represents (i) the right to receive payments with respect to any Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls and (ii) the obligation to pay Class I Shortfalls. The Class LT-R Certificate represents ownership of the sole Class of residual interest in REMIC 1. The Class R Certificate represents ownership of the sole Class of residual interest in each of REMIC 2, REMIC 3, and the Upper Tier REMIC for purposes of the REMIC Provisions.

The Upper Tier REMIC shall hold as its assets the uncertificated Lower Tier Interests in REMIC 3, other than the Class LT3-R interest, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 3 for purposes of the REMIC Provisions. REMIC 3 shall hold as its assets the uncertificated Lower Tier Interests in REMIC 2, other than the Class LT2-R interest, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 2. REMIC 2 shall hold as its assets the uncertificated Lower Tier Interests in REMIC 1, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 1. REMIC 1 shall hold as its assets the property of the Trust Fund other than the Lower Tier Interests in REMIC 1, REMIC 2, and REMIC 3 and the Excluded Trust Assets.

The startup day for each REMIC created hereby for purposes of the REMIC Provisions is the Closing Date. In addition, for purposes of the REMIC Provisions, the latest possible maturity date for each regular interest in each REMIC created hereby is the Latest Possible Maturity Date.

The SAIL Trust defines "Mortgage Loan Sale Agreement" (hereafter, "MLSA) as "the mortgage loan sale and assignment agreement dated as of June 1, 2006 for the sale of the mortgage loans by the seller to the depositor." Further, the SAIL Trust defines the closing date as of June 30, 2006 and defines the cutoff date as of June 1, 2006.

The MLSA shows the seller of the mortgage loans for the SAIL Trust to be Lehman Brothers, Inc. and the purchaser to be Structured Asset Securities Corporation. Further, the Structured Asset Securities Corporation is also named and defined in the SAIL Trust as the depositor which is the party that will convey and transfer the mortgage loans to U.S. Bank National Association as the Trustee for the SAIL Trust.

Article 1 of the MLSA is titled "Conveyance of Mortgage Loans" and states in Section

1.01(a) Sale of Mortgage Loans as follows:

> Concurrently with the execution and delivery of this agreement, the depositor does hereby transfer, assign, settle, redeposit with and otherwise convey to the Trust, without recourse, subject to Sections 2.02, 2.04, 2.05 and 2.06, in trust, all the rights, title, and interest of the depositor in and to the mortgage loans.

In addition, relevant portions of Section 2.01 of the SAIL set out requirements for the

transfer of each mortgage loan:

> "In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee, and/or the Custodian acting on the Trustee's behalf, the following documents or instruments with respect to each Mortgage Loan (each a "mortgage File") so transferred and assigned:

(i)

> with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or in blank **(in each case with all necessary intervening endorsements, as applicable)** or with respect to any lost Mortgage Note, a lost note affidavit, stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note;

(ii)

> the original of any guarantee executed in connection with the Mortgage Note, assigned to the Trustee;

(iii)

> with respect to any Mortgage Loan other than a Cooperative Loan, the original recorded Mortgage with evidence of recording indicated thereon and the original recorded power of attorney, with evidence of recording thereon. If, in connection with any Mortgage Loan, the Depositor cannot deliver the Mortgage or power of attorney with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage or power of attorney has been lost, the Depositor shall deliver or cause to be delivered to the Trustee (or the applicable Custodian), in the case of a delay due to recording, a true copy of such Mortgage or power of attorney, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such Mortgage or power of attorney delivered to the Trustee (or the applicable Custodian) is a true copy and that the original of such Mortgage or power of attorney has been forwarded to the public recording office, or, in the case of a Mortgage or power of attorney that has been lost, a copy thereof (certified as provided for under the laws of the appropriate jurisdiction) and a written Opinion of Counsel acceptable to the Trustee and the Depositor that an original recorded Mortgage or power of attorney is not required to enforce the Trustee's interest in the Mortgage Loan;. . . (emphasis added)

A copy of the relevant portions of the SAIL Trust dated June 1, 2006 is attached hereto as Exhibit 1 and incorporated herein. Also attached is a copy of the Mortgage Loan Sale and Assignment Agreement dated June 1, 2006 as Exhibit 2 and incorporated herein.

The language contained in Exhibits 1 and 2 show the following transfers would be required for actual conveyance of the Kohler mortgage note for the Original and Amended Claim 12.

BNC Mortgage, Originator

↓

Lehman Brothers Holding, Inc., Seller

↓

Structured Asset Securities Corporation, Purchaser/Depositor

↓

U.S. Bank National Association, Trustee

For Original and Amended Claim 13, the following conveyances were required for the SAIL Trust to obtain ownership of the Kohler note.

Lehman Brothers Bank, FSB, Originator

↓

Lehman Brothers Holding, Inc., Seller

↓

Structured Asset Securities Corporation, Purchaser/Depositor

↓

U.S. Bank National Association, Trustee

At this point, it is important to note that Section 2.01(b)(i) specifically states, (b) in connection with such transfer and assignment, the depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee, and/or the custodian acting on the Trustee's behalf, the following documents or instruments with regard to each mortgage loan (each a "mortgage file") so transferred and signed: (i) with respect to each mortgage loan, the original mortgage note endorsed without recourse in proper form to the order of the trustee or in blank (in each case, with all necessary intervening endorsements, as applicable) . . ."There are no documents to show the intervening endorsements have been accomplished in this case. Instead, the Defendant has put forth confusing and contradictory alonges attached to Amended Claims 12 and 13 with no documentation whatsoever of the necessary intervening endorsements from the originator→ to seller→ to depositor → to trustee. The only other documents are post-petition Assignments of Mortgage of questionable validity. The Kohlers acknowledge that the Defendant has provided documents pursuant to prior discovery requests in regard to its relief from stay motion on file with the Court and previous Adversary Proceedings. However, the documents provided are actually nothing more than computer printed schedules with various codes on them purporting to show transfer dates for the Kohler notes. There are no intervening endorsements or receipts to show the transfer of the notes and no mortgage file.

In addition to the above referenced conveyances, the SAIL Trust required the loans to be transferred to the trustee by the cutoff date of June 30, 2006 in accordance with the terms of the MLSA and Section 2.01 of the trust itself. Further, Section 2.01(b) of the SAIL Trust entitled "Acceptance of Trust Funds by Trustee: Review of Documents in the Trust Fund" requires the Trustee to review documentation of the Trust Fund with the obligation to review all required documents set forth in Section 2.01 of the Trust and to ascertain the mortgage loans listed on the

Mortgage Loan Schedule were properly transferred to the Trust within forty-five (45) days after the Closing Date of June 30, 2006. Section 2.02(b) states as follows:

(b)

Within 45 days after the Closing Date, the Trustee or the applicable Custodian on behalf of the Trustee, will, for the benefit of Holders of the Certificates, review each Mortgage File to ascertain that all required documents set forth in Section 2.01 have been received and appear on their face to contain the requisite signatures by or on behalf of the respective parties thereto, and shall deliver to the Trustee, the Depositor, the Master Servicer and any NIMS Insurer an Interim Certification in the form annexed hereto as Exhibit B-2 (or in the form annexed to the Custodial Agreement as Exhibit B-2, as applicable) to the effect that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan prepaid in full or any Mortgage Loan specifically identified in such certification as not covered by such certification), (i) all of the applicable documents specified in Section 2.01(b) are in its possession and (ii) such documents have been reviewed by it and appear to relate to such Mortgage Loan. The Trustee, or the applicable Custodian on behalf of the Trustee, shall determine whether such documents are executed and endorsed, but shall be under no duty or obligation to inspect, review or examine any such documents, instruments, certificates or other papers to determine that the same are valid, binding, legally effective, properly endorsed, genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded or are in recordable form or that they are other than what they purport to be on their face. Neither the Trustee nor the applicable Custodian shall have any responsibility for verifying the genuineness or the legal effectiveness of or authority for any signatures of or on behalf of any party or endorser.

There are no documents to show that the Kohler mortgage loans were transferred to the trust in accordance with Section 2.02(b).

## IV. The Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-4 is Governed by New York Law.

The SAIL Trust claiming ownership of the Debtors' mortgage loans was created by an agreement for the pooling of mortgages in order to sell certificates to investors and has defined rights, duties and obligations for the parties to the Trust. The Trust agreement is filed under oath with the Securities and Exchange Commission. The SAIL Trust and the mortgage loan sale and assignment agreement (MLSA) operate as the securitization documents by establishing the terms

and conditions for pooling mortgage loans into the securitized trust. *See, Exhibits 2 and 3*. The acquisition of the assets of this Trust and these documents are governed under the law of the State of New York pursuant to Section 11.06 of the PSA.[1]

Section 10.01 titled "REMIC Administration" states as follows:

Section 10.01
<u>REMIC Administration</u>.

(a)    REMIC elections as set forth in the Preliminary Statement shall be made on Forms 1066 or other appropriate federal tax or information return for the taxable year ending on the last day of the calendar year in which the Certificates are issued.  The regular interests and residual interest in each REMIC shall be as designated in the Preliminary Statement.  For purposes of such designations, the interest rate of any regular interest that is computed by taking into account the weighted average of the Net Mortgage Rates of the Mortgage Loans shall be reduced by the amount of any expense paid by the Trust to the extent that (i) such expense was not taken into account in computing the Net Mortgage Rate of any Mortgage Loan, (ii) such expense does not constitute an "unanticipated expense" of a REMIC within the meaning of Treasury Regulation Section 1.860G-1(b)(3)(ii) and (iii) the amount of such expense was not taken into account in computing the interest rate of a more junior Class of regular interests.

(b)    The Closing Date is hereby designated as the "Startup Day" of each REMIC within the meaning of section 860G(a)(9) of the Code.  The latest possible maturity date for purposes of Treasury Regulation 1.860G-1(a)(4) will be the Latest Possible Maturity Date.

Pursuant to the terms of the SAIL Trust and the applicable IRS Regulations, the Closing Date of June 1, 2006 is also the startup date for the Trust under the IRS Code.  The startup date is significant because the IRS Tax Code places limitations upon which a REMIC trust may be funded with its assets to this date.   The relevant portions of the IRS Code addressing the definition of a REMIC is :

<u>26 USCS § 860D</u>

§ 860D.  REMIC defined.

(a) General rule. For purposes of this title, the terms 'real estate mortgage

investment conduit' and 'REMIC' mean any entity--

(1) to which an election to be treated as a REMIC applies for the

---

1 Section 11.06 states <u>Governing Law</u> This agreement shall be governed by and construed  in accordance with the laws of the State of New York without reference to its conflict of law provisions (other than Sections 5-1401 of the General Obligations Law), any obligations, rights, and remedies of the parties hereunder shall be determined in accordance with such laws.

taxable year and all prior taxable years,

    (2) all of the interests in which are regular interests or residual

interests,

    (3) which has 1 (and only 1) class of residual interests (and all

distributions, if any, with respect to such interests are pro rata),

    (4) *as of the close of the 3rd month beginning after the startup day*

(emphasis supplied) and at all times thereafter, substantially all of the

assets of which consist of qualified mortgages and permitted

investments,

The IRS Code also provides definitions of prohibited transactions and prohibited

contributions. In the context of this case, the relevant statute is the definition of prohibited

contributions which is as follows:

    26 U.S.C. 860G(d)(1) states that, except as provided in

section 860G(d)(2), "if any amount is contributed to a REMIC

after the startup day, there is hereby imposed a tax for the taxable

year of the REMIC in which the contribution is received equal to

100 percent of the amount of such contribution."

26 U.S.C. 860G(d)(2) states:

    (2) Exceptions. Paragraph (1) shall not apply to any

contribution which is made in cash and is described in any of the

following subparagraphs:

    (A) Any contribution to facilitate a clean-up call (as defined in

regulations) or a qualified liquidation.

(B) Any payment in the nature of a guarantee.

(C) Any contribution during the 3-month period beginning on

the startup day.

(D) Any contribution to a qualified reserve fund by any holder

of a residual interest in the REMIC.

(E) Any other contribution permitted in regulations.

The SAIL Trust sets certain provisions and conveyances for the acquisition of mortgage loans by the Trust and by its terms sets a "closing date" of June 1, 2006. In analyzing the facts of this case, this Court must look to New York law to determine the rights and duties of the Trustee and whether the Trust has acquired ownership of the Kohlers' notes dated April 6, 2006.

### V. Under New York Law, the Authority of the Trustee is Determined By the Provisions of the Trust.

It is the well settled law of New York that the authority of a trustee is established by the provisions of the Trust. This principle is codified at NY CLS EPTL § 7-2.4, Act of trustee in contravention of Trust, which reads:

> If the Trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the Trust, except as authorized by this article and by any other provision of law, is void.[2]

The SAIL Trust and MLSA require a particular sequence of conveyances and A → B → C → D sequence. The conveyances must occur from the originator to a seller to a depositor and then to the trustee of the Trust. *See*, Section 2.01 of Exhibit 1 and *See*, Exhibit 3. In addition, section

---

2 *See also, United States Trust Co. v. First Natl. City Bank*, 57 A.D.2d 285, 295-296, Aff. D. 45NY2d 869 (it is settled that the duties and powers of the trustee are defined by the terms of the trust agreement and are tempered only by the fiduciary obligation of the loyalty to the beneficiaries); Restatement[2nd] of trusts Section 186, Comments A, D. The debtors further assert that NYCLSEPTL Section 7-2.4 codifies long-standing principles under New York Common Law governing trusts. The debtors refrained from a detailed analysis and explanation of New York Trust Law at this time as the purpose of this brief is to demonstrate the debtors maintain valid claims through the Adversary Proceeding and do not present the issues in this brief for full adjudication of the Complaint.

2.02 of the SAIL Trust requires confirmation that the Trust acquired the mortgage loans within 45 days after the closing date of June 30, 2006. The documents submitted by USB in support of claims 12 and 13 show attempts to negotiate the note directly from the originator to the trustee over three years after the closing date. The Assignments of Mortgages (AOM) also show an attempt to assign and perfect valid lien rights in the Trust over three years after the closing date when the Trust had no ownership of the notes. Further, the purported allonges and the AOMs fail to comply with the sequences of conveyances called for and required by the Trust. Under the circumstances, the trust cannot own these mortgage loans.

## VI. The Provisions of the Trust Establish the Rights of the Parties to the Instrument, the Negotiation and Acquisition of the Debtors' Notes As Well As the Validity of Any Post-Filing Assignment of Mortgage to the Trust.

As noted above, the Trust has adopted the laws of New York to govern the acquisition of mortgage loans. In addition to the New York laws governing trusts, this will include adoption and application of the New York Uniform Commercial Code. This Trust is a complex document drafted and executed to securitize mortgage loans in order to create REMICs to sell certificates from the securitized debt to investors. The parties to the Trust are sophisticated institutional and financial entities and have established the rights and duties of the Trust via agreement. An analysis of the New York UCC shows that the terms of the Trust determine and govern the conveyance requirements for acquisition of mortgage loans.

### 1. The Trust provisions set by the agreement of the parties to the Trust establish the requirements for the acquisition of mortgage loans including the proper transfer and perfection of mortgage liens to the Trust under the New York Uniform Commercial Code.

The purposes and objectives of the New York Uniform Commercial Code are, in part, "to permit the continued expansion of commercial practices through custom, usage and agreement of the parties." N.Y. UCC. LAW § 1—102(2)(b). In addition, the Code states that:

> The effect of provisions of this Act may be varied by agreement, except as otherwise provided in this Act and except that the obligations of good faith, diligence, reasonableness and care prescribed by this Act may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable. N.Y. UCC. LAW § 1—102(3).

The common law concept of freedom of contracting is a principle of the Code, and it permits two contracting parties to vary the Code by agreement as it fits their purposes, insomuch as it does not violate the exceptions in subsection (3), such as good faith and reasonableness. This concept is strongly grounded in New York case law, and courts have upheld contracts that have modified provisions of the Uniform Commercial Code. *See e.g. Forest Nursery Co. v. I.W.S.*, 534 N.Y.S.2d 86 (N.Y. Dist. Ct. 1988) (Court upheld provisions contrary to the UCC and stated that "the underlying principle of the Code is 'freedom of contract[,]'" and that the UCC "was never intended to be used by courts to create results that are contrary to the intentions of the parties."); *A. M. Knitwear Corp. v. All America Export-Import Corp.*, 41 N.Y.2d 14 (N.Y. 1976) ("The effect of the provisions of the Uniform Commercial Code may be varied by agreement, with exceptions not applicable here (Uniform Commercial Code, § 1-102, subd [3])."); *Brodheim v. Chase Manhattan Bank*, 75 Misc. 2d 285 (N.Y. Sup. Ct. 1973) (Court upheld an agreement that set the standards by which due care was to be measured and stated that "parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.").

Courts have also repeatedly upheld the UCC variance by agreement concept in cases where they determined that the specific agreement violated a subsection (3) exception due to lack

of good faith or unreasonableness. *See e.g. GE Capital Corp. v. National Tractor Trailer Sch.*, 175 Misc. 2d 20 (N.Y. Sup. Ct. 1997) ("[P]ursuant to UCC 1-102 (3), the parties may vary the effect of the provisions of the UCC by agreement."); *Marine Midland Bank v. CMR Industries, Inc.*, 159 A.D.2d 94 (N.Y. App. Div. 2d Dep't 1990) ("[P]arties may by agreement determine the standards by which the performance of such obligations is to be measured.").

In the present action, the Trust is governed by a PSA dated June 1, 2006, and a Mortgage Loan Sale and Assignment Agreement, also dated June 1, 2006. The Trust agreement and mortgage loan sale and assignment agreement require a specific A-B-C-D sequence of transfers within a specific period of time. The deadline for the transfers was over three years ago. These provisions govern the acquisition of the debtors' notes as well as the transfer and perfection of the debtors' mortgages to the Trust pursuant to the agreement of the parties.[3]

## 2. The Trust has no interest in the Debtors' notes.

As shown above, the SAIL Trust had certain provisions governing the acquisition of assets in compliance with the laws of New York governing the rights and duties of the trustee. The documents put forth by the claimant do not show that the Trust acquired the Debtors' notes under its own terms and it does not appear it can acquire them now. Furthermore, the post filing attempts to assign the mortgages to the Trust are an attempt to create and enforce the lien rights to the Trust in violation of the Automatic Stay.

### 3. The post filing assignments of mortgages in absence of ownership of the notes have no validity and fail to create, perfect, and enforce lien rights against the bankruptcy estate.

---

3 In addition, the Preliminary Statement of the PSA indicates that the purpose of the trust is to establish Real Estate Mortgage Investment Conduits in order to sell certificates to investors. This also invokes Section 860 of the Internal Revenue Code that basically requires a mortgage loan to be transferred to the trust according to the terms of the trust and within a specified period of time related to the cutoff date. *See,* the Preliminary Statement contained in Exhibit 2 related to the election of the Trust Fund be cleared for Federal Income Tax purposes as comprising Real Estate Mortgage Investment Conduits under Section 860(D) of the code. *See also,* Section 10.01 pertaining to REMIC Administration.

