IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| EDWARD BLAINE KOHLER and | ) | |
| PATRICIA LYNN KOHLER, | ) | Case No. 11 cv 00893-CNC |
| | ) | |
| Debtors. | ) | |
| | ) | |
| EDWARD BLAINE KOHLER, et al. | ) | |
| | ) | On Appeal From The |
| Plaintiffs, | ) | United States Bankruptcy Court |
| | ) | Eastern District of Wisconsin |
| vs. | ) | The Honorable Pamela Pepper |
| | ) | Presiding |
| U.S. BANK NATIONAL ASSOCIATION, as | ) | |
| Trustee, et al., | ) | Case No. 09-35931-pp |
| | ) | Adversary No. 10-02206-pp |
| Defendants. | ) | |

RESPONSE BRIEF
OF DEFENDANTS-APPELLEES U.S. BANK, N.A., AS TRUSTEE
FOR STRUCTURED ASSET INVESTMENT TRUST
MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-4, et al.

Submitted by:

Edward J. Lesniak, elesniak@burkelaw.com
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue, 22nd Floor
Chicago, IL 60611-3607
(312) 840-7000 (telephone)
(312) 840-7900 (facsimile)

Penny G. Gentges, penny@basmog.com
Bass & Maglowsky, S.C.
501 W. Northshore Drive, Suite 300
Milwaukee, WI 53217
(414) 228-6700 (telephone)
(414) 228-6506 (facsimile)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

BASIS OF APPELLATE JURISDICTION ............................................................ 1

STATEMENT OF ISSUE PRESENTED FOR REVIEW ...................................... 1

STANDARD OF REVIEW .................................................................................... 1

STATEMENT OF THE CASE ............................................................................... 3

STATEMENT OF FACTS ..................................................................................... 4

ARGUMENT ......................................................................................................... 10

    I.       SUMMARY ......................................................................................... 10

    II.      PRELIMINARY POINTS .................................................................. 11

          A.     The Only Documents Relied Upon By The Trustee To
                 Establish Its Right To Enforce The Notes Were The Two
                 Notes Endorsed In Blank On The Original Allonges And
                 The Two Mortgages ........................................................................ 11

          B.     The Only Objection To The Trustee's Motion For Relief Is
                 Lack Of Standing ........................................................................... 12

    III.     SUBSTANTIVE ARGUMENT. ......................................................... 12

          A.     Under Applicable Non-Bankruptcy Law, The Trustee Is
                 Entitled To Enforce The Notes. ..................................................... 12

          B.     The Trustee Has Established Its Standing As The Person
                 Entitled to Enforce The Notes. ...................................................... 13

          C.     The Notes Were Properly Endorsed. ............................................. 15

          D.     The Validity Of The Endorsements On The Notes Is Not
                 Dependent Upon Compliance With The SAIL Trust
                 Agreement Or Any Other Related Document. ............................... 18

               1.     The Kohlers Lack Standing To Enforce The SAIL
                      Trust Agreement ................................................................. 18

i

2.     Noncompliance With The SAIL Trust Agreement Does Not Affect The Ability Of A Holder Of A Note Endorsed In Blank To Enforce The Note. ................19

E.     The Trustee Does Not Need To Establish Ownership In Order To Enforce The Note..........................................................20

F.     The Kohlers' Claim That The Trustee Does Not Have Possession Of The Notes And Mortgages is Baseless..................21

CONCLUSION. ............................................................................................22

Case 2:11-cv-00893-CNC   Filed 11/10/11   Page 3 of 29   Document 7

# TABLE OF AUTHORITIES

**Federal Cases**

In re Almeida, 417 B.R. 140 (Bankr. D. Mass. 2009) ........................................ 18

Basson-Sokolik v. Milwaukee School of Engineering (In re Sokolik), 635 F.3d 261, 269 (7th Cir. 2011) ................................................................................ 1

In re Commercial Western Finance Corp., 761 F.2d 1329, 1333 (9th Cir. 1985) ................ 1

In Re Correia, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) ...................................... 19

In re Flo-Lizer, Inc., 946 F.2d 1237, 1240 (6th Cir. 1991) ..................................... 1

Horvath v. Bank of New York, 641 F.3d 617, 621 (4th Cir. 2011) ...................... 10, 14, 22

In re Hwang, 438 B.R. 661, 665 (C.D. Cal. 2010) ............................................. 14

Matter of Killough, 900 F.2d 61, 63 (5th Cir. 1990 ............................................. 1

Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC, 717 F.Supp.2d 724, 734 (E.D. Mich. 2010) .......................................... 16, 19

Local 15, Internat'l Brotherhood of Electrical Workers, AFL-CIO v. Exelon Corporation, 495 F.3d 779, 783 (7th Cir. 2007) ............................................. 1

Multibank 2009-1 RES-ADC Venture, LLC v. San Diego Community Housing Corp., 2001 WL 1044612 at *3 (S.D. Cal. Mar. 21, 2011) ................................... 17

In re Nash, 49 B.R. 254 (Bankr. D. Ariz. 1985), aff'd 60 B.R. 27 (B.A.P. 9th Cir. 1986) ........................................................................................ 16, 17

In re Samuels, 415 B.R. 8, 22 (Bankr. D. Mass. 2009) ........................................ 19

Schieroni v. Deutsche Bank Nat. Trust Co., WL 3652194 at *6 (S.D. Tex. Aug. 18, 2011) ..................................................................................... 19

In re Smoak, 2011 WL 4502596 at *4 (Bankr. S.D. Ohio Sep. 28, 2011) ................. 14, 21

In re Tarantola, 2010 WL 3022038 at *5 (Bankr. D. Ariz. July 29, 2010 ..................... 20

