UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

EDWARD B. KOHLER,
PATRICIA L. KOHLER,

      Appellants,

      v.                         Case No. 11-C-0893

U.S. BANK NATIONAL ASSOCIATION
as Trustee for Structured Asset
Investment Loan Trust Mortgage
Pass-Through Certificates Series 2006-4,
CHASE HOME FINANCE LLC,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.,

      Appellees.

---

DECISION AND ORDER
AFFIRMING BANKRUPTCY COURT DECISION AND ORDER

On November 3, 2009, Edward and Patricia Kohler filed a chapter 7 bankruptcy petition, which they converted to a chapter 13 case on February 16, 2010. (*See* Doc. 1 at 134.) U.S. Bank National Association ("U.S. Bank"), as trustee for the Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates Series 2006-4 (the "trust"), moved for relief from the automatic stay imposed by 11 U.S.C. § 362 to proceed with a state-court foreclosure action relating to notes and mortgages executed by the Kohlers. Attached to the motion for relief from stay were copies of the first mortgage note executed by the Kohlers, with an allonge dated December 2, 2009, and the second mortgage note executed by the Kohlers, with an allonge dated March 8, 2010. (*See* Doc. 1 at 89, 119-28, 166-69.) In addition, U.S. Bank filed two claims (claims 12 and 13) related to the two notes. The Kohlers objected to the claims and the motion for relief from stay. In addition, they filed an adversary proceeding to determine the validity and enforceability of the first

and second mortgage liens. (*See* Doc. 1-3 at 22.) Thereafter, U.S. Bank amended claims 12 and 13, adding undated allonges endorsed in blank (Doc. 1-4 at 55-59, 87-90), and the Kohlers objected again.

On May 25, 2011, Bankruptcy Judge Pamela Pepper conducted an evidentiary hearing at which Chris Corcoran of Deutsche Bank, custodian of the note and mortgage records, testified. Subsequently, in an oral decision of June 27, 2011, Judge Pepper rejected the Kohlers' arguments and issued her findings of fact. In a written order of July 6, 2011, Judge Pepper granted relief from the stay. (Doc. 101 at 212-13.) Thereafter, at a hearing on August 9, 2011, Judge Pepper denied the Kohlers' motion for reconsideration. (Doc. 1 at 236-37; Doc. 11.)

The Kohlers appealed from these two decisions issued by Judge Pepper. The matter is fully briefed, and this court heard oral argument on June 5, 2013. The Kohlers contend that Judge Pepper erred in finding that U.S. Bank had standing to pursue relief from the automatic stay. The Kohlers do not dispute that they executed the notes and mortgages and that they defaulted in payment; their only objection is to the standing of U.S. Bank to enforce the notes and mortgages.

When considering an appeal from the bankruptcy court's judgment, a district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010). The clear error standard is highly deferential. *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011). "'If the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety, we will not reverse its factual findings even if we would have weighed the evidence differently.'"

2

*Arlington LF, LLC v. Arlington Hospitality, Inc.*, 637 F.3d 706, 713 (7th Cir. 2011) (quoting *Freeland v. Enodis Corp.*, 540 F.3d 721, 729 (7th Cir. 2008)).

To obtain relief from the automatic stay, a party need only establish that it has a colorable claim to enforce a right against property of the estate. *In re Veal*, 450 B.R. 897, 914-15 (B.A.P. 9th Cir. 2011). Ultimate resolution of the parties' dispute is left for other proceedings. *Id.* at 914.

The concept of standing includes constitutional and prudential standing concerns. A party must have a personal stake in the case and controversy, and the person asserting standing bears the burden of establishing it, *see Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142, 1149 (2009). Constitutional standing requires that a party "present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. FEC*, 554 U.S. 724, 733, 128 S. Ct. 2759, 2768 (2008). Prudential standing exists when the litigant asserts the rights and interests of himself rather than a third party, presents a claim falling within the zone of interests protected by the specific law invoked, and advances more than abstract questions of wide public significance amounting to grievances better handled by the legislative or executive branch. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12, 124 S. Ct. 2301, 2309 (2004); *see also* Fed. R. Civ. P. 17 (requiring that an action be prosecuted in the name of the real party in interest).