The AOMs show an attempt at a post-filing transfer of the mortgages through the MERS system at a time when the Trust has no ownership of the note. Further, MERS never had ownership of the note. The BNC mortgage dated April, 2006 and the Landbrokers' Bank, FSB Mortgage dated April 6, 2006 state that MERS, acts solely as a nominee for a lender and that MERS is the mortgagee of the security instrument. MERS is exactly what the name implies, a Mortgage Electronic Registration System designed to track mortgages for lenders. It is instructive that in the context of mortgage foreclosures, several courts have recognized that MERS does not own or hold the note. *See, Saxon Mortgage Services, Inc. v. Hillery,* 2008 WL 5170180 (N.D. Cal 2008); (Court denied enforcement of a Note and Deed of Trust involving MERS assignment of Deed of Trust, holding therefore the assignment to be valid that the assignment had to be of the note and not just of the Deed of Trust "note and mortgage are inseparable; the former as essential, the latter as an incident . . . the assignment of the note carries the mortgage with it while an assignment of the latter alone is a nullity . . .mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation that the mortgage secures *Id. at. *5) Bellistri v. Ocwen Loan Servicing, LLC* 284 S.W.3d 619 (Mo. App., 2009) (Note and MERS Mortgage had been separated and the assignee had no standing to foreclose and noting that the note and the security interest can be split and in that event the note becomes unsecured); *Mortgage Electronic Registration Systems, Inc. v. Southwest Homes of Arkansas, Inc.* 301 S.W.3d 1 (Ark.2009) (MERS was not a necessary party in a foreclosure lawsuit and refused to satisfy judgment of foreclosure granted to second mortgagee.); *See also, Landmark Nat'l Bank v. Kesler* 216 P.3d 158 (Kan. 2009) (Court found MERS was not a contingently necessary party, not the owner of the note and mortgage and could not assign the note or mortgage 216 P.3d *at* 166).

Bankruptcy Courts have also recognized the fact that MERS does not and cannot own a mortgage note. *See, In re Sheridan* 2009 WL 631355 (Bankr. D. ID Mar. 12, 2009) (Court denied MERS Relief from Stay Motion finding no evidence or documentation to show that MERS had an interest in the note or the Deed of Trust; *In re Wilhelm* 407 Bkr. 292(Bankr. D. ID 2009) Court denied MERS Motion for Relief from Stay due to lack of standing and real party in interest status and lack of evidence to show possession or ownership of the note.); *In re Hawkins,* 2009 WL 901766 (Bankr. D. Nev. 2009) (Court denied MERS Relief from Stay Motion ruling lack of constitutional and prudential standing and noted that separation of the note as a negotiable interest from the Deed of Trust as the security instrument makes the note unsecured; transfer of mortgage without note a nullity).

While the above referenced cases deal primarily with standing and real party in interest issues either in a foreclosure context or the purposes of deciding relief from stay motion, they all recognize and point out the fact that MERS does not and cannot own the note. The allonges and AOMs submitted by USB also confirms that MERS has never owned the debtors' notes.

Attached as Plaintiffs' Exhibit 3 to this memorandum is Rule 3 titled "Obligations of MERS." This Rule is important to the issues presented in this litigation because Section 3 of this rule governs the requirements and procedures to give proper authority to execute an assignment of a mortgage that is registered on the MERS system. In this case the original lender and MERS member for the first mortgage was BNC Mortgage (as shown by the document attached to Claim 12) and the lender and MERS member for the second mortgage was Lehman Brothers Bank, FSB (as shown by the documents attached to Claim 13). Section 3 states as follows:

> Section 3. (a) Upon request from the Member, Mortgage Electronic Registration Systems, Inc. shall promptly furnish to the Member, in accordance with the Procedures, a corporate resolution designating one or

more officers of such Member, selected by such Member, as "certifying officers" of Mortgage Electronic Registration Systems, Inc. to permit such Member (i) to release the lien of any mortgage loan **registered on the MERS® System to such Member**, (ii) assign the lien of any mortgage naming MERS as the mortgagee **when the Member is also the current promissory note-holder**, or if the mortgage is registered on the MERS® System, **is shown to be registered to the Member**, (iii) to foreclose upon the property **securing any mortgage loan registered on the MERS® System to such Member**, (iv) to take any and all actions necessary to protect the interest of the Member or the beneficial owner of a mortgage loan in any bankruptcy  proceeding **regarding a loan registered on the MERS® System that is shown to be registered to the Member**, (v) to take such actions as may be necessary to fulfill such Member's servicing obligations to the beneficial owner of such mortgage loans (including mortgage loans that are removed from the MERS® System as a result of the transfer thereof to a non-Member), (vi) to take action and execute all documents necessary to refinance, amend or modify any mortgage **loan registered on the MERS® System to such Member**, (vii) endorse checks made payable to MERS to the Member that are received by the Member in payment on any mortgage loan registered on the MERS® System **that is shown to be registered to the Member**. In instances where Mortgage Electronic Registration Systems, Inc. designates an officer of a Member as a certifying officer of MERS for the limited purposes described above, such Member shall indemnify MERS and any of its employees, directors, officers, agents or affiliates against all loss, liability and expenses which they may sustain as a result of any and all actions taken by such certifying officer. (b) Upon request by Mortgage Electronic Registration Systems, Inc., the Member shall deliver to Mortgage Electronic Registration Systems, Inc. a corporate resolution naming the Corporate Secretary of Mortgage Electronic Registration Systems, Inc. as a "certifying officer" of the Member solely for the purpose of installing Mortgage Electronic Registration Systems, Inc. as mortgagee of record on mortgage loans which have been registered on the MERS® System by the Member. (emphasis added)

Thus in order for the originating lender in this case to have an employee of  it appointed as a "Certifying Officer", the following process must be followed:

1. The originating lender must hold a mortgage on the MERS system.

2.   The originating Lender must request, pursuant to a Corporate Resolution of the originating lender that MERS issue a Corporate Resolution naming an officer of the originating lender Member of MERS as a MERS Certifying Officer in order to sign releases, discharges or

assignments on behalf of MERS. The provisions of his rule are clear: only employees of MERS lender, which hold loans on the MERS system are allowed to make such application and to receive such authorizations.

3. Upon receipt of the resolution obtained pursuant to the **Rules of MERS,** the employee of the originating lender member of MERS is allowed to sign an assignment of mortgage on behalf of MERS as nominee for the authorizing lender.

In this case, it appears that the individuals executing the assignments of the first and second mortgages do not have proper authority to do so. There is nothing to show that Shawn Hillman and Eric Teske (both staff attorneys at the Law Firm of Bass & Moglowsky) were or are officers of the MERS members (BNC Mortgage and Lehman Brothers Bank, FSB) as required by the MERS rules. At this point, there is no credible evidence to show a proper corporate resolution was ever done to give Attorneys Teske and Hillman authority to act as certifying officers for MERS. It appears that MERS and its members have failed to follow their own rules and agreements to establish proper authority for the assignment of the mortgages in this case. This means that the assignments are not valid and this is another issue that should be addressed in this case, in addition to the conveyance problems under the terms of the Trust.

## CONCLUSION

The Kohlers assert that they have raised proper claims and challenges to the validity of the Defendant's liens with enough specificity to withstand the Motion to Dismiss. The Defendant has not shown it owns the Kohler mortgage loans subject to Claims and Amended Claims 12 and 13. In addition, the record is devoid of any proper documentation or evidence to support the post-petition Assignments of Mortgages executed by Staff Attorneys of the Law Firm of Bass and Moglowsky as valid assignments.

Dated this 7th day of February, 2010 at West Allis, Wisconsin

/s/Rollie R. Hanson
Rollie R. Hanson, Attorney for Debtors

**SAIL Trust**

All company filings:

http://www.sec.gov/cgi-bin/browse-edgar?action=getcompany&CIK=0001366930&owner=exclude&count=40

Sail Trust Agreement Web Link:

http://www.sec.gov/Archives/edgar/data/1366930/000116231806000994/exhibit41.htm

EXECUTION

STRUCTURED ASSET SECURITIES CORPORATION, as Depositor,

AURORA LOAN SERVICES LLC, as Master Servicer,

WELLS FARGO BANK, N.A., as
Securities Administrator,

CLAYTON FIXED INCOME SERVICES INC., as Credit Risk Manager,

and

U.S. BANK NATIONAL ASSOCIATION, as Trustee

---

TRUST AGREEMENT

Dated as of June 1, 2006



EXHIBIT
1
tabbies

STRUCTURED ASSET INVESTMENT LOAN TRUST
MORTGAGE PASS-THROUGH CERTIFICATES
SERIES 2006-4

## PRELIMINARY STATEMENT

The Depositor has acquired the Mortgage Loans from the Seller, and at the Closing Date is the owner of the Mortgage Loans and the other property being conveyed by it to the Trustee hereunder for inclusion in the Trust Fund. On the Closing Date, the Depositor will acquire the Certificates from the Trust Fund, as consideration for its transfer to the Trust Fund of the Mortgage Loans and the other property constituting the Trust Fund. The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Mortgage Loans and the other property constituting the Trust Fund. All covenants and agreements made by the Seller in the Mortgage Loan Sale Agreement and by the Depositor, the Master Servicer, the Securities Administrator and the Trustee herein with respect to the Mortgage Loans and the other property constituting the Trust Fund are for the benefit of the Holders from time to time of the Certificates and, to the extent provided herein, any NIMS Insurer, the Swap Counterparty and the Cap Counterparty. The Depositor, the Trustee, the Master Servicer, the Securities Administrator and the Credit Risk Manager are entering into this Agreement, and the Trustee is accepting the Trust Fund created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

As provided herein, an election shall be made that the Trust Fund (exclusive of (i) the Swap Agreement, (ii) the Swap Account, (iii) the right to receive and the obligation to pay Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls, (iv) the Basis Risk Reserve Fund, (v) the Supplemental Interest Trust, (vi) the Interest Rate Cap Agreement, (vii) the Interest Rate Cap Account and (viii) the obligation to pay Class I Shortfalls (collectively, the "Excluded Trust Assets")) be treated for federal income tax purposes as comprising four real estate mortgage investment conduits under Section 860D of the Code (each a "REMIC" or, in the alternative "REMIC 1," "REMIC 2," "REMIC 3," and "REMIC 4" (REMIC 4 also being referred to as the "Upper Tier REMIC")). Any inconsistencies or ambiguities in this Agreement or in the administration of this Agreement shall be resolved in a manner that preserves the validity of such REMIC elections.

Each Certificate, other than the Class R and Class LT-R Certificates, represents ownership of a regular interest in the Upper Tier REMIC for purposes of the REMIC Provisions. In addition, each Certificate, other than the Class R, Class LT-R, Class X and Class P Certificates, represents (i) the right to receive payments with respect to any Basis Risk Shortfalls and Unpaid Basis Risk Shortfalls and (ii) the obligation to pay Class I Shortfalls. The Class LT-R Certificate represents ownership of the sole Class of residual interest in REMIC 1. The Class

R Certificate represents ownership of the sole Class of residual interest in each of REMIC 2, REMIC 3, and the Upper Tier REMIC for purposes of the REMIC Provisions.

The Upper Tier REMIC shall hold as its assets the uncertificated Lower Tier Interests in REMIC 3, other than the Class LT3-R interest, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 3 for purposes of the REMIC Provisions. REMIC 3 shall hold as its assets the uncertificated Lower Tier Interests in REMIC 2, other than the Class LT2-R interest, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 2. REMIC 2 shall hold as its assets the uncertificated Lower Tier Interests in REMIC 1, and each such Lower Tier Interest is hereby designated as a regular interest in REMIC 1. REMIC 1 shall hold as its assets the property of the Trust Fund other than the Lower Tier Interests in REMIC 1, REMIC 2, and REMIC 3 and the Excluded Trust Assets.

The startup day for each REMIC created hereby for purposes of the REMIC Provisions is the Closing Date. In addition, for purposes of the REMIC Provisions, the latest possible maturity date for each regular interest in each REMIC created hereby is the Latest Possible Maturity Date.

ARTICLE I

DEFINITIONS

Section 1.01

Definitions  The following words and phrases, unless the context otherwise requires, shall have the following meanings:

Closing Date: June 30, 2006.

Cut-off Date: June 1, 2006.

Depositor: Structured Asset Securities Corporation, a Delaware corporation having its principal place of business in New York, or its successors in interest.

Form 8-K Disclosure Information: As defined in Section 6.20(f)(i).

Form 10-K Certification: The certification required pursuant to Rule 13a-14 under the Exchange Act.

Form 8-K Disclosure Information: As defined in Section 6.20(f)(i).

<u>Form 10-K Certification</u>: The certification required pursuant to Rule 13a-14 under the Exchange Act.

<u>Master Servicer</u>: Aurora Loan Services LLC, or any successor in interest, or if any successor master servicer shall be appointed as herein provided, then such successor master servicer.

<u>MERS</u>: Mortgage Electronic Registration Systems, Inc., a Delaware corporation, or any successor in interest thereto.

<u>MERS Mortgage Loan</u>: Any Mortgage Loan as to which the related Mortgage, or an Assignment of Mortgage, has been or will be recorded in the name of MERS, as nominee for the holder from time to time of the Mortgage Note.

<u>Mortgage</u>: A mortgage, deed of trust or other instrument encumbering a fee simple interest in real property securing a Mortgage Note, together with improvements thereto.

<u>Mortgage File</u>: The mortgage documents listed in Section 2.01(b) pertaining to a particular Mortgage Loan required to be delivered to the Trustee pursuant to this Agreement.

<u>Mortgage Loan</u>: A Mortgage and the related notes or other evidences of indebtedness secured by each such Mortgage conveyed, transferred, sold, assigned to or deposited with the Trustee pursuant to Section 2.01 or Section 2.05, including without limitation each Mortgage Loan listed on the Mortgage Loan Schedule, as amended from time to time.

<u>Mortgage Loan Sale Agreement</u>: The mortgage loan sale and assignment agreement dated as of June 1, 2006, for the sale of the Mortgage Loans by the Seller to the Depositor.

<u>Mortgage Loan Schedule</u>: The schedule attached hereto as Schedule A, which shall identify each Mortgage Loan, as such schedule may be amended from time to time to reflect the addition of Mortgage Loans to, or the deletion of Mortgage Loans from, the Trust Fund. Such schedule shall set forth, among other things, the following information with respect to each Mortgage Loan: (i) the Mortgage Loan identifying number; (ii) the city, state and zip code of the Mortgaged Property; (iii) the original principal amount of the Mortgage Loan; (iv) the Mortgage Rate at origination; (v) the monthly payment of principal and interest at origination; (vi) Mortgage Pool in which such Mortgage Loan is included; (vii) the applicable Servicer servicing such Mortgage Loan and the applicable Servicing Fee Rate; (viii) the applicable Custodian with respect to the Mortgage File related to such Mortgage Loan; (ix) whether such Mortgage Loan is subject to a Prepayment Premium for voluntary prepayments by the Mortgagor, the term during which such Prepayment Premiums are imposed and the methods of calculation of the Prepayment Premium; (x) where applicable, whether such Mortgage Loan is covered by a Bulk PMI Policy or LPMI Policy and the applicable Insurance Fee Rate; and (xi) whether such Mortgage Loan is a Simple Interest Mortgage Loan. The Depositor shall be responsible for providing the Trustee and the Master Servicer with all amendments to the Mortgage Loan Schedule.

Mortgage Note:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage under a Mortgage Loan.

Mortgage Pool:  Any of Pool 1, Pool 2 or Pool 3.

PMI Insurer:  MGIC, PMI Mortgage and RMIC.

PMI Letter Agreement:  With respect to the Bulk PMI Policy with PMI Mortgage, the Terms Letter for PMI Mortgage Insurance Coverage dated as of June 30, 2006, among LBH, PMI Mortgage and the Trustee.

PMI Mortgage:  PMI Mortgage Insurance Co.

Pool 1:  The aggregate of the Mortgage Loans identified on the Mortgage Loan Schedule as being included in Pool 1.

Pool 2:  The aggregate of the Mortgage Loans identified on the Mortgage Loan Schedule as being included in Pool 2.

Pool 3:  The aggregate of the Mortgage Loans identified on the Mortgage Loan Schedule as being included in Pool 3.

Prospectus:  The prospectus supplement dated June 20, 2006, together with the accompanying prospectus dated June 2, 2006, relating to the Offered Certificates.

REMIC:  Each pool of assets in the Trust Fund designated as a REMIC pursuant to the Preliminary Statement.

REMIC 1:  As described in the Preliminary Statement.

REMIC 2:  As described in the Preliminary Statement.

REMIC 3:  As described in the Preliminary Statement.

REMIC 3 Net Funds Cap:  For any Distribution Date (and the related Accrual Period) and any Class of Certificates, an amount equal to (i) the weighted average of the interest rates on the Lower Tier Interests in REMIC 3 (other than an interest-only regular interest), weighted in proportion to their Class Principal Amounts as of the beginning of the related Accrual Period, multiplied by (ii) an amount equal to (a) 30, divided by (b) the actual number of days in the Accrual Period.

REMIC 4:  As described in the Preliminary Statement

Reportable Event:  As defined in Section 6.20(f)(i).

Reporting Servicer: As defined in Section 6.20(e)(i

Rules: As defined in Section 6.20(c).

Seller: Lehman Brothers Holdings Inc., or any successor in interest.

Servicing Agreement: Each servicing agreement, subservicing agreement or reconstituted servicing agreement identified on Exhibit E hereto, dated as of June 1, 2006, among the Seller, the Master Servicer and one of the above-named Servicers, and any other servicing agreement entered into between a successor servicer and the Seller pursuant to the terms of this Agreement.

Sponsor: Lehman Brothers Holdings Inc., or any successor in interest.

Startup Day: The day designated as such pursuant to Section 10.01(b) hereof.

Swap Account: The account created pursuant to Section 5.07(a) of this Agreement.

Swap Agreement: The interest rate swap agreement entered into by the Supplemental Interest Trust, which agreement provides for, among other things, a Net Swap Payment to be paid pursuant to the conditions provided therein, together with any schedules, confirmations or other agreements relating thereto, attached hereto as Exhibit O.

Swap Amount: With respect to each Distribution Date and the related Swap Payment Date, the sum of any Net Swap Payment and any Swap Termination Payment deposited into the Swap Account.

Transfer Agreements: As defined in the Mortgage Loan Sale and Assignment Agreement.

Transferor: Each seller of the Mortgage Loans pursuant to the Transfer Agreements.

Trust Fund: The corpus of the Structured Asset Investment Loan Trust 2006-4 created pursuant to this Agreement, consisting of the Mortgage Loans, the assignment of the Depositor's rights under the Transfer Agreements, the Mortgage Loan Sale Agreement and each Servicing Agreement, such amounts as shall from time to time be held in the Collection Account, Certificate Account, Securities Administration Account, any Custodial Account and any Escrow Account, the Swap Termination Receipts Account, the Swap Replacement Receipts Account, the Cap Termination Receipts Account, the Cap Replacement Receipts Account, the Basis Risk Reserve Fund, the Insurance Policies, any REO Property and the other items referred to in, and conveyed to the Trustee under, Section 2.01(a).