In re Veal, 450 B.R. 897 (B.A.P. 9th Cir. 2011) .............................................. 13, 14

iii

<u>Velasco v. Sec. Nat. Mortg. Co.</u>, 2011 WL 4899935 at *4, (D. Haw. Oct. 14, 2011) ..................................................................................................... 19

<u>In re Weisband</u>, 427 B.R. 13 (Bankr. D. Ariz. 2010) ......................................... 16

<u>Williams v. REP Corporation</u>, 302 F.3d 660, 666 (7th Cir. 2002) ...................... 1

## State Cases

<u>Fred Miller Brewing Co. v. Manasse</u>, 99 Wis. 99, 74 N.W. 535, 536 (Wis. 1898) .......... 10

## Federal Statutes

11 U.S.C. § 362(d) .............................................................................................. 12

## Wisconsin Statutes

Wis. Stat. § 401.201(2)(km) .............................................................................. 21
Wis. Stat. § 403.201(2) ...................................................................................... 13
Wis. Stat. § 403.204(1) ........................................................................... 15, 16, 17
Wis. Stat. § 403.205(2) ...................................................................................... 13
Wis. Stat. § 403.301 .............................................................................. 13, 20, 21

iv

## BASIS OF APPELLATE JURISDICTION

Defendants-Appellees, U.S. Bank, N.A., as Trustee for Structured Asset Investment Loan Trust Mortgage Pass Through Certificates, Series 2006-4 ("Trustee"), Chase Manhattan Mortgage Corporation ("Chase Manhattan"), Chase Home Finance, LLC ("CHF"), Chase H.E. ("Chase H.E.") and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants"), do not disagree with the Statement of appellate jurisdiction made by Plaintiffs-Appellants Edward Kohler and Patricia Kohler (the "Kohlers").

## STATEMENT OF ISSUE PRESENTED FOR REVIEW

The issue on appeal is whether the Bankruptcy Court was correct in ordering relief from the automatic stay in favor of the Trustee, and dismissing the Kohlers' adversary complaint.[1]

## STANDARD OF REVIEW

The Trustee agrees with the Kohlers that findings of fact are reviewed under a clearly erroneous standard, and that legal issues are reviewed *de novo*. In re Flo-Lizer, Inc., 946 F.2d 1237, 1240 (6th Cir. 1991); Matter of Killough, 900 F.2d 61, 63 (5th Cir. 1990); In re Commercial Western Finance Corp., 761 F.2d 1329, 1333 (9th Cir. 1985). However, the Kohlers' recitation to Wisconsin state law authorities regarding the standard of review for exercised discretion is inapplicable to the case at bar and non-binding on this Court. The applicable federal standard of review of the Bankruptcy Court's exercise of discretion is abuse of discretion, which occurs only when the court has acted contrary to the law or reached an unreasonable result. Basson-Sokolik v. Milwaukee School of Engineering (In re Sokolik), 635 F.3d 261, 269 (7th Cir. 2011).

---

[1] The Notice of Appeal states that the Kohlers are appealing from the Bankruptcy Court's Order of August 11, 2011 denying their Motion for Reconsideration. (Document 1, p. 238) However, the Kohlers make no argument in their Brief regarding denial of the Motion for Reconsideration and the Trustee considers that argument to have been abandoned. Local 15, Internat'l Brotherhood of Electrical Workers, AFL-CIO v. Exelon Corporation, 495 F.3d 779, 783 (7th Cir. 2007); Williams v. REP Corporation, 302 F.3d 660, 666 (7th Cir. 2002).

1

Moreover, the Trustee submits that the Bankruptcy Court had no occasion to exercise discretion in this case. Rather, the Bankruptcy Court made findings of fact and applied the law thereto.

Case 2:11-cv-00893-CNC   Filed 11/10/11   Page 7 of 29   Document 7

## STATEMENT OF THE CASE

The Trustee holds two notes executed by the Kohlers and secured by two mortgages on the Kohlers' property. The Trustee filed two proofs of claim and two amended proofs of claim based on the notes and mortgages. The Trustee also filed two motions for relief from the automatic stay to allow it to enforce the notes and mortgages. The Kohlers objected to the proofs of claim, the amended proofs of claim and the motions for relief on the grounds that the Trustee did not own the notes and mortgages and was not entitled to enforce them. The Kohlers also filed an adversary proceeding purportedly to challenge the validity of the Trustee's mortgages.

An evidentiary hearing was held on May 25, 2011 with respect to the motions for relief from the automatic stay, the Kohlers' objections to the amended proofs of claim, and the adversary complaint. The Trustee put into evidence the originals of the two notes endorsed in blank, as well as the originals of the two mortgages that secured the notes. The Trustee also provided testimony about the manner in which the Trustee acquired and held the notes and mortgages through its document custodian, Deutsche Bank. Subsequently, the Bankruptcy Court granted relief from the automatic stay, overruled the Kohlers' objection to the Trustee's claims, and dismissed the adversary proceeding. In doing so, the Bankruptcy Court found that the Trustee had established that it was the holder of the two notes and mortgages endorsed in blank and that it was entitled to enforce the two notes and mortgages, all in accordance with the Wisconsin Uniform Commercial Code.

The Kohlers moved the Bankruptcy Court to reconsider its ruling, but the Bankruptcy Court denied the Kohlers' motion for reconsideration. The instant appeal ensued.