Here, at heart, the issue is whether U.S. Bank is the proper party to enforce payment of the notes under state law. No one disputes that if U.S. Bank can enforce the notes under state law standing exists; if it cannot, standing is lacking. *See In re Weisband*, 427 B.R. 13, 18 (Bankr. D. Ariz. 2010) ("If GMAC is the holder of the Note, GMAC would

3

be a party injured by the Debtor's failure to pay it, satisfying the constitutional standing requirement. GMAC would also be the real party in interest under Fed. R. Civ. P. 17 because . . . the holder of a note has the right to enforce it.").

The Kohlers agree that on April 6, 2006, they signed notes relating to the first and second mortgages on their property. When executed, the note regarding their first mortgage was payable to BNC Mortgage, Inc., in the amount of $220,800, and the note regarding their second mortgage was payable to Lehman Brothers Bank, FSB in the amount of $55,200. The Kohlers admit they are in default on payments. However, they challenge whether U.S. Bank has sufficiently established that *it* is the entity able to pursue payment on the notes and foreclosure of the mortgages. The Kohlers' mortgages were bundled with others and securitized, and BNC Mortgage and Lehman Brothers apparently no longer exist. The Kohlers challenge whether the notes have been properly endorsed over or transferred to the trust or U.S. Bank as trustee. Moreover, they contend that U.S. Bank has not shown ownership of the notes.

On the other hand, U.S. Bank maintains that it holds notes signed by the Kohlers, endorsed in blank. If so, the notes are enforceable by the bearer. According to U.S. Bank, ownership of the notes is immaterial. It further argues that because it holds bearer paper more is not required to have standing to proceed.

The key provisions for determining whether U.S. Bank has standing come from the Wisconsin Uniform Commercial Code, which governs enforcement of negotiable instruments. According to Wisconsin law, an instrument may be payable to the bearer or to the order of an identified person. Wis. Stat. § 403.109. Under Wis. Stat. § 403.301, the "person entitled to enforce" an instrument includes, among limited others, the "holder

4

of the instrument." "Holder" means the person in possession of a negotiable instrument that is payable either to bearer or to an identified person who is the person in possession. Wis. Stat. § 401.201(2)(km). A holder of the instrument is entitled to enforce the instrument "even though that person is not the owner of the instrument or is in wrongful possession of the instrument." § 403.301.

Also, "negotiation" means a transfer of possession of an instrument "by a person other than the issuer to a person who thereby becomes its holder." Wis. Stat. § 403.201(1). "[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone." Wis. Stat. § 403.201(2).

An endorsement payable to an identified person is a "special endorsement" that may be negotiated only by another endorsement by that person. Wis. Stat. § 403.205(1). But "[i]f an endorsement is made by the holder of an instrument and it is not a special endorsement, it is a blank endorsement. If endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." Wis. Stat. § 403.205(2). As stated by one court, "[n]egotiable instruments like mortgage notes that are endorsed in blank may be freely transferred. And once transferred, the old adage about possession being nine-tenths of the law is, if anything, an understatement. Whoever possesses an instrument endorsed in blank has full power to enforce it." *Horvath v. Bank of New York, N.A.*, 641 F.3d 617, 621 (4th Cir. 2011).

Endorsement requires a signature, other than that of the maker, made on the instrument for the purpose of negotiation. Wis. Stat. § 403.204(1). And "[f]or the purpose

5

of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument." *Id.* Such an endorsement affixed to an instrument is called an "allonge." Deluxe Black's Law Dictionary 76 (1990 6th ed.).