Trust Fund Termination Event: As defined in Section 7.01(a).

Trustee:  U.S. Bank National Association, not in its individual capacity but solely as Trustee, or any successor in interest, or if any successor trustee shall be appointed as herein provided, then such successor in interest or successor trustee, as the case may be.

UCC or Uniform Commercial Code:  The Uniform Commercial Code as in effect in any applicable jurisdiction from time to time.

Section 2.01

Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans.

(a)

Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02, 2.04, 2.05 and 2.06, in trust, all the right, title and interest of the Depositor in and to the Mortgage Loans.

Concurrently with the execution and delivery of this Agreement, the Depositor does hereby assign to the Trustee all of its rights and interest under the Mortgage Loan Sale Agreement, including all rights of the Seller under each Servicing Agreement and the Transfer Agreement (including the right to enforce the Transferor's obligation to repurchase First Payment Default Mortgage Loans pursuant to the related PPTL), but only to the extent assigned under the Mortgage Loan Sale Agreement.  The Trustee hereby accepts such assignment, and shall be entitled to exercise all the rights of the Depositor under the Mortgage Loan Sale Agreement as if, for such purpose, it were the Depositor.

It is agreed and understood by the Depositor and the Trustee (and the Seller has so represented and recognized in the Mortgage Loan Sale Agreement) that it is not intended that any Mortgage Loan to be included in the Trust Fund be (i) a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003, (ii) a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004, (iii) a "High-Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004 or (iv) a "High Cost Home Loan" as defined in the Indiana Home Loan Practices Act effective January 1, 2005.

(b)

In connection with such transfer and assignment, the Depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee, and/or the Custodian acting on the Trustee's behalf, the following documents or instruments with respect to each Mortgage Loan (each a "Mortgage File") so transferred and assigned:

(i)

with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or in blank (in each case, with all necessary intervening endorsements, as applicable) or with respect to any lost Mortgage Note, a lost note affidavit stating that the original Mortgage Note was lost, misplaced or destroyed, together with a copy of the related Mortgage Note;

(ii)      the original of any guarantee executed in connection with the Mortgage Note, assigned to the Trustee;

(iii)      with respect to any Mortgage Loan other than a Cooperative Loan, the original recorded Mortgage with evidence of recording indicated thereon and the original recorded power of attorney, with evidence of recording thereon. If, in connection with any Mortgage Loan, the Depositor cannot deliver the Mortgage or power of attorney with evidence of recording thereon on or prior to the Closing Date because of a delay caused by the public recording office where such Mortgage has been delivered for recordation or because such Mortgage or power of attorney has been lost, the Depositor shall deliver or cause to be delivered to the Trustee (or the applicable Custodian), in the case of a delay due to recording, a true copy of such Mortgage or power of attorney, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such Mortgage or power of attorney delivered to the Trustee (or the applicable Custodian) is a true copy and that the original of such Mortgage or power of attorney has been forwarded to the public recording office, or, in the case of a Mortgage or power of attorney that has been lost, a copy thereof (certified as provided for under the laws of the appropriate jurisdiction) and a written Opinion of Counsel acceptable to the Trustee and the Depositor that an original recorded Mortgage or power of attorney is not required to enforce the Trustee's interest in the Mortgage Loan;

(iv)      the original of each assumption, modification or substitution agreement, if any, relating to the Mortgage Loans, or, as to any assumption, modification or substitution agreement which cannot be delivered on or prior to the Closing Date because of a delay caused by the public recording office where such assumption, modification or substitution agreement has been delivered for recordation, a photocopy of such assumption, modification or substitution agreement, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such assumption, modification or substitution agreement delivered to the Trustee (or the applicable Custodian) is a true copy and that the original of such agreement has been forwarded to the public recording office;

(v)      with respect to each Non-MERS Mortgage Loan other than a Cooperative Loan, an original Assignment of Mortgage, in form and substance acceptable for recording. The Mortgage shall be assigned either (A) in blank, without recourse or (B) to "U.S. Bank National Association, as Trustee of the Structured Asset Investment Loan Trust, 2006-4," without recourse;

(vi)

if applicable, such original intervening assignments of the Mortgage, notice of transfer or equivalent instrument (each, an "Intervening Assignment"), as may be necessary to show a complete chain of assignment from the originator, or, in the case of an Intervening Assignment that has been lost, a written Opinion of Counsel acceptable to the Trustee and any NIMS Insurer that such original Intervening Assignment is not required to enforce the Trustee's interest in the Mortgage Loan;

(vii)      with respect to any Mortgage Loan other than a Cooperative Loan, the original mortgagee title insurance policy (or, in lieu thereof, a commitment to issue such title insurance policy with an original or certified copy of such title insurance policy to follow as soon after the Closing Date as reasonably practicable) or attorney's opinion of title and abstract of title;

(viii)      the original Primary Mortgage Insurance Policy or certificate or, an electronic certification evidencing the existence of the Primary Mortgage Insurance Policy or certificate, if private mortgage guaranty insurance is required;

(ix)      the original of any security agreement, chattel mortgage or equivalent instrument executed in connection with the Mortgage or as to any security agreement, chattel mortgage or their equivalent instrument that cannot be delivered on or prior to the Closing Date because of a delay caused by the public recording office where such document has been delivered for recordation, a photocopy of such document, pending delivery of the original thereof, together with an Officer's Certificate of the Depositor certifying that the copy of such security agreement, chattel mortgage or their equivalent instrument delivered to the Trustee (or the applicable Custodian) is a true copy and that the original of such document has been forwarded to the public recording office;

(x)      with respect to any Cooperative Loan, the Cooperative Loan Documents; and

(xi)      with respect to any manufactured housing contract, any related manufactured housing sales contract, installment loan agreement or participation interest.

The parties hereto acknowledge and agree that the form of endorsement attached hereto as Exhibit B-4 is intended to effect the transfer to the Trustee, for the benefit of the Certificateholders, of the Mortgage Notes and the Mortgages.

Acceptance of Trust Fund by Trustee: Review of Documentation for Trust Fund.

(a)

The Trustee, by execution and delivery hereof, acknowledges receipt by it or by the applicable Custodian on its behalf of the Mortgage Files pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule, subject to review thereof by the Trustee, or by the applicable Custodian on behalf of the Trustee, under this Section 2.02. The Trustee, or the applicable Custodian on behalf of the Trustee, will execute and deliver to the Depositor, Master Servicer, the Trustee and any NIMS Insurer on the Closing Date an Initial Certification in the form annexed hereto as Exhibit B-1 (or in the form annexed to the applicable Custodial Agreement as Exhibit B-1, as applicable).

(b)

Within 45 days after the Closing Date, the Trustee or the applicable Custodian on behalf of the Trustee, will, for the benefit of Holders of the Certificates, review each Mortgage File to ascertain that all required documents set forth in Section 2.01 have been received and appear on their face to contain the requisite signatures by or on behalf of the respective parties thereto, and shall deliver to the Trustee, the Depositor, the Master Servicer and any NIMS Insurer an Interim Certification in the form annexed hereto as Exhibit B-2 (or in the form annexed to the Custodial Agreement as Exhibit B-2, as applicable) to the effect that, as to each Mortgage Loan listed in the Mortgage Loan Schedule (other than any Mortgage Loan prepaid in full or any Mortgage Loan specifically identified in such certification as not covered by such certification), (i) all of the applicable documents specified in Section 2.01(b) are in its possession and (ii) such documents have been reviewed by it and appear to relate to such Mortgage Loan. The Trustee, or the applicable Custodian on behalf of the Trustee, shall determine whether such documents are executed and endorsed, but shall be under no duty or obligation to inspect, review or examine any such documents, instruments, certificates or other papers to determine that the same are valid, binding, legally effective, properly endorsed, genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded or are in recordable form or that they are other than what they purport to be on their face. Neither the Trustee nor the applicable Custodian shall have any responsibility for verifying the genuineness or the legal effectiveness of or authority for any signatures of or on behalf of any party or endorser.

ARTICLE X

REMIC ADMINISTRATION

Section 10.01

REMIC Administration.

(a)     REMIC elections as set forth in the Preliminary Statement shall be made on Forms 1066 or other appropriate federal tax or information return for the taxable year ending on the last day of the calendar year in which the Certificates are issued. The regular interests and residual interest in each REMIC shall be as designated in the Preliminary Statement. For

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 81 of 141   Document 1-3
Case 10-02694-pp   Doc 10-1   Filed 02/07/11   Page 10 of 13

81

purposes of such designations, the interest rate of any regular interest that is computed by taking into account the weighted average of the Net Mortgage Rates of the Mortgage Loans shall be reduced by the amount of any expense paid by the Trust to the extent that (i) such expense was not taken into account in computing the Net Mortgage Rate of any Mortgage Loan, (ii) such expense does not constitute an "unanticipated expense" of a REMIC within the meaning of Treasury Regulation Section 1.860G-1(b)(3)(ii) and (iii) the amount of such expense was not taken into account in computing the interest rate of a more junior Class of regular interests.

(b)     The Closing Date is hereby designated as the "Startup Day" of each REMIC within the meaning of section 860G(a)(9) of the Code.  The latest possible maturity date for purposes of Treasury Regulation 1.860G-1(a)(4) will be the Latest Possible Maturity Date.

Section 10.02

Prohibited Transactions and Activities.

Neither **the Depositor**, the Master Servicer nor the Trustee **shall sell**, dispose of, or substitute for **any of the Mortgage Loans**, except in a disposition pursuant to (i) the foreclosure of a Mortgage Loan, (ii) the bankruptcy of the Trust Fund, (iii) the termination of each REMIC pursuant to Article VII of this Agreement, (iv) a substitution pursuant to Article II of this Agreement or (v) a repurchase of Mortgage Loans pursuant to Article II of this Agreement, **nor acquire any assets for any REMIC**, nor sell or dispose of any investments in the Certificate Account for gain, nor accept any contributions to any REMIC after the Closing Date, unless the Trustee and any NIMS Insurer has received an Opinion of Counsel addressed to the Trustee (at the expense of the party causing such sale, disposition, or substitution) that such disposition, acquisition, substitution, or acceptance will not (a) result in an Adverse REMIC Event, (b) affect the distribution of interest or principal on the Certificates or (c) result in the encumbrance of the assets transferred or assigned to the Trust Fund (except pursuant to the provisions of this Agreement).

Section 11.06

Governing Law.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 82 of 141   Document 1-3
Case 10-02694-pp   Doc 10-1   Filed 02/07/11   Page 11 of 13

82

## EXHIBIT V

### TRANSACTION PARTIES

Sponsor and Seller:  Lehman Brothers Holdings Inc.

Depositor:  Structured Asset Securities Corporation

Trustee:  U.S. Bank National Association

Securities Administrator:  Wells Fargo Bank, N.A.

Master Servicer:  Aurora Loan Services LLC

Credit Risk Manager:  Clayton Fixed Income Services Inc.

Swap Counterparty: ABN AMRO Bank, N.V.

Cap Counterparty:  ABN AMRO Bank, N.V.

Servicer(s):  Aurora Loan Services LLC, HomEq Servicing Corporation, JPMorgan Chase Bank, National Association, Ocwen Loan Servicing, LLC, Option One Mortgage Corporation, Wells Fargo Bank, N.A.

Originator(s):  BNC Mortgage, Inc., Finance America, LLC, Lehman Brothers Bank, FSB, New Century Mortgage Corporation,

Custodian(s):  Deutsche Bank National Trust Company, LaSalle Bank, National Association, U.S. Bank National Association, Wells Fargo Bank, N.A.

PMI Insurer(s):  Mortgage Guaranty Insurance Corporation, PMI Mortgage Co. and Republic Mortgage Insurance Company.

<u>SCHEDULE A</u>

MORTGAGE LOAN SCHEDULE

[To be retained in a separate closing binder entitled "SAIL 2006-4 Mortgage Loan Schedules" at
McKee Nelson LLP]

Exhibit 99.1                                                          Page 1 of 31

EX-99 2 exhibit991.htm EXHIBIT 99.1

*EXECUTION*

LEHMAN BROTHERS HOLDINGS INC.,

SELLER

and

STRUCTURED ASSET SECURITIES CORPORATION,

PURCHASER

MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT

Dated as of June 1, 2006

Structured Asset Investment Loan Trust
Mortgage Pass-Through Certificates, Series 2006-4



http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 85 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 1 of 31          85

Exhibit 99.1                                                                                          Page 2 of 31

## TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| **ARTICLE I. CONVEYANCE OF MORTGAGE LOANS** |  |  | 4 |
|  | Section 1.01. | Sale of Mortgage Loans. | 4 |
|  | Section 1.02. | Delivery of Documents. | 5 |
|  | Section 1.03. | Review of Documentation. | 6 |
|  | Section 1.04. | Representations and Warranties of the Seller. | 6 |
|  | Section 1.05. | Grant Clause. | 22 |
|  | Section 1.06. | Assignment by Depositor. | 22 |
| **ARTICLE II. MISCELLANEOUS PROVISIONS** |  |  | 22 |
|  | Section 2.01. | Binding Nature of Agreement; Assignment. | 22 |
|  | Section 2.02. | Entire Agreement. | 23 |
|  | Section 2.03. | Amendment. | 23 |
|  | Section 2.04. | Governing Law. | 24 |
|  | Section 2.05. | Severability of Provisions. | 24 |
|  | Section 2.06. | Indulgences; No Waivers. | 24 |
|  | Section 2.07. | Headings Not to Affect Interpretation. | 24 |
|  | Section 2.08. | Benefits of Agreement. | 24 |
|  | Section 2.09. | Counterparts. | 25 |
| SCHEDULE A-1 |  | Transferred Mortgage Loan Schedule (including Prepayment Charge Schedule) |  |
| SCHEDULE A-2 |  | Bank Originated Mortgage Loan Schedule (including Prepayment Charge Schedule) |  |
| SCHEDULE B |  | Mortgage Loan Schedule for First Payment Default Mortgage Loans |  |
| EXHIBIT A |  | Certain Defined Terms |  |
| EXHIBIT B |  | Form of Terms Letter |  |

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 86 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 2 of 31                                    86

Exhibit 99.1                                                                 Page 3 of 31

This MORTGAGE LOAN SALE AND ASSIGNMENT AGREEMENT, dated as of June 1, 2006 (the "Agreement"), is executed by and between Lehman Brothers Holdings Inc. ("LBH" or the "Seller") and Structured Asset Securities Corporation (the "Depositor").

All capitalized terms not defined herein or in Exhibit A attached hereto shall have the same meanings assigned to such terms in that certain trust agreement (the "Trust Agreement") dated as of June 1, 2006, among the Depositor, Aurora Loan Services LLC, as master servicer (the "Master Servicer"), Wells Fargo Bank, N.A., as securities administrator (the "Securities Administrator"), Clayton Fixed Income Services Inc., as credit risk manager and U.S. Bank National Association, as trustee (the "Trustee").

W I T N E S S E T H:

WHEREAS, pursuant to the following specified mortgage loan purchase and warranties agreement (each, a "LBH Transfer Agreement"), the Seller has purchased or received from certain transferors identified below (each, a "LBH Transferor") certain mortgage loans, each as identified on the Mortgage Loan Schedule attached hereto as part of Schedule A-1 (collectively, the "LBH Transferred Mortgage Loans"):

1. Flow Mortgage Loan Purchase and Warranties Agreement by and between Lehman Capital, A Division of LBH ("Lehman Capital") and Finance America, LLC dated as of October 25, 2004;

2. Flow Mortgage Loan Purchase and Warranties Agreement by and between Lehman Capital and Finance America, LLC dated as of August 4, 2004;

3. Flow Mortgage Loan Purchase and Warranties Agreement by and between Lehman Capital and Finance America, LLC dated as of January 1, 2003 (for conventional, fixed and adjustable rate residential mortgage loans); and

4. Flow Mortgage Loan Purchase and Warranties Agreement by and between Lehman Capital and Finance America, LLC dated as of June 30, 1999 (for conventional, fixed and adjustable rate residential mortgage loans);

WHEREAS, Lehman Brothers Bank, FSB (the "Bank"), pursuant to the following specified mortgage loan purchase and warranties agreements (each, a "Bank Transfer Agreement," and together with the LBH Transfer Agreements, the "Transfer Agreements"), has purchased or received from certain transferors identified below (each, a "Bank Transferor," and together with the LBH Transferors, the "Transferors") certain mortgage loans, each identified on the Mortgage Loan Schedule attached hereto as part of Schedule A-1 (collectively, the "Bank Transferred Mortgage Loans" and, together with the LBH Transferred Mortgage Loans, the "Transferred Mortgage Loans"):

1. Amended and Restated Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and Equifirst Corporation and Equifirst Mortgage Corporation of Minnesota dated as of February 1, 2006;

2. Flow Loan Purchase and Warranties Agreement by and between the Bank and Residential Mortgage Assistance Enterprise, LLC dated as of May 1, 2003 and amended as of December 29, 2005;

3. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and First

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 87 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 3 of 31                              87

Exhibit 99.1                                                Page 4 of 31

NLC Financial Services, Inc. dated as of June 6, 2003 and amended as of April 21, 2006;

4. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and First Street Financial, Inc. dated as of March 1, 2004;

5. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and Ameriquest Mortgage Company and AMC Mortgage Services, Inc. dated as of April 11, 2005;

6. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and Choice Capital Funding, dated as of August 1, 2005;

7. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and Finance America, LLC dated as of January 1, 2003 (for conventional, fixed and adjustable rate residential mortgage loans);

8. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and First Horizon Home Loan Corporation dated as of September 24, 2004 and amended for Reg AB as of March 7, 2006;

9. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and Liberty American Mortgage Corp. dated as of December 23, 2004 and amended as of April 1, 2006;

10. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and Metrocities Mortgage Corp. dated as of May 1, 2006;

11. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and Mortgage Access Corp. d/b/a Weichert Financial Services dated as of May 23, 2005 and amended as of January 18, 2006;

12. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and National City Mortgage, Co. dated as of May 9, 2005 and amended as of February 14, 2006;

13. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and NC Capital Corporation dated as of May 18, 2004;

14. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and Pinnacle Financial Corporation dated as of February 12, 2004 and amended as of December 15, 2004; and

15. Flow Mortgage Loan Purchase and Warranties Agreement by and between the Bank and SIB Mortgage Corp. dated as of June 10, 2002 and Amendment No. 1 dated as of November 1, 2002 and Amendment No. 2 as of September 29, 2003;

WHEREAS, the Bank Transferred Mortgage Loans, the "Bank Mortgage Loans," and the Bank Mortgage Loans, together with the LBH Transferred Mortgage Loans, collectively referred to hereinafter as the "Mortgage Loans";

WHEREAS, pursuant to an assignment and assumption agreement (the "Assignment and Assumption Agreement") dated as of June 1, 2006, between the Bank, as assignor, and LBH, as assignee, the Bank has assigned all of its right, title and interest in and to the foregoing Bank Transfer

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 88 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 4 of 31                    88

Exhibit 99.1                                                                                                     Page 5 of 31

Agreements, certain of its rights (as described below) under each PPTL (as defined below) and related Bank Mortgage Loans as listed on Schedule A-1, in the case of Bank Transferred Mortgage Loans, or Schedule A-2, in the case of the Bank Originated Mortgage Loans, and LBH has accepted the rights and benefits of, and assumed the obligations of the Bank under, the Bank Transfer Agreements;

WHEREAS, LBH is a party to the following servicing agreements (collectively, the "Servicing Agreements") pursuant to which the Mortgage Loans are to be initially serviced by certain servicers as indicated below (each, a "Servicer," and collectively, the "Servicers"):

1.      Servicing Agreement dated as of June 1, 2006, by and between LBH, Aurora Loan Services LLC, as servicer, and the Master Servicer, and acknowledged by the Trustee;

2.      Securitization Servicing Agreement dated as of June 1, 2006, by and between LBH, HomEq Servicing Corporation, as servicer, and the Master Servicer, and acknowledged by the Trustee;

3.      Securitization Servicing Agreement dated as of June 1, 2006, by and among LBH, JPMorgan Chase Bank, National Association, as servicer, and the Master Servicer, acknowledged by the Trustee;

4.      Securitization Servicing Agreement dated as of June 1, 2006, by and among LBH, Ocwen Loan Servicing, LLC, as servicer, and the Master Servicer, and acknowledged by the Trustee;

5.      Subservicing Agreement dated as of June 1, 2006, by and among LBH, Option One Mortgage Corporation, as servicer, and the Master Servicer, and acknowledged by the Trustee;

6.      Securitization Subservicing Agreement dated as of June 1, 2006, by and among LBH, Wells Fargo Bank, N.A., as servicer, and the Master Servicer, and acknowledged by the Trustee; and

7.      Reconstituted Servicing Agreement dated as of June 1, 2006, by and between LBH and Wells Fargo Bank, N.A., as servicer, and acknowledged by the Master Servicer and the Trustee;

WHEREAS, the Seller desires to sell, without recourse, all of its rights, title and interest in and to the Mortgage Loans to the Depositor, assign all of its rights and interest under each Transfer Agreement, the PPTLs and each Servicing Agreement relating to the Mortgage Loans referred to above, and delegate all of its obligations thereunder, to the Depositor; and

WHEREAS, the Seller and the Depositor acknowledge and agree that the Depositor will convey the Mortgage Loans on the Closing Date to a Trust Fund created pursuant to the Trust Agreement, assign all of its rights and delegate all of its obligations hereunder to the Trustee for the benefit of the Certificateholders, and that each reference herein to the Depositor is intended, unless otherwise specified, to mean the Depositor or the Trustee, as assignee, whichever is the owner of the Mortgage Loans from time to time.