3

## STATEMENT OF FACTS

The Debtors executed an Adjustable Rate Note dated April 6, 2006 in the face principal amount of $220,800, payable to BNC Mortgage, Inc. ("BNC Mortgage") ("First Note") secured by a Mortgage ("First Mortgage"). (Document 1-2, pp. 27-33, and pp. 39-57)[2] The BNC Mortgage identifies Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee mortgagee for BNC Mortgage. (Document 1-2, pp. 39-40)

At the same time, the Kohlers executed a Balloon Note dated April 6, 2006 in the face principal amount of $55,200, payable to Lehman Brothers Bank, FSB ("Lehman Brothers") ("Second Note") (Document 1-2, pp. 108-111), secured by a Mortgage ("Second Mortgage). (Document 1-2, pp. 117-123) MERS is also the nominee mortgagee for Lehman Brothers. (Document 1-4, p. 66) (The First Note and Second Note will be referred to collectively as the "Notes," and the First Mortgage and the Second Mortgage will be referred to collectively as the "Mortgages.")

The Kohlers filed their Chapter 7 bankruptcy petition on November 3, 2009, and then converted the case to a Chapter 13 proceeding on February 16, 2010. (Document 1, pp. 18-20; and Document 1, p. 134) On December 9, 2009, the Trustee filed its Motion for Relief from the Automatic Stay with respect to the First Mortgage ("First MFR"). (Document 1, pp. 89-130) Attached thereto were copies of the First Note, the First Mortgage, an Allonge dated December 2, 2009, and an Assignment of Mortgage dated November 30, 2009. Id. The Kohlers filed their Objection to the First MFR on December 23, 2009. (Document 1, pp. 130-132) The parties entered into a Stipulation to Modify the Stay on March 1, 2010. (Document 1, pp. 146-147)

---

[2] The record consists of five Documents named, respectively, Document 1, 1-1, 1-2, 1-3 and 1-4. The Trustee will herein cite to the Document number and page number of the Document.

Later, the Trustee renewed its First MFR on March 22, 2010. (Document 1, pp. 171-176) The Kohlers filed their objection to the renewed First MFR on April 15, 2010. (Document 1, p.198)

As to the Second Mortgage, the Trustee filed a Motion for Relief from the Automatic Stay on March 12, 2010 ("Second MFR"). (Document 1, pp. 148-170) Included with the Second MFR were the Second Note, the Second Mortgage, an Allonge dated March 8, 2010 and an Assignment of Mortgage dated March 2, 2010. Id. The Kohlers filed their objection to the Second MFR on March 26, 2010. (Document 1, pp. 177-180). The Kohlers' sole objection to both the First MFR and the Second MFR (collectively, the "MFRs") is an alleged lack of standing to enforce the Notes and Mortgages. The Kohlers have never denied their execution of the Notes and Mortgages, their default in making payments, or the lack of equity in the subject property.

The Kohlers also filed an Adversary Complaint on December 22, 2010 (Document 1-3, pp. 6-19) and an Amended Adversary Complaint on January 6, 2011. (Document 1-3, pp. 22-35) As with their objections to the MFRs, the gist of the complaint was the Trustee's purported lack of standing to enforce the Notes and Mortgages. The relief sought was a determination that none of the Defendants had a valid lien on the Kohlers' property and an expungement thereof. (Document 1-3, p. 35)

The Trustee also filed two proofs of claim. Claim 12-1 related to the First Note and was filed March 16, 2010. It included, as attachments, the same documents as were attached to the First MFR. (Document 1-4, pp. 1-32) Similarly, on the same day, the Trustee filed Claim 13-1 related to the Second Note. It included, as attachments, the same documents as were attached to the Trustee's Second MFR. (Document 1-4, pp. 63-76) (Claim 12-1 and Claim 13-1 are collectively referred to as the "Initial Proofs of Claim.")

Thereafter on September 21, 2010, the Trustee filed an Amended Claim 12-2 and an Amended Claim 13-2. (Document 1-4, pp. 33-62; and pp. 77-91) (Amended Claim 12-2 and Amended Claim 13-2 are collectively referred to as the "Amended Claims") The Amended Claims included the same documents as in the original claims, with one notable addition to each. Amended Claim 12-2 included an undated "Allonge to Note" endorsed in blank by BNC Mortgage ("1st Note Allonge"), and Amended Claim 13-2 included an undated "Allonge to Note" endorsed in blank by Lehman Brothers ("2nd Note Allonge"). (Document 1-4, pp. 59 and 90, respectively) (The 1st Note Allonge and the 2nd Note Allonge are collectively referred to herein as the "Original Allonges.") The Kohlers filed their Objection to the Amended Claims on March 1, 2011 (Document 1-1, pp. 23-148) together with a supporting Brief. (Document 1-1, pp. 149-162) As with the MFRs, the Kohlers' only objection to the Amended Claims was to the standing of the Trustee to enforce the Notes and Mortgages.

On March 22, 2011, the Trustee filed a Supplemental Affidavit in Support of Motions for Relief from the Automatic Stay, setting out the extent of the Kohler's debt at that time. (Document 1, pp. 211-212)

On May 25, 2011, the Bankruptcy Court conducted an evidentiary hearing on the MFRs, the objection to claims, the objection to confirmation of the Chapter 13 plan, and the Trustee's motion to dismiss the adversary complaint. (Transcript, Document 1-1, pp. 237-343; Exhibits, Document 1-2) Prior to May 25, 2011, the Trustee had informed the Bankruptcy Court that it would be relying solely on the two Notes, both endorsed in blank by means of the Original Allonges, and the two original Mortgages. (Document 1-1, pp. 405-406; Document 1-1, pp. 163-164) The Trustee did not then rely on, and is not now relying on, either of the dated allonges or

the assignments of mortgage that were included as exhibits to the MFRs and the Initial Proofs of Claim.

One witness testified at trial, namely, Christopher Corcoran, a manager with Deutsche Bank. (Document 1-1, p. 246, lines 4-6, 14-15 and p. 248, lines 5-10)  He was called to testify by the Trustee. (Document 1-1, p. 246, line 2)  The Kohlers called no witnesses.