ANALYSIS

A. The Bankruptcy Court's Findings of Fact

During the evidentiary hearing in the bankruptcy court, U.S. Bank called Corcoran as its witness and produced two files, each containing an original note, an allonge, and other mortgage-related documents. Judge Pepper found Corcoran to be a credible witness. (Doc. 1-1 at 221.) Based on Corcoran's testimony and the original files (copies of the original files were placed in the record as exhibits (Doc. 1-2) and the original files were apparently returned to the custody of Deutsche Bank), Judge Pepper further found that:

(1) On April 6, 2006, BNC loaned $220,800 to the Kohlers and the Kohlers executed a note payable to BNC Mortgage for that amount; the original note was presented in court as part of Deutsche Bank's file, for which it was custodian, and a copy of the note was attached to the proof of claim.

(2) On April 6, 2006, Lehman Brothers loaned $55,200 to the Kohlers and the Kohlers executed a note payable to Lehman Brothers for that amount; the original note was presented in court as part of Deutsche Bank's file, for which it was custodian, and a copy of the note was attached to the proof of claim.

(3) On April 20, 2006, Deutsche Bank received files for both of the loans. Each file contained the original note plus an allonge payable in blank.

6

(4) Each allonge reflected the loan number—8336 and 8338 for the first and second mortgage loans respectively—plus the address and names of the Kohlers as borrowers.

(5) There was a particular stacking order for the documents in each file when received, and each of those documents appeared in the files maintained by Deutsche Bank.

(6) Documents in the loan files had been separated at various points in time while Deutsche Bank held them, whether by servicers who requested the file or someone else.

(7) The "note and the allonge had staple holes in the upper lefthand corners indicating that at some point there had been attachment to other documents." (Doc. 1-1 at 221.)

(8) When Corcoran first saw the files the documents were all clipped together at the top—they had been hole punched and clipped together.

(9) Deutsche Bank has a custodial contract with the trust, its role under that contract is to hold and maintain the files Corcoran testified about in court, and Deutsche Bank was holding and maintaining those two files on behalf of the trust.

(Doc. 1-1 at 219-23.)

When denying the Kohlers' motion for reconsideration, Judge Pepper recognized that her statement that both notes and allonges had staple holes was erroneous; the second mortgage allonge did not. (Doc. 11 at 11.) However, Judge Pepper indicated that the correction in the findings of fact did not alter her legal conclusions. (*Id.*)

On appeal, the Kohlers challenge these findings as clearly erroneous. However, this court finds no clear error. Corcoran's testimony supported the bankruptcy judges findings,

7

and the Kohlers presented no contrary evidence. Judge Pepper's findings are plausible in light of the record, and even under a de novo standard of review this court would find the same. The original notes and allonges in the original files, plus Corcoran's testimony, support all of Judge Pepper's factual determinations.

Corcoran testified as to the contents and condition of Kohler files when Deutsche Bank received them on April 20, 2006. He testified that files submitted for custody by Deutsche Bank contain documents in a particular "stacking order," specifically first the note and immediately thereafter any allonges, followed by other documents in a certain standard order. He testified that each of the allonges at issue had stickers and the loan number for each related mortgage loan with the borrowers' names and addresses that matched the information on each of the respective notes. Moreover, Corcoran stated that those stickers were on the allonges when received on April 20, 2006. He further testified, and the original documents showed, that both the note and allonge relating to the first mortgage to BNC Mortgage had staple holes in the pages. Corcoran added, and the original documents showed, that the original notes and allonges (and the remainder of the original files) had two-hole punched at the top and when the files came to Deutsche Bank all of the documents were bound together with metal fasteners at the top. However, the documents had been separated at various times, perhaps by servicers who had requested the file to proceed with foreclosure. Further, Corcoran testified that Deutsche Bank acted as custodian for about three million files, that it acted as custodian for BNC Mortgage and Lehman Brothers when the files were delivered on April 6, 2006, and that by the time of the hearing Deutsche Bank was maintaining the two original files as custodian for the trust.