NOW, THEREFORE, in consideration of the mutual agreements herein set forth, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Seller and the Depositor agree as follows:

ARTICLE I.

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 89 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 5 of 31                                  89

Exhibit 99.1                                                      Page 6 of 31

## CONVEYANCE OF MORTGAGE LOANS

Section 1.01.  <u>Sale of Mortgage Loans</u>.

(a) <u>Sale of Mortgage Loans</u>.

Concurrently with the execution and delivery of this Agreement, the Seller does hereby transfer, assign, set over, deposit with and otherwise convey to the Depositor, without recourse, subject to Sections 1.03 and 1.04, all the right, title and interest of the Seller in and to the Mortgage Loans identified on Schedules A-1 and A-2 hereto, having an aggregate principal balance of $2,446,422,263.65. Such conveyance includes, without limitation, the right to all distributions of principal and interest received on or with respect to the Mortgage Loans on and after the Cut-off Date, other than payments of principal and interest due on or before such date, and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date, all Prepayment Charges received on or with respect to the Mortgage Loans on or after the Cut-off Date, together with all of the Seller's right, title and interest in and to each related account and all amounts from time to time credited to and the proceeds of such account, any REO Property and the proceeds thereof, the Seller's rights under any Insurance Policies relating to the Mortgage Loans, the Seller's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties, and any proceeds of the foregoing.

Concurrently with the execution and delivery of this Agreement, the Seller hereby assigns to the Depositor all of its rights and interest under each Transfer Agreement (except for any rights against the related Transferor with respect to (i) first payment date defaults or early payment date defaults or (ii) reimbursement of any amount in excess of the Purchase Price for a breach of a representation or warranty; *provided, however,* that the Seller hereby assigns to the Depositor all of its rights and interest against First Horizon Home Loan Corporation, Equifirst Corporation, American Mortgage Express Financial dba Millennium Funding Group, Countrywide Home Loans, Inc., Choice Capital Funding, Mortgage Asset Corp. dba Weichert Financial Services, First Street Financial, Inc., Aegis Mortgage Corporation, and People's Choice Home Loan, Inc., with respect to first payment date defaults or early payment date defaults on the Mortgage Loans set forth in Schedule B hereto (the "First Payment Default Mortgage Loans"), assigned to the Seller under:

(i)    Section 6 of the Purchase Price and Terms Letter between the Bank and National City Mortgage Company dated as of January 6, 2006;

(ii)    Section 6 of the Purchase Price and Terms Letter between the Bank and Metrocities Mortgage Corporation dated as of April 11, 2006; and

(iii)    Section 6 of the Purchase Price and Terms Letter between the Bank and First NLC Financial Services, LLC dated as of March 7, 2006.

The Seller and the Depositor further agree that this Agreement incorporates the terms and conditions of any assignment and assumption agreement or other assignment document required to be entered into under any of the Transfer Agreements (any such document, an "Assignment Agreement") and that this Agreement constitutes an Assignment Agreement under such Transfer Agreement, and the Depositor hereby assumes the obligations of the assignee under each such Assignment Agreement. Concurrently with the execution hereof, the Depositor tenders the purchase price set forth in that certain Terms Letter dated as of the date hereof, the form of which is attached as Exhibit B hereto (the "Purchase Price"). The Depositor hereby accepts such assignment and delegation, and shall be entitled

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm      7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 90 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 6 of 31      90

Exhibit 99.1                                                                 Page 7 of 31

to exercise all the rights of the Seller under each Transfer Agreement, the PPTLs and each Servicing Agreement, other than any servicing rights thereunder, as if the Depositor had been a party to each such agreement.

(b)    Schedules of Mortgage Loans.  The Depositor and the Seller have agreed upon which of the Mortgage Loans owned by the Seller are to be purchased by the Depositor pursuant to this Agreement and the Seller will prepare on or prior to the Closing Date a final schedule describing such Mortgage Loans (the "Mortgage Loan Schedule").  The Mortgage Loan Schedule shall conform to the requirements of the Depositor as set forth in this Agreement and to the definition of "Mortgage Loan Schedule" under the Trust Agreement.  The Mortgage Loan Schedule attached hereto as Schedule A-1 specifies those Mortgage Loans that are Transferred Mortgage Loans and the Mortgage Loan Schedule attached hereto as Schedule A-2 specifies those Mortgage Loans that are Bank Originated Loans each of which categories of Bank Mortgage Loans have been assigned by the Bank to the Seller pursuant to the Assignment and Assumption Agreement.

Section 1.02.   Delivery of Documents.

(a) In connection with such transfer and assignment of the Mortgage Loans hereunder, the Seller shall, at least three (3) Business Days prior to the Closing Date, deliver, or cause to be delivered, to the Depositor (or its designee) the documents or instruments with respect to each Mortgage Loan (each, a "Mortgage File") so transferred and assigned, as specified in the related Transfer Agreements or Servicing Agreements.

(b) For Mortgage Loans (if any) that have been prepaid in full on or after the Cut-off Date and prior to the related Closing Date, the Seller, in lieu of delivering the related Mortgage Files, herewith delivers to the Depositor an Officer's Certificate which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the Collection Account maintained by the Master Servicer for such purpose have been so deposited.

Section 1.03.   Review of Documentation.

The Depositor, by execution and delivery hereof, acknowledges receipt of the Mortgage Files pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule, subject to review thereof by LaSalle Bank National Association, Wells Fargo Bank, N.A., Deutsche Bank National Trust Company and U.S. Bank National Association, as applicable (each, a "Custodian" and, collectively, the "Custodians"), for the Depositor.  Each Custodian is required to review, within 45 days following the Closing Date, each applicable Mortgage File.  If in the course of such review the related Custodian identifies any Material Defect, the Seller shall be obligated to cure such Material Defect or to repurchase the related Mortgage Loan from the Depositor (or, at the direction of and on behalf of the Depositor, from the Trust Fund), or to substitute a Qualifying Substitute Mortgage Loan therefor, in each case to the same extent and in the same manner as the Depositor is obligated to the Trustee and the Trust Fund under Section 2.02(c) of the Trust Agreement.

Section 1.04.   Representations and Warranties of the Seller.

(a) The Seller hereby represents and warrants to the Depositor that as of the Closing Date:

(i)    the Seller is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and has full corporate power and authority to own its property, carry on its business as presently conducted and enter

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC    Filed 09/22/11    Page 91 of 141    Document 1-3
Case 10-02694-pp    Doc 10-2    Filed 02/07/11    Page 7 of 31                              91

Exhibit 99.1                                                                 Page 8 of 31

into and perform its obligations under the Assignment and Assumption Agreement and this Agreement;

(ii)     the execution and delivery by the Seller of the Assignment and Assumption Agreement and this Agreement have been duly authorized by all necessary corporate action on the part of the Seller; neither the execution and delivery of the Assignment and Assumption Agreement or this Agreement, nor the consummation of the transactions therein or herein contemplated, nor compliance with the provisions thereof or hereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Seller or its properties or the certificate of incorporation or bylaws of the Seller;

(iii)     the execution, delivery and performance by the Seller of the Assignment and Assumption Agreement and this Agreement and the consummation of the transactions contemplated thereby and hereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other governmental authority or agency, except such as has been obtained, given, effected or taken prior to the date hereof;

(iv)     each of the Assignment and Assumption Agreement and this Agreement has been duly executed and delivered by the Seller and, assuming due authorization, execution and delivery by the Bank, in the case of the Assignment and Assumption Agreement, and the Depositor, in the case of this Agreement, constitutes a valid and binding obligation of the Seller enforceable against it in accordance with its respective terms, except as such enforceability may be subject to (A) applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally and (B) general principles of equity regardless of whether such enforcement is considered in a proceeding in equity or at law; and

(v)     there are no actions, suits or proceedings pending or, to the knowledge of the Seller, threatened or likely to be asserted against or affecting the Seller, before or by any court, administrative agency, arbitrator or governmental body (A) with respect to any of the transactions contemplated by the Assignment and Assumption Agreement or this Agreement or (B) with respect to any other matter which in the judgment of the Seller will be determined adversely to the Seller and will if determined adversely to the Seller materially and adversely affect it or its business, assets, operations or condition, financial or otherwise, or adversely affect its ability to perform its obligations under the Assignment and Assumption Agreement or this Agreement.

(b) The representations and warranties of each Transferor with respect to the Mortgage Loans in the applicable Transfer Agreement were made as of the date of such Transfer Agreement. To the extent that any fact, condition or event with respect to a Transferred Mortgage Loan constitutes a breach of both (i) a representation or warranty of a Transferor under the applicable Transfer Agreement and (ii) a representation or warranty of the Seller under this Agreement, the sole right or remedy of the Depositor with respect to a breach by the Seller of such representation and warranty (except in the case of a breach by the Seller of the representations made by it pursuant to Sections 1.04(b)(xiii), (xiv), (xv), (xvi), (xvii), (xviii), (xix), (xx) and (xxi)), shall be the right to enforce the obligations of such Transferor under any applicable representation or warranty made by it. The representations made by the Seller pursuant to Sections 1.04(b)(xiii), (xiv), (xv), (xvi), (xvii), (xviii), (xix), (xx) and (xxi) shall be direct

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cy-00893-CNC   Filed 09/22/11   Page 92 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 8 of 31                          92

Exhibit 99.1                                                                 Page 9 of 31

obligations of the Seller. The Depositor acknowledges and agrees that the representations and warranties of the Seller in this Section 1.04(b) (except in the case of those representations and warranties made pursuant to Sections 1.04(b)(xiii), (xiv), (xv), (xvi), (xvii), (xviii), (xix), (xx) and (xxi)) are applicable only to facts, conditions or events that do not constitute a breach of any representation or warranty made by the related Transferor in the applicable Transfer Agreement. The Seller shall have no obligation or liability with respect to any breach of a representation or warranty made by it with respect to the Transferred Mortgage Loans (except in the case of those representations and warranties made by it pursuant to Sections 1.04(b)(xiii), (xiv), (xv), (xvi), (xvii), (xviii), (xix), (xx) and (xxi)) if the fact, condition or event constituting such breach also constitutes a breach of a representation or warranty made by the related Transferor in such Transfer Agreement, without regard to whether the related Transferor fulfills its contractual obligations in respect of such representation or warranty; *provided, however*, that if the related Transferor fulfills its obligations under the provisions of such Transfer Agreement by substituting for the affected Mortgage Loan a mortgage loan which is not a Qualifying Substitute Mortgage Loan, the Seller shall, in exchange for such substitute mortgage loan, provide the Depositor (a) with the applicable Purchase Price for the affected Mortgage Loan or (b) within the two-year period following the Closing Date, with a Qualified Substitute Mortgage Loan for such affected Mortgage Loan.

Subject to the foregoing, the Seller represents and warrants upon delivery of the Transferred Mortgage Loans to the Depositor hereunder, as to each, that, as of the Closing Date:

(i)        The information set forth with respect to the Transferred Mortgage Loans on the Mortgage Loan Schedule provides an accurate listing of the Transferred Mortgage Loans, and the information with respect to each Transferred Mortgage Loan on the Mortgage Loan Schedule is true and correct in all material respects at the date or dates respecting which such information is given;

(ii)       There are no defaults (other than delinquency in payment) in complying with the terms of any Mortgage, and the Seller has no notice as to any taxes, governmental assessments, insurance premiums, water, sewer and municipal charges, leasehold payments or ground rents which previously became due and owing but which have not been paid;

(iii)      Except in the case of Cooperative Loans, if any, each Mortgage requires all buildings or other improvements on the related Mortgaged Property to be insured by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as are customary in the area where the related Mortgaged Property is located pursuant to insurance policies conforming to the requirements of the guidelines of Fannie Mae or Freddie Mac. If upon origination of the Transferred Mortgage Loan, the Mortgaged Property was in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available), a flood insurance policy meeting the requirements of the current guidelines of the Federal Flood Insurance Administration is in effect, which policy conforms to the requirements of the current guidelines of the Federal Flood Insurance Administration. Each Mortgage obligates the related Mortgagor thereunder to maintain the hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor. Where required by state law or regulation, each Mortgagor has been

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC    Filed 09/22/11    Page 93 of 141    Document 1-3
Case 10-02694-pp    Doc 10-2    Filed 02/07/11    Page 9 of 31                      93

Exhibit 99.1                                                        Page 10 of 31

given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development. The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Depositor upon the consummation of the transactions contemplated by this Agreement;

(iv)    Each Mortgage has not been satisfied, cancelled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such release, cancellation, subordination or rescission;

(v)    In the case of approximately 95.70% and 4.30% of the Mortgage Loans (by Scheduled Principal Balance as of the Cut-off Date), the related Mortgage evidences a valid, subsisting, enforceable and perfected first lien or second lien, respectively, on the related Mortgaged Property (including all improvements on the Mortgaged Property). The lien of the Mortgage is subject only to: (1) the first Mortgage, in the case of a Mortgaged Property that is secured by a perfected second lien, (2) liens of current real property taxes and assessments not yet due and payable and, if the related Mortgaged Property is a condominium unit, any lien for common charges permitted by statute, (3) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage acceptable to mortgage lending institutions in the area in which the related Mortgaged Property is located and specifically referred to in the lender's Title Insurance Policy or attorney's opinion of title and abstract of title delivered to the originator of such Transferred Mortgage Loan, and (4) such other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage. In the case of approximately 95.70% of the Mortgage Loans (by Scheduled Principal Balance as of the Cut-off Date), any security agreement, chattel mortgage or equivalent document related to, and delivered to the Trustee in connection with, a Transferred Mortgage Loan establishes a valid, subsisting and enforceable first lien on the property described therein and the Depositor has full right to sell and assign the same to the Trustee;

(vi)    Immediately prior to the transfer and assignment of the Transferred Mortgage Loans to the Depositor, the Seller was the sole owner of record and holder of each Transferred Mortgage Loan, and the Seller had good and marketable title thereto, and has full right to transfer and sell each Transferred Mortgage Loan to the Depositor free and clear, except as described in paragraph (v) above, of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and has full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign each Transferred Mortgage Loan pursuant to this Agreement;

(vii)    Each Transferred Mortgage Loan other than any Cooperative Loan is covered by either (i) an attorney's opinion of title and abstract of title the form and substance of which is generally acceptable to mortgage lending institutions originating mortgage loans in the locality where the related Mortgaged Property is located or (ii) an ALTA Mortgagee Title Insurance Policy or other generally acceptable form of policy of insurance, issued by a title insurer qualified to do business in the jurisdiction where the

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm        7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 94 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 10 of 31                  94

Exhibit 99.1                                                                                    Page 11 of 31

Mortgaged Property is located, insuring the originator of the Transferred Mortgage Loan, and its successors and assigns, as to the first priority lien of the Mortgage in the original principal amount of the Transferred Mortgage Loan (subject only to the exceptions described in paragraph (v) above). If the Mortgaged Property is a condominium unit located in a state in which a title insurer will generally issue an endorsement, then the related Title Insurance Policy contains an endorsement insuring the validity of the creation of the condominium form of ownership with respect to the project in which such unit is located. With respect to any Title Insurance Policy, the originator is the sole insured of such mortgagee Title Insurance Policy, such mortgagee Title Insurance Policy is in full force and effect and will inure to the benefit of the Depositor upon the consummation of the transactions contemplated by this Agreement, no claims have been made under such mortgagee Title Insurance Policy and no prior holder of the related Mortgage, including the Seller, has done, by act or omission, anything that would impair the coverage of such mortgagee Title Insurance Policy;

(viii)    No foreclosure action is being threatened or commenced with respect to any Transferred Mortgage Loan. There is no proceeding pending for the total or partial condemnation of any Mortgaged Property (or, in the case of any Cooperative Loan, the related cooperative unit) and each such property is undamaged by waste, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty, so as to have a material adverse effect on the value of the related Mortgaged Property as security for the related Transferred Mortgage Loan or the use for which the premises were intended;

(ix)    There are no mechanics' or similar liens or claims which have been filed for work, labor or material (and no rights are outstanding that under the law could give rise to such liens) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage;

(x)    [Reserved]

(xi)    Each Transferred Mortgage Loan will have a CLTV of 100% or less as of the Closing Date;

(xii)    Each Transferred Mortgage Loan is a "qualified mortgage" within the meaning of Section 860G of the Code and Treas. Reg. §1.860G-2;