Mr. Corcoran testified that Deutsche Bank is a custodian for approximately three million loan files in its facility in Santa Ana, California and that he himself had looked at hundreds of loan files. (Document 1-1, p. 248, lines 15-22, and 249, lines 2-4)  These included files received from Lehman Brothers and BNC Mortgage. (Document 1-1, p. 249, lines 14-25, and p. 250, lines 1-9)  Mr. Corcoran also testified to a specific customary stacking order of documents in the files received from Lehman Brothers and BNC Mortgage. (Document 1-1, p. 250, lines 18-25)

Mr. Corcoran reviewed the two original loan files in open court and identified them as the respective files for the Kohler loans for which Deutsche Bank was the custodian for the Trustee. (Document 1-1, pp. 247, 251-254, and pp. 258, 266-268)  He testified as to the contents of each of the files, which included the Notes, the Original Allonges, the Mortgages, title insurance policies and other documents not pertinent to the issues in this case.  (Document 1-1, p. 256, 268-269)

Mr. Corcoran testified that both of the files would have been received by Deutsche Bank from BNC Mortgage and Lehman Brothers, respectively, with the documents bound by a metal fastener inserted through two holes punched at the top of the pages. The documents would have been arranged in a particular stacking order consistent with the order on the Collateral Check Off Sheet contained in the file as follows:  the original note, the allonge, the addendum to the note, the mortgage and riders thereto, the closing letter and the title commitment. (Document 1-1, p.

257, 269) He further testified as to logs created and maintained by Deutsche Bank as its records of the two particular files while in its custody. The logs disclosed that both loan files were received April 20, 2006. They were then reviewed by Deutsche Bank personnel and an inventory was recorded of the documents in the file including the original Notes, endorsed in blank, together with a certified copy of the Mortgages. (Document 1-1, pp. 263-264, pp. 272-273) [3] He also testified that Deutsche Bank held the files as custodian for the Trustee. (Document 1-1, pp. 247, 285).

On cross-examination, Mr. Corcoran testified that the 1st Note Allonge was undated, but contained on its face a loan number, borrower name (Kohlers) and the property address. (Document 1-1, p. 275-278) The loan number on the 1st Note Allonge matched the loan number on the First Note. (Document 1-1, p. 276) Moreover, that information was already on the 1st Note Allonge when Deutsche Bank received it. (Document 1-1, p. 279) He also testified that the 1st Note Allonge had hole punches in the top of the pages and apparent staple holes in the left side top corner. (Document 1-1, p. 290) As to the 2nd Note Allonge, it also contained the loan number of the Second Note, property address, and borrower name (Kohlers). (Document 1-1, pp. 292-293) The 2nd Note Allonge also had holes punched in the top of the page, for fastening with a metal binder, but there were no staple holes. (Document 1-1, pp. 298-299)

Mr. Corcoran also testified that Deutsche Bank did not hold the loan files for the Trustee when Deutsche Bank first received them, but began to hold the files for the Trustee at a later date, when the trust transaction closed. (Document 1-1, p. 287-288).

---

[3]     The trial exhibits are contained in Document 1-2. However, as a result of the copying process, they do not clearly show the hole punches that are in the original loan documents. The Trustee suggests that the Court examine the loan documents attached to Amended Claim 12-2 and Amended Claim 13-2 as they clearly show the hole punches at the top of the documents. (Document 1-4, pp. 33-62 and pp. 77-91)

On June 27, 2011, the Bankruptcy Court rendered its ruling. The Court made the following findings:

1. BNC loaned $228,000 to the Kohlers.

2. A note for that debt was presented in court and a copy attached to the proof of claim.

3. BNC was the payee on the note.

4. On the same day, April 6, 2006, Lehman Brothers loaned $55,200 to the Kohlers.

5. A note for the $55,200 loan was presented in court and attached to the proof of claim.

6. On April 20, 2006, Deutsche Bank received the two loan files – including the original note, and an allonge endorsed in blank.

7. Both allonges reflected the loan numbers – 8336 and 8338 – the address of the property and the name of the Kohlers.

8. There was a particular stacking order for the documents in the file, and each of the documents actually appeared in the files.

9. The notes and allonges had been separated at various points in time, as had other individual pieces of paper in the files.

10. The note and allonge had staple holes in the upper left corners indicating that at some point they had been attachments to the other documents, and that the documents were hole-punched and clipped together at the top.

11. Mr. Corcoran was a credible witness, truthful in his testimony, and that he provided full and accurate testimony with regard to Deutsche Bank's role as custodian of the files.

12. Deutsche Bank had a custodial contract with the Trust, and that its role was to hold and maintain the two files on behalf of the "sale" as the client.[4] (Document 1-1, pp. 219-223)

Based on these facts, the Bankruptcy Court granted the MFRs, overruled the claims objections and dismissed the adversary proceeding. (Document 1, pp. 221-222)

---

[4] The reference to "sale" is apparently meant to be to the SAIL Trust.

# ARGUMENT

## I.    SUMMARY

In their Brief, the Kohlers unduly complicate what the Fourth Circuit Court of Appeals has identified as a simple and straightforward matter:

> Negotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it.

Horvath v. Bank of New York, 641 F.3d 617, 621 (4th Cir. 2011).

In the instant case, the Trustee appeared in open court, and, through its attorneys, presented to the Bankruptcy Court two original promissory notes (the Notes), admittedly executed by the Kohlers, both of which were endorsed in blank (the Original Allonges) and in the possession of the Trustee's attorneys. Through that presentment, the Trustee satisfied all standing requirements and established its right to enforce the Notes and Mortgages.[5]

The Kohlers' argument that the Trustee failed to establish "ownership" of the Notes is inconsequential. The applicable state statute specifically provides that a holder of a note endorsed in blank need not be the owner in order to enforce it. As noted above, the nature of a note endorsed in blank is such that the Trustee is entitled to enforce the Notes solely because it is in possession of instruments endorsed in blank.