8

The Kohlers argue that no custodial contract was ever produced (Doc. 9 at 2). Regardless, Corcoran's testimony supported Judge Pepper's finding that there was a custodial contract.

This does not involve a situation as in *In re Weisband*, where evidence failed to demonstrate that the allonge was "stapled or otherwise attached to the rest of the Note" executed at or near the time the note was executed and failed to include any identifying numbers (such as an account or escrow number) or any other reference to the note. *See* 427 B.R. at 19-20.

Although the existence of another two allonges, dated after the Kohlers' filed their bankruptcy case, raises questions about how endorsements were made and tracked by U.S. Bank, BNC Mortgage, and Lehman Brothers, the existence of the additional allonges does not draw into question the validity of the allonges produced at the evidentiary hearing. Corcoran's testimony established that the allonges produced during the bankruptcy proceedings, and payable in blank, were the ones in the original files with the original notes, and that those allonges were in those files no later than April 20, 2006. The later allonges were not included in the original files and would not alter the validity of the blank allonges. Therefore, Judge Pepper correctly disregarded the later allonges.

In sum, all of the bankruptcy court's factual findings are affirmed.

B.  The Bankruptcy Court's Conclusions of Law

The Kohlers' main arguments relate to Judge Pepper's legal conclusions that (1) both original notes were transferred by endorsement; (2) the endorsements were in blank; and (3) U.S. Bank as trustee was and is the holder of the notes. (Doc. 1-1 at 230.) The Kohlers contend that the allonges in the original files were and are not "affixed" to the notes

as required by statute and that the notes were never transferred to the possession of the trust or U.S. Bank as trustee.

All of Judge Pepper's legal conclusions were correct. Sufficient evidence supports the legal determination that each allonge was "affixed" to the pertinent note for purposes of the Wisconsin UCC. Each allonge endorsed in blank was affixed to the pertinent note as understood in Wisconsin law.

Corcoran testified that the notes and allonges came to Deutsche Bank in the "stacked order" of the original note immediately followed by the allonges. Especially as to the first mortgage note, the evidence shows that the allonge was affixed to the note, as staple holes appeared in both note and allonge, making it more likely than not that the note and allonge were once stapled together. *See Sw. Resolution Corp. v. Watson*, 964 S.W.2d 262, 264 (Tex. 1997) (holding as a matter of law that an allonge stapled to a note was "firmly affixed" under a prior, stricter version of the UCC[1]). That the pages may have been detached for photocopying did not mean they were not otherwise "firmly affixed." *Id.* The evidence as to the first note easily supports the conclusion that the allonge was affixed.

But even as to the second mortgage note (or even without the existence of the staple holes for the first note), the allonge was affixed at one time. Corcoran testified that when received the documents were hole punched at the top and bound (together with other documents behind them) with metal fasteners. The Kohlers seem to contend that stapling was required, but the statute does not expressly require stapling. The statute says

---

[1] The Kohlers admit that a prior version of the UCC, in effect before 1990, required that an allonge be "firmly affixed" but that the UCC provisions on endorsement were later relaxed, and that the applicable version now requires simply that the allonge be "affixed." (Doc. 9 at 6.)

10

"affixed," and in this case hole punching with metal fasteners inserted through the holes sufficed.

Moreover, even if the allonges had not been physically attached soon after execution (which the evidence shows they were), the information on the allonges established that they were intended to be affixed. The sticker on each allonge matches the allonge to the particular note signed by the Kohlers, with the pertinent loan number. Thus, the information on each allonge indicates an intent to serve as an endorsement of the respective note. *See, e.g.*, *In re Nash (Palo Verde Mgmt. & Fin. Servs. Co. v. Nash)*, 49 B.R. 254, 261 (Bankr. D. Ariz. 1985) (finding under the prior version of the UCC requiring that an allonge be "firmly affixed" that an allonge was a valid endorsement where the allonge specifically referenced an escrow number, identified the maker of the note and the note's date, and recited that the note was to be attached to the allonge), *aff'd*, 60 B.R. 27 (B.A.P. 9th Cir. 1986). The lack of a statement in the allonge indicating that it was to be attached to the note is not persuasive; the loan number referencing the same number on the note indicates such intent.