(xiii)    Each Transferred Mortgage Loan at the time it was made complied in all material respects with applicable local, state and federal laws, including, but not limited to, all applicable predatory, abusive and fair lending laws; and, specifically, (a) no Transferred Mortgage Loan secured by a Mortgaged Property located in New Jersey is a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003 (N.J.S.A. 46:10B-22 et seq.); (b) no Transferred Mortgage Loan secured by a Mortgaged Property located in New Mexico is a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004 (N.M. Stat. Ann. §§ 58-21A-1 et. seq.); (c) no Transferred Mortgage Loan secured by a Mortgaged Property located in Massachusetts is a "High-Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004 (Mass. Ann. Laws Ch. 183C); and (d) no Transferred Mortgage Loan secured by a Mortgaged Property located in Indiana is a "High Cost Home Loan" as defined in the

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 95 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 11 of 31                              95

Exhibit 99.1                                                                 Page 12 of 31

Indiana Home Loan Practices Act effective January 1, 2005 (Ind. Code Ann. § 24-9-1 *et seq.*);

(xiv)   No Transferred Mortgage Loan is a "High Cost Loan" or "Covered Loan," as applicable, as such terms are defined in the then current Standard & Poor's LEVELS® Glossary.  In addition, no Transferred Mortgage Loan is a "high-cost," "high-cost home," "covered," "high-risk home" or "predatory" loan under any applicable federal, state or local predatory or abusive lending law (or a similarly classified loan using different terminology under a law imposing heightened regulatory scrutiny or additional legal liability for residential mortgage loans having high interest rates, points and/or fees);

(xv)   No Transferred Mortgage Loan was at the time of origination subject to the Home Ownership and Equity Protection Act of 1994 (15 U.S.C. § 1602(c)) ("HOEPA"), Regulation Z (12 CFR 226.32) or any comparable state law;

(xvi)   The information set forth in the Prepayment Charge Schedules, included as part of the Mortgage Loan Schedules at Schedules A-1 and A-2 hereto (including the Prepayment Charge Summary attached thereto) is complete, true and correct in all material respects on the date or dates on which such information is furnished and each Prepayment Charge is permissible, originated in compliance with, and enforceable in accordance with its terms under, applicable federal, state and local law (except to the extent that the enforceability thereof may be limited by bankruptcy, insolvency, moratorium, receivership and other similar laws affecting creditor's rights generally or the collectibility thereof may be limited due to acceleration in connection with foreclosure);

(xvii)   No Transferred Mortgage Loan was originated (or modified) on or after October 1, 2002, and before March 7, 2003, which is secured by a mortgaged property located in Georgia;

(xviii)   In addition to the foregoing representations and warranties made in subparagraphs (i) through (xvii) of this Section 1.04(b), the Seller further represents and warrants upon delivery of the Pool 1 Transferred Mortgage Loans, as to each such Mortgage Loan, that:

(a)   Each Pool 1 Mortgage Loan is in compliance with the anti-predatory lending eligibility for purchase requirements of Fannie Mae's Selling Guide;

(b)   No Pool 1 Transferred Mortgage Loan secured by a Mortgaged Property located in Georgia is a "High-Cost Home Loan" as defined in the Georgia Fair Lending Act; no Pool 1 Transferred Mortgage Loan secured by a Mortgaged Property located in New York is a "High-Cost Home Loan" as defined in Section 6-l of the New York State Banking Law; no Pool 1 Transferred Mortgage Loan secured by a Mortgaged Property located in Arkansas is a "High-Cost Home Loan" as defined in the Arkansas Home Loan Protection Act effective June 24, 2003 (Act 1340 of 2003); no Pool 1 Transferred Mortgage Loan secured by a Mortgaged Property located in Kentucky is a "High-Cost Home Loan" as defined in the Kentucky high-cost home loan statute effective June 24, 2003 (Ky. Rev. Stat. Section 360.100); no Pool 1 Transferred Mortgage Loan secured by a Mortgaged Property located in Illinois is a "High-Risk Home Loan" as defined in

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 96 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 12 of 31                    96

Exhibit 99.1                                            Page 13 of 31

the Illinois High-Risk Home Loan Act (815 Ill. Comp. Stat. 137/1 *et seq.*);

(c)     To the best of the Seller's knowledge, except with respect to broker yield spread premium ("YSP") as permitted by law, no borrower was required to select a Pool 1 Transferred Mortgage Loan product offered by the Transferor which is a higher cost product designed for less creditworthy borrowers, unless at the time of such Mortgage Loan's origination, the borrower did not qualify taking into account credit history and debt-to-income ratios for a lower-cost credit product then offered by the Transferor or an affiliate of the Transferor. If, at the time of the loan application, the borrower may have qualified for a lower-cost credit product then offered by any mortgage lending affiliate of the Transferor, the Transferor referred the borrower's application to such affiliate for underwriting consideration;

(d)     To the best of the Seller's knowledge, the methodology used in underwriting the extension of credit for each Pool 1 Transferred Mortgage Loan does not rely solely on the borrower's equity in the collateral for determining approval of credit extension, but relies on additional factors such as the borrower's income, assets, liabilities and/or credit history. Such underwriting methodology confirmed that at the time of origination (application/approval), the borrower had a reasonable ability to make timely payments on the related Pool 1 Transferred Mortgage Loan;

(e)     With respect to any Pool 1 Transferred Mortgage Loan that contains a provision permitting imposition of a Prepayment Charge upon a prepayment prior to maturity, to the best of the Seller's knowledge: (i) pursuant to the Transferor's underwriting guidelines, the borrower agreed to such a premium in exchange for a monetary benefit, including but not limited to a rate or fee reduction, (ii) prior to such Pool 1 Transferred Mortgage Loan's origination, the borrower was offered the option of obtaining a mortgage loan that did not require payment of such Prepayment Charge, (iii) the Prepayment Charge is disclosed to the borrower in the loan documents pursuant to applicable state and federal law, (iv) the duration of the prepayment period shall not exceed three years from the date of the note, and (v) notwithstanding any state or federal law to the contrary, the applicable Servicer shall not impose such Prepayment Charge in any instance when the mortgage debt is accelerated as the result of the borrower's default in making the loan payments;

(f)     To the best of the Seller's knowledge, no borrower was required to purchase any credit life, disability, accident, unemployment or health insurance product or debt cancellation agreement as a condition of obtaining the extension of credit evidenced by the Pool 1 Transferred Mortgage Loan. No borrower obtained a prepaid single-premium credit life, disability, accident, unemployment, mortgage or health insurance policy in connection with the origination of the Pool 1 Transferred Mortgage Loan; and no proceeds from any Pool 1 Transferred Mortgage Loan were used to purchase single premium credit insurance policies or debt cancellation agreements as part of the origination of, or as a condition to closing, such Pool 1 Transferred Mortgage Loan;

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 97 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 13 of 31                    97

Exhibit 99.1                                                  Page 14 of 31

(g)     To the best of the Seller's knowledge, all points and fees related to each Pool 1 Transferred Mortgage Loan were disclosed in writing to the borrower in accordance with applicable state and federal law and regulation. Except in the case of a Pool 1 Transferred Mortgage Loan in an original principal amount of less than $60,000 which would have resulted in an unprofitable origination, no borrower was charged "points and fees" (whether or not financed) in an amount greater than 5% of the principal amount of such Pool 1 Transferred Mortgage Loan, such 5% limitation calculated in accordance with Fannie Mae's anti-predatory lending requirements as set forth in the Fannie Mae Selling Guide;

(h)     All fees and charges (including finance charges) and whether or not financed, assessed, collected or to be collected in connection with the origination and servicing of each Pool 1 Transferred Mortgage Loan have been disclosed in writing to the borrower in accordance with applicable state and federal law and regulation;

(i)     The Seller shall cause the applicable Servicer to transmit full-file credit reporting data for each Pool 1 Transferred Mortgage Loan pursuant to Fannie Mae Guide Announcement 95-19 and, with respect to each Pool 1 Mortgage Loan, the Seller shall cause the applicable Servicer to report one of the following statuses each month as follows: new origination, current, delinquent (30-, 60-, 90-days, etc.), foreclosed, or charged-off;

(j)     The applicable Servicer for each Pool 1 Transferred Mortgage Loan has fully furnished in the past (and the Seller shall cause the applicable Servicer to furnish in the future), in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company, on a monthly basis;

(k)     The outstanding Scheduled Principal Balance of each Pool 1 Transferred Mortgage Loan does not exceed the applicable maximum original loan amount limitations with respect to first lien or subordinate lien one-to-four family residential mortgage loans, as applicable, as set forth in the Fannie Mae Selling Guide;

(l)     No Pool 1 Transferred Mortgage Loan is a balloon mortgage loan that has an original stated maturity of less than seven years;

(m)     No Pool 1 Transferred Mortgage Loan is subject to mandatory arbitration except when the terms of the arbitration also contain a waiver provision that provides that in the event of a sale or transfer of the Mortgage Loan or interest in the Mortgage Loan the Seller shall waive the terms of the arbitration (or in the event of a sale or transfer of the Mortgage Loan or interest therein to Fannie Mae, the terms of the arbitration are null and void). The Seller or applicable servicer will notify the borrower in writing within sixty days of the sale or transfer of the Mortgage Loan to Fannie Mae that the terms of the arbitration are null and void; and

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 98 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 14 of 31                    98

Exhibit 99.1                                                  Page 15 of 31

(n)    With respect to Pool 1 Transferred Mortgage Loans secured by manufactured housing, each contract is secured by a "single family residence" within the meaning of Section 25(e)(10) of the Code. The fair market value of the manufactured home securing each contract was at least 80% of the adjusted issue price of the contract at either (i) the time the contract was originated (determined pursuant to the REMIC provisions of the Code or (ii) the time the contract was transferred to the Seller). Each such contract is a "qualified mortgage" under Section 860G(a)(3) of the Code.

(xix)    In addition to the foregoing representations and warranties made in subparagraphs (i) through (xvii) of this Section 1.04(b), the Seller further represents and warrants upon delivery of the Pool 2 Transferred Mortgage Loans, as to each such Mortgage Loan, that:

(a)    The outstanding Scheduled Principal Balance of each Pool 2 Transferred Mortgage Loan does not exceed the applicable maximum original loan amount limitations with respect to first lien or subordinate lien one-to-four family residential mortgage loans, as applicable, as set forth in the Freddie Mac Selling Guide;

(b)    With respect to any Pool 2 Transferred Mortgage Loan that is a subordinate lien mortgage loan, (i) such lien is on a one- to four-family residence that is the principal residence of the borrower; (ii) the original principal balance does not exceed the applicable limitations with respect to subordinate lien mortgage loans as set forth in the Freddie Mac Selling Guide; and (iii) the original principal balance of the first lien mortgage loan plus the original principal balance of any subordinate lien mortgage loans relating to the same mortgaged property do not exceed the applicable limitations with respect to first lien mortgage loans for that property type as set forth in the Freddie Mac Selling Guide;

(c)    There is no Pool 2 Transferred Mortgage Loan that was originated on or after March 7, 2003 which is a "high cost home loan" as defined under the Georgia Fair Lending Act;

(d)    No borrower obtained a prepaid single-premium credit life, credit disability, credit unemployment or credit property insurance policy in connection with the origination of any Pool 2 Transferred Mortgage Loan; no proceeds from any Pool 2 Transferred Mortgage Loan were used to purchase single premium credit insurance policies or debt cancellation agreements as part of the origination of, or as a condition to closing, such Pool 2 Transferred Mortgage Loan;

(e)    The applicable Servicer for each Pool 2 Transferred Mortgage Loan has fully furnished in the past (and the Seller shall cause the applicable Servicer to furnish in the future), in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (*i.e.*, favorable and unfavorable) on its borrower credit files to Equifax, Experian and Trans Union Credit Information Company, on a monthly basis;

(f)    With respect to any Pool 2 Transferred Mortgage Loan that contains a

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 99 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 15 of 31                          99

Exhibit 99.1                                                    Page 16 of 31

provision permitting imposition of a Prepayment Charge upon a prepayment prior to maturity, to the best of the Seller's knowledge: (i) the Pool 2 Transferred Mortgage Loan provides some benefit to the borrower (e.g., a rate or fee reduction) in exchange for accepting such Prepayment Charge; (ii) the Pool 2 Transferred Mortgage Loan's originator had a written policy of offering the borrower, or requiring third-party brokers to offer the borrower, the option of obtaining a mortgage loan that did not require payment of such Prepayment Charge; (iii) the Prepayment Charge was adequately disclosed to the borrower in the loan documents pursuant to applicable state and federal law; (iv) no subprime loan originated on or after October 1, 2002, will provide for a Prepayment Charge for a term in excess of three years and any subprime loan or non-subprime loan originated prior to such date will not provide for a Prepayment Charge for a term in excess of five years; in each case unless such loan was modified to reduce the prepayment period to no more than three years from the date of the note in the case of a subprime loan and no more than five years from the date of the note in the case of a non-subprime loan and the borrower was notified in writing of such reduction in prepayment period; and (v) such Prepayment Charge shall not be imposed in any instance where the Pool 2 Transferred Mortgage Loan is accelerated or paid off in connection with the workout of a delinquent mortgage or due to the borrower's default, notwithstanding that the terms of the Pool 2 Transferred Mortgage Loan or state or federal law might permit the imposition of such Prepayment Charge;

(g) With respect to any Pool 2 Transferred Mortgage Loan originated on or after August 1, 2004, neither the related mortgage nor the related mortgage note requires the borrower to submit to arbitration to resolve any dispute arising out of or relating in any way to the mortgage loan transaction;

(h) With respect to any Pool 2 Transferred Mortgage Loan secured by manufactured housing, (i) each contract is secured by a "single family residence" within the meaning of Section 25(e)(10) of the Code and (ii) the manufactured housing is the principal residence of the borrower. The fair market value of the manufactured home securing each contract was at least 80% of the adjusted issue price of the contract at either (i) the time the contract was originated (determined pursuant to the REMIC provisions of the Code) or (ii) the time the contract was transferred to the Seller. Each such contract is a "qualified mortgage" under Section 860G(a)(3) of the Code;

(i) To the best of the Seller's knowledge, no borrower was encouraged or required to select a Pool 2 Transferred Mortgage Loan product offered by the Transferor which is a higher cost product designed for less creditworthy borrowers, unless at the time of the Transferor's origination, such borrower did not qualify, taking into account such facts as, without limitation, the related Pool 2 Transferred Mortgage Loan's requirements and the borrower's credit history, income, assets and liabilities, for a lower cost credit product then offered by the mortgage loan's originator or any affiliate of the Transferor. If, at the time of loan application, the borrower may have qualified for a lower cost credit product then offered by any mortgage lending affiliate of the Transferor, the Transferor referred the borrower's application to such affiliate for underwriting

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 100 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 16 of 31          100

Exhibit 99.1                                        Page 17 of 31

consideration;

(j) To the best of the Seller's knowledge, the methodology used in underwriting the extension of credit for each Pool 2 Transferred Mortgage Loan did not rely on the borrower's equity in the collateral as the principal determining factor in approving the extension of credit, but rather related such facts as, without limitation, the borrower's credit history, income, assets or liabilities, to the proposed mortgage payment. Such underwriting methodology confirmed that at the time of origination (application/approval), the borrower had a reasonable ability to make timely payments on the related Pool 2 Transferred Mortgage Loan;

(k) No borrower under a Pool 2 Transferred Mortgage Loan was charged "points and fees" in an amount greater than (a) $1,000 or (b) 5% of the principal amount of such Pool 2 Transferred Mortgage Loan, such limitation calculated in accordance with Freddie Mac's anti-predatory lending requirements as set forth in the Freddie Mac Selling Guide; and

(l) No Pool 2 Transferred Mortgage Loan was originated more than twelve months prior to the Closing Date.

(xx) As of the Closing Date, approximately 0.49% of the Mortgage Loans were 29 days or more delinquent, as determined in accordance with the OTS method, and, with respect to such Mortgage Loans, the related borrower will make a payment in full of such delinquent amount no later than June 30, 2006;

(xxi) With respect to approximately 25.15% of the Mortgage Loans, in the event that such Mortgage Loan has not made its initial payment due on the mortgage note within two calendar months as of its first payment due date, then the Seller will purchase such Mortgage Loan;

(c) In addition to the representations and warranties set forth in Section 1.04(b), all of which are also made by the Seller with respect to the Bank Originated Mortgage Loans as of the Closing Date (taking into account the applicable Mortgage Pool, in the case of subparagraphs (xviii), (xix), (xx) and (xxi)), the Seller hereby further represents and warrants to the Depositor upon the delivery to the Depositor on the Closing Date of any Bank Originated Mortgage Loans, but solely as to each Bank Originated Mortgage Loan, that, as of the Closing Date, as applicable:

(i) With respect to any hazard insurance policy covering a Bank Originated Mortgage Loan and the related Mortgaged Property, the Seller has not engaged in, and has no knowledge of the Bank's or the borrower's having engaged in, any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for therein, or the validity and binding effect of either, including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(ii) Neither the Seller nor the Bank has waived the performance by the borrower of any action, if the Mortgagor's failure to perform such action would cause a

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 101 of 141   Document 1-3          101
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 17 of 31

Exhibit 99.1                                                  Page 18 of 31

Bank Originated Mortgage Loan to be in default, nor has the Seller or the Bank waived any default resulting from any action or inaction by the borrower;

(iii)     The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect, except by a written instrument which has been recorded, if necessary to protect the interests of the Depositor and which has been delivered to the Custodian;

(iv)     The Mortgaged Property relating to each Bank Originated Mortgage Loan is a fee simple property located in the state identified in the Mortgage Loan Schedule and consists of a parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or an individual condominium unit in a low-rise condominium project, or an individual unit in a planned unit development; provided, however, that any condominium project or planned unit development shall conform with the applicable Freddie Mac requirements regarding such dwellings. No portion of the Mortgaged Property is used for commercial purposes;

(v)     The Mortgage Note and the Mortgage are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms. All parties to the Mortgage Note and the Mortgage and any other related agreement had legal capacity to enter into the Bank Originated Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage and any other related agreement, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading. To the best of Seller's knowledge, no fraud was committed in connection with the origination of the Bank Originated Mortgage Loan;

(vi)     Each Bank Originated Mortgage Loan has been closed and the proceeds of the Bank Originated Mortgage Loan have been fully disbursed and there is no requirement for future advances thereunder, and any and all requirements as to completion of any on-site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with. All costs, fees and expenses incurred in making or closing the Bank Originated Mortgage Loan and the recording of the Mortgage were paid, and the borrower is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage;

(vii)     There is no default (other than delinquency in payment), breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration, and neither the Seller nor its predecessors has waived any default, breach, violation or event of acceleration;

(viii)     All improvements which were considered in determining the Appraised Value of the Mortgaged Property lay wholly within the boundaries and building restriction lines of the Mortgaged Property and no improvements on adjoining properties encroach upon the Mortgaged Property. No improvement located on or being part of the Mortgaged

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC     Filed 09/22/11     Page 102 of 141     Document 1-3
Case 10-02694-pp     Doc 10-2     Filed 02/07/11     Page 18 of 31          102