The Kohlers' argument that the Trustee needed to demonstrate compliance with certain provisions of a trust agreement or other agreement relative to a securitization process is also of no consequence. Several courts have held that the makers of a note, such as the Kohlers, have no standing to enforce agreements to which they are not a party and, even if they did, compliance

---

[5]    Under applicable non-bankruptcy law, the transfer of the Notes by endorsement and delivery automatically includes a transfer of the Mortgages that secure the Notes without any written assignment. Fred Miller Brewing Co. v. Manasse, 99 Wis. 99, 74 N.W. 535, 536 (Wis. 1898). Accordingly, the Trustee's argument will focus on its right to enforce the Notes, without specific reference to the Mortgages.

with trust or securitization agreements is not necessary to have the rights of a holder to enforce a note endorsed in blank under applicable state law.

The Kohlers' argument that the Notes were not, in fact, endorsed in blank because the Original Allonges were not stapled to the Notes when presented to the Court, is also of no avail. Courts that have considered the applicable provisions of the Uniform Commercial Code have held that there only need be sufficient evidence that an allonge was intended to be a part of the note and that it was, at some point, attached to the note, so that an endorsement will not be arbitrarily invalidated for want of a staple hole. The Trustee provided ample evidence to support the Bankruptcy Court's factual determination that the Original Allonges both are and were intended to be made part of the respective Notes, and had been physically attached to the respective Notes when received by Deutsche Bank.

Finally, the Kohlers' argument that the Trustee did not demonstrate its possession of the original Notes and Mortgages flies in the face of the evidence. The Trustee produced the original Notes, endorsed in blank, together with the original Mortgages, in open court.

Based on the evidence provided at trial and the applicable statutes and authorities, the Bankruptcy Court correctly found that the Trustee was in possession of the Notes endorsed in blank and was entitled to enforce them.

II.    PRELIMINARY POINTS

A.    The Only Documents Relied Upon By The Trustee To Establish Its Right To Enforce The Notes Were The Two Notes Endorsed In Blank On The Original Allonges and The Two Mortgages.

In their Brief, the Kohlers make reference to the "SAIL Trust Agreement," and also to the assignments of mortgage and dated allonges that were included with the MFRs and the Initial Proofs of Claim. They argue that those documents do not establish the right to enforce the

11

Notes. (Kohler Brief, pp. 31-40) However, the Trustee did not rely on either the SAIL Trust Agreement or the assignments of mortgage or dated allonges filed with the MFRs and the Initial Proofs of Claim. (Document 1-1 p. 330; Document 1 p. 210)

Moreover, although the Bankruptcy Court expressed curiosity about the purpose of the assignments of mortgage and dated allonges that were included with the MFRs and Initial Proofs of Claim, the Bankruptcy Court made its decision based only upon what the Trustee argued established its right to relief from the stay. (Document 1-1 pp. 224-228) Thus, unlike the Kohlers, the Trustee herein will focus only on the documents that it did, in fact, rely on – the Notes endorsed in blank through the Original Allonges created at or about the time the Notes were executed, and the Mortgages.

B.     The Only Objection To The Trustee's Motion For Relief Is Lack Of Standing.

The Trustee based its MFRs on Section 362(d) of the Bankruptcy Court, 11 U.S.C. § 362(d). The Trustee asserted lack of adequate protection on account of the Kohlers' failure to make post-petition payments, and the Kohlers' lack of equity in the subject property. (Document 1, pp. 89-90; Document 1, pp. 148-149) The Kohlers' sole objection related to the Trustee's standing to enforce the Notes and Mortgages. (Document 1, pp. 130-132; Document 1, pp. 177-179) The limited nature of the Kohlers' objection, i.e., lack of standing, was duly noted by the Bankruptcy Court in rendering its decision. (Document 1-1, p. 216, lines 12-18)

III.     SUBSTANTIVE ARGUMENT

A.     Under Applicable Non-Bankruptcy Law, The Trustee Is Entitled To Enforce The Notes.

The case made by the Trustee in the Bankruptcy Court in support of its right to enforce the Notes and Mortgages was simple and straightforward. It is the holder of the Notes endorsed

in blank and is therefore entitled to enforce them and the Mortgages. (Document 1-1, p. 224, lines 15-23)

There are several rules applicable to the Trustee's claim to be the holder entitled to enforce the Notes. Wis. Stat. § 403.301, provides as follows:

> "Person entitled to enforce" an instrument means the holder of the instrument. . . A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Wis. Stat. § 403.205(2) provides:

> If an endorsement is made by the holder of an instrument and it is not a special endorsement, it is a blank endorsement. If endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed.

Wis. Stat. § 403.201(2) provides:

> . . . If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

The net effect of these rules was succinctly stated in <u>Horvath</u>, <u>supra</u>:

> Negotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it.

641 F.3d at 621.

At trial, the Trustee, through its attorneys as agent, presented the Court with the original Notes endorsed in blank on the Original Allonges, thus establishing its right to enforce the Notes, as the holder thereof under the foregoing provisions of the Wisconsin Uniform Commercial Code.

    B.    <u>The Trustee Has Established Its Standing As The Person Entitled To Enforce The Notes.</u>

It was appropriate for the Bankruptcy Court to look to In re Veal, 450 B.R. 897 (B.A.P. 9th Cir. 2011) for the standards at play in establishing standing. It was also appropriate for the Bankruptcy Court to rule that the Trustee had satisfied the requirements for standing.

Constitutional standing requires "an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress." Veal, 450 B.R. at 906. Clearly, the Trustee satisfies this minimum requirement. Injury is caused by the prohibition of the automatic stay; causation exists because the Trustee cannot exercise its state court remedies on account of the automatic stay; and redressability exists because the requested relief of lifting the stay would remedy the injury. Id.