Although in *Adams v. Madison Realty & Development, Inc.*, 853 F.2d 163 (3d Cir. 1988), the Third Circuit found that allonges placed within a folded note were not valid, the UCC at the time required that the allonge be "firmly affixed" to the note, and the court concluded that compliance with that formalistic and technical requirement was justified for several reasons. However, as conceded by the Kohlers (*see* note 1 above), the UCC provisions in Wisconsin and elsewhere have since been amended to require only that an allonge be "affixed," not "firmly affixed." And even the *Adams* court assumed that stapling constituted firm affixation. *See id.* at 166-67. Here, one allonge was likely stapled to the

11

note, both allonges had at one time been fastened with a metal fastener to the respective notes, and both allonges specifically referenced their pertinent note loan numbers. Under the present version of Wisconsin's UCC, the allonges were affixed.

The Kohlers contend that the notes and allonges, even if affixed, were never transferred to possession of the trust or U.S. Bank as trustee because the original files were delivered to Deutsche Bank as custodian for BNC Mortgage and Lehman Brothers, and the trust or U.S. Bank never took physical possession of them. However, notwithstanding that the files were delivered by BNC Mortgage and Lehman Brothers and thereafter physically in possession of Deutsche Bank until the hearing, Deutsche Bank's agency pursuant to which it held them changed. Corcoran's testimony supports, and Judge Pepper found, that at the time of the hearing Deutsche Bank was holding the files for U.S. Bank. This court is unpersuaded that reliance on a custodian agent for physical custody of the note and allonge disqualifies an entity from becoming the "holder" entitled to enforce a note. In fact, U.S. Bank's production of the two files at the hearing shows transfer or custody of the original notes and allonges to U.S. Bank. If Deutsche Bank did not hold the files on behalf of the trust or U.S. Bank as trustee, it would not have produced them at the hearing at the direction of U.S. Bank. Moreover, production of the files at the hearing placed the notes and allonges in the hands of U.S. Bank's counsel, another agent of the trustee.

Under the Wisconsin UCC provisions, the holder can enforce a note, even if that person is not the owner of the instrument or is in wrongful possession of it. And if an instrument is payable in blank or to bearer, it may be negotiated by transfer of possession alone. The trust, of which U.S. Bank is trustee, is the holder of the two notes. It possesses

12

notes endorsed and now payable in blank. Thus, it has standing to enforce the notes and to seek relief from the automatic stay. The matter of ownership is immaterial. *See, e.g.*, *In re Veal*, 450 B.R. at 912 & n.25 ("[O]ne can be a 'person entitled to enforce' without having any ownership interest in the negotiable instrument, such as when a thief swipes and absconds with a bearer instrument. . . . [T]he Veals should not care who actually owns the Note—and it is thus irrelevant whether the Note has been fractionalized or securitized—so long as they do know who they should pay."); *In re Smoak*, 461 B.R. 510, 518 (Bankr. S.D. Ohio 2011) (stating that "because it has been established that Bank of NY Mellon is the holder of the Note, the Smoaks, as the maker of the Note, need not be concerned with who the owner of the Note is") (footnote omitted).

Other courts have found, under similar provisions in other states, that the holder who can enforce a note has standing for relief from the automatic stay or filing a proof of claim. *See, e.g.*, *In re Smoak*, 461 B.R. 510; *In re Hwang*, 438 B.R. 661 (C.D. Cal. 2010). No other outcome is warranted here.

Therefore, for the foregoing reasons,

IT IS ORDERED that the decision of the bankruptcy court is AFFIRMED.

Dated at Milwaukee, Wisconsin, this 21st day of June, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

13

Case 2:11-cv-00893-CNC   Filed 06/21/13   Page 13 of 13   Document 13