Exhibit 99.1                                                      Page 19 of 31

Property is in violation of any applicable zoning law or regulation;

(ix)     Each Mortgage contains customary and enforceable provisions which render the rights and remedies of the holder thereof adequate for the realization against the related Mortgaged Property of the benefits of the security, including (A) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (B) otherwise by judicial or non-judicial foreclosure.  There is no homestead or other exemption available to the related Mortgagor which would materially interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage subject to the applicable federal and state laws and judicial precedent with respect to bankruptcy and rights of redemption.  Upon default by a Mortgagor on a Bank Originated Mortgage Loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures, the holder of the Bank Originated Mortgage Loan will be able to deliver good and merchantable title to the property;

(x)      The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage and the security interest of any applicable security agreement or chattel mortgage;

(xi)     In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Depositor to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor;

(xii)    The Mortgage Note, the Mortgage, the Assignment of Mortgage and any other documents required to be delivered for the Bank Originated Mortgage Loan by the Seller under this Agreement as set forth in Section 1.02 hereof have been delivered to the Custodian.  The Seller is in possession of a complete, true and accurate Mortgage File in compliance with Section 1.02 hereof, except for such documents the originals of which have been delivered to the Custodian;

(xiii)   The Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located;

(xiv)    The Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Bank Originated Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the Mortgagee thereunder;

(xv)     No Bank Originated Mortgage Loan contains provisions pursuant to which Monthly Payments are paid or partially paid with funds deposited in any separate account established by the Mortgagor or anyone on behalf of the Mortgagor, or paid by any source other than the Mortgagor, nor does any Bank Originated Mortgage Loan contain any other similar provisions currently in effect which may constitute a "buydown" provision.  No Bank Originated Mortgage Loan is a graduated payment mortgage loan and no Bank Originated Mortgage Loan has a shared appreciation or other contingent interest feature;

(xvi)    Any future advances made prior to the Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 103 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 19 of 31                      103

Exhibit 99.1                                                                                   Page 20 of 31

amount, as consolidated, bears a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is insured by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to Freddie Mac. The consolidated principal amount does not exceed the original principal amount of any Bank Originated Mortgage Loan;

(xvii)   The origination and collection practices used with respect to each Bank Originated Mortgage Loan have been in accordance with Accepted Servicing Practices, and have been in all respects in compliance with all applicable laws and regulations. With respect to escrow deposits and escrow payments, all such payments are in the possession of the Seller and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. All escrow payments have been collected in full compliance with state and federal law. An escrow of funds is not prohibited by applicable law and has been established in an amount sufficient to pay for every item which remains unpaid and which has been assessed but is not yet due and payable. No escrow deposits or escrow payments or other charges or payments due the Seller have been capitalized under the Mortgage or the Mortgage Note. All Mortgage Interest Rate adjustments have been made in strict compliance with state and federal law and the terms of the related Mortgage Note. Any interest required to be paid pursuant to state and local law has been properly paid and credited;

(xviii)   The Mortgage File contains an appraisal of the related Mortgaged Property signed prior to the approval of the Bank Originated Mortgage Loan application by a qualified appraiser, who had no interest, direct or indirect in the Mortgaged Property or in any loan made on the security thereof; and whose compensation is not affected by the approval or disapproval of the Bank Originated Mortgage Loan, and the appraisal and appraiser both satisfy the requirements of Title XI of the Federal Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, all as in effect on the date the Bank Originated Mortgage Loan was originated;

(xix)   The Mortgaged Property is free from any and all toxic or hazardous substances and there exists no violation of any local, state or federal environmental law, rule or regulation. There is no pending action or proceeding directly involving any Mortgaged Property of which the Seller is aware in which compliance with any environmental law, rule or regulation is an issue; and to the best of the Seller's knowledge, nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation;

(xx)   The Bank Originated Mortgage Loan does not contain a provision permitting or requiring conversion to a fixed interest rate Mortgage Loan;

(xxi)   No Bank Originated Mortgage Loan was made in connection with (i) the construction or rehabilitation of a Mortgaged Property or (ii) facilitating the trade-in or exchange of a Mortgaged Property;

(xxii)   No action, inaction or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of or defense to coverage under any applicable special hazard insurance policy, borrower paid primary

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 104 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 20 of 31                                   104

Exhibit 99.1                                                                                    Page 21 of 31

mortgage loan insurance policy or bankruptcy bond, irrespective of the cause of such failure of coverage. In connection with the placement of any such insurance, no commission, fee or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director or employee had a financial interest at the time of placement of such insurance; and

(xxiii)  Each original Mortgage was recorded and, except for those Bank Originated Mortgage Loans subject to the MERS identification system, all subsequent assignments of the original Mortgage (other than the assignment to the Depositor) have been recorded in the appropriate jurisdictions wherein such recordation is necessary to perfect the liens thereof as against creditors of the Seller, or are in the process of being recorded.

(d)  With respect to any of the foregoing representations and warranties made in subparagraphs (xiii) (xiv), (xv), (xvi), (xvii), (xviii), (xix), (xx) and (xxi) of Section 1.04(b), a breach of any such representations or warranties shall be deemed to materially and adversely affect the value of the affected Mortgage Loan and the interests of Certificateholders therein, irrespective of the Seller's knowledge of such breach.

It is understood and agreed that the representations and warranties set forth in Sections 1.04(b) and 1.04(c) herein shall survive the Closing Date.  Upon discovery by either the Seller or the Depositor of a breach of any of the foregoing representations and warranties (excluding a breach of subparagraph (xvi) under Section 1.04(b)) that adversely and materially affects the value of the related Mortgage Loan and that does not also constitute a breach of a representation or warranty of a Transferor in the related Transfer Agreement, the party discovering such breach shall give prompt written notice to the other party; *provided, however,* that notwithstanding anything to the contrary herein, this paragraph shall be specifically applicable to a breach by the Seller of the representations made pursuant to subparagraphs (xiii), (xiv), (xv), (xvii), (xviii), (xix), (xx) and (xxi) of Section 1.04(b) irrespective of the Transferor's breach of a comparable representation or warranty made in the related Transfer Agreement.  Within 60 days of the discovery of any such breach, the Seller shall either (a) cure such breach in all material respects, (b) repurchase such Mortgage Loan or any property acquired in respect thereof from the Depositor at the applicable Purchase Price or (c) within the two-year period following the Closing Date, as applicable, substitute a Qualifying Substitute Mortgage Loan for the affected Mortgage Loan.

Notwithstanding the second paragraph of Section 1.04(d), in connection with the Seller's representations and warranties made in subparagraph (xvi) of Section 1.04(b) and within 90 days of the earlier of discovery by the Seller or receipt of notice from the applicable Servicer of a breach of such representation and warranty by the Seller, which breach materially and adversely affects the interests of the Class P Certificateholders in any Prepayment Charge, the Seller shall, if (i) such representation and warranty is breached and a Principal Prepayment has occurred or (ii) if a change in law subsequent to the Closing Date limits the enforceability of the Prepayment Charge (other than in the circumstances set forth in subparagraph (xvi) of Section 1.04(b)), pay, at the time of such Principal Prepayment or change in law, the amount of the scheduled Prepayment Charge, for the benefit of the holders of the Class P Certificates, by depositing such amount into the Certificate Account no later than the Deposit Date immediately following the Prepayment Period in which such Principal Prepayment on the related Mortgage Loan or such change in law has occurred, net of any Servicer Prepayment Charge Payment Amount made by the applicable Servicer with respect to the related Mortgage Loan in lieu of collection of such Prepayment Charge.

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm            7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 105 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 21 of 31                                    105

Exhibit 99.1                                                                                    Page 22 of 31

(e)  Promptly upon discovery by the Seller or the Depositor that any First Payment Default Mortgage Loan may be repurchased by the related Transferor, the Depositor shall enforce its rights under the related PPTL.  If the price at which the related Transferor is required to purchase any First Payment Default Mortgage Loan is less than the Purchase Price as defined in the Trust Agreement, the Seller shall be obligated to pay such difference to the Depositor on the date of repurchase.

Section 1.05.  <u>Grant Clause</u>.

It is intended that the conveyance of the Seller's right, title and interest in and to the Mortgage Loans and other property conveyed pursuant to this Agreement on the Closing Date shall constitute, and shall be construed as, a sale of such property and not a grant of a security interest to secure a loan.  However, if any such conveyance is deemed to be in respect of a loan, it is intended that: (a) the rights and obligations of the parties shall be established pursuant to the terms of this Agreement; (b) the Seller hereby grants to the Depositor a first priority security interest to secure payment of an obligation in an amount equal to the purchase price set forth in Section 1.01(a) in all of the Seller's right, title and interest in, to and under, whether now owned or hereafter acquired, the Mortgage Loans and other property; and (c) this Agreement shall constitute a security agreement under applicable law.

Section 1.06.  <u>Assignment by Depositor</u>.

Concurrently with the execution of this Agreement, the Depositor shall assign its interest under this Agreement with respect to the Mortgage Loans to the Trustee, and the Trustee then shall succeed to all rights of the Depositor under this Agreement.  All references to the rights of the Depositor in this Agreement shall be deemed to be for the benefit of and exercisable by its assignee or designee, specifically including the Trustee.

ARTICLE II.

MISCELLANEOUS PROVISIONS

Section 2.01.  <u>Binding Nature of Agreement; Assignment</u>.

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

Section 2.02.  <u>Entire Agreement</u>.

This Agreement contains the entire agreement and understanding among the parties hereto with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, inducements and conditions, express or implied, oral or written, of any nature whatsoever with respect to the subject matter hereof.  The express terms hereof control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof.

Section 2.03.  <u>Amendment</u>.

(a)  This Agreement may be amended from time to time by the Seller and the Depositor, with the consent of the Trustee but without notice to or the consent of any of the Certificateholders, (i) to cure any ambiguity, (ii) to cause the provisions herein to conform to or be consistent with or in furtherance of the statements made with respect to the Certificates, the Trust Fund, the Trust Agreement

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 106 of 141   Document 1-3          106
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 22 of 31

Exhibit 99.1                                                    Page 23 of 31

or this Agreement in the Prospectus Supplement; or to correct or supplement any provision herein which may be inconsistent with any other provisions herein, (iii) to make any other provisions with respect to matters or questions arising under this Agreement or (iv) to add, delete, or amend any provisions to the extent necessary or desirable to comply with any requirements imposed by the Code and the REMIC Provisions. No such amendment effected pursuant to clause (iii) of the preceding sentence shall adversely affect in any material respect the interests of any Certificateholder. Any such amendment shall be deemed not to adversely affect in any material respect any Certificateholder if the Trustee receives written confirmation from each Rating Agency that such amendment will not cause such Rating Agency to reduce the then current rating assigned to the Certificates, if any (and any Opinion of Counsel received by the Trustee in connection with any such amendment may rely expressly on such confirmation as the basis therefor).

(b) This Agreement may also be amended from time to time by the Seller and the Depositor with the consent of the Trustee and the Certificateholders of not less than 66-2/3% of the Class Principal Amount or Class Notional Amount (or Percentage Interest) of each Class of Certificates affected thereby for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or of modifying in any manner the rights of the Certificateholders; *provided, however*, that no such amendment may (i) reduce in any manner the amount of, or delay the timing of, payments received on Mortgage Loans which are required to be distributed on any Certificate without the consent of the Certificateholder of such Certificate or (ii) reduce the aforesaid percentages of Class Principal Amount or Class Notional Amount (or Percentage Interest) of Certificates of each Class, the Certificateholders of which are required to consent to any such amendment without the consent of the Certificateholders of 100% of the Class Principal Amount or Class Notional Amount (or Percentage Interest) of each Class of Certificates affected thereby. For purposes of this paragraph, references to "Certificateholder" or "Certificateholders" shall be deemed to include, in the case of any Class of Book-Entry Certificates, the related Certificates Owners.

(c) It shall not be necessary for the consent of Certificateholders under this Section 2.03 to approve the particular form of any proposed amendment, but it shall be sufficient if such consent shall approve the substance thereof. The manner of obtaining such consents and of evidencing the authorization of the execution thereof by Certificateholders shall be subject to such reasonable regulations as the Trustee may prescribe.

Section 2.04.  Governing Law.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

Section 2.05.  Severability of Provisions.

If any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, then such covenants, agreements, provisions or terms shall be deemed severable from the remaining covenants, agreements, provisions or terms of this Agreement and shall in no way affect the validity or enforceability of the other provisions of this Agreement.

Section 2.06.  Indulgences; No Waivers.

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 107 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 23 of 31                      107

Exhibit 99.1                                                                 Page 24 of 31

Neither the failure nor any delay on the part of a party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence. No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver, as well as the Trustee.

Section 2.07.  Headings Not to Affect Interpretation.

The headings contained in this Agreement are for convenience of reference only, and they shall not be used in the interpretation hereof.

Section 2.08.  Benefits of Agreement.

The parties to this Agreement agree that it is appropriate, in furtherance of the intent of such parties set forth herein, that the Trustee enjoys the full benefit of the provisions of this Agreement each as an intended third party beneficiary; *provided, however*, nothing in this Agreement, express or implied, shall give to any Person, other than the parties to this Agreement and their successors hereunder, the Trustee and the Certificateholders, any benefit or legal or equitable right, power, remedy or claim under this Agreement.

Section 2.09.  Counterparts.

This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument.

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 108 of 141   Document 1-3          108
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 24 of 31

Exhibit 99.1                                                    Page 25 of 31

IN WITNESS WHEREOF, the Seller and the Depositor have caused their names to be signed hereto by their respective duly authorized officers as of the date first above written.

LEHMAN BROTHERS HOLDINGS INC.,
as Seller

By:  /s/ Joseph J. Kelly
Name: Joseph J. Kelly
Title:  Authorized Signatory

STRUCTURED ASSET SECURITIES CORPORATION,
as Purchaser

By:  /s/ Ellen V. Kiernan
Name: Ellen V. Kiernan
Title:  Senior Vice President

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 109 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 25 of 31          109

Exhibit 99.1                                                                                    Page 26 of 31

SCHEDULE A-1

TRANSFERRED MORTGAGE LOANS

MORTGAGE LOAN SCHEDULE

(including Prepayment Charge Schedules and Prepayment Charge Summary)

[To be retained in a separate closing binder entitled "SAIL 2006-4 Mortgage Loan Schedules"
at McKee Nelson LLP]

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 110 of 141   Document 1-3          110
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 26 of 31

Exhibit 99.1                                                                 Page 27 of 31

SCHEDULE A-2

BANK ORIGINATED MORTGAGE LOANS

MORTGAGE LOAN SCHEDULE

(including Prepayment Charge Schedules and Prepayment Charge Summary)

[To be retained in a separate closing binder entitled "SAIL 2006-4 Mortgage Loan Schedules" at McKee Nelson LLP]

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 111 of 141   Document 1-3          111
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 27 of 31

Exhibit 99.1                                                        Page 28 of 31

## SCHEDULE B

MORTGAGE LOAN SCHEDULE FOR

FIRST PAYMENT DEFAULT MORTGAGE LOANS

[To be retained in a separate closing binder entitled "SAIL 2006-4 Mortgage Loan Schedules"
at McKee Nelson LLP]

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm        7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 112 of 141   Document 1-3        112
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 28 of 31

Exhibit 99.1                                                                                                    Page 29 of 31

## EXHIBIT A

## CERTAIN DEFINED TERMS

"Prepayment Charge":  With respect to any Mortgage Loan, the charges or premiums, if any, due in connection with a full or partial prepayment of such Mortgage Loan during a Prepayment Period in accordance with the terms thereof (other than any Servicer Prepayment Charge Payment Amount).

"Prepayment Charge Schedule":  As of any date, the list of Prepayment Charges on the Mortgage Loans included in the Trust Fund on such date, included as part of the Mortgage Loan Schedule at Exhibit A (including the Prepayment Charge Summary attached thereto).  The Prepayment Charge Schedule shall be prepared by the Seller and shall set forth the following information with respect to each Prepayment Charge:

(i)      the Mortgage Loan identifying number;

(ii)     a code indicating the type of Prepayment Charge;

(iii)    the state of origination of the related Mortgage Loan;

(iv)     the date on which the first Scheduled Payment was due on the related Mortgage     Loan;

(v)      the term of the related Prepayment Charge; and

(vi)     the Scheduled Principal Balance of the Mortgage Loan as of the Cut-off Date.

Such Prepayment Charge Schedule shall be amended from time to time by the Seller and a copy of such amended Prepayment Charge Schedule shall be furnished by the Seller.

"Servicer Prepayment Charge Payment Amount":  The amount payable by a Servicer in respect of any impermissible waiver by the Servicer of a Prepayment Charge pursuant to the related Servicing Agreement.

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 113 of 141   Document 1-3
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 29 of 31          113

Exhibit 99.1                                                                                    Page 30 of 31

EXHIBIT B

FORM OF TERMS LETTER

June 1, 2006

Structured Asset Securities Corporation
745 Seventh Avenue
New York, New York 10019

    Re:    Structured Asset Investment Loan Trust
             Mortgage Pass-Through Certificates, Series 2006-4

Ladies and Gentlemen:

This letter (the "Terms Letter") is made in accordance with the Mortgage Loan Sale and Assignment Agreement dated as of June 1, 2006 (the "Mortgage Loans Sale Agreement"), between Structured Asset Securities Corporation and Lehman Brothers Holdings Inc. Capitalized terms used but not defined herein shall have the meanings set forth in the Mortgage Loan Sale Agreement.

The Purchase Price shall be $[    ].

This Terms Letter may be signed in any number of counterparts, each of which shall be deemed to be an original, but taken together, shall constitute a single document.

[Remainder of page intentionally left blank]

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 114 of 141   Document 1-3          114
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 30 of 31

Exhibit 99.1                                                                 Page 31 of 31

Please acknowledge your agreement with the foregoing by signing and returning the enclosed copy of this Terms Letter to the undersigned.

Very truly yours,

LEHMAN BROTHERS HOLDINGS INC.

By:  /s/ Joseph J. Kelly
    Name: Joseph J. Kelly
    Title:  Authorized Signatory

Acknowledged and Agreed:

STRUCTURED ASSET SECURITIES
    CORPORATION

By:  /s/ Ellen V. Kiernan
    Name: Ellen V. Kiernan
    Title:  Senior Vice President

http://www.sec.gov/Archives/edgar/data/1366930/000116231806001020/exhibit991.htm          7/8/2010

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 115 of 141   Document 1-3          115
Case 10-02694-pp   Doc 10-2   Filed 02/07/11   Page 31 of 31



Home Page | Contact Us | Location | Privacy Policy | Site Map

Newsroom | About Us | Events | Why MERS? | Knowledge Base | Careers

**Tools & Services**

| *MERS* Products › | MERS System | MERS Link | MERS 1-2-3 | MERS Commercial |
|---|---|---|---|---|
| | MERS eRegistry | MERS eDelivery | MERS ServicerID | MERS iSearch |
| | MERS Fraud Tools | Mass.Gov Div. of Banks | MISMO | MERS FraudALERT |

Downloads

Member Directory

Foreclosures

Enhancements

Forum

Advertising

Payment Options

**MERS for Homeowners**

**Property Preservation Contacts**

📞 **Contact Us**



Home » Foreclosures

## FORECLOSURES

Mortgage Electronic Registration Systems, Inc. ("MERS") is a proper party that can lawfully foreclose as the mortgagee and note-holder of a mortgage loan. MERS **Membership Rule 8** provides required guidelines that must be followed when MERS is the foreclosing entity. Please click here to access the Rules of Membership, and reference the Rule 8 requirements.