The prudential standing requirement is satisfied if the Trustee has established that it is a real party in interest. Id. at 907. The Trustee can satisfy this burden if it can demonstrate that it holds the rights it seeks to enforce. Id. at 908. Clearly, under Veal, the Trustee is a real party in interest if it has established that it is a person entitled to enforce the Notes under Section 3-301 of the Uniform Commercial Code. Id. at 910-11. See also, In re Hwang, 438 B.R. 661, 665 (C.D. Cal. 2010) (finding that holder of note has real party in interest status);[6] Horvath v. Bank of New York, 641 F.3d 617, 621 (4th Cir. 2011) (finding that the holder of a promissory note endorsed in blank has the right to enforce it); and In re Smoak, No. 09-30421, 2011 WL 4502596, at *4 (Bankr. S.D. Ohio Sept. 28, 2011) (the holder of a note endorsed in blank is the real party in interest).

The Bankruptcy Court correctly determined that, as holder of the Notes endorsed in blank, the Trustee was a real party in interest and satisfied the prudential standing requirement. The Kohlers disagree and have raised several arguments in challenge to the Trustee's standing:

---

[6]     The Kohlers cite to the bankruptcy court's decision in In re Hwang, 396 B.R. 757. However, the bankruptcy court was reversed by the district court and the case was remanded in In re Hwang, 438 B.R. 661 (C.D. Cal. 2010).

Case 2:11-cv-00893-CNC   Filed 11/10/11   Page 19 of 29   Document 7

the Trustee hasn't proven "ownership" of the Notes; the Original Allonges were not affixed to the Notes; the Trustee hasn't demonstrated compliance with the SAIL Trust Agreement; and the Trustee has not shown possession of the Notes and Mortgages. The Trustee will address these arguments in turn.

C.    The Notes Were Properly Endorsed.

The Kohlers challenge the effect of the applicable provisions of the Wisconsin Uniform Commercial Code by arguing that the Notes were not properly endorsed in blank. They argue that the endorsement was not made by a signature on the Notes or on a "paper affixed to" the note, as required by Wis. Stat. § 403.204(1). (Document 4, pp. 25-29)  They argue that the Original Allonges were not attached to the respective Notes, and the 2nd Note Allonge had no staple holes.  In doing so, they ignore the pertinent evidence and compelling case law upon which the Bankruptcy Court anchored its decision.

The Bankruptcy Court found that Deutsche Bank, the custodian of the loan documents for the Trustee, received the Notes on April 20, 2006, and the Original Allonges were included in the file. (Document 1-1, p. 220, lines 14-17)  Each of the Original Allonges reflected on its face the loan number, property address and borrower name.  (Document 1-1, p. 220, lines 17-21)  The documents were received by Deutsche Bank in a file arranged in a certain stacking order. (Document 1-1, p. 220, lines 22-24)  When the files were received by Deutsche Bank, the documents would have been bound together with a fastener inserted through hole punches at the top of the pages.  (Document 1-1, pp. 221, lines 10-13)  Although not noted by the Court on June 27, 2011, Mr. Corcoran had also testified that the "stacking order" had been for the allonge to immediately follow behind the note, as was set forth in the Collateral Check Off Sheet. (Document 1-1, pp. 257, 269)  The Bankruptcy Court noted that the pages of the loan documents

in the file had apparently been separated over time. (Document 1-1, p. 221, lines 1-10) Finally, as Mr. Corcoran had testified, the Notes and Original Allonges were both in their respective files when presented to the Bankruptcy Court on May 25, 2011. (Document 1-1, pp. 256, 268-269)

Courts that have evaluated similar circumstances have concluded that the "affixed" requirement is satisfied in these circumstances. For example, in Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC[7], the borrower argued that the allonges were not affixed to the notes. 717 F.Supp.2d 724, 734 (E.D. Mich. 2010). The court examined the allonges, noted the language thereon tying them to the particular loans and ruled that: "In these circumstances, given the clear intent that the Note and Allonges were to be physically attached, the evidence is insufficient to invalidate the endorsements." Id.

In In re Nash, 49 B.R. 254 (Bankr. D. Ariz. 1985), aff'd 60 B.R. 27 (B.A.P. 9th Cir. 1986), the bankruptcy court addressed the same issue, but under the former, more stringent standard that the endorsement must be so firmly affixed as to become part of the instrument. Notwithstanding the more stringent standard, the bankruptcy court gave no significance to the fact that the company's file had been "pulled apart, copied, and put back together," and that in their current condition, the "note and assignment are physically separated." 49 B.R. at 261. Instead the bankruptcy court focused on the status of the documents when originally received and stated: "Given the clear intent that the note and assignment were to be physically attached, the evidence is insufficient to establish an invalid endorsement." Id.

The Kohlers rely on cases that are readily distinguishable. In In re Weisband, 427 B.R. 13 (Bankr. D. Ariz. 2010), the evidence failed to demonstrate that the endorsement was ever affixed to the note. The endorsement had no language on its face that tied it to the note. In the instant case, there was ample evidence that the Original Allonges had been attached to the

---

[7] The court interpreted Michigan law, but it was the exact same provision as Wis. Stat. § 403.204(1).

respective Notes. Mr. Corcoran testified to the stacking order set forth in the Collateral Check Off Sheet that has the Original Allonge situated next to and immediately following the respective Notes, with all documents fastened together with a metal fastener inserted through the holes in the top of the pages. (Document 1-1, pp. 257, 269; Document 1-2, pp. 78, 141) In both files, the Collateral Check Off Sheet has an "x" next to both the Notes and the Original Allonges. (Document 1-2, pp. 78, 141) Mr. Corcoran testified that Deutsche Bank's logs for both files showed that Original Allonges and Notes were in the respective files when received by Deutsche Bank. The 1st Note Allonge has both staple marks and punch holes that match the same marks on the First Note. (Document 1-1, p. 290) The 2nd Note Allonge has punch holes that match the punch holes on the 2nd Note.[8] (Document 1-1, pp. 298-299) There was also ample language in the Original Allonges that tied them directly to the respective Notes (loan number, borrower name, and property address).