In mortgage foreclosure cases, the plaintiff has standing as the holder of the note and the mortgage. When MERS forecloses, MERS is the mortgagee and it is the holder of the note because a MERS officer will be in possession of the original note endorsed in blank, which makes MERS a holder of the bearer paper. MERS will not foreclose unless the note is endorsed in blank and held by MERS.

The MERS Legal Primer provides a sampling of cases that address the standing of MERS to foreclose its mortgages. These cases are not meant to be an exhaustive list involving MERS but are merely to serve as a primer for the legal arguments.

## BANKRUPTCY

MERS may file Motions for Relief from Stay and Proofs of Claim related to mortgages that it holds. Each MERS member, through its duly appointed MERS officer(s), is responsible to ensure that pleadings on behalf of MERS in bankruptcy court properly describe MERS. The MERS officer(s) must also ensure that all necessary proof is attached to the pleadings to show MERS has standing at the time the pleading is filed. Please click here to reference MERS requirements.

TOP

Home Page | Contact Us | Location | Privacy Policy | Site Map

Copyright© 2010 by MERSCORP, Inc. 1-800-646-MERS (6377)
Other products or company names are or may be trademarks or registered trademarks and are the property of their respective holders.

**EXHIBIT 3**

MERSCORP, INC.
RULES OF MEMBERSHIP

## TABLE OF CONTENTS

| | | |
|---|---|---|
| RULE 1 | MEMBERSHIP | Page 2 |
| RULE 2 | REGISTRATION ON THE MERS® SYSTEM | Page 8 |
| RULE 3 | OBLIGATIONS OF MERS | Page 15 |
| RULE 4 | RULE CHANGES | Page 18 |
| RULE 5 | FEES | Page 19 |
| RULE 6 | PROCEDURES | Page 22 |
| RULE 7 | DISCIPLINARY ACTIONS | Page 23 |
| RULE 8 | FORECLOSURE | Page 25 |
| RULE 9 | USE AND OWNERSHIP OF INFORMATION | Page 28 |
| RULE 10 | INTERIM SECURITY INTERESTS | Page 31 |
| RULE 11 | SERVICES | Page 32 |
| RULE 12 | WARRANTIES | Page 33 |
| RULE 13 | INDEMNIFICATION | Page 37 |
| RULE 14 | NOTIFICATION TO MERS OF PENDING LAWSUITS | Page 39 |

Case 2:11-cv-00893-CNC   Filed 09/22/11   Page 117 of 141   Document 1-3          117
Case 10-02694-pp   Doc 10-3   Filed 02/07/11   Page 2 of 4

# RULE 3

## OBLIGATIONS OF MERS

*Section 1.*     MERS shall within two (2) business days forward to the appropriate Member or Members, in the form prescribed by and otherwise in accordance with the Procedures, all properly identified notices, payments, and other correspondence received by MERS with respect to mortgage loans registered on the MERS® System for which Mortgage Electronic Registration Systems, Inc. serves as mortgagee of record.

*Section 2.*     MERS shall provide to Members certain standard reports concerning information contained on the MERS® System, as specified in the Procedures, and such other reports as MERS may determine from time to time.

*Section 3.*     (a)     Upon request from the Member, Mortgage Electronic Registration Systems, Inc. shall promptly furnish to the Member, in accordance with the Procedures, a corporate resolution designating one or more officers of such Member, selected by such Member, as "certifying officers" of Mortgage Electronic Registration Systems, Inc. to permit such Member (i) to release the lien of any mortgage loan registered on the MERS® System to such Member, (ii) assign the lien of any mortgage naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage is registered on the MERS® System, is shown to be registered to the Member, (iii) to foreclose upon the property securing any mortgage loan registered on the MERS® System to such Member, (iv) to take any and all actions necessary to protect the interest of the Member or the beneficial owner of a mortgage loan in any bankruptcy

proceeding regarding a loan registered on the MERS® System that is shown to be registered to the Member, (v) to take such actions as may be necessary to fulfill such Member's servicing obligations to the beneficial owner of such mortgage loans (including mortgage loans that are removed from the MERS® System as a result of the transfer thereof to a non-Member), (vi) to take action and execute all documents necessary to refinance, amend or modify any mortgage loan registered on the MERS® System to such Member, (vii) endorse checks made payable to MERS to the Member that are received by the Member in payment on any mortgage loan registered on the MERS® System that is shown to be registered to the Member. In instances where Mortgage Electronic Registration Systems, Inc. designates an officer of a Member as a certifying officer of MERS for the limited purposes described above, such Member shall indemnify MERS and any of its employees, directors, officers, agents or affiliates against all loss, liability and expenses which they may sustain as a result of any and all actions taken by such certifying officer.

(b) Upon request by Mortgage Electronic Registration Systems, Inc. , the Member shall deliver to Mortgage Electronic Registration Systems, Inc. a corporate resolution naming the Corporate Secretary of Mortgage Electronic Registration Systems, Inc. as a "certifying officer" of the Member solely for the purpose of installing Mortgage Electronic Registration Systems, Inc. as mortgagee of record on mortgage loans which have been registered on the MERS® System by the Member.

(c) At the request of the beneficial owner of a mortgage loan, or any designee thereof as shown on the MERS® System, Mortgage Electronic Registration Systems, Inc. shall provide to such beneficial owner or designee a recordable assignment for such mortgage loan to

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: EDWARD BLAINE KOHLER and PATRICIA LYNN KOHLER, Debtors. | Chapter 13<br><br>Case No. 09-35931-PP |

EDWARD BLAINE KOHLER and
PATRICIA LYNN KOHLER,
      Plaintiffs,

v.

STRUCTURED ASSET INVESTMENT LOAN
TRUST MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-4,
U.S. BANK NATIONAL ASSOCIATION,
CHASE MANHATTAN MORTGAGE,
CHASE HOME FINANCE LLC, CHASE H.E.,
MORTGAGE ELECTRONIC REGISTRATIONS
SYSTEMS, INC.

      Defendants.

Additional parties,
MARY GROSSMAN,
Chapter 13 Trustee

Adversary Proceeding
Case No. 10-02694-PP

**AFFIDAVIT OF SERVICE**

| | |
|---|---|
| STATE OF WISCONSIN | ) |
| | (SS |
| COUNTY OF MILWAUKEE | ) |

    Leigh Anne Muller, being first duly sworn oath, deposes and says that on February 7, 2011 she served via CM/ECF a true and correct copy of the Brief in Support of Objection to Motion by Defendants to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) Federal Rule of Bankruptcy Procedure 7001 and 11 U.S.C. 105(a) and Objection to Motion to Dismiss Amended Complaint on the following parties:

| | |
|---|---|
| Mary Grossman (Chapter 13 Trustee) | ecf@chapter13milwaukee.com |
| Office of the U.S. Trustee | ustpregion11.mi.ecf@usdoj.gov |
| Penny Gentges | penny@basmog.com |
| Edward Lesniak | elesniak@burkelaw.com |
| Patrick B. Howell | phowell@whdlaw.com |

Subscribed and sworn to before me this
7th day of February, 2011.
*/s/ Rollie R. Hanson*

_____
Rollie R. Hanson
Notary Public, State of Wisconsin
My Commission is permanent

*/s/ Leigh Anne Muller*

_____
Leigh Anne Muller

Law Office of Rollie R. Hanson, S.C
6737 W. Washington St., Suite 1420
West Allis, WI 53214
(414) 321-9733 Fax (414)321-9601
Rollie@hansonlaw.net

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

### Court Minutes

CHAPTER:        13
DATE:           March 7, 2011
JUDGE:          Pamela Pepper
CASE NO.:       2009-35931
DEBTOR:         Edward and Patricia Kohler
ADV. NO.:       2010-2694
ADV.:           Edward and Patricia Kohler vs. Structured Asset Investment Loan Trust Mortgage, et al.

NATURE OF HEARING:          Pretrial Conference and Defendants' Motion to Dismiss
APPEARANCES:                Rollie Hanson - Attorney for the plaintiffs, by telephone
                            Penny Gentges - Attorney for defendants, by telephone
                            Edward Lesniak - Attorney for defendants, by telephone
                            Amy Ginsberg - Attorney for the U.S. Trustee, by telephone
LAW CLERK:                  Camille Bent
COURTROOM DEPUTY:           Kristine Wrobel
TIME:                       10:54 a.m. - 11:18 a.m.; 4:04 p.m. - 4:48 p.m.
ADJOURNED DATE:

---

The Court noted that it had scheduled an evidentiary hearing for March 30, 2011 with regard to the motion for relief from the automatic stay and the objection to confirmation of plan. The Court stated that it would consider the defendants' motion to dismiss at that evidentiary hearing, because the underlying facts in all the proceedings relate back to whether the defendants had standing to file the motion for relief or the claims in the underlying bankruptcy case. The Court further noted that its bigger concern was the motion for a protective order which the defendants had filed last week, indicating that the debtors/plaintiffs had propounded a new round of discovery demands, not on the servicer and the custodian as represented at the last hearing, but on U.S. Bank as trustee. Counsel for the plaintiffs informed the Court that he'd decided that, rather than deposing the servicer and the custodian, he'd decided that it would be more productive to depose U.S. Bank as trustee. The Court wanted to give counsel for the defendants the opportunity to respond, but due to the congested hearing docket this morning, indicated that it would have to adjourn the hearing. The Court adjourned the hearing until 4:00 p.m. today.

When the hearing resumed at 4:00 p.m., the Court noted that the defendants' motion for protective order indicated that the plaintiffs' most recent discovery demands had fallen into three broad categories: (1) documents that already had been turned over to the plaintiffs; (2) items already in the public record, and thus not in the control of the defendants; and (3) requests that were overly broad. The

1

Court started to go through the discovery demands one by one, to determine into which category each demand fell. Counsel for the defendants reminded the Court, however, that at the upcoming evidentiary hearing, he intended to rely only on the promissory note, endorsed in blank, and the accompanying allonge. He indicated that he would not be relying on the trust documents, mortgage contract, note or assignment documents, so it was irrelevant to depose a witness on documents that did not form the basis of the creditor's standing argument. He further argued that at the last hearing, the plaintiffs had indicated that they were seeking discovery regarding the chain of custody of the original note and mortgage. These new discovery requests had nothing to do with that chain of custody, and instead sought to depose an employee of the SAIL trustee regarding the trust documents.

The Court asked the parties questions about a few of the particular requests, and heard arguments from both sides. At the conclusion of the argument, the Court granted the defendants' motion for a protective order with regard to the plaintiffs' notice of Rule 30(b) deposition. The Court cancelled the deposition previously set to take place on March 24, 2011, and confirmed to the parties that the evidentiary hearing on March 30, 2011 would move forward as scheduled.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

<u>Court Minutes</u>

CHAPTER:          13
DATE:              May 25, 2011
JUDGE:             Pamela Pepper
CASE NO.:          2009-35931
DEBTORS:           Edward Blaine Kohler & Patricia Lynn Kohler
ADV. NO.:          2010-2694
ADV.:              Edward & Patricia Kohler v. US Bank, et. al.

NATURE OF HEARING:   (1) Defendant's Motion to dismiss adversary proceeding
                     (2) Renewed Motion for relief from stay filed by US Bank, et. al.
                     (3) Objection to plan confirmation filed by US Bank, et. al.
                     (4) Debtor's Objection to claims #12 and #13 of US Bank, et. al.
APPEARANCES:         Rollie Hanson - Attorney for debtors
                     Edward Blaine Kohler - Debtor
                     Penny Gentges - Attorney for US Bank, et. al.
                     Edward Lesniak - Attorney for US Bank, et. al.
LAW CLERK:           Camille Bent
TIME:                2:10 p.m. - 5:11 p.m.
ADJOURNED DATE:

_____

<u>Issue #1</u>

The Court indicated that it believed that the motion to dismiss involved the legal question of whether the adversary proceeding was the appropriate procedural vehicle for the plaintiff to use to challenge the creditor's claim. The Court indicated that it did not need evidence to rule on that motion, and would do so at a later date.

<u>Issues #2 - #4</u>

The attorneys each presented opening statements. Christopher Corcoran testified on behalf of the creditor. The Court admitted creditors' exhibits A through D, without objection. The parties each presented closing arguments. Counsel for the creditors argued that the debtors did not have standing to challenge the assignment of the mortgage, and cited case law in support. The Court indicated that, while it had not read the cases that the creditor cited, it was of the view that the debtors had standing to challenge the creditor's claim.

The Court asked each party questions about their respective positions. It then took the matter under advisement, indicating that the law clerk would contact the parties shortly to schedule a date for the Court to deliver an oral ruling.

1

THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:



DATED: June 28, 2011

_____
Honorable Pamela Pepper
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

Court Minutes and Order

CHAPTER:         13
DATE:            June 27, 2011
JUDGE:           Pamela Pepper
CASE NO.:        2009-35931
DEBTORS:         Edward & Patricia Kohler
ADV. NO.:        2010-2694
ADV.:            Edward & Patricia Kohler v. U.S. Bank, et. al.

NATURE OF HEARING:   (1) Defendant's motion to dismiss adversary proceeding
                     (2) Renewed motion for relief from stay filed by U.S. Bank, et. al.
                     (3) Objection to plan confirmation filed by U.S. Bank, et. al.
                     (4) Objection to claims #12 and 13 of U.S. Bank, et. al.
APPEARANCES:         Rollie Hanson - Attorney for debtors, by telephone
                     Penny Gentges - Attorney for U.S. Bank, et. al., by telephone
                     Edward Lesniak - Attorney for U.S. Bank, et. al., by telephone
                     Jack Zaharapoulous - Attorney for Chapter 13 trustee, by telephone
                     Amy Ginsberg - Attorney for U.S. Trustee, by telephone
LAW CLERKS:          Camille Bent
                     Esa Movroydis
TIME:                2:08 p.m. - 2:45 p.m.
ADJOURNED DATE:
_____

    Before issuing its oral ruling, the Court noted, as an administrative matter, that it never had officially ruled on the debtors' April 2010 motion to consolidate the hearings on the motions for relief from stay, the objection to confirmation, the objections to claims 12 and 13, and the motion to dismiss the adversary proceeding. The Court granted the debtors' motion to consolidate, noting that the parties, and the Court itself, had operated as if the matters already had been consolidated. The trustee reported that the debtors now were current on plan payments, although they previously had fallen behind by a couple of payments.

1

For the reasons it stated in detail on the record, the Court granted the motion for relief from stay filed by U.S. Bank, et. al. The Court also granted the defendants' motion to dismiss the adversary complaint. Attorney Lesniak or Attorney Gentges will prepare the orders.

For the reasons stated in detail on the record, the Court hereby GRANTS the debtors' April 2010 motion to consolidate. The Court OVERRULES the debtors' objections to claims #12 and 13, and allows those claims as filed. The Court SUSTAINS U.S. Bank et. al.'s objection to confirmation of plan. The Court ORDERS that the debtors file an amended plan by Monday, August 1, 2011.

# # # # #

THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: July 06, 2011

_____
Honorable Pamela Pepper
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

--------------------------------------------------------------------------------------------------------

In Re: Kohler, Edward B. and Patricia L.

                            Case No.      09-35931-pp
                            Chapter 13

           Debtors.

--------------------------------------------------------------------------------------------------------

U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust, Mortgage Pass-Through Certificates, Series 2006-4

               Plaintiff            Adv. Pro. 10-02694-pp

vs.

Edward B. and Patricia L. Kohler, and Mary B. Grossman, Trustee,

               Defendants

--------------------------------------------------------------------------------------------------------

<u>ORDER DISMISSING ADVERSARY COMPLAINT</u>

--------------------------------------------------------------------------------------------------------

       This matter comes on to be heard on the Motion by Defendants to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6) and 12(h)(3), Federal Rule of Bankruptcy Procedure 7011 and 11 U.S.C. § 105(a).

       The Court having reviewed the relevant pleadings and heard the arguments of counsel in open court on May 25, 2011, and being duly advised, and for the reasons stated in open court on June 27, 2011;

       IT IS HEREBY ORDERED that the Amended Complaint be and is hereby dismissed without leave to amend.

# # # # #

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re:   Kohler, Edward B. and Patricia L., | Chapter 13 |
| Debtor. | Case No. 09-35931-PP |

Edward Blaine Kohler and
Patricia Lynn Kohler,

      Plaintiff,

                                      Adversary Proceeding

v.                                     Case No. 10-02694

U.S. Bank National Association as Trustee for
Structured Asset Investment Loan Trust,
Mortgage Pass Through Certificates, Series 2006-4 ,

      Defendant.

Additional Party
Mary B. Grossman, Chapter 13 Trustee

## MOTION FOR RECONSIDERATION

      The above referenced debtors, Edward and Patricia Kohler, by The Law Office of Rollie

R. Hanson, S.C. by Attorney Rollie R. Hanson hereby move the Court to reconsider the Order

Lifting the Stay dated July 6, 2011 and the Order Dismissing the Adversary Proceeding dated

July 6, 2011 pursuant to Federal Rule of Civil Procedure 60(b).

      In support of this motion, the debtors respectfully show the Court as follows:

1. The debtors assert that there has been some mistake in the findings supporting the
   lift of stay and disallowance of the objections of the debtors.

2. The court found that the notes and blank undated allonges for Claims 12 and 13
   were not attached to any notes but that said notes and allonges had staple holes in
   them. However, only the note dated April 6, 2006 and presented by the witness,
   Christopher Corcoran (the 1st mortgage note) in the amount of 220,800.00 had any

staple holes in it. The note dated April 6, 2006 and presented by the witness,

Corcoran (the 2nd mortgage note) in the amount of 55,200.00 was in pristine

conditions and had no staple holes in it. Further, the allonge presented with said

note at the hearing was also in pristine condition and had no staple holes in it. The

documents themselves showed the $55,200.00 note and allonge had never been

attached at any time during or after the execution of the allonge by any kind of

stapling or other device in order to affix the allonge to the note.

3. Moreover, said undated allonges had been modified by the placement of stickers.

Said stickers contained the name and address of the debtors. Said allonges

contained no reference to the notes they purported to endorse on the face of the

allonges and there was no testimony provided from the witness to verify when the

stickers were placed on said allonges or who placed the stickers on the allonges.

4. Further the witness, Corcoran could not present any testimony as to whether the

notes and allonges had ever been attached or when the allonges were signed and

had no personal knowledge of the execution of said notes or allonges.