Similarly, in <u>Multibank 2009-1 RES-ADC Venture, LLC v. San Diego Community Housing Corp.</u>, No. 09-CV-2880 JLS, 2011 WL 1044612, at *3 (S.D. Cal. Mar. 21, 2011) the court refused to give effect to an endorsement where there was no evidence that the allonge had ever been attached to the note. Again, in the instant case, the Trustee provided ample evidence to support the Bankruptcy Court's finding that the Original Allonges had been attached to the Notes, but later separated at various points in time. The Trustee could find no case holding that once affixed to a note an allonge must stay continuously affixed in order to remain effective as an endorsement. On the contrary, in <u>In re Nash</u>, <u>supra</u>, the court ruled that the allonge was

---

[8]     The Kohlers twice argued that there was no evidence that the Second Note Allonge was ever attached to the Second Note because it had no staple marks. (Document 4, pp. 14-15, 28-29) This argument is openly misleading and in direct contradiction with the evidence. There are punch holes in the 2nd Note Allonge and Mr. Corcoran testified that the file would have been received by Deutsche Bank with all documents bound by the fasteners in the stacking order with the 2nd Note Allonge immediately next to and behind the Second Note. In its best light, perhaps the Kohlers' argument is that the only way to "affix" an allonge to a note is by use of a staple, but nothing in the statutory language of Wis. Stat. § 403.204(1), or any case law, supports such an argument.

intended to be physically attached to the note notwithstanding that the file has been "pulled apart, copied and put back together." 49 B.R. at 261.

Based upon the Bankruptcy Court's findings of fact noted above, none of which have been challenged by the Kohlers, the Bankruptcy Court correctly ruled on the validity of the endorsements contained in the Original Allonges so that the Trustee was in possession of Notes endorsed in blank and, as the holder thereof, entitled to enforce its rights under the Notes.

D.    The Validity Of The Endorsements On The Notes Is Not Dependent Upon Compliance With The SAIL Trust Agreement Or Any Other Related Document.

The Kohlers assert that the Trustee must demonstrate it acquired the Notes in accordance with the SAIL Trust Agreement. (Document 4, pp. 31-37)  Yet, the Kohlers fail to cite a single case in which a court has agreed with their argument.  On the contrary, courts have universally held that (a) makers of a note lack standing to claim any rights under agreements like the SAIL Trust Agreement, to which they are not a party and (b) failure to demonstrate compliance with an agreement such as the SAIL Trust Agreement does not render a holder of a note endorsed in blank unable to enforce the note.

1.    The Kohlers Lack Standing To Enforce The SAIL Trust Agreement.

Several courts have ruled that makers of a note, such as the Kohlers, do not have standing to enforce any provision of an agreement to which they are not a party.  In re Almeida, 417 B.R. 140 (Bankr. D. Mass. 2009), debtors made the exact same argument set forth by the Kohlers, that is, failure to comply with the protocol set out in a pooling and servicing agreement ("PSA").  The court noted that: ". . .[the debtor] is not a third party beneficiary of the PSA, and, ironically, he would appear to lack standing to object to any breaches of the terms of the PSA." 417 B.R. at 149 n.4

Similarly, in Livonia Property Holdings, supra, the court stated: "In fact, for over a century, state and federal courts around the country have applied similar reasoning to hold a litigant who is not a party to an assignment lacks standing to challenge that assignment." 717 F.Supp.2d at 736-737.

Most recently, the United States District Court for the District of Hawaii, citing Livonia Property Holdings, stated: "Thus, as strangers to the Assignment and without any evidence of reason to believe that they are intended beneficiaries of that contract, Plaintiffs may not dispute the validity of the Assignment." Velasco v. Sec. Nat. Mortg. Co., No. 10-00239 DAE KSC, 2011 WL 4899935, at * 4 (D. Haw. Oct. 14 2011)

See also Schieroni v. Deutsche Bank Nat. Trust Co., No. H-10-663, 2011 WL 3652194, at *6 (S.D. Tex. Aug. 18, 2011) (Debtors lacked standing to challenge mortgagee's chain of title under contracts by which assignments were made.) In re Correia, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011) (Debtors lacked standing to challenge mortgagee's chain of title under pooling and servicing agreement.)

The Kohlers cite no authority to the contrary.

2. Noncompliance With The SAIL Trust Agreement Does Not Affect The Ability Of A Holder Of A Note Endorsed In Blank To Enforce The Note.

Even if the Kohlers could enforce the terms of the SAIL Trust Agreement, it would not change the result. Courts have repeatedly ruled that the effectiveness of endorsements of notes or assignments of mortgages is not dependent upon compliance with a pooling and servicing agreement, trust agreement, or any other such documents.

In re Samuels, 415 B.R. 8 at 22 (Bankr. D. Mass. 2009), the bankruptcy court stated:

This argument falls far short of its goal. Even if this direct assignment were somehow violative of the PSA, giving rise to unfavorable tax, regulatory, contractual, and tort consequences, neither the PSA nor those consequences

19

would render the assignment itself invalid. In fact, under the Debtor's own argument, the unfavorable consequences could and would arise only if, and precisely because, the assignments were valid and effective.

Similarly, in In re Tarantola, No. 4:09-bk-09703-EWH, 2010 WL 3022038, at *5 n.8 (Bankr. D. Ariz. July 29, 2010), the court, citing part of the above-quoted passage from Samuels, stated: "Debtor argues that any assignment of the Note after the 'cut off date' of the PSA would be ineffective because it would violate REMIC and the PSA Terms. However, an assignment to the Pool is not necessarily ineffective after the 'cut off date.'" (internal citation omitted).