5. In order for the allonges to effectively negotiate said notes the blank undated

allonges were required to be affixed to the notes pursuant to Section 403.204 of

the Wisconsin UCC. The fact that the allonges were not attached to the notes

absent any explanation of the witness prevents the negotiation of the notes under

Article 3 of the Wisconsin UCC.

6. The Amended Claims 12 and 13 submitted by the claimant also contain specific

allonges along with the blank undated allonges presented by the witness at

hearing on May 25, 2011.  The Original and Amended Claim 12, each have

attached an Allonge dated December 2nd, 2009 signed by Whitney K. Cook, Assistant Secretary of Chase Home Finance, LLC referencing the note dated April 6, 2006 in the amount of $220,800.00 and purporting to assign aid note from BNC Mortgage, Inc. to U.S. Bank National Association. Said allonge also states a copy of said note was attached to the allonge as Exhibit 1. The Original and Amended Claim 13 each have attached an allonge dated March 8, 2010 signed by Deborah A. Lenhart, Vice President of Lehman Brothers Bank, FSB n/k/a Aurora Bank, FSB referencing the note dated April 6, 2006 in the amount of $55,200.00 and purporting to assign the note to U.S. Bank National Association as Trustee. Said allonge also states a copy of said note was attached to the allonge as Exhibit 1. The specific dated allonges contradict the blank, undated allonges purporting to negotiate a transfer of the mortgage notes in this case and the witness, Corcoran was unable to identify or authenticate the specific allonges. Moreover, the original Claims 12 and 13 were filed on March 16, 201 containing the specific allonges purporting to negotiate and transfer the mortgage notes directly from the originators to the trustee. The Amended Claims containing the blank, undated allonges were filed on September 21, 2010, approximately six months after the filing of the Original Claims.

7. Further, the witness for the claimant also testified that the documents he presented from the Custodian's (Deutsche Bank) file were delivered directly to custodian from the originators of the loans. Said witness further testified that he had no knowledge as to who owned the mortgage notes and did not know who owned them. Therefore, the evidence is devoid of any factual basis to show that the

claimant, U.S. Bank National Association ever came into possession of the said notes. There is not sufficient evidence to show the negotiation of the notes to said U.S. Bank or delivery of said notes to U.S. Bank.

8. The record and testimony do not show that the originators of the notes negotiated, delivered or transferred the 1st and 2nd mortgage notes to the Trustee, U.S. Bank National Association.. Under the rationale of *In re Veal,* 2011 LEXIS 2359 (June 18, 2010) the Trustee has no ownership rights to the note and is not a holder of the note with a presumptive right to enforce the note or a non-holder in possession of the note with the rights of holder under Articles 3 or 9 of the Uniform Commercial Code. The Trustee and the SAIL Trust have failed to show U.S. Bank or the SAIL Trust own or possess the mortgage notes or have any valid lien rights to the debtors' real estate.

7. The record and testimony show that the originators of the notes delivered the notes to the custodian, Deutsche Bank. The record is devoid of any evidence to show that the notes were ever negotiated or transferred to the Trustee, Therefore, under the ruling and rationale of *In re Veal*, the Trustee and the SAIL Trust have not shown ownership or possession of the debtors' notes or mortgages.

WHEREFORE, the debtors request that the Court reconsider the Order entered on July 6, 2011 dismissing the Adversary Proceeding and

TO ALLOW for further discovery in this matter as to the ownership of the notes and mortgages in this case.

Dated this 18th day of July, 2011.

/s/Rollie R. Hanson
Rollie R. Hanson, Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: Edward B. and Patricia L. Kohler, | Chapter 13 |
| Debtor. | Case No. 09-35931-PP |

Edward Blaine Kohler and,

     Plaintiff,

v.                             Adversary Proceeding
                                  Case No. 10-02694-PP

U.S. Bank National Association as Trustee for
Structured Asset Investment Loan Trust, Mortgage Pass
Through Certificates, Series 2006-4,

     Defendant.

Additional Party
Mary B. Grossman, Chapter 13 Trustee

## NOTICE OF MOTION FOR RECONSIDERATION

     PLEASE TAKE NOTICE that the debtors, Edward B. Kohler and Patricia L. Kohler, by

The Law Office of Rollie R. Hanson, S.C., by Attorney Rollie R. Hanson, have filed papers with

the Court for a Motion to Reconsider the Order on the Motion to Lift the Stay as well as the

Order Dismissing the Adversary Proceeding in the above entitled case.

     **<u>Your rights may be affected.</u>  You should read these papers carefully and discuss**

**them with your attorney, if you have one in this bankruptcy case.  (If you do not have an**

**attorney, you may wish to consult one).**

     If you do not want the Court to grant the relief sought in the motion, or if you want the

Court to consider your views on the motion, you or your attorney must file a written request for a

THE LAW OFFICE OF ROLLIE R. HANSON, S.C.
6737 West Washington Street, Suite 1420
West Allis, Wisconsin 53214
(414)321-9733 Fax (414)321-9601
Rollie@hansonlaw.net

hearing within fourteen (14) days with the Bankruptcy Clerk at the following address:

>Clerk, United States Bankruptcy Court
>Eastern District of Wisconsin
>517 East Wisconsin Avenue
>Milwaukee, Wisconsin 53202

If you mail your request to the Court for filing, you must mail it early enough so the

Court will receive it on or before fourteen (14) days after this Notice. You must also mail a copy

to:

>The Law Office of Rollie R. Hanson, S.C.
>6737 West Washington Street, Suite 1420
>West Allis, Wisconsin 53214

If you or your attorney do not take these steps, the Court may decide that you do not

oppose the relief sought in the Motion and may enter an Order granting that relief.

Dated this 18th day of July, 2011 at West Allis, Wisconsin.

>_/s/ Rollie R. Hanson_
>Rollie R. Hanson, Attorney for Debtors

THE LAW OFFICE OF ROLLIE R. HANSON, S.C.
6737 West Washington Street, Suite 1420
West Allis, Wisconsin 53214
(414)321-9733 Fax (414)321-9601
Rollie@hansonlaw.net

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: Edward B. and Patricia L. Kohler, | Chapter 13 |
| Debtor. | Case No. 09-35931-PP |

Edward Blaine Kohler and,

     Plaintiff,

v.

                                              Adversary Proceeding
                                              Case No. 10-02694-PP

U.S. Bank National Association as Trustee for
Structured Asset Investment Loan Trust, Mortgage Pass
Through Certificates, Series 2006-4,

     Defendant.

Additional Party
Mary B. Grossman, Chapter 13 Trustee

## AFFIDAVIT OF SERVICE

| | |
|---|---|
| STATE OF WISCONSIN | ) |
| | ) SS: |
| COUNTY OF MILWAUKEE | ) |

     Leigh Anne Muller, being first duly sworn and under oath, hereby states that on July 18, 2011 she served, via CM/ECF, a true and correct copy of the *Motion to Reconsider and Notice of Motion to Reconsider* to the following parties:

| | |
|---|---|
| Attorney Penny Gentges | penny@basmog.com |
| Attorney Edward J. Lesniak | elesniak@burkelaw.com |
| Mary Grossman<br>Chapter 13 Trustee | ecf@chapter13milwaukee.com |
| United States Trustee | ustpregion11.mi.ecf@usdoj.gov |

Dated this 18th day of July, 2011 at West Allis, Wisconsin.    */s/Leigh Anne Muller*
                                                        Leigh Anne Muller

Subscribed and sworn to before me
this 18th day of July, 2011.

*/s/Rollie R. Hanson*

Rollie Hanson
Notary Public, State of Wisconsin
My Commission is Permanent

                               THE LAW OFFICE OF ROLLIE R. HANSON, S.C.
                               6737 West Washington Street, Suite 1420
                               West Allis, Wisconsin 53214
                               (414)321-9733 Fax (414)321-9601
                               Rollie@hansonlaw.net

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

--------------------------------------------------------------------------------

In Re: Kohler, Edward B. and Patricia L.

Case No.        09-35931-pp
Chapter 13

Debtors.

--------------------------------------------------------------------------------

Edward B. and Patricia L. Kohler

Plaintiff

vs.                                                                          Adversary Proceeding
                                                                             Case No. 10-02694
U.S. Bank National Association, as Trustee for
Structured Asset Investment Loan Trust,
Mortgage Pass-Through Certificates, Series 2006-4

Defendant

--------------------------------------------------------------------------------

RESPONSE TO MOTION FOR RECONSIDERATION

--------------------------------------------------------------------------------

Defendant, U.S. Bank National Association, as Trustee for Structured Asset Investment

Loan Trust Mortgage Pass-Through Certificates, Series 2006-4 ("U.S. Bank"), hereby responds

to the Plaintiff Debtors' ("Debtors") Motion for Reconsideration of the Order Lifting the Stay and

the Order Dismissing the Adversary Proceeding ("Motion"), as follows:

I. APPLICABLE STANDARD

Debtors do not point to a specific provision of Fed. R. Civ. P. 60(b), made applicable by

Fed. R. Bankr. P. 9024, as the basis for their Motion. Certainly 60(b)(1) through 60(b)(5) do not

apply, as the Debtors have not argued mistake, inadvertence, surprise, excusable neglect, newly

discovered evidence, fraud, a void judgment, or the release or stipulation of a judgment.

Apparently, the Debtors rely solely on 60(b)(6) – "any other reason that justifies relief."

Debtors also fail to cite the standard of review applicable to a motion for reconsideration.

In this regard, the Seventh Circuit Court of Appeals has stated:

A motion for reconsideration performs a valuable function where:

> the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare. (cite omitted)

Bank of Waunakee v. Rochester Cheese Sales, Inc.,906 F.2d 1185, 1191 (7th Cir. 1990).

Here the Debtors have not demonstrated that the Court misunderstood a party or made a decision outside the adversarial issues presented to the Court, or made an error of apprehension. Nor have the Debtors pointed to a controlling or significant change in the law. Rather, the Debtors have done nothing more than rehash the facts and the legal issues already decided by the Court. The Debtors have set forth no good reason for the Court to change its ruling.

## II. RESPONSE TO NUMBERED PARAGRAPHS 2 THROUGH 8

U.S. Bank hereby responds to the Debtors' specific arguments made in paragraphs 2 through 8 of the Motion as follows:

2.      Whether the 2nd Mortgage Note and the related Allonge had staple holes is irrelevant. What is relevant is that the 2nd Mortgage Note and Allonge had punch holes in the top of each page. Christopher Corcoran testified that the condition of the file when received by Deutsche Bank would have been that the 2nd Mortgage Note was on top, with the Allonge immediately below it, in the file folder, with the pages thereof bound together with a metal clasp with prongs inserted through the holes in the paper, and held in place by a sliding metal loop. Thus, the Court was presented with uncontroverted evidence on which to base a finding that the Allonge was intended to be and was attached to the 2nd Mortgage Note, and sufficiently affixed to satisfy the statutory requirement.

3.     Indeed, there was no evidence as to who placed the "stickers" on the Allonge or when. However, Christopher Corcoran's testimony was uncontroverted that Deutsche Bank did not place "stickers" on the Allonges and that the stickers were already on the Allonges when they were received by Deutsche Bank, as agent for U.S. Bank. Thus, in addition to being attached by a binder clip to the Note, each Allonge clearly reflected its relationship to the corresponding Note on its face when received by Deutsche Bank as agent for U.S.Bank.

4.     Christopher Corcoran's personal knowledge as to the execution of the Notes or Allonges is unnecessary. Under Federal Rule of Civil Procedure 902(9), and Wis. Stat. A. § 403.308(i), the signatures on the notes and allonges are presumed genuine. Moreover, Debtors offered no testimony challenging their signatures on the Notes, despite the fact that Debtor Edward Kohler was present in open court at the hearing.   In fact, the Debtors have filed pleadings acknowledging that they took out the loans.

5.     As noted above in paragraph 2, Deutsche Bank did provide evidence that both Allonges would have been attached next to the respective Notes in the respective files delivered to Deutsche Bank. As argued in open court, that testimony is adequate to demonstrate that the Allonges were intended to be attached to the Notes.  Livonia Property Holdings, L.L.C., 717 F.Supp.2d 724, 734 (E.D. Mich. 2010).  The fact that pages in the file may have been separated for copying purposes or examination of the originals does not render the allonges ineffective.  In re Albert, 49 B.R. 254, 261 (Bankr. D. Ar. 1985).

6.     Christopher Corcoran testified that Deutsche Bank was the custodian for U.S. Bank. Thus, the Notes and Mortgages were delivered to U.S. Bank through its custodial agent, Deutsche Bank. As for testimony regarding ownership of the Notes and Mortgages, ownership is irrelevant. The only pertinent issue is whether U.S. Bank was the holder of the Notes and

Mortgages. Wis. Stat. A. § 403.301 states the "holder" is entitled to enforce the instruments, and that "[a] person may be a person entitled to enforce the instrument even though the person is not the owner. . ." U.S. Bank established at trial that it was the holder of the Notes and Mortgages, and therefore, entitled to enforce them.

7.  In paragraph 7, the Debtors address items upon which U.S. Bank did not rely in establishing its right to enforce the notes and mortgages. These documents are extraneous to the proceeding and merit no further consideration.

8.  In <u>In re Veal</u>, 2011 WL 2304200 (9th Cir. BAP (Ariz.)), the trustee could not establish standing because it did not show that its agent had actual possession of the note. 2011 WL 2304200 * 14. In contrast, in the instant case, U.S. Bank produced the original Notes and Mortgages in open court. The Notes, which were endorsed in blank, were put into evidence through the testimony of the custodial agent for U.S. Bank. There can be no question that U.S. Bank established itself as the holder of the Notes and entitled to enforce them pursuant to Wis. Stat. A. § 403.301.

CONCLUSION

Astonishingly, the Debtors ask in their prayer for relief for further discovery. The Debtors had ample opportunity to conduct discovery. U.S. Bank disclosed to the Debtors the precise names of the persons who would have the information the Debtors claimed they needed, but the Debtors took no depositions before trial.

In the Motion, the Debtors ask for nothing more than to reopen and rehash a matter that has been fully litigated to a conclusion. The Debtors submit no new facts, theories or law. Clearly, the Debtors want nothing more than further delay. Further delay would serve the

Debtors' purpose, but would be extremely prejudicial to U.S. Bank, whose collateral continues to be used by the Debtors without receiving any payment on the loans.

For all of these reasons, the Court should deny the Motion for Reconsideration.

U.S. BANK NATIONAL ASSOCIATION, as
Trustee for Structured Asset Investment Loan
Trust Mortgage Pass-Through Certificates, Series
2006-4, CHASE HOME FINANCE LLC and
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., Defendants


By:___/s/___Edward J. Lesniak_____
(Illinois ARDC #1624261, Admitted to District
Court for the Eastern District of Wisconsin on
January 23, 2006)
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue, 22nd Floor
Chicago, IL 60611-3607
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
E-mail: elesniak@burkelaw.com


Penny Gentges
Co-Counsel for Defendants
Bass & Maglowsky, S.C.
7020 N. Port Washington Road
Suite 206
Milwaukee, WI 53217
Telephone: (414) 228-6700
Facsimile: (414) 228-6506
E-mail: penny@basmog.com
09135\00600\899349.1

<u>CERTIFICATE OF SERVICE</u>

Edward J. Lesniak, one of the attorneys for certain Defendants, certifies that a true and correct

copy of the Response by U.S. Bank National Association, as Trustee, to Debtors' Motion for

Reconsideration was served by the Court's CM/ECF filing system on July 30, 2011, at the time

the Motion was filed, on the following parties:

> Rollie R. Hanson
> Penny Gentges
> Mary Grosman (Chapter 13 Trustee)
> Office of the United States Trustee

> /s/      Edward J. Lesniak
> Edward J. Lesniak
> Attorney for Certain Defendants
> (Illinois ARDC #1624261, Admitted to District
> Court for the Eastern District of Wisconsin on
> January 23, 2006)
> Burke, Warren, MacKay & Serritella, P.C.
> 330 N. Wabash Avenue, 22nd Floor
> Chicago, IL  60611-3607
> Telephone:  (312) 840-7000
> Facsimile: (312) 840-7900
> E-mail: elesniak@burkelaw.com

THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:



DATED: August 11, 2011

_____

Honorable Pamela Pepper
Chief United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF WISCONSIN

### Court Minutes and Order

CHAPTER:         13
DATE:            August 9, 2011
JUDGE:           Pamela Pepper
CASE NO.:        2009-35931
DEBTOR:          Edward B and Patricia L Kohler
ADV. NO.:        10-2694
ADV.:            Kohler v. SAIL Trust Mortgage Pass-Through Certificates, Series 2006-4
NATURE OF HEARING:        Debtors' Motion to Reconsider
APPEARANCES:              Rebecca Garcia for the Chapter 13 Trustee
                         Rollie Hanson - Attorney for the debtors
                         Edward Lesniak - Attorney for the creditor (by telephone)
COURTROOM DEPUTY:        Amanda Sippel
TIME:            3:45 p.m. - 4:05 p.m.
ADJOURNED DATE:

_____

The motion alleged that in its oral ruling, the Court had made a statement to the effect that the allonges produced during the evidentiary hearing had staple holes in them, which provided evidence that those allonges had been attached to the notes, which supported the Court's conclusion that US Bank as Trustee was the holder of the notes and thus had standing to pursue the various claims. The objection argued that only one of the allonges had staple holes in it, while the other was in "pristine" condition. Thus, the debtors argued, there was no evidence that the second allonge had been affixed to the second note. In addition, the motion alleged that the witness from Deutsche Bank testified that he had no personal knowledge of the notes ever being transferred into the possession of US Bank. US Bank's objection indicated that staple holes or not, the allonges had been affixed to both notes because they were binder-clipped to the notes and immediately followed the notes in the file, per Mr. Corcoran's testimony. In addition, Mr. Corcoran testified that there were stickers on the allonges identifying them with the particular note to which they related. The Court also noted that US Bank argued

1

that the motion to reconsider was inappropriate because it neither cited, nor fell under any applicable, provision of F. R. Civ. P. Rule 60(b). Counsel for debtors argued that under the UCC code the allonges are required to be affixed to the note. He also argued that the witness testified that the originator of the loan sent the documents directly to Deutsche Bank as a custodian, and therefore that the notes never had been delivered to, or in the possession of, US Bank as Trustee and that US Bank as Trustee had not proven that it owned the notes. Counsel for the creditor argued that it did not matter who owned the notes, but who qualified as the holders of the notes.

The Court agreed with the creditor that the debtors had not identified any provision of Rule 60(b) which justified reconsideration of its ruling. It further found that nothing the debtors had indicated gave it cause to change its ruling that US Bank as Trustee was the holder of the notes, was entitled to enforce them, and had standing, therefore, to file claims, motions for relief from stay and objections to confirmation. The Court reiterated that the allonges appeared in the loan files immediately adjacent to the notes, bore stickers affiliating them with the note, and – because they were blank – constituted bearer paper. Deutsche Bank held that bearer paper only as an agent of US Bank as Trustee. Thus, US Bank as Trustee was the duly qualified holder of both notes, and had standing.

The Court hereby **DENIES** the debtors' motion to reconsider.

# # # # #

2