More recently, the Bankruptcy Court for the Southern District of Ohio, in In re Smoak, stated:

> The arguments made by the Smoaks that noncompliance with the PSA vitiates the standing of lenders to enforce notes and mortgages have been made by other debtors and rejected. Based upon the undisputed facts. . .the PSA does not relate to who is the 'person entitled to enforce' the Note under the Ohio UCC.
>
>          \* \* \*
>
> Even if the Smoaks had standing to raise issues pertaining to non-compliance with the PSA, non-compliance with the PSA does not affect a holder's ability to enforce a promissory note against the maker of the note or deprive the holder from having standing in a bankruptcy case to file a proof of claim and collect on it.

2011 WL 4502596 at *5-6 (internal citations omitted).

In the face of this overwhelming authority, the Kohlers cite not a single case to support their notion that the Trustee must demonstrate compliance with the SAIL Trust Agreement in order to enforce the Notes.

E.     The Trustee Does Not Need To Establish Ownership In Order To Enforce The Note.

Wis. Stat. § 403.301 is unequivocal. The Trustee, as a holder, is entitled to enforce the notes "even though [the Trustee] is not the owner. . ." Notwithstanding this unequivocal

20

language, the Kohlers argue that the Trustee cannot enforce the Notes because it did not establish ownership of the Notes.

Perhaps the Bankruptcy Court for the Southern District of Ohio best addressed this argument recently in In re Smoak, supra:

> . . .the Smoaks' argument confuses the rights of an owner of a promissory note or one who holds interests in a promissory note with the rights of a holder of a note. Their argument suggests that in order to prove standing to file and enforce in proof of claim relating to a securitized mortgage note, a creditor must establish that it is the owner of the note – not the holder of the note. However, as noted, under Ohio law, it is the holder of a promissory note who may enforce it and who, therefore, has standing to file a proof of claim.
>
>        \*    \*    \*
>
> The owner of the Note (if it is different than the holder) is not a real party in interest because its rights, if any, would be against a holder or other third party in violation of a contract, not the maker.

2011 WL 4502596 at \*7-8.[9]

F.    <u>The Kohlers' Claim That The Trustee Does Not Have Possession Of The Notes And Mortgages Is Baseless.</u>

The Kohlers also argue that the Trustee never had possession of the Notes or did not show that the Notes were ever delivered to the Trustee. (Document 4, pp. 29-30) This argument only demonstrates that the Kohlers miscomprehend the meaning of Wis. Stat. § 403.301 and § 401.201(km). The "holder" is the party in possession of the instrument under § 401.201(km), and the holder is entitled to enforce the instrument under § 403.301. The Trustee, through its attorneys, presented to the Bankruptcy Court the original Notes, endorsed in blank in the Original Allonges, thus establishing the Trustee's current possession of the Notes. Accordingly, the Trustee is entitled to enforce the instrument without the necessity of having to show the history of the instrument's past travels. In this situation, as the Fourth Circuit Court of Appeals

---

[9]    Ohio Revised Code § 1303.31(B) [UCC3-301] is identical to Wis. Stat. § 403.301. <u>Smoak</u>, 2011 WL 4502596 at \*8  n.15

has noted, "the old adage about possession being nine-tenths of the law is, if anything, an understatement." Horvath, 641 F.3d at 621. Having clearly established its possession of the Notes and Mortgages, the Trustee is entitled to enforce them.

CONCLUSION

The Trustee appeared in open court on May 25, 2011 bearing the original Notes, Original Allonges and the original Mortgages, among other documents. The Notes were endorsed in blank, thereby making the Trustee a holder of the Notes and a person entitled to enforce them. Despite the Kohlers' efforts to muddy the waters with irrelevant arguments, the basic facts establish the Trustee's standing to file the MFRs and file the Initial Proofs of Claim and the Amended Proofs of Claim. For these reasons, the Bankruptcy court was correct in granting relief from the automatic stay, denying the Kohlers' objections to the Amended Proofs of Claim, and dismissing the adversary complaint. The Defendants pray that this Court affirm the Bankruptcy Court's rulings.

U.S. Bank, N.A., as Trustee for Structured Asset Investment Trust Mortgage Pass-Through Certificates, Series 2006-4, et al., Defendants-Appellees

By: /s/ Edward J. Lesniak
(Illinois ARDC #1624261; Admitted To District Court for the Eastern District of Wisconsin on January 23, 2006)
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue, 22nd Floor
Chicago, IL 60611-3607
(312) 840-7000 (telephone)
(312) 840-7900 (facsimile)
elesniak@burkelaw.com

22

Penny G. Gentges, penny@basmog.com
Bass & Maglowsky, S.C.
501 W. Northshore Drive, Suite 300
Milwaukee, WI  53217
(414) 228-6700 (telephone)
(414) 228-6506 (facsimile)

09135\00600\958657.1

23

CERTIFICATE OF SERVICE

Edward J. Lesniak, one of the attorneys for certain Defendants, certifies that a true and correct copy of the Response Brief of Defendants-Appellees U.S. Bank, NA., as Trustee, et al. was served by the Court's CM/ECF filing system on November 10, 2011, at the time the Response Brief was filed, on the following person:

Rollie R. Hanson

/s/    Edward J. Lesniak
Edward J. Lesniak
Attorney for Certain Defendants
(Illinois ARDC #1624261, Admitted to District
Court for the Eastern District of Wisconsin on
January 23, 2006)
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue, 22nd Floor
Chicago, IL 60611-3607
Telephone: (312) 840-7000
Facsimile: (312) 840-7900
E-mail: elesniak@burkelaw